# 23-7370(L)

## 23-7463(XAP), 23-7614 (XAP)

# In the United States Court of Appeals for the Second Circuit

PETERSEN ENERGIA INVERSORA S.A.U., PETERSEN ENERGIA S.A.U.,
*Plaintiffs-Appellees-Cross-Appellants*,

v.

ARGENTINE REPUBLIC,
*Defendant-Appellant-Cross-Appellee*,

YPF, S.A.,
*Defendant-Conditional Cross-Appellant.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

**BRIEF OF *AMICUS CURIAE*
ORGANIZACIÓN FEDERAL DE ESTADOS PRODUCTORES DE
HIDROCARBUROS ("OFEPHI") IN SUPPORT OF DEFENDANT-
APPELLANT-CROSS-APPELLEE AND IN SUPPORT OF REVERSAL**

---

Eric Lewis (NY Bar # 2576718)
Chiara Spector-Naranjo (NY Bar #4463790)
David Short (NY Bar #5780804)
**LEWIS BAACH KAUFMANN MIDDLEMISS**
1050 K Street NW, Suite 400
Washington, D.C. 20001
Tel: (202) 833-8900
*Attorneys for Amicus curiae*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

INTEREST OF *AMICI CURIAE* ...............................................................1

BACKGROUND .........................................................................................5

ARGUMENT ...............................................................................................9

     **I.**    **The District Court's Novel Interpretation Undermines the Provinces' Mandatory Expropriation Framework by Creating an Alternative Remedy for Third Parties** .....................9

     **II.**   **The District Court's Narrow Reading of Article 28 of the General Ex-propriation Law Conflicts with the Provinces' Interpretations of their Substantially Similar Expropriation Laws** ...............................................................13

CONCLUSION...........................................................................................21

CERTIFICATE OF COMPLIANCE WITH TYPEFACE REQUIREMENTS AND TYPE-STYLE REQUIREMENTS .......................................23

CERTIFICATE OF SERVICE & CM/ECF FILING.......................................24

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Curley v. AMR Corp.*,
153 F.3d 5 (2d Cir. 1998) ............................................................................18, 20

*Delaune v. United States*,
143 F.3d 995 (5th Cir. 1998) .................................................................19

*Eton Park Capital Management L.P. et al. v. Argentine Republic et al.*,
Case No. 1:16 cv 08569 (S.D.N.Y. Nov. 3, 2016) ........................................1, 7

*Pegasus Aviation IV, Inc. v. Aerolineas Austral Chile, S.A.*,
No. 08 CIV. 11371 (NRB), 2012 WL 967301 (S.D.N.Y. Mar. 20, 2012) ...............................................................................................18

*Petersen Energia Inversora, S.A.U. v. Argentine Republic & YPF S.A.*,
No. 15 CIV. 02739 (LAP), 2023 WL 2746022 (S.D.N.Y. Mar. 31, 2023) ....................................................................................1, 4, 15, 19

*United States v. Aguilar*,
No. 20 CR 390 (ENV), 2024 WL 665947 (E.D.N.Y. Feb. 16, 2024) ........................................................................................19

**Foreign Cases**

*Province of Salta v Pereyra Rozas, Cesar Leon – Appeal*,
No. CJS 39.628/18 (July 26, 2021).......................................................19

*Tohmé v. Provincial Directorate of Roads*,
TR Laley AR/JUR/2026/1995 (Sup. Ct. Province of Mendoza, Sala 1995)......14

**Foreign Constitutinal Provisions and Laws**

Argentina Civil & Commercial Proc. Code Art. 517 .............................................21

General Expropriation Law (Law No. 21,499)..................................................*passim*

YPF Expropriation Law No. 26,741 ................................................................4, 21

Province of Chubut Law No. 45 ...........................................................10, 11, 12, 13

Province of Formosa Law No. 490 ......................................................10, 11, 12, 13

Province of Jujuy Law No. 3018 .........................................................10, 11, 12, 13

Province of La Pampa Law No. 908 ....................................................10, 11, 12, 13

Province of Mendoza Law No. 1447 ...................................................10, 11, 12, 13

Province of Neuquen Law No. 804.......................................................10, 11, 12, 13

Province of Rio Negro Law No. 1015 .................................................10, 11, 12, 13

Province of Salta Law No. 2614 ..........................................................10, 11, 12, 13

Province of Santa Cruz Law No. 21 ..............................................10, 11, 12, 13, 18

Province of Tierra del Fuego Law No. 421 .........................................10, 11, 12, 13

The Argentine Organización Federal de Estados Productores de Hidrocarburos ("OFEPHI"), which translates to the Federal Organization of Hydrocarbon Producing States, submits this brief as *amicus curiae* in support of the Republic of Argentina.[1]  For the reasons set forth in this brief, OFEPHI respectfully supports the reversal of the district court's decisions currently on appeal.[2]

## INTEREST OF *AMICI CURIAE*

The Provinces of Chubut, Formosa, Jujuy, La Pampa, Mendoza, Neuquén, Salta, Santa Cruz, Tierra del Fuego, and Río Negro are ten Argentine provinces (the "Provinces") with substantial oil and gas exploration, development, and production ventures.  The Provinces are members of OFEPHI, an organization that promotes the unique policy interests of its member provinces.  Argentina is a federal state constituted of twenty-three provinces and one autonomous city, with

---

[1]     All parties have consented to the filing of this brief.  Pursuant to Local Rule 29.1, no party's counsel authored this brief in whole or in part; and no person, other than *amicus curiae* or its counsel, contributed money that was intended to fund preparing or submitting this brief.

[2]     The *Petersen* and *Eton Park* appeals address identical issues but have not been formally consolidated.  *Amicus curiae* intends for this brief to support both appeals.  However, for ease of reference, citations herein are only to Argentina's Opening Brief in the *Petersen* appeal, which is identical in substance to the opening brief filed in the *Eton Park* appeal.

each province holding certain powers not delegated to the federal government. Each province is fully autonomous, enacting its own constitution, organizing its local government, and managing its own resources. Each province therefore has its own set of provincial laws and justice system. Among the provincial laws are expropriation laws, which give the provinces the authority to expropriate private property for the public good under certain conditions and with certain requirements. This authority is separate from and exists in parallel to the federal government's expropriation power and, like it, is considered a matter of "public order," a concept denoting a body of principles that underlie and are foundational to the legal system.

OFEPHI, as an organization of Provinces, each with its own laws and justice systems, has a substantial interest in these appeals for two independent and compelling reasons.

First, a central issue on appeal is the correct interpretation of Argentina's General Expropriation Law, National Law No. 21,499, specifically with respect to the framework for resolving third-party claims related to an expropriation. *See* Opening Brief for Defendant-Appellant the Argentine Republic ECF No. 65.1, p. 10 ("Argentina's Opening Brief"). Each of the Provinces has its own expropriation law, with each province's law tracking, and nearly identical in substance to, the federal General Expropriation Law at issue in these appeals. Therefore, the

2

Provinces, represented by OFEPHI, have a significant interest in how this Court may interpret the Argentine federal law or, alternatively, whether this Court may determine, as *amicus curiae* respectfully submits that it should, that complex questions of Argentine law are to be left to Argentine courts. If this Court declines to reverse the district court, the Provinces will be adversely impacted by what OFEPHI maintains is the district court's manifestly incorrect interpretation of Argentine law. Just as the decision interferes with Argentina's expropriation processes and powers, it will also impact the Provinces' separate and distinct expropriation processes and powers. In particular, the Provinces have an interest in ensuring that third-party claims relating to provincial expropriations are heard in provincial courts in accordance with the expropriation scheme set forth in provincial law, and not in the courts of foreign countries. Each of the Provinces, moreover, has distinct economic and political interests and needs that require application of their laws in certain circumstances that only those Provinces can judge in the exercise of their specific, local discretion.

Second, pursuant to the expropriation law passed by the Argentine Congress on May 3, 2012, which resulted in the expropriation of Repsol's shares of YPF S.A. ("YPF"), 49% of the expropriated shares are to be transferred to the Provinces, though that transfer has not yet been completed. Given their legal right to ownership of YPF, the Provinces have an important interest in ensuring that

their shares are free and clear of any encumbrances, as required by Article 28 of

the General Expropriation Law.  YPF Expropriation Law, Law No. 26,741 ECF

No. 393 ¶ 66.[3]  Article 28 sets out the exclusive process for third-party

compensation claims, which must be resolved prior to and as part of the

expropriation, so that the expropriation is "free of any encumbrance."  But this

litigation continues to impact the YPF expropriation, and, in turn, the Provinces,

interfering with their ability to carry out their obligations to their citizens including

because of the uncertainty that the Provinces face in knowing what their revenue

base will be and the challenges in planning accordingly.  In a country with

economic concerns, as well as localized concerns in the Provinces, this situation

needlessly jeopardizes the social welfare of citizens despite the fact that the

Republic and the Provinces have followed all applicable laws.

A foreign court with different and inapplicable laws should give significant

weight to how another sovereign interprets its own laws, especially in the context

of foreign compensation proceeding relating to rights and obligations under that

sovereign's expropriation law.  Appellants in this case well knew when they

invested in YPF that they were subject to Argentine laws and procedures and the

relevant construction of those laws by Argentine courts.  Having made the

---

[3]     All references to the docket are from the docket in *Petersen Energia Inversora S.A.U. v. Argentine Republic*, No. 1:15-cv-02739 (S.D.N.Y.), unless otherwise stated.

4

investment decision will full knowledge of the applicable principles of Argentine law that would apply to their governance rights, they should not be permitted to then help themselves to the benefits of U.S. courts and legal constructions rather than the courts and constructions which bound their investments.

## BACKGROUND

YPF was established in 1922 by the Argentine Republic as a state-owned energy company.  ECF No. 393 ¶ 2.  It was privatized in 1999, and Repsol S.A., a Spanish oil company, came to acquire over 99% of YPF's capital stock by the end of 2001.  ECF No. 393 ¶¶ 20-21.  In 2008 and 2011, the Petersen Group, through Plaintiffs-Appellees-Cross-Appellants Petersen Energía Inversora S.A.U. and Petersen Energía S.A.U. (together "Petersen") acquired a 25% stake in YPF.  ECF No. 393 ¶¶ 27, 39, 41.  Between 2010 and 2012, Plaintiffs-Appellees-Cross-Appellant Eton Park Capital Management ("Eton Park") acquired a 3% stake in YPF.  ECF No. 393 ¶¶43-46.

In 2012, the Argentine Congress approved the expropriation of YPF shares owned by Repsol representing 51% of YPF's total capital.  In accordance with the General Expropriation Law, the Argentine government then had two years to compensate Repsol and to resolve any third-party claims relating to the

expropriation.  Law 21,499, Art. 33 (S.A. 233).[4]  During the statutory

compensation appraisal period, several minority shareholders of YPF filed claims

in Argentine courts in accordance with the procedures established by the General

Expropriation Law.  Those claims were similar to those brought by Petersen and

Eton Park in this case, in that the shareholders asserted that Argentina had violated

YPF's Bylaws by assuming control over Repsol's YPF shares without making a

tender offer.  Ultimately, within the two-year appraisal period, Argentina reached a

global settlement that compensated Repsol for the expropriation and settled the

minority shareholders' claims relating to the expropriation.  ECF No. 363-15 at 7-

13.  This is precisely how the General Expropriation Law dictates that third-party

claims be addressed—with the expropriating party making one, final payment that

accounts for all claims, and receiving the property without any encumbrances.

Petersen and Eton Park (together, "Plaintiffs/Appellees") did not assert

claims relating to the expropriation during the statutory process designated for

doing so, meaning that under Argentine law, any claims were forfeited and

Argentina (and the Provinces) would take their shares in YPF free and clear of any

encumbrances. Petersen's lenders foreclosed on Petersen's shares in YPF following

a default, and the rights to prosecute the claims asserted in these proceedings were

---

[4]     Citations in the form "S.A.___" refer to the pages of the Special Appendix
        filed by the Republic in its Opening Brief.

assigned to a litigation finance group in exchange for 70% of any proceeds. ECF No. 377-70 at 25. These entities wanted the advantage of American courts and statutory methodology rather than the Argentine courts or administrative bodies and construction principles that properly governed this investment.

In April 2015, Petersen initiated this case before the Southern District of New York. ECF No. 1. The thrust of its argument was that when Argentina acquired a controlling stake in YPF, YPF's Bylaws triggered a contractual obligation where Argentina was required to make a tender offer to other shareholders (including Petersen), and that Argentina breached this obligation by failing to make such a tender offer. Eton Park followed suit in November 2016, making the same arguments. *Eton Park Capital Management L.P. et al. v. Argentine Republic et al.*, Case No. 1:16 cv 08569 (S.D.N.Y. Nov. 3, 2016) (ECF No. 1).

One of the arguments advanced by Argentina in the district court was that Plaintiffs'/Appellees' claims were barred under the General Expropriation Law. ECF No. 373 at 33-38. Article 28 of the General Expropriation Law provides: "No action by third parties may impede the expropriation or its effects. The rights of the claimant shall be considered transferred from the [expropriated] thing to its price or to the compensation, leaving the thing free of any encumbrance." Law 21,499, Art. 28 (S.A. 233). Argentina argued that the goal of the General

7

Expropriation Law framework is to ensure that Argentina takes ownership of the expropriated property free of any "encumbrance," including any third-party claims relating to the expropriation. As a matter of law and policy, this framework is essential to avoid precisely the kind of drawn-out end-runs that create uncertainty, expense and potential jeopardy that the law was specifically created to prevent. Given the requirement of settling all claims relevant to the expropriation so that property can be taken without any encumbrance, this framework necessarily provides the exclusive remedy for third-party claims, including Plaintiffs'/ Appellees' claims. Therefore, Plaintiffs'/Appellees' claims against the Republic were extinguished at the conclusion of the expropriation process and their claims are not cognizable outside of the expropriation law's framework. ECF No. 373 at 34-38. That is the framework that Plaintiffs/Appellees knew to be applicable when they made their investment.

In March 2023, however, the district court denied summary judgment to the Republic and granted summary judgment to Plaintiffs/Appellees. ECF No. 437. The court, construing Argentine law, concluded, *inter alia*, that Plaintiffs'/Appellees' claims were *not* barred by Article 28 of the General Expropriation Law. ECF No. 437 at 48-53. The court reasoned that (i) Article 28 is not applicable because the relevant "encumbrance" was created by Argentina itself through the Bylaws, and not by a third party, and (ii) the tender offer

8

obligation does not relate to the expropriated shares but arises out of separate contractual obligations under the Bylaws. ECF No. 437 at 48-53. After a bench trial on damages, the district court entered final judgment for plaintiffs for a combined total of $16.1 billion. ECF No. 498. Argentina appealed. ECF No. 504.

## ARGUMENT

The district court's interpretation of Argentina's General Expropriation Law—in particular Article 28—was an inappropriate and narrow construction of the law that would be wholly unthinkable to an Argentine court, creating an unprecedented exception to how expropriation-related claims are addressed in Argentina. That interpretation is also inconsistent with the expropriation laws of the Provinces, which are substantively identical to the General Expropriation Law, both textually and in their application.

I.    **The District Court's Novel Interpretation Undermines the Provinces' Mandatory Expropriation Framework by Creating an Alternative Remedy for Third Parties**

As detailed in Argentina's Opening Brief, the General Expropriation Law provides the exclusive framework for all expropriation and expropriation-related claims in Argentina, and expropriation related claims, or "encumbrances" as described in Article 28, are interpreted broadly. *See* Argentina's Opening Brief, at 61-71. But the district court nevertheless permitted plaintiffs to bring claims outside of this framework based, in part, on its erroneous determination that Article

9

28 does not apply to expropriation-related claims if based on the bylaws of a state-created entity, or if the claims are not asserted directly against the expropriated property.[5]  In effect, the district court has engrafted a series of limitations on the familiar and broad legal term of "encumbrance" as recognized in Argentina and elsewhere.

The General Expropriation Law exists at the federal level, but each province has its own expropriation law, and the provincial laws largely track the federal law. With respect to Article 28 of the General Expropriation Law in particular, all of the Provinces have laws that are nearly identical to the federal law, precluding any "action by third parties" from "impeding the expropriation or its effects" and providing that the expropriated property will be transferred "free of all encumbrances."  Declaration of Chiara Spector-Naranjo ("Decl."), Ex. 2 Art. 27 (Chubut Law I No. 45).[6]

The Provinces also have nearly identical provisions requiring the amount of compensation for the expropriated property to be "objective," and many of the provisions include specifically enumerated or prohibited factors to be taken into

---

[5]      *See* Section II, *infra*.

[6]      *See also* Decl. ¶ 21, Ex. 3 Art. 36; Ex. 4 Art. 77; Ex. 5 Art. 37; Ex. 6 Art. 27; Ex. 7 Art. 73; Ex. 8 Art 27; Ex. 9 Art. 30; Ex. 10 Art. 21; Ex. 11 Art. 29.

consideration when calculating compensation.[7]  In other words, both the Provinces and the Republic have the legal right to expropriate property and the obligation to compensate fairly within a defined framework so that owners and affected third parties get a reasonable payout and the Province can move on expeditiously and with certainty.

Additional provisions in the provincial laws also provide for agreement between the government and the owner of the property to be expropriated on the amount of compensation, or, in the absence of agreement, a specific judicial or administrative procedure to determine the appropriate amount of compensation.[8]

The provincial laws also set forth the procedure for how the owner of the expropriated property can challenge the compensation to be paid for the expropriated property. While there is some variation, the provincial laws generally specify the specific venue in which a challenge may be brought, who may initiate a proceeding, what evidence and arguments may be presented, and even which party

---

[7]    *See*, *e.g.* Chubut Law I No. 45 Art. 9, Decl. Ex. 2 "Compensation will only include the objective value of the property and damages that are a direct or immediate consequence of the expropriation. Personal circumstances, emotional values, hypothetical profits, or the greatest value that the work to be executed may confer on the property will not be taken into account…"; *see also* Decl. Ex. 3 Art. 11; Ex. 4 Art. 17; Ex. 5 Art. 14; Ex. 6, Art. 8; Ex. 7 Art. 17; Ex. 8 Art. 12; Ex. 9 Art. 11; Ex. 10 Art. 6; Ex. 11 Art. 11.

[8]    *See* Decl. Ex. 2, Arts. 6, 17; Ex. 3 Arts. 19, 27; Ex. 4 Arts. 26, 27; Ex. 5 Arts. 23, 24; Ex. 6 Arts. 18-21; Ex. 7 Arts. 26, 27; Ex. 8 Arts. 13, 14; Ex. 9 Arts. 15, 19; Ex. 10 Art. 11; Ex. 11 Arts. 16, 18, 19.

bears the costs of the challenge.  *See, e.g.*, Jujuy Articles 35-38, Decl. Ex. 4 (setting the procedure for initiating and answering challenges to expropriation compensation), Article 40 (evidence), and Article 44 (awarding costs to the owner of the property if the appraised compensation is 50% higher than the offered compensation, and to expropriator if it is lower than or equal to the offered compensation).  Here again, the law provides a comprehensive framework that includes exclusive venue provisions, rules of decision, rules of standing and rules of what is relevant to the dispute.

And, like the General Expropriation Law, the provincial laws generally dictate a specific mechanism for expropriation-related claims by third parties.[9]  The procedures generally require notification to third parties with an interest in the expropriation, and allow third parties to introduce evidence relating to any claimed damages.  *See, e.g.*, Mendoza Law No. 1447 Arts. 27, 28, Decl. Ex. 6.  The claimed damages are then taken into account in determining the compensation awarded to the owner of the expropriated property.  *See id*., Articles 28, 33.

Although the specific details of the Provinces' procedures for handling third party claims vary, the statutes all reflect a legislative intent to prescribe a process for expropriation *with a limited duration, that allows for the resolution of third*

---

[9]  *See* Decl. Ex. 2, Arts. 26, 27; Ex. 3 Arts. 35, 36; Ex. 4 Arts. 34, 38, 46, 77; Ex. 5 Arts. 31, 37, 76; Ex. 6 Arts. 25, 27, 29, 42; Ex. 7 Arts. 31, 35; Ex. 8 Art. 24; Ex. 9 Art. 27; Ex. 10 Art. 36; Ex. 11 Art. 28.

*party claims, and that ultimately yields a completed expropriation free of any encumbrances.*

Amicus curiae is not aware of any of the provincial laws being interpreted to allow for third-party claims outside of the expropriation framework or in courts outside of the province. None of the Provinces' expropriation statutes creates an exception to the expropriation framework where the third-party claim is asserted against the state rather than the expropriated property, or where the state was involved in creating the alleged right being asserted by the third party. *Amicus curiae* is not aware of any of the provincial laws being interpreted in a way that accords with the district court's interpretation. The district court, by carving out an exception to the exclusive statutory expropriation framework of the federal law, created a remedy for minority shareholders in New York that does not exist in Argentina, that is wholly at odds with the letter and purpose of a comprehensive statutory scheme, and that threatens not only the federal expropriation regime, but the provincial regimes as well.

## II. The District Court's Narrow Reading of Article 28 of the General Expropriation Law Conflicts with the Provinces' Interpretations of their Substantially Similar Expropriation Laws

The district court's ruling in Appellees' favor was based, in part, on an erroneous interpretation of Article 28 of the General Expropriation Law. Argentina explains in its Opening Brief (at 62) that expropriation in Argentina is a process

13

defined by public statutory law. That process affords rights to third parties to the expropriation, including a legal procedure through which third parties, such as minority shareholders, may make claims or bring challenges. Plaintiffs/Appellees here had every right and opportunity to avail themselves of such claims or challenges in Argentina but made a strategic decision not to do so. Argentine law does not provide for expropriation-related contractual claims outside of the statutory expropriation framework. Argentina's Opening Brief at 63. [10] Moreover, the statutory expropriation process eliminates "encumbrances" on the expropriation. This is universally interpreted to mean that all claims must be timely brought within and resolved through the expropriation process so that Argentina takes the expropriated property free and clear so that the Argentine economy and its Provincial economies are not thrown into limbo. As stated above, the Provinces all have provisions that likewise prohibit third parties from "encumbering" the expropriation.

Nevertheless, the district court crafted its own exception to the requirement that the statutory expropriation regime result in an unencumbered expropriation.

---

[10]    *See also Tohmé v. Provincial Directorate of Roads*, TR Laley AR/JUR/2026/1995 (Sup. Ct. Province of Mendoza, Sala 1995) Decl., Ex. 13 ("Expropriation derives from the Constitution, consequently, it must be based on public law rules… The legal relationship created by the expropriation is of public law and cannot be substituted or compensated by those arising from private law; nor can private law govern the claim arising from the expropriation.").

14

First, the court found that Plaintiffs/Appellees were not "third parties" under the statute because their claims were contractual in nature, purportedly based on corporate bylaws written by Argentina decades before Plaintiffs/Appellees became YPF shareholders.  And second, the district court held that there was no encumbrance resulting from Plaintiffs'/Appellees' claims because the claims were against Argentina, and not the expropriated shares.  *Petersen Energia Inversora, S.A.U. v. Argentine Republic & YPF S.A.*, No. 15 CIV. 02739 (LAP), 2023 WL 2746022, at *15-16 (S.D.N.Y. Mar. 31, 2023), on reconsideration in part, No. 15 CIV. 02739 (LAP), 2023 WL 3625784 (S.D.N.Y. May 24, 2023).  However, neither the federal nor the provincial expropriation statutes support these distinctions in any way that would be accepted by an Argentine court applying Argentine law.

The district court's error was based, in part, on its misunderstanding of "third party" as that term is used in Article 28 of the General Expropriation Law. Under both the federal and provincial statutory expropriation regimes, "third party" refers to any claimant who is *not* the expropriating party or the owner of the property being expropriated.  As the Salta Province's appellate court explained in a recent decision relating to a provincial expropriation (the "Salta Case"), there are only two "subjects that make up the expropriation relationship: the active or

15

expropriating party and … the owner of the property to be expropriated."[11]  Any party who is neither the government expropriator nor the owner of the specific property being expropriated is considered a "third party."  The Salta Province's appellate court specifically so held, concluding that the appellant, an estate with a usufructuary interest in the property to be expropriated, was a "third party" under the Salta Province's equivalent to Article 28, because, though its rights would be affected by the expropriation, it was neither the expropriator nor the owner of the expropriated property and was therefore a third party and not a party. [12]  The district court's contrary conclusion that Article 28 did not apply to bar claims relating to encumbrances arising out of the expropriating party's contracts is without textual foundation under either federal or provincial law. [13]  The provision by its terms applies to all "third parties" and the district court's exclusion of this specific instance is without legal foundation in Argentine law or statutory construction.

The appellant in the Salta Case was not without recourse for its expropriation-related claims.  The court found that the appellant *should* be involved in the appraisal process for the expropriated property, because the

---

[11]     Decl., Ex. 12, at 1.

[12]     *Id*. at Point 5.

[13]     *Id*.

appellant's claims would impact the objective value of the property to be expropriated, a measure that is meant to incorporate damages caused by the expropriation.[14] The court's conclusion highlights the dual purposes of the statutory expropriation process: it protects the legal rights of third parties impacted by the expropriation, but also requires their involvement in that process to account for the cost of compensating their claims when arriving at a valuation for the expropriated property.[15] In the Salta Province case, as in the federal YPF expropriation, the amount to be paid for the expropriation would compensate not only the owner of the expropriated party, but also third parties with expropriation-related claims. In other words, as the legislators intended, all encumbrances would be extinguished through and by the conclusion of the expropriation process. *See* Law No. 21,499 Article 28 (S.A. 233); Salta Law 2614, Article 30.[16] The district court's alternative approach, allowing third parties to sit on their rights until the expropriation process has been completed, is unworkable and anathema to this statutory regime. If the district court's decision is allowed to stand, there is real risk of other courts following suit and reading into Argentine—and, by extension,

---

[14]  *Id*. The General Expropriation Law has a similar provision. *See* Law No. 21,499 Article 10 (S.A. 230).

[15]  Decl., Ex. 12, at Points 3, 5.

[16]  Decl., Ex. 9.

17

provincial—law exceptions to the expropriation framework that federal and provincial legislators clearly did not intend. In essence, a United States legal ruling regarding the meaning of an Argentine statute would disempower and supplant the Argentine courts and a comprehensive Argentine statutory scheme and substitute its own judgment for that of Argentina. Such an outcome would not only be contrary to the deference and respect owed by one sovereign court to another under the doctrine of comity and private international law, it would fundamentally change the available remedies that the parties bargained for under the Argentine regime.

The district court's interpretation of the statutory expropriation regime reflects a misunderstanding of how Argentine laws, and by extension provincial laws, should be analyzed by a court. "Civil law jurisdictions such as Argentina review the relevant 'civil code and statutory provisions as the primary source[s] of law and give them preponderant consideration.'" *Pegasus Aviation IV, Inc. v. Aerolineas Austral Chile, S.A*., No. 08 CIV. 11371 (NRB), 2012 WL 967301, at *6 n.11 (S.D.N.Y. Mar. 20, 2012) (quoting *Curley v. AMR Corp*., 153 F.3d 5, 14 (2d Cir. 1998)) (alteration in original). The same framework applies to the provincial laws.

In the Provinces, as at the federal level, these laws preempt private law agreements. *See* Argentina's Opening Brief, at 62. Interpreting the expropriation

18

framework, as the district court did, in a manner that would render it inapplicable to government-created entities entails allowing a private law agreement to effectively preempt public law. This violates Argentina's interpretative approach. *See id.*, at 62; *United States v. Aguilar*, No. 20 CR 390 (ENV), 2024 WL 665947, at *2 (E.D.N.Y. Feb. 16, 2024) (quoting *Delaune v. United States*, 143 F.3d 995, 1002 n.6 (5th Cir. 1998)). Argentina, like most civil law jurisdictions, does not permit the often more flexible approach to the construction and application of legal frameworks that a common law court might adopt based on its review of analogous case law. Civil law systems hew to close analysis of applicable codes and do not rely on case precedent, legislative history or other tools of construction that American judges regularly employ. A common law judge applying its familiar methodologies is inviting error.

Likewise, the district court's narrow interpretation of "encumbrances" to mean only formal legal claims to the specific property being expropriated, *Petersen Energia*, 2023 WL 2746022, at *15, lacks any justification or support in the civil law context. To the contrary, neither the Argentine nor the provincial laws contemplate a separate framework for contractual claims related to the expropriation, and therefore there was no reason for legislators to distinguish

between claims against the property and claims against the government.[17] Encumbrance, when used in the context of expropriation, has a single and well recognized meaning in Argentine law and it is not for another country's court to cleave the meaning of a familiar term in two in a manner that is case dispositive. The district court's fundamental error in interpreting the statute underscores why it was not well-suited to decide complex matters of Argentine law.

When interpreting Argentine law, the district court, to the extent it did not decline to exercise jurisdiction in these circumstances, should have interpreted Argentina's expropriation law as a closely integrated body of statutory law, and avoided arriving at any interpretation that would result in a divergence from the usual expropriation structure and jurisprudence. *Curley*, 153 F.3d at 14. And because expropriation is a process entirely regulated by public law, the district court should have avoided interpretations that would allow private agreements— regardless of who made them—primacy over statutory law. The district court's erroneous interpretations of Article 28 conflict with how the General Expropriation Law and similar provincial laws were intended to and have always been applied in Argentina. That error is fundamental and in derogation of Argentine sovereignty and statutory law and construction.

---

[17]     Decl., Ex. 12, the Salta Case, at 5.

Moreover, the district court's erroneous interpretations of Argentine law, if affirmed, will likely come into stark focus if Plaintiffs/Appellants seek enforcement of the judgment in Argentina. According to Article 517 of the Civil and Commercial Procedure Code, a foreign judgment cannot be enforced in Argentina if the judgment "violate[s] the principles of public order of Argentine law." Decl., Ex. 1. As explained above, the YPF Expropriation Law, like any federal or provincial expropriation law, is considered a matter of "public order" under Argentine law, YPF Expropriation Law, Law No. 26,741, Art. 18 (S.A. 243), meaning that it is fundamental to how the legal system operates. For the reasons explained above and in the Republic's Opening Brief, an Argentine court, and perhaps, eventually, the Republic's Supreme Court, may conclude that the district court's judgment is unenforceable, setting up serious and politically fraught conflicting judgments between the two nations' appellate courts.

## CONCLUSION

For these reasons, *amicus* respectfully submits that this Court should reverse the orders entered by the district court.


Dated: February 29, 2024          Respectfully submitted,

**LEWIS BAACH KAUFMANN**
**MIDDLEMISS PLLC**

21

/s/ Eric L. Lewis
Eric L. Lewis (NY Bar # 2576718)
Chiara Spector-Naranjo (NY Bar #4463790)
David Short (NY Bar #5780804)
1050 K Street, NW, Suite 400
Washington, D.C.  20001
Tel: (202) 833-8900
eric.lewis@lbkmlaw.com
chiara.spector-naranjo@lbkmlaw.com
david.short@lbkmlaw.com

*Attorneys for Amicus Curiae*
Organización Federal de Estados Productores de
Hidrocarburos

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE REQUIREMENTS AND TYPE-STYLE REQUIREMENTS

This document complies with type-volume limit of Fed. R. App. P. 29(a)(5) and Local Rule 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 4,764 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in Microsoft Office 365, using 14-point Times New Roman, a proportionally spaced font.

Dated: February 29, 2024

/s/ Eric L. Lewis

Attorney for *Amicus Curiae*
Organización Federal de Estados
Productores de Hidrocarburos

**CERTIFICATE OF SERVICE & CM/ECF FILING**

I hereby certify that on February 29, 2024, I caused the foregoing motion to be filed with the Clerk of the Court for the U.S. Court of Appeals for the Second Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: February 29, 2024

/s/ Eric L. Lewis

Attorney for *Amicus Curiae*
Organización Federal de Estados
Productores de Hidrocarburos

EXHIBITS

## UNITITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

| | |
|---|---|
| PETEPETERSEN ENERGÍA INVERSORA, S.A.U. and PETERPETERSEN ENERGÍA, S.A.U, | **Case No.: 23-7370 (L), 23-7463 (XAP), 23-7614 (XAP)** |
| Plaintiffs-Appellees-Cross-Appellants, | |
| -against- | |
| ARGENTINE REPUBLIC, | |
| Defendant-Appellant-Cross-Appellee, | |
| YPF S.A., | |
| Defendant-Conditional Cross-Appellant. | |

## DECLARATION OF CHIARA SPECTOR-NARANJO
## IN SUPPORT OF BRIEF OF *AMICUS CURIAE*
## ORGANIZACIÓN FEDERAL DE ESTADOS
## PRODUCTORES DE HIDROCARBUROS

I, Chiara Spector-Naranjo, declare pursuant to 28 U.S.C. § 1746 as follows:

1.    I am an attorney licensed to practice in New York, the District of Columbia, and Maryland.  I am also admitted to practice before this Court.

1

2.    I am a partner of the law firm Lewis Baach Kaufmann Middlemiss PLLC, counsel for *Amicus Curiae* Organización Federal de Estados Productores de Hidrocarburos ("OFEPHI").

3.    I submit this Declaration in support of OFEPHI's Brief in Support of Defendant-Appellant-Cross-Appellee and in Support of Reversal (the "Brief").

4.    Attached hereto as **Exhibit 1** is Article 517 of the Argentina Civil and Commercial Procedure Code of Argentina, the WIP Lex database, and available at: https://www.wipo.int/wipolex/en/text/526397.

5.    OFEPHI is an organization of ten Argentine provinces, including the Provinces of Chubut, Formosa, Jujuy, La Pampa, Mendoza, Neuquén, Salta, Santa Cruz, Tierra del Fuego, and Río Negro (the "Provinces").  OFEPHI provided to my firm certain documents in support of the Brief.  These documents include Exhibits 2 through 11 to this declaration, which are the expropriation laws of each of the Provinces, and Exhibits 12-13 which are court decisions from two of the Provinces.

6.    Attached hereto as **Exhibit 2** is Law I No. 45 of Chubut Province.

7.    Attached hereto as **Exhibit 3** is Law No. 490 of Formosa Province.

8.    Attached hereto as **Exhibit 4** is Law No. 3018 of Jujuy Province.

9.    Attached hereto as **Exhibit 5** is Law No. 908 of La Pampa Province.

10.    Attached hereto as **Exhibit 6** is Law No. 1447 of Mendoza Province.

11.    Attached hereto as **Exhibit 7** is Law No. 1973 of Neuquén Province.

2

12.     Attached hereto as **Exhibit 8** is Law No. 1015 of Rio Negro Province.

13.     Attached hereto as **Exhibit 9** is Law No. 2614 of Salta Province.

14.     Attached hereto as **Exhibit 10** is Law No. 21 of Santa Cruz Province.

15.     Attached hereto as **Exhibit 11** is Law No. 421 of Tierra del Fuego Province.

16.     Attached hereto as **Exhibit 12** is a decision by the Court of Justice of Salta Province, captioned "Provincia de Salta vs. Pereyra Rozas, César León – Recurso de Apelación" or "Province of Salta vs. Pereyra Rozas, César León – Appeal," and dated July 26, 2021.

17.     Attached hereto as **Exhibit 13** is a decision by the Court of Justice of Mendoza Province, captioned "Tohmé, Elias v. Provincial Directorate of Roads," or "Tohmé, Elias c. Dirrección Provincial de Vialidad," and dated September 26, 1995.

18.     Exhibits 1 through 13 are Spanish-language documents.  For the Court's convenience, my firm generated machine-assisted translations of each document, which were then reviewed for error by an attorney who is fluent in both English and Spanish.  The English translation of each document follows the Spanish original.

19.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

3

Executed in Washington, District of
Columbia on: February 29, 2024

By:   _/s/ Chiara Spector-Naranjo_
Chiara Spector-Naranjo

EXHIBIT 1

**CODIGO PROCESAL CIVIL Y COMERCIAL DE LA NACION**

**INDICE TEMATICO**

**PARTE GENERAL**

**LIBRO PRIMERO - DISPOSICIONES GENERALES**

CAPITULO II - SENTENCIAS DE TRIBUNALES EXTRANJEROS. LAUDOS DE TRIBUNALES ARBITRALES EXTRANJEROS

[…]

CONVERSION EN TITULO EJECUTORIO

Art. 517. - Las sentencias de tribunales extranjeros tendrán fuerza ejecutoria en los términos de los tratados celebrados con el país de que provengan.

Cuando no hubiese tratados, serán ejecutables si concurriesen los siguientes requisitos:

1) Que la sentencia, con autoridad de cosa juzgada en el Estado en que se ha pronunciado, emane de tribunal competente según las normas argentinas de jurisdicción internacional y sea consecuencia del ejercicio de una acción personal o de una acción real sobre un bien mueble, si éste ha sido trasladado a la República durante o después del juicio tramitado en el extranjero.

2) Que la parte demandada contra la que se pretende ejecutar la sentencia hubiese sido personalmente citada y se haya garantizado su defensa.

3) Que la sentencia reúna los requisitos necesarios para ser considerada como tal en el lugar en que hubiere sido dictada y las condiciones de autenticidad exigidas por la ley nacional.

4) Que la sentencia no afecte los principios de orden público del derecho argentino.

5) Que la sentencia no sea incompatible con otra pronunciada, con anterioridad o simultáneamente, por UN

(1) tribunal argentino.

NATIONAL CIVIL AND COMMERCIAL PROCEDURE CODE
THEMATIC INDEX
GENERAL PART
FIRST BOOK - GENERAL PROVISIONS

[...]

CHAPTER II - JUDGMENTS OF FOREIGN COURTS. AWARDS OF FOREIGN ARBITRATION COURTS

CONVERSION INTO EXECUTIVE TITLE

Art. 517. - The judgments of foreign courts will have enforceable force in the terms of the treaties concluded with the country from which they come.

When there are no treaties, they will be enforceable if the following requirements are met:

1) That the judgment, with the authority of res judicata in the State in which it was pronounced, emanates from a competent court according to Argentine standards of international jurisdiction and is a consequence of the exercise of a personal action or a real action over movable property, if he has been transferred to the Republic during or after the trial processed abroad.

2) That the defendant against whom the judgment is intended to be executed had been personally summoned and his defense had been guaranteed.

3) That the judgment meets the necessary requirements to be considered as such in the place where it was issued and the conditions of authenticity required by national law.

4) That the judgment does not violate the principles of public order of Argentine law.

5) That the judgment is not incompatible with another pronounced, previously or simultaneously, by ONE (1) Argentine court.

EXHIBIT 2



**HONORABLE
LEGISLATURA
DE LA PROVINCIA
DEL CHUBUT**

LEY I - N° 45
(Antes Ley 1739)


LEY DE EXPROPIACIONES
TITULO I

Calificación de utilidad pública

Artículo 1º.- La utilidad pública que debe servir de fundamento legal la expropiación, comprende todos los casos en que se procure la satisfacción del bien común, sea éste de naturaleza material o espiritual.

Artículo 2º.- Podrán actuar como expropiantes el Estado Provincial, las Corporaciones Municipales y sus respectivos entes, en tanto estén expresamente facultados para ello por sus leyes orgánicas o por ley especial. Las personas de existencia visible o jurídica, podrán actuar como parte actora en juicio de expropiación cuando estuvieren autorizados por la Ley o por acto administrativo fundado en Ley.

TITULO III

Objeto expropiable

Artículo 3º.- Puede ser objeto de expropiación todo bien conveniente o necesario para la satisfacción de una utilidad pública, cualquiera sea su naturaleza jurídica y el titular de un derecho sobre el mismo.

Artículo 4º.- La expropiación recaerá sobre bienes determinados. Sólo podrá referirse genéricamente a aquellos bienes que fueran necesarios para la construcción de obras o ejecución de planes o proyectos determinados. En tales supuestos la declaración de utilidad pública se hará en base a informes técnicos referidos a planos descriptivos, análisis de costos u otros elementos que sirvan de fundamento a los proyectos y programas a concretarse mediante la expropiación de los bienes de que se trate, pero en todos los casos deberá surgir de los mismos, en forma clara y objetiva, la directa vinculación o conexión de tales bienes con el plan o proyecto a realizar. Si la declaración genérica de utilidad pública, se refiriese a inmuebles, la misma deberá contener la individualización de los bienes afectados, pero si ello no fuera posible, se determinarán las distintas áreas afectadas por la declaración.

Artículo 5º.- Es susceptible de expropiación el subsuelo con independencia de la propiedad del suelo.

Artículo 6º.- La declaración de utilidad pública podrá comprender además de los bienes necesarios para lograr la finalidad perseguida, las que resultaren material, financiera, y razonablemente convenientes, de modo que se justifique que las ventajas estimadas serán utilizadas concretamente en la ejecución del programa que motivó la declaración de utilidad pública.

Artículo 7º.- Si se tratase de la expropiación parcial de un inmueble y la parte que quedase sin expropiar fuere inadecuada para un uso o explotación racional, el expropiado podrá exigir la expropiación de la totalidad del inmueble. En los terrenos urbanos se considerarán sobrantes inadecuados los que por causa de

la expropiación quedaren con frente, fondo o superficie inferiores a lo autorizado para edificar por las ordenanzas o usos locales.

Tratándose de inmuebles rurales, en cada caso serán determinadas las superficies inadecuadas, teniendo en cuenta la explotación efectuada por el expropiado.

En el supuesto de avenimiento, las partes de común acuerdo determinarán la superficie inadecuada, a efectos de incluirla en la transferencia de dominio; en el juicio de expropiación dicha superficie será establecida por el juez.

Artículo 8º.- Cuando la expropiación de un inmueble incide sobre otros con los que constituye una unidad orgánica, él o los propietarios de estos últimos estarán habilitados para accionar por expropiación irregular si se afectare su estructura arquitectónica, su aptitud funcional o de algún modo resultare lesionado el derecho de propiedad en los términos del artículo 50 incisos b) y c).

TITULO IV

La indemnización

Artículo 9º.- La indemnización sólo comprenderá el valor objetivo del bien y los daños que sean una consecuencia directa o inmediata de la expropiación. No se tomarán en cuenta circunstancias de carácter personal, valores afectivos, ganancias hipotéticas, ni el mayor valor que pueda conferir al bien la obra a ejecutarse. No se pagará lucro cesante. Integrarán la indemnización el Importe que correspondiere por depreciación de la moneda y el de los respectivos intereses.

Artículo 10.- No se indemnizarán las mejoras realizadas en el bien con posterioridad al acto que lo declara afectado a expropiación, salvo las mejoras necesarias.

Artículo 11.- La indemnización se pagará en dinero en efectivo, salvo conformidad del expropiado para que dicho pago se efectúe en otro valor o en especie.

Artículo 12.- Declarada la utilidad pública de un bien, el expropiante podrá adquirirlo directamente del propietario, dentro de los valores máximos que estimen en ese efecto el Tribunal de Tasaciones de la Provincia para los bienes inmuebles, o las oficinas técnicas competentes que en cada caso se designarán para los bienes que no sean inmuebles. Tratándose de inmuebles el valor máximo estimado será incrementado automáticamente y por todo concepto, en un diez por ciento.

La Dirección de Catastro y Geodesia cumplirá las funciones del Tribunal de Tasaciones mencionado en la presente Ley, hasta tanto sea creado este Organismo.

Artículo 13.- Si el titular del bien a expropiar fuere incapaz o tuviere algún impedimento para disponer de sus bienes, la autoridad judicial podrá autorizar al representante del incapaz o impedido para la transferencia directa del bien al expropiante.

Artículo 14.- No habiendo avenimiento respecto del valor de los bienes inmuebles, la cuestión será decidida por el juez quien, respecto a la indemnización prevista en el artículo 9º, y sin perjuicio de otros medios probatorios, requerirán dictamen del Tribunal de Tasaciones de la Provincia, el que deberá pronunciarse dentro de los noventa días.

Las maquinarias, instaladas o adheridas al inmueble que se expropiará se tasarán conforme a lo establecido para los bienes que no sean inmuebles.

Artículo 15.- No se considerarán válidos respecto al expropiante los contratos celebrados por el propietario con posterioridad a la vigencia de la ley que declaró afectado el bien a expropiación y que impliquen la constitución de algún derecho relativo al bien.

Artículo 16.- No habiendo avenimiento acerca del valor de los bienes que no sean inmuebles, sin perjuicio de la intervención de las oficinas técnicas a que alude el artículo 12, deberá sustanciarse prueba pericial. Cada parte designará a un perito y el juez un tercero a no ser que los interesados se pusieran de acuerdo en el nombramiento de uno solo.

TITULO V

Del procedimiento judicial

Artículo 17.- No habiendo avenimiento el expropiante deberá promover la acción judicial de expropiación.

Artículo 18.- El proceso tramitará por juicio sumario, con las modificaciones establecidas por esta ley y no estará sujeto al fuero de atracción de los juicios universales. Promovida la acción se dará traslado al demandado. Si se ignorase su domicilio, se publicarán edictos durante cinco días en el Boletín Oficial y por dos días en el diario de mayor circulación en la zona de ubicación del bien a expropiar.

Si existieren hechos controvertidos se abrirá la causa a prueba por el plazo que el juez estime prudencial debiendo tener presente lo dispuesto en los artículos 14 y 16.

Las partes podrán alegar por escrito sobre la prueba dentro del plazo común de diez días, computados desde que el secretario certificare de oficio sobre la producción de la misma.

Presentados los alegatos o vencido el plazo para hacerlo, el juez llamará autos para sentencia, la que deberá pronunciarse dentro de los treinta días de quedar firme aquella providencia. El cargo de las costas del juicio, así como su monto y el de los honorarios profesionales, se regirán por las normas del Código Procesal Civil y Comercial de la Provincia y por las respectivas leyes de aranceles.

Las partes podrán interponer todos los recursos admitidos por el mencionado Código.

Artículo 19.- La sentencia fijará la indemnización, teniendo en cuenta el valor del bien al tiempo de la desposesión.

Para establecer la depreciación monetaria, se descontará del valor fijado la suma consignada en el juicio, conforme con lo previsto en el artículo 21, efectuándose la actualización sobre la diferencia resultante, hasta el momento del efectivo pago.

En tal caso, los intereses se liquidarán a la tasa del seis por ciento anual, desde el momento de la desposesión hasta el del pago, sobre el total de la indemnización o sobre la diferencia, según corresponda.

Los rubros que compongan la indemnización no estarán sujetos al pago de impuesto o gravamen alguno.

Artículo 20.- La demanda se promoverá ante el Juzgado de Primera Instancia en lo Civil, Comercial y Laboral de la Circunscripción Judicial del lugar donde se encuentre el bien a expropiar o el de su registro o el del domicilio del demandado, a elección del actor.

Artículo 21.- Si se tratare de bienes inmuebles, el expropiante deberá consignar ante el juez respectivo el importe de la valuación que al efecto hubiese practicado el Tribunal de Tasaciones de la Provincia. Efectuada dicha consignación, el juez le otorgará la posesión del bien.

Artículo 22.- El expropiado podrá retirar la suma depositada previa justificación de su dominio y de que el bien no reconoce hipoteca u otro derecho real y que no está embargado ni pesan sobre él restricciones a la libre disposición de sus bienes.

Artículo 23.- La litis se anotará en el Registro de la Propiedad, siendo desde ese momento indisponible e inembargable el bien.

Artículo 24.- Si la expropiación versare sobre bienes que no sean inmuebles, el expropiante obtendrá la posesión inmediata de ellos, previa consignación judicial del valor que se determine por las oficinas técnicas mencionadas en el artículo 12. Será de aplicación, en lo pertinente, lo establecido en el artículo 22.

Artículo 25.- Otorgada la posesión judicial del bien, cesarán los arrendamientos, acordándose a los ocupantes un plazo de 30 días para su desalojo, que el expropiante podrá prorrogar cuando a su juicio existan justas razones que así lo aconsejen.

Artículo 26.- La acción emergente de cualquier perjuicio que se irrogase a terceros por contratos de locación u otros que tuvieran celebrados con el propietario, se ventilará en juicio por separado.

Artículo 27.- Ninguna acción de terceros podrá impedir la expropiación ni sus efectos. Los derechos del reclamante se considerarán transferidos de la cosa a su precio o a la indemnización, quedando aquella libre de todo gravamen

Artículo 28.- El expropiante podrá desistir de la acción promovida, en tanto la expropiación no haya quedado perfeccionada. Las costas serán a su cargo.

Se entenderá que la expropiación ha quedado perfeccionada cuando se ha operado la transferencia del dominio al expropiante mediante sentencia firme, toma de posesión y pago de la indemnización.

Artículo 29.- Es improcedente la caducidad de la instancia cuando en el juicio el expropiante haya tomado posesión del bien y el expropiado sólo cuestionare el monto de la indemnización.

Artículo 30.- La acción del expropiado para exigir el pago de la indemnización prescribe a los cinco años, computados desde que el monto respectivo quede determinado, con carácter firme y definitivo.

Artículo 31.- Para la transferencia del dominio de inmuebles al expropiante, no se requerirá escritura pública otorgada ante escribano siendo suficiente al efecto la inscripción en el respectivo Registro de la Propiedad del decreto que apruebe el avenimiento o, en su caso, de la sentencia judicial que haga lugar a la expropiación.

TITULO VI

Plazo de la expropiación

Artículo 32.- Se tendrá por abandonada la expropiación -salvo disposición expresa de la ley especial- si el expropiante no promueve el juicio dentro de los dos años de vigencia de la ley que la autorice, cuando se trate de llevarla a cabo sobre bienes individualmente determinados; de cinco años, cuando se trate de bienes comprendidos dentro de una zona determinada; y de diez años, cuando se trate de bienes comprendidos en una enumeración genérica.

No regirá la disposición precedente en los casos en que las leyes orgánicas de las municipalidades autoricen a éstas a expropiar la porción de los inmuebles afectados a rectificaciones o ensanches de calles y ochavas, en virtud de las ordenanzas respectivas.

Artículo 33.- Las disposiciones contenidas en el primer párrafo del artículo anterior no serán aplicables en los casos de reserva de inmuebles para obras o planes de ejecución diferida, calificados por ley formal.

En tal supuesto se aplicarán las siguientes normas:

a) El expropiante, luego de declarar que se trata de una expropiación diferida, obtendrá la tasación del bien afectado con intervención del Tribunal de Tasaciones de la Provincia y notificará al propietario el importe resultante.

b) Si el valor de tasación fuere aceptado por el propietario, cualquiera de las partes podrá pedir su homologación judicial y, una vez homologado, dicho valor será considerado como firme para ambas partes, pudiendo reajustarse sólo de acuerdo con el procedimiento previsto en el inciso d) del presente artículo.

c) Si el propietario no aceptara el valor de tasación ofrecido, el expropiante deberá solicitar judicialmente la fijación del valor del bien, de conformidad con las normas de los artículos 9º y 10.

d) La indemnización será reajustada en forma prevista en el artículo 9º.

e) Si durante la tramitación del caso y antes de que se dicte la sentencia definitiva el expropiante necesitará disponer en forma inmediata del inmueble, regirá lo dispuesto en los artículos 21, 22 y 23.

f) Los inmuebles afectados podrán ser transferidos libremente a terceros, a condición de que el adquirente conozca la afectación y consienta el valor fijado, si éste estuviere determinado. Con tal finalidad una vez firme dicho valor, será comunicado de oficio por el ente expropiante o en su caso, por el juzgado interviniente al Registro de la Propiedad Inmueble que corresponda.

TITULO VII

De la Retrocesión

Artículo 34.- Procede la acción de retrocesión cuando al bien expropiado se le diere un destino diferente al previsto en la ley expropiatoria, o cuando no se le diere destino alguno en un lapso de dos años computados desde que la expropiación quedó perfeccionada en la forma prevista en el artículo 28, segundo párrafo.

Artículo 35.- Se entenderá que no hubo cambio de destino cuando el acordado al bien mantenga conexidad, interdependencia o correlación con el específicamente previsto en la ley.

Tampoco se considerará que medió cambio de destino si a una parte del bien expropiado se le asignare uno complementario o que tiende a integrar y facilitar el previsto por la ley.

Artículo 36.- La retrocesión también procede en los supuestos en que el bien hubiere salido del patrimonio de su titular por el procedimiento de avenimiento.

Artículo 37.- La retrocesión podrá obtenerse mediante gestión administrativa. El avenimiento será autorizado por el Poder Ejecutivo, en la administración central, o por la autoridad superior del ente expropiante, según corresponda, no aplicándose a su respecto las limitaciones que normas generales prescriban para la disposición de bienes del Estado

Artículo 38 Cuando el bien no se le hubiere dado destino alguno dentro del plazo referido por el artículo 34, el expropiado podrá intimar fehacientemente al expropiante para que le asigne al bien el destino que motivó la expropiación; transcurrido tres meses desde esa intimación sin que el expropiante satisfaga el requerimiento, o sin que hubiere iniciado los respectivos trabajos, los que deberá mantener conforme a los planes de obra aprobados, la acción de retrocesión quedará expedita, sin necesidad de otro reclamo.

Si al bien se le hubiere dado un destino diferente al previsto en la ley expropiatoria, deberá formularse el reclamo administrativo previo.

Artículo 39.- Si el bien expropiado hubiera cumplido la finalidad que motivó la expropiación, y por esa circunstancia quedare desvinculado de aquella finalidad, la retrocesión será improcedente.

Artículo 40.- Es admisible la acción de retrocesión ejercida parcialmente sobre una parte del bien expropiado.

Artículo 41.- Para que la retrocesión sea procedente se requiere:

a) Que la expropiación que la motive haya quedado perfeccionada, en la forma prevista en el artículo 28.

b) Que se dé alguno de los supuestos que prevé el artículo 34 y en su caso se cumpliese lo dispuesto en el artículo 38.

c) Que el accionante, dentro del plazo que fije la sentencia, reintegre al expropiante lo que percibió de éste en concepto de precio o de indemnización, con la actualización que correspondiere. Si el bien hubiere disminuído de valor por actos del expropiante, esa disminución será deducida de los que debe ser reintegrado por el accionante. Si el bien hubiere aumentado de valor por mejoras necesarias o útiles introducidas por el expropiante el expropiado deberá reintegrar el valor de las mismas. Si el bien hubiere aumentado de valor por causas naturales, el reintegro de dicho valor no será exigido al accionante. Si el bien, por causas naturales hubiere disminuido de valor, el monto de esa disminución no será deducido del valor a reintegrar por el accionante.

Artículo 42.- Cuando la expropiación se hubiere llevado a cabo mediante avenimiento y debiera promoverse acción de retrocesión, será competente para conocer de la misma el juez que lo era para entender en el juicio de expropiación.

Artículo 43.- Si la expropiación se hubiere efectuado mediante juicio, la demanda de retrocesión debe radicarse ante el mismo juzgado que intervino en el juicio de expropiación.

Artículo 44.- La acción de retrocesión corresponde únicamente al propietario expropiado y a sus sucesores universales.

Artículo 45.- La retrocesión podrá ser demandada contra el expropiante, o contra éste y los terceros a quienes hubiere sido transferido el bien.

Artículo 46.- El procedimiento aplicable en el juicio de retrocesión, y la naturaleza de la litis, serán los establecidos para el juicio de expropiación.

Artículo 47.- Si en la sentencia se hiciere lugar a la acción, deberá establecerse la suma que debe reintegrarse al accionante por retrocesión y el plazo en que habrá de hacerlo; asimismo se establecerá el plazo en que el expropiante debe devolver el bien expropiado.

Artículo 48.- La devolución del bien al expropiado deberá hacerse libre de todo ocupante, cargas, gravámenes y servidumbres que hubieren tenido lugar después de la desposesión.

Artículo 49.- La acción por retrocesión prescribe a los tres años, computados desde que, habiendo quedado perfeccionada la expropiación en la forma prevista en el artículo 28, segundo párrafo, al bien se le dio un destino ajeno al que la determinó, o desde que no habiéndosele dado al bien destino alguno, hubieren transcurrido los plazos previstos en los artículos 34 y 38.

Los trámites previstos en el artículo 38 suspenden el curso de esta prescripción.

TITULO VIII

De la expropiación irregular

Artículo 50.- Procede la acción de expropiación irregular cuando existiendo una ley que declara de utilidad pública un bien se de alguno de los siguientes casos:

a) Que el estado lo tome sin satisfacer los recaudos establecidos por esta ley, no encontrándose pago su precio.

b) Que de hecho, una cosa mueble o inmueble resulte indisponible por evidente dificultad o impedimento para disponer de ella en condiciones normales.

c) Que el Estado imponga al derecho del titular de un bien o cosa, una indebida restricción o limitación, que importen una lesión a su derecho de propiedad.

Artículo 51.- No corresponde la acción de expropiación irregular cuando el Estado paraliza o no activa los procedimientos después de haber obtenido la posesión judicial del bien.

Artículo 52.- El que accione por expropiación irregular está exento de la reclamación administrativa previa.

Artículo 53.- En el juicio de expropiación irregular los valores indemnizables serán fijados en la misma forma prevista para el juicio de expropiación regular, contemplada en el artículo 9° y siguientes de la presente ley.

Artículo 54.- Las normas del procedimiento judicial establecidas para la expropiación regular, rigen también para la expropiación irregular, en cuanto fueren aplicables.

TITULO IX

De la ocupación temporánea

Artículo 55.- Cuando por razones de utilidad pública fuese necesario el uso transitorio de un bien o cosa determinados, muebles o inmuebles o de una universalidad determinada de ellos, podrá recurrirse a la ocupación temporánea.

Artículo 56.- La ocupación temporánea puede responder a una necesidad anormal urgente imperiosa o súbita o a una necesidad normal no inminente.

Artículo 57.- La ocupación temporánea por causa anormal, puede ser dispuesta directamente por la autoridad administrativa, y no dará lugar a indemnización alguna, salvo la reparación de los daños o deterioros que se causaren a la cosa o el pago de daños y perjuicios debidos por el uso posterior de la cosa en menesteres ajenos a los que estrictamente determinaron su ocupación.

Artículo 58.- Ninguna ocupación temporánea anormal, tendrá mayor duración que el lapso estrictamente necesario para satisfacer la respectiva necesidad.

Artículo 59.- La ocupación temporánea por razones normales, previa declaración legal de utilidad pública, podrá establecerse por avenimiento; de lo contrario deberá ser dispuesta por autoridad judicial a requerimiento de la Administración Pública.

Artículo 60.- La ocupación temporánea normal apareja indemnización, siendo aplicables en subsidio las reglas vigentes en materia de expropiación. La indemnización a que se refiere el presente artículo comprenderá el valor del uso y los daños y perjuicios ocasionados al bien o cosa ocupados así como también el valor de los materiales que hubiesen debido extraerse necesaria e indispensablemente con motivo de la ocupación.

Artículo 61.- El bien ocupado deberá satisfacer el destino previsto por la ley que declaró su utilidad pública.

Artículo 62.- Ninguna ocupación temporánea por causa normal puede durar más de dos años; vencido este lapso, el propietario intimará fehacientemente la devolución del bien. Transcurridos treinta días desde dicha intimación sin que el bien hubiere sido devuelto, el propietario podrá exigir la expropiación del mismo, promoviendo una acción de expropiación irregular.

Artículo 63.- El procedimiento judicial establecido para el juicio de expropiación es aplicable, en lo pertinente, al juicio de ocupación temporánea normal.

Artículo 64.- Sin conformidad del propietario, el ocupante temporáneo de un bien o cosa, no puede alterar

la sustancia del mismo ni extraer o separar de éste elementos que lo integren, sin perjuicio del supuesto previsto en el artículo 60, última parte.

Artículo 65.- Si la ocupación temporánea afectase a terceros, los derechos de éstos se harán valer sobre el importe de la indemnización.

Artículo 66.- Las cuestiones judiciales que promoviese el propietario del bien ocupado están exentas de reclamación administrativa previa.

TITULO X

Disposiciones Complementarias

Artículo 67.- Todo aquel que a título de propietario, de poseedor, o a mérito de cualquier otro título, resistiere de hecho la ejecución de los estudios u operaciones técnicas que en virtud de la presente ley fuesen dispuestos por el Estado, se hará pasible de una multa de Pesos Uno ($ 1), al arbitrio del juez, quien procederá a su aplicación, previo informe sumarísimo del hecho sin perjuicio de oír al imputado y resolver como corresponda. La multa se exigirá por vía ejecutiva.

Artículo 68.- La presente Ley se aplicará exclusivamente a las causas que se inicien a partir de su vigencia. No obstante en los juicios en trámite el expropiante podrá proponer la adquisición del bien por vía de avenimiento, en la forma prevista en el artículo 12.

Artículo 69.- Regístrese, comuníquese, dese al Boletín Oficial y cumplido, ARCHIVESE.


LEY I-N° 45 (Antes Ley 1739) TABLA DE ANTECEDENTES
Artículo del Texto Definitivo    Fuente
1/11    Texto original
12 primer párrafo    Texto original
12 segundo párrafo    Ley 1744 art. 1 (por fusión)
13 / 68    Texto original
    Se ha actualizado la multa a 1 $.



LEY I-N° 45 (Antes Ley 1739) TABLA DE EQUIVALENCIAS
Número de artículo del Texto Definitivo    Número de artículo del Texto de Referencia (Ley 1739)    Observaciones
La numeración de los artículos del Texto Definitivo corresponde a la numeración original de la Ley.

LAW I - No 45 (Previously Law 1739)

EXPROPIATIONS LAW TITLE I

Public utility rating

Article 1.- The public utility that must serve as the legal basis for expropriation, includes all cases in which the satisfaction of the common good is sought, whether of a material or spiritual nature.

Article 2.- The Provincial State, the Municipal Corporations and their respective entities may act as expropriators, as long as they are expressly empowered to do so by their organic laws or by special law. Persons of visible or legal existence may act as plaintiff in expropriation proceedings when authorized by Law or by administrative act founded on Law.

TITLE III Expropriable object

Article 3.- Any good convenient or necessary for the satisfaction of a public utility may be subject to expropriation, regardless of its legal nature and the owner of a right over it.

Article 4.- The expropriation will fall on specific assets. It may only refer generically to those goods that are necessary for the construction of works or the execution of specific plans or projects. In such cases, the declaration of public utility will be made based on technical reports referring to descriptive plans, cost analysis or other elements that serve as a basis for the projects and programs to be carried out through the expropriation of the assets in question, but in In all cases, the direct link or connection of such assets with the plan or project to be carried out must arise from them, in a clear and objective manner. If the generic declaration of public utility refers to real estate, it must contain the individualization of the affected assets, but if this is not possible, the different areas affected by the declaration will be determined.

Article 5.- The subsoil is susceptible to expropriation regardless of the ownership of the land.

Article 6.- The declaration of public utility may include, in addition to the assets necessary to achieve the intended purpose, those that are material, financial, and reasonably convenient, so that it is justified that the estimated advantages will be used specifically in the execution of the program. that motivated the declaration of public utility.

Article 7.- If it involves the partial expropriation of a property and the part that remains unexpropriated is inadequate for rational use or exploitation, the expropriated party may demand the expropriation of the entire property. In urban lands, inadequate surpluses will be considered those that, due to the expropriation will be left with a front, back or surface less than what is authorized for building by local ordinances or uses.

In the case of rural properties, in each case the inadequate surfaces will be determined, taking into account the exploitation carried out by the expropriated party.

In the event of an agreement, the parties by mutual agreement will determine the inadequate surface area, in order to include it in the transfer of ownership; In the expropriation trial, said surface area will be established by the judge.

Article 8.- When the expropriation of a property affects others with which it constitutes an organic unit, it or the owners of the latter will be authorized to take action for irregular expropriation if its architectural structure, its functional aptitude or in any way results. property rights have been violated under the terms of article 50, paragraphs b) and c).

TITLE IV
Compensation

Article 9.- Compensation will only include the objective value of the property and damages that are a direct or immediate consequence of the expropriation. Personal circumstances, emotional values, hypothetical profits, or the greatest value that the work to be executed may confer on the property will not be taken into account. No lost profits will be paid. The compensation will consist of the amount corresponding to the depreciation of the currency and the respective interest.

Article 10.- Improvements made to the property after the act that declares it subject to expropriation will not be compensated, except for necessary improvements.

Article 11.- The compensation will be paid in cash, unless the expropriated party agrees that said payment be made in another value or in kind.

Article 12.- Once the public utility of an asset has been declared, the expropriator may acquire it directly from the owner, within the maximum values that the Appraisal Court of the Province for real estate, or the competent technical offices that in each case estimate for this purpose. case will be designated for property that is not real estate. In the case of real estate, the maximum estimated value will be automatically increased by ten percent for all reasons.

The Directorate of Cadastre and Geodesy will fulfill the functions of the Appraisal Court mentioned in this Law, until this Body is created.

Article 13.- If the owner of the property to be expropriated is incapable or has any impediment to dispose of his property, the judicial authority may authorize the representative of the incapable or disabled person to directly transfer the property to the expropriator.

Article 14.- If there is no agreement regarding the value of the real estate, the matter will be decided by the judge who, with respect to the compensation provided for in article 9, and without prejudice to other means of proof, will require an opinion from the Appraisals Court of the Province, which must rule within ninety days.

The machinery, installed or attached to the property to be expropriated, will be valued in accordance with what is established for property that is not real estate.

Article 15.- Contracts entered into by the owner after the law that declared the property affected by expropriation and that imply the constitution of some right relating to the property will not be considered valid with respect to the expropriator.

Article 16.- If there is no agreement regarding the value of non-real estate assets, without prejudice to the intervention of the technical offices referred to in article 12, expert evidence must be substantiated. Each party will appoint an expert and the judge a third party unless the interested parties agree on the appointment of only one.

TITLE V
Judicial procedure

Article 17.- If there is no agreement, the expropriator must promote the judicial action of expropriation.

Article 18.- The process will be processed by summary trial, with the modifications established by this law and will not be subject to the jurisdiction of universal trials. Once the action is filed, it will be transferred to the defendant. If your address is unknown, edicts will be published for five days in the Official Gazette and for two days in the newspaper with the greatest circulation in the area where the property to be expropriated is located.

If there are disputed facts, the case will be opened to evidence for the period that the judge deems prudent, taking into account the provisions of articles 14 and 16.

The parties may argue in writing about the evidence within the common period of ten days, computed from the moment the secretary certifies ex officio the production of the same.

Once the arguments have been presented or the deadline for doing so has expired, the judge will call the ruling, which must be pronounced within thirty days of that ruling becoming final. The charge for the costs of the trial, as well as its amount and that of the professional fees, will be governed by the rules of the Civil and Commercial Procedural Code of the Province and by the respective tariff laws.

The parties may file all appeals allowed by the aforementioned Code.

Article 19.- The sentence will set the compensation, taking into account the value of the property at the time of dispossession.

To establish monetary depreciation, the sum recorded in the trial will be deducted from the established value, in accordance with the provisions of article 21, updating the resulting difference until the moment of actual payment.

In such case, interest will be settled at the rate of six percent per year, from the moment of dispossession until the moment of payment, on the total compensation or on the difference, as appropriate.

The items that make up the compensation will not be subject to the payment of any tax or lien.

Article 20.- The claim will be filed before the Court of First Instance in Civil, Commercial and Labor Matters of the Judicial District of the place where the property to be expropriated is located or the place of its registration or the place of residence of the defendant, at the choice of the plaintiff.

Article 21.- If it involves real estate, the expropriator must record before the respective judge the amount of the valuation carried out for this purpose by the Appraisal Court of the Province. Once said consignment has been made, the judge will grant you possession of the property.

Article 22.- The expropriated person may withdraw the deposited sum after justifying his ownership and that the property does not recognize a mortgage or other real right and that it is not seized nor are there restrictions on the free disposal of his assets.

Article 23.- The litigation will be recorded in the Property Registry, and from that moment on the property will be unavailable and unseizable.

Article 24.- If the expropriation concerns assets that are not real estate, the expropriator will obtain immediate possession of them, after judicial consignment of the value determined by the technical offices mentioned in article 12. It will apply, as pertinent, what is established in article 22.

Article 25.- Once judicial possession of the property has been granted, the leases will cease, granting the occupants a period of 30 days for their eviction, which the expropriator may extend when in his opinion there are just reasons that so advise.

Article 26.- The action arising from any damage caused to third parties due to rental contracts or others that they had with the owner, will be heard in a separate trial.

Article 27.- No action by third parties may impede the expropriation or its effects. The rights of the claimant shall be considered transferred from the thing to its price or to the compensation, leaving the thing free of any encumbrance.

Article 28.- The expropriator may withdraw from the action promoted, as long as the expropriation has not been completed. The costs will be your responsibility.

It will be understood that the expropriation has been perfected when the transfer of ownership to the expropriator has taken place through a final judgment, taking possession and payment of compensation.

Article 29.- The expiration of the instance is inadmissible when in the trial the expropriator has taken possession of the property and the expropriated party only questions the amount of compensation.

Article 30.- The action of the expropriated person to demand payment of compensation expires after five years, computed from when the respective amount is determined, with a firm and definitive nature.

Article 31.- For the transfer of ownership of real estate to the expropriator, a public deed granted before a notary will not be required, and the registration in the respective Property Registry of the decree approving the agreement or, where appropriate, of the ruling will be sufficient for this purpose. judicial that gives rise to the expropriation.

TITLE VI
Term of expropriation

Article 32.- The expropriation will be considered abandoned -except as expressly provided in the special law- if the expropriator does not promote the trial within two years of validity of the law that authorizes it, when it comes to carrying it out on individual assets. determined; five years, when dealing with assets within a specific area; and ten years, in the case of goods included in a generic list.

The preceding provision will not govern in cases in which the organic laws of the municipalities authorize them to expropriate the portion of the properties affected by rectifications or widening of streets and ochavas, by virtue of the respective ordinances.

Article 33.- The provisions contained in the first paragraph of the previous article will not be applicable in cases of real estate reservation for works or deferred execution plans, qualified by formal law.

In this case, the following rules will apply:

a) The expropriator, after declaring that it is a deferred expropriation, will obtain an appraisal of the affected property with the intervention of the Provincial Appraisal Court and will notify the owner of the resulting amount.

b) If the appraisal value is accepted by the owner, any of the parties may request its judicial approval and, once approved, said value will be considered firm for both parties, and may be readjusted only in accordance with the procedure provided for in the subsection. d) of this article.

c) If the owner does not accept the appraisal value offered, the expropriator must judicially request the establishment of the value of the property, in accordance with the rules of articles 9 and 10.

d) The compensation will be readjusted as provided in article 9.

e) If during the processing of the case and before the final judgment is issued the expropriator will need to immediately dispose of the property, the provisions of articles 21, 22 and 23 will govern.

f) The affected properties may be freely transferred to third parties, provided that the purchaser is aware of the affectation and consents to the set value, if this is determined. For this purpose, once said value is signed, it will be communicated ex officio by the expropriating entity or, where appropriate, by the intervening court to the corresponding Real Estate Registry.

TITLE VII
On Retrocession

Article 34.- The retrocession action is appropriate when the expropriated property is given a destination other than that provided for in the expropriation law, or when it is not given any destination within a period of two years computed from the time the expropriation was perfected in the manner provided for in article 28, second paragraph.

Article 35.- It will be understood that there was no change of destination when the destination assigned to the property maintains connection, interdependence or correlation with that specifically provided for in the law.

Nor will it be considered that there has been a change of destination if a part of the expropriated property is assigned a complementary one or one that tends to integrate and facilitate that provided for by law.

Article 36.- Retrocession also applies in cases in which the asset has left the property of its owner through the settlement procedure.

Article 37.- The retrocession may be obtained through administrative management. The agreement will be authorized by the Executive Branch, in the central administration, or by the higher authority of the expropriating entity, as appropriate, not applying to it the limitations that general rules prescribe for the disposal of State assets.

Article 38 When the property has not been given any destination within the period referred to in Article 34, the expropriated party may reliably notify the expropriator to assign the property the destination that motivated the expropriation; If three months have elapsed since that notification without the expropriator satisfying the requirement, or without having started the respective works, which must be maintained in accordance with the approved work plans, the retrocession action will be expedited, without the need for another claim.

If the property has been given a different destination than that provided for in the expropriation law, a prior administrative claim must be made.

Article 39.- If the expropriated property had fulfilled the purpose that motivated the expropriation, and due to that circumstance it is detached from that purpose, the retrocession will be inadmissible.

Article 40.- The retrocession action exercised partially on a part of the expropriated property is admissible.

Article 41.- For the retrocession to be appropriate it is required:
a) That the expropriation that motivated it has been perfected, in the manner provided for in article 28.

b) That one of the cases provided for in article 34 occurs and, where appropriate, the provisions of article 38 are complied with.

c) That the plaintiff, within the period established by the sentence, reimburses to the expropriator what he received from the latter as price or compensation, with the corresponding update. If the property has decreased in value due to acts of the expropriator, this decrease will be deducted from those that must be reimbursed by the plaintiff. If the property has increased in value due to necessary or useful improvements introduced by the expropriator, the expropriated party must repay the value thereof. If the property has increased in value due to natural causes, the reimbursement of said value will not be required from the plaintiff. If the property, due to natural causes, has decreased in value, the amount of this decrease will not be deducted from the value to be reimbursed by the plaintiff.

Article 42.- When the expropriation has been carried out by agreement and a retrocession action should be promoted, the judge who was competent to hear the expropriation trial will be competent to hear it.

Article 43.- If the expropriation has been carried out through a trial, the retrocession claim must be filed before the same court that intervened in the expropriation trial.

Article 44.- The retrocession action corresponds only to the expropriated owner and his universal successors.

Article 45.- The retrocession may be sued against the expropriator, or against him and the third parties to whom the property has been transferred.

Article 46.- The procedure applicable in the retrocession trial, and the nature of the litigation, will be those established for the expropriation trial.

Article 47.- If the judgment gives rise to the action, the sum that must be returned to the plaintiff by retrocession and the period in which it must be done must be established; Likewise, the period in which the expropriator must return the expropriated property will be established.

Article 48.- The return of the property to the expropriated property must be free of all occupants, charges, encumbrances and easements that may have taken place after the dispossession.

Article 49.- The action for retrocession prescribes after three years, computed from when, having completed the expropriation in the manner provided for in article 28, second paragraph, the property was given a destination other than that which determined it, or from that, having not given the property any destination, the deadlines provided for in articles 34 and 38 have elapsed.

The procedures provided for in article 38 suspend the course of this prescription.

TITLE VIII

Of irregular expropriation

Article 50.- The action of irregular expropriation is appropriate when there is a law that declares an asset of public utility in any of the following cases:

a) That the state takes it without satisfying the requirements established by this law, and its price has not been paid.

b) That in fact, a movable or immovable thing is unavailable due to obvious difficulty or impediment to disposing of it under normal conditions.

c) That the State imposes an undue restriction or limitation on the right of the owner of a good or thing, which results in an injury to his or her property right.

Article 51.- The action of irregular expropriation does not apply when the State paralyzes or does not activate the procedures after having obtained judicial possession of the property.

Article 52.- Anyone who acts for irregular expropriation is exempt from the prior administrative claim.

Article 53.- In the irregular expropriation trial, the compensable values will be set in the same manner provided for the regular expropriation trial, contemplated in article 9 and following of this law.

Article 54.- The rules of judicial procedure established for regular expropriation also apply to irregular expropriation, as long as they are applicable.

TITLE IX
Temporary occupation

Article 55.- When for reasons of public utility the temporary use of a specific asset or thing, movable or immovable or of a specific universality of them, is necessary, temporary occupation may be resorted to.

Article 56.- Temporary occupation may respond to an urgent or sudden abnormal need or to a normal, non-imminent need.

Article 57.- Temporary occupation due to an abnormal cause may be ordered directly by the administrative authority, and will not give rise to any compensation, except for the repair of damage or deterioration caused to the property or the payment of damages due. for the subsequent use of the thing in purposes other than those that strictly determined its occupation.

Article 58.- No abnormal temporary occupation will last longer than the period strictly necessary to satisfy the respective need.

Article 59.- Temporary occupation for normal reasons, prior legal declaration of public utility, may be established by agreement; Otherwise, it must be ordered by judicial authority at the request of the Public Administration.

Article 60.- Normal temporary occupation entails compensation, with the current rules on expropriation being applicable to the subsidy. The compensation referred to in this article will include the value of the use and damages caused to the occupied property or thing as well as the value of the materials that had to be extracted necessarily and indispensably due to the occupation.

Article 61.- The occupied property must satisfy the purpose provided for by the law that declared its public utility.

Article 62.- No temporary occupation for normal reasons can last more than two years; Once this period has expired, the owner will reliably notify the return of the property. If thirty days have elapsed since said notification without the property having been returned, the owner may demand its expropriation, promoting an irregular expropriation action.

Article 63.- The judicial procedure established for the expropriation trial is applicable, as pertinent, to the normal temporary occupation trial.

Article 64.- Without consent of the owner, the temporary occupant of an asset or thing cannot alter the substance thereof nor extract or separate from it the elements that make it up, without prejudice to the case provided for in article 60, last part.

Article 65.- If the temporary occupation affects third parties, their rights will be asserted over the amount of compensation.

Article 66.- Judicial issues raised by the owner of the occupied property are exempt from prior administrative claim.

TITLE X
Complementary Provisions

Article 67.- Anyone who, by virtue of the title of owner, possessor, or by virtue of any other title, actually resists the execution of the studies or technical operations that by virtue of this law were ordered by the State, will become liable to a fine of One Pesos ($1), at the discretion of the judge, who will proceed to apply it, after a summary report of the fact without prejudice to hearing the accused and resolving accordingly. The fine will be demanded by executive means.

Article 68.- This Law will apply exclusively to cases that begin after its validity. However, in pending trials, the expropriator may propose the acquisition of the property by compromise, in the manner provided for in article 12.

Article 69.- Register, communicate, submit to the Official Gazette and complete, ARCHIVE.

LAW IN° 45 (Previously Law 1739) BACKGROUND TABLE Article of the Definitive Text Source

1/11 Original text12 first paragraph Original text

12 second paragraph Law 1744 art. 1 (by merger) 13 / 68 Original text

The fine has been updated to $1.

LAW NO. 45 (Previously Law 1739) TABLE OF EQUIVALENCES

Article number of the Definitive Text        Article number of the Reference Text (Law 1739) Observations

The numbering of the articles of the Definitive Text corresponds to the original numbering of the Law.

EXHIBIT 3

Case: 23-7370, 03/01/2024, DktEntry: 89.1, Page 58 of 290



# LEY N° 3018

UNDER: LEYES (HTTPS://BOLETINOFICIAL.JUJUY.GOB.AR/?CAT=13)

**LA H. LEGISLATURA DE LA PROVINCIA SANCIONA CON FUERZA DE**

**LEY N° 3018 ( MODIFICADA POR LEY N° 5607 (https://boletinoficial.jujuy.gob.ar/?p=94065))**

## DE LA EXPROPIACIÓN

## TÍTULO PRIMERO

## DE LA CALIFICACIÓN DE UTILIDAD PÚBLICA

**ARTICULO 1°.-** CONCEPTO DE UTILIDAD PÚBLICA. El concepto de utilidad pública es extensivo a todos los aspectos y exigencias del bien común; es decir, a todo lo necesario para crear las condiciones morales y materiales que hacen al desarrollo y perfeccionamiento de la persona humana.

Dicho concepto de utilidad pública concurre aunque el beneficio inmediato pertenezca a un solo particular y el mediato a la comunidad, siempre que éste sea cierto, no hipotético, ni remoto.

**ARTICULO 2°.-** ÓRGANO DE CALIFICACIÓN. La calificación de "utilidad pública" debe ser efectuada por el Poder Legislativo, sin que sea indispensable la enumeración individual de los bienes afectados. Sin embargo, la Ley debe limitar el objeto de la expropiación en términos que no permitan extender la acción expropiatoria a otros bienes que a aquellos que sean necesarios para lograr el bien común que la Legislatura procura gestionar y concretar.

## TITULO SEGUNDO

## DEL SUJETO

**ARTICULO 3°.-** ENTIDADES EXPROPIANTES. La expropiación puede ser efectuada por la Provincia, las Municipalidades y los concesionarios de obras o servicios públicos.

**ARTICULO 4°.-** EXPROPIACIÓN POR LA PROVINCIA. La expropiación puede ser efectuada por el Estado Provincial:

1) Cuando se trate de bienes necesarios para realizar o construir obras por la Provincia para satisfacer las necesidades o conveniencias de la comunidad provincial;

2) Cuando se trate de bienes necesarios para llevar a cabo obras que contemplen las necesidades o conveniencias de la Nación o de sus entidades autárquicas (se lleve a cabo la obra por la Provincia o por la Nación);

3) Cuando se trate de incorporar al dominio público del Estado Provincial bienes particulares para satisfacer necesidades o conveniencias o el bienestar de la comunidad provincial;

4) Cuando sea el medio indispensable para que bienes que se encuentren en el dominio de personas de existencia visible o jurídica, puedan ser adquiridos por la generalidad de la población, para satisfacer sus necesidades para llevar a cabo planes estaduales de mejoramiento social o económico o moral;

5) Cuando se trate de incorporar al dominio privado de la Provincia bienes indispensables o convenientes para el desenvolvimiento de sus funciones.

6) Cuando se trate de proveer, de cualquier forma o por cualquier medio, al bien común de la población o de sus integrantes, logrando así una mayor justicia distributiva.

**ARTICULO 5°.-** EXPROPIACIÓN POR LAS MUNICIPALIDADES. La expropiación podrá ser efectuada por la Municipalidades:

1) Cuando se trate de bienes necesarios para llevar a cabo las obras convenientes para el Municipio;

2) Cuando se trate de incorporar al dominio público municipal bienes particulares, para satisfacer necesidades, conveniencias o el bienestar de los habitantes del Municipio;

3) Cuando sea el medio indispensable para que los habitantes del Municipio puedan adquirir, para satisfacer sus necesidades, o como medio de llevar a cabo planes estaduales de mejoramiento social, bienes que se encuentren en el dominio de personas de existencia visible o jurídica;

4) Cuando se trata de incorporar al dominio privado de las Municipalidades bienes indispensables o convenientes para el desenvolvimiento de sus funciones;

5) Cuando se trate de promover, de cualquier forma, el bien común de los habitantes del Municipio tendiendo a realizar la justicia distributiva.

**ARTICULO 6°.-** CALIFICACIÓN PREVIA DEL PODER LEGISLATIVO. Las Municipalidades no podrán expropiar sin la previa calificación de utilidad pública hecha por el Poder Legislativo. El Órgano Legislador podrá autorizar la expropiación de bienes determinados o la de bienes enumerados genéricamente, conforme lo dispone el Art. 2° de la presente Ley. Sólo en el caso que la enumeración fuere genérica, el Departamento Deliberativo de la Municipalidad declarará en cada caso y dentro de la autorización legislativa, los bienes afectados a expropiación.

**ARTICULO 7°.-** EXPROPIACIÓN POR CONCESIONARIOS DE SERVICIOS PÚBLICOS. La expropiación podrá ser efectuada por los concesionarios de obras o servicios públicos aunque se trate de bienes que sean necesarios o convenientes para la ejecución de la obra o para realizar con eficiencia el servicio público concedido.

Los concesionarios de obras o servicios públicos no podrán expropiar sin la previa calificación de "utilidad pública" hacha por el Poder Legislativo y sin la expresa facultad de expropiar acordada especialmente por el mismo Poder. El Poder Legislativo podrá autorizar la expropiación de bienes determinados o la bienes enumerados genéricamente, conforme lo dispone el art. 2° de la presente Ley. Si la enumeración fuere genérica, el Poder Ejecutivo (o el Departamento Ejecutivo si se tratare de una concesión municipal), declarará, en cada caso, y dentro de la autorización legislativa, los bienes afectados a expropiación.

**ARTICULO 8°.-** SUSTITUCIÓN DE DERECHOS Y OBLIGACIONES. Los concesionarios de obras o servicios públicos para cuya ejecución se sanciona la expropiación, se sustituyen a la autoridad expropiante en los derechos y obligaciones que crea la presente Ley, y que no sean atinentes a la calidad del poder político. Conserva sin embargo el Estado o las municipalidades en su caso, frente a los expropiados, su carácter de garantía, con beneficio de excusación, contra los abusos y la insolvencia de los concesionarios.

**TÍTULO TERCERO**

**OBJETO DE LA EXPROPIACIÓN**

**ARTICULO 9°.-** BIENES OBJETO DE LA EXPROPIACIÓN. Pueden ser objeto de la expropiación todos los bienes convenientes o necesarios para la satisfacción de la utilidad, pública, cualquiera sea su naturaleza jurídica; estén o no en el comercio, sean cosas o no.

Pueden ser, también, objeto de la expropiación los establecimientos industriales, mineros o comerciales y, en general, las universidades de derecho o de hecho.

**ARTICULO 10°.-** EXPROPIACIÓN DE BIENES AFECTADOS A UN SERVICIO PÚBLICO. La Provincia puede expropiar los bienes afectados a un servicio público concedido por ella o por las Municipalidades. Las Municipalidades pueden expropiar los bienes afectados a un servicio público concedidos por las mismas.

En todas las hipótesis, la expropiación puede comprender el todo o sólo parte de los bienes afectados al servicio público, teniendo siempre en cuenta la eficaz presentación de él. Si por causa de la expropiación de los bienes, el concesionario no pudiere prestar de conformidad a la concesión al servicio al cual se obligó, podrá pedir la

19/2/24, 9:36

Case: 23-7370, 03/01/2024, DktEntry: 89.1, Page 61 of 290
LEY N° 3018 – Dirección Provincial de Boletín Oficial e Imprenta del Estado

expropiación de éste, o la del total de los bienes afectados a él, o la indemnización del perjuicio que acredite haber sufrido.

**ARTICULO 11°-** LIMITACIÓN DEL OBJETIVO DE LA EXPROPIACIÓN. La expropiación podrá comprender no solamente los bienes necesarios sino también aquellos cuya ocupación convenga al fin principal de la misma.

**ARTICULO 12°-** EXPROPIACIÓN DE BIENES ADYACENTES A UNA OBRA PÚBLICA. La expropiación puede disponerse y realizarse sobre adyacentes o no a una obra pública, vinculada o no a ésta con el objeto de llevar a cabo planes de bien común, establecido por la ley.

**ARTICULO 13°-** PEDIDO DE EXPROPIACIÓN TOTAL. Si se tratase de la expropiación parcial de algún inmueble y la parte que quedase sin expropiar fuera inadecuada para uso o explotación racional, el expropiado podrá exigir la expropiación de la totalidad del inmueble.

En los terrenos urbanos se considerarán sobrantes inadecuados los que, por causa de la expropiación quedarán con frente, fondo o superficie inferior a lo autorizado para edificar por las ordenanzas o usos locales respectivos.

En los inmuebles rurales, el Poder Ejecutivo o el órgano competente al efecto, determinará en cada caso las superficies inadecuadas; es decir, las que no constituyan una unidad económica.

**ARTICULO 14°-** PARTE INTEGRANTE DEL BIEN EXPROPIADO. Considéranse parte integrante del bien expropiado sus accesorios físicos. Si la accesión fuese moral es facultativo del sujeto expropiante incluir los accesorios de la expropiación, pero el expropiado podrá incluirlos siempre que su retiro sea posible, sin desmedro material del bien principal y que tales accesorios no hayan sido considerados por el Poder Legislativo como objeto primordial –exclusivo o concurrente- de la expropiación.

**ARTICULO 15°-** EXPROPIACIÓN DEL SUBSUELO. Es susceptible de expropiación el subsuelo con independencia de la propiedad superficial, sin desmedro o daño para las construcciones existentes en la superficie.

**ARTICULO 16°-** EXPROPIACIÓN TEMPORARIA. Puede expropiarse el uso temporario de un bien.

**TITULO CUARTO**

**LA INDEMNIZACIÓN**

**ARTICULO 17°-** CONCEPTO DE INDEMNIZACIÓN EXPROPIATORIA. La indemnización sólo comprenderá el valor objetivo del bien y los daños que sean una consecuencia directa e inmediata a la expropiación. No se tomarán en cuenta circunstancias de carácter personal, valores afectivos, ni ganancias hipotéticas. No se pagará lucro cesante.

Tampoco se considerará el valor panorámico o el derivado de hechos de carácter histórico.

Asimismo el valor de los bienes debe estimarse por el que hubieren tenido si la obra no hubiese sido ejecutada ni aún autorizada.

**ARTICULO 18°-** INDEMNIZACIÓN POR EXPROPIACIÓN DE EMPRESAS O ESTABLECIMIENTOS, FONDOS DE COMERCIO O BIENES DE CAPITAL. La indemnización por la expropiación de empresas o establecimientos mineros, industriales o comerciales, o de fondos de comercio o bienes de capital, será el valor de origen o de revalúo de los bienes menos las sumas que se hubieren amortizado durante el lapso cumplido desde la iniciación de las actividades o desde efectuado el revalúo según las leyes establecidas sobre la materia, y los excedentes sobre una ganancia razonable que serán considerados también como reintegración del capital invertido.

**ARTICULO 19°-** CONTENIDO DE LA INDEMNIZACIÓN. La indemnización debe fijarse en dinero, a no ser que expropiante y expropiado convengan en sustituir el total o parte de ella por la realización de trabajo, suministro de

19/2/24, 9:36

Case: 23-7370, 03/01/2024, DktEntry: 89.1, Page 62 of 290
LEY N° 3018 – Dirección Provincial de Boletín Oficial e Imprenta del Estado

material u otra contraprestación.

**ARTICULO 20°.-** MEJORAS, CONTRATOS Y OBRAS. No se indemnizarán las mejoras realizadas en el bien con posterioridad al acto que lo declaró afectado a expropiación, salvo aquellas que hubieren sido necesarias.

Igualmente, no se tendrán en cuenta a los efectos de la indemnización, los contratos y las obras efectuadas por el propietario con posterioridad al acto que declaró afectado el bien a expropiación.

**ARTICULO 21°.-** EXPROPIACIÓN PARCIAL. En todos los casos de expropiación parcial, se deducirá de la indemnización el mayor valor adquirido por el remanente o sobrante del bien, como consecuencia de la obra o del servicio público.
Tal deducción se hará constar expresamente en la sentencia.

**ARTICULO 22°.-** ADQUISICIÓN EN REMATE PÚBLICO. Una vez autorizada legalmente la expropiación, el expropiante podrá adquirir el bien en remate público. En tal caso, el que ofertare por parte del expropiante, de haber realizado la mejor oferta, hará dejar constancia en el acta respectiva que abonará a seña en el plazo de treinta días y el saldo en el de ciento ochenta.

## TITULO QUINTO

## NORMAS DE PROCEDIMIENTO

## CAPITULO PRIMERO

## PROCEDIMIENTO ADMINISTRATIVO

**ARTICULO 23°.-** NOTIFICACIÓN DE LA AFECTACIÓN DE EXPROPIACIÓN.- Declarada la utilidad pública, el Poder Ejecutivo (o el Departamento Ejecutivo Municipal) hará saber al propietario del bien comprendido en la expropiación que éste será expropiado.

La notificación deberá contener:

1. a) Transcripción de la parte pertinente de la Ley u ordenanza municipal y del decreto dictado en su consecuencia;
2. b) Invitación a que comparezca dentro del plazo de cinco días hábiles y que declare, bajo juramento, el monto en dinero que considere suficiente a los efectos de la indemnización;
3. c) Invitación a constituir su domicilio legal.

**ARTICULO 24°.-** FORMA DE LA NOTIFICACIÓN. La notificación podrá realizarse por cédula, o telegrama colacionado.

Si se ignora el domicilio del expropiado o éste fuere desconocido, se lo citará por edictos que se publicarán en el Boletín Oficial y en un diario de circulación en toda la Provincia durante cinco días.

**ARTICULO 25°.-** INCOMPARECENCIA DEL EXPROPIADO. En caso que el expropiado no compareciere o no efectuare la estimación del precio dentro del plazo de cinco días de notificado o desde la última publicación, se lo invitará para que, dentro de cinco días acepte o rechace la indemnización que le ofrezca el Poder Ejecutivo o el Departamento Ejecutivo Municipal, en su caso.

A tal efecto, el Poder Ejecutivo o el Departamento Ejecutivo Municipal estimará al quantum de la indemnización previo dictamen técnico del Tribunal de Tasación, el que tendrá en cuenta lo dispuesto por la presente ley. Ese quantum indemnizatorio no podrá exceder el valor máximo fijado por el mencionado Tribunal.

El expropiado podrá efectuar una contra-oferta. La misma podrá ser aceptada o rechazada por el expropiante dentro de un plazo de 30 días.

**ARTICULO 26°.-** ACEPTACIÓN DE LA INDEMNIZACIÓN, CONRATACIÓN. Si el expropiante considerare conveniente la oferta o la contra–oferta del expropiado o el propietario aceptase la indemnización ofrecida por el expropiante, se efectuará la transmisión de dominio mediante la tradición, escrituración y registro, abonándose la indemnización. El propietario transferirá el dominio libre de todo gravamen, embargo y ocupación.

**ARTICULO 27°.-** SILENCIO O RECHAZO DE LA INDEMNIZACIÓN. En caso de

silencio, incomparecencia o rechazo del monto indemnizatorio ofrecido, podrá procederse a iniciar las acciones judiciales correspondientes.

**ARTICULO 28°.-** EFECTOS IMPOSITIVOS. En caso que compareciere el expropiado y en el escrito respectivo declarare bajo juramento el importe indemnizatorio que considerare suficiente conforme se establece en el artículo 20, dicho importe tendrá efectos a los fines impositivos. Igual efecto tendrá la contra-oferta a que se refiere el artículo 24 infine, siempre que ella fuere mayor que la ofrecida. En el caso que la contra-oferta fuere menor, el Tribunal de Tasaciones, podrá rever, siguiendo el procedimiento administrativo, el valor determinado para los bienes fijados el que estimare más conveniente en cada caso o sector, pudiendo dejarse a salvo que se acepta el menor valor sin que éste afecte el valor estimado para bienes similares o para el resto del bien.

**ARTICULO 29°.-** ACTUACIÓN Y PROCEDIMIENTO. Rigen supletoriamente en el procedimiento administrativo, las normas de la ley provincial sobre Procedimiento Administrativo y su decreto reglamentario.

Toda la actuación del expropiado, se hará en papel simple, libre de cargas fiscales.

**ARTICULO 30°.-** COSTAS. Correspondiendo las costas al expropiante, serán por cuenta de éste todos los gastos que se originen para determinar la indemnización.

**ARTICULO 31°.-** EXPROPIACIÓN POR LAS ENTIDADES AUTÁRQUICAS. En los casos en que se autorice a efectuar la expropiación a entidades autárquicas, éstas procederán como se ha establecido para el Poder Ejecutivo.

**ARTICULO 32°.-** EXPROPIACIÓN POR CONCESIONARIOS DE OBRAS O SERVICIOS PÚBLICOS. Si la expropiación deberá ser realizada por concesionarios de obras o servicios públicos, deberá también efectuarse la adquisición mediante el procedimiento extrajudicial, conforme a las normas precedentemente establecidas, con más la conformidad, respecto a la indemnización, de la autoridad a cuyo cargo se encuentre el contralor de la concesión.

**ARTICULO 33°.-** OBLIGATORIEDAD DEL PROCEDIMIENTO ADMINISTRATIVO. En todos los casos de expropiación, es obligatorio observar el procedimiento administrativo previo a cualquier tipo de juicio de expropiación, salvo el caso de expropiación anormal.

**ARTICULO 34°.-** El expropiado cuando compareciere con la primera presentación al procedimiento administrativo, de acuerdo a lo marcado por la presente ley, deberá denunciar el nombre, apellido y domicilio de quienes pudieren tener derecho a ser indemnizados por ser titulares de un derecho real sobre las cosas o un derecho personal constituido a su favor por el propietario con relación al bien.

**CAPÍTULO SEGUNDO**

**PROCEDIMIENTO JUDICIAL**

**ARTICULO 35°.-** CASOS EN QUE CORRESPONDE SEGUIR EL PROCEDIMIENTO JUDICIAL. Corresponderá seguir el procedimiento judicial cuando:

1) Las partes no hubieren llegado a un acuerdo en las gestiones administrativas;

19/2/24, 9:36

Case: 23-7370, 03/01/2024, DktEntry: 89.1, Page 64 of 290
LEY N° 3018 – Dirección Provincial de Boletín Oficial e Imprenta del Estado

2) El propietario no compareciere a la citación para dirección del caso del procedimiento administrativo o rechazare o no contestare el ofrecimiento realizado por el expropiante;

3) Se ignore el nombre del titular de dominio del bien a expropiarse;

4) El propietario fuere incapaz;

5) Se diere el caso de excepción previsto en el Art. 32;

6) El propietario no otorgare la escritura traslativa de dominio ni hiciere tradición del bien expropiado dentro del plazo que fije el Poder Ejecutivo o del Departamento Ejecutivo Municipal, que no será menor de quince días de corrido ni mayor de treinta días contados de igual forma.


**ARTICULO 36°-** COMPETENCIA Y PROCEDIMIENTO EN LOS JUICIOS DE EXPROPIACIÓN. En los juicios de expropiación conocerán y resolverán los jueces en lo Civil y Comercial de Primera Instancia de la Capital en turno. Sus resoluciones serán recurribles por ante el Superior Tribunal de Justicia.

Todos los juicios de expropiación se tramitarán, sin perjuicio de las disposiciones de la presente ley, conforme al procedimiento fijado por el Código Procesal Civil para los juicios ordinarios escritos(TEXTO ORIGINAL)

**Articulo 36.–** Competencia y Procedimiento en lo Juicios de Expropiación: En los juicios de expropiación conocerá y resolverá el Tribunal en lo Contencioso Administrativo de la Provincia de Jujuy. Todos los juicios de expropiación se tramitarán sin perjuicios de las disposiciones de la presente Ley, conforme al procedimiento fijado por el Código Procesal Civil para los juicios ordinarios escritos." ( TEXTO VIGENTE MODIFICADO POR LEY N° 5607)

**ARTICULO 37°-** DEMANDA DE EXPROPIACIÓN. La demanda de expropiación además de los requisitos establecidos por el Código Procesal Civil, contendrá los siguientes datos:

1) Designación del bien cuya expropiación se persigue con determinación precisa de ubicación, medidas y demás elementos individualizantes;

2) Indicación de la Ley que ha declarado el bien sometido a expropiación por utilidad pública, con transcripción de la parte pertinente;

3) Copia autenticada de los actos del Poder Ejecutivo o Departamento Ejecutivo, para el caso que el bien o los bienes afectados a la expropiación, hayan sido enumerados en forma genérica por la ley de afectación, de tal forma que los objetos expropiados, queden debidamente individualizados;

4) Certificación de la Dirección General de Rentas en la cual se establezca la valuación fiscal correspondiente al bien afectado;

5) Expresión de la suma que ofrece el expropiante en concepto total de expropiación;

6) Copia del Dictamen del Tribunal de Tasación.


**ARTICULO 38°-** CONTESTACIÓN DE LA DEMANDA. Sin perjuicio de las exigencias establecidas en el Código Procesal Civil para la contestación de la demanda, ésta deberá contener los requisitos que se enumeran a continuación:

1) Conformidad o disconformidad con la ubicación, medidas y demás elementos de individualización que la actora atribuye al bien; expresado en caso de disconformidad las que atribuye al demandado;

2) Conformidad u oposición del demandado a la expropiación, exponiendo los fundamentos de su oposición en caso de invocarla;

3) Expresión concreta y exacta de la suma que pretende el sujeto expropiado en concepto total de indemnización;

4) Presentación de los títulos de propiedad, o en caso de no serle posible, requerirá del Tribunal, las medidas pertinentes para acreditar su dominio y deberá acompañar todos sus documentos que estime convenientes para sustentar sus pretensiones.

19/2/24, 9:36

Case: 23-7370, 03/01/2024, DktEntry: 89.1, Page 65 of 290
LEY N° 3018 – Dirección Provincial de Boletín Oficial e Imprenta del Estado

5) Denuncia del nombre, apellido y domicilio de quienes pudieren tener derecho a ser indemnizados por ser titulares de un derecho real sobre las cosas o un derecho personal constituido a su favor por el propietario, con relación al bien.

La expresión de la suma que pretende el expropiado, tendrá el suficiente valor como para realizar el revalúo fiscal del resto del bien expropiado, a los fines impositivos correspondientes. A tal efecto, Fiscalía de Estado remitirá a la repartición respectiva copia fiel del responde.

**ARTICULO 39°.-** INCUMPLIMIENTO DE LOS REQUISITOS EXIGIDOS PARA EL RESPONDE. La falta de cumplimiento con los requisitos exigidos para el responde, hará procedente la excepción de defecto legal, imponiéndose las costas al expropiado.

**ARTICULO 40°.-** PRUEBAS EN EXPROPIACIÓN DE INMUEBLES. Cuando se tratare de bienes inmuebles, no podrá pedirse ninguna prueba pericial. Para dictaminar sobre el valor real y objetivo del bien expropiado, el Tribunal requerirá al Tribunal Provincial de Tasaciones el pronunciamiento pertinente, a cuyo efecto remitirá los autos con los puntos ofrecidos por las partes sobre el cual debe versar el dictamen.

Previo al envío de los autos, el Tribunal intimará al expropiado para que dentro del término de cinco días comparezca por sí o por medio de representantes a integrar el Tribunal de Tasaciones, bajo apercibimiento de prescindir de su intervención.

El Tribunal de Tasaciones deberá expedirse en el plazo máximo de ciento veinte días, pudiendo por razones justificadas prorrogar el plazo hasta por sesenta días más.

El dictamen del Tribunal de Tasaciones será dentro del trámite del juicio insustituible e imprescindible, debiendo ser recabado incluso de oficio.

**ARTICULO 41°.-** MAYOR VALOR. En la demanda o al alegar de bien probado, el expropiante deberá pedir, en su caso, la deducción del mayor valor adquirido por el remanente del bien, como surge del art. 21. Si se pidiere en el alegato, de la solicitud se dará vista al expropiado por el plazo de tres días.

**ARTICULO 42°.-** SENTENCIA Y PAGO DE LA EXPROPIACIÓN. La sentencia será dictada en el plazo de sesenta días de haber quedado firme el allanamiento de autos, salvo que se dispusiere medidas para mejor proveer.

En la sentencia no podrá ordenarse una indemnización que sea superior a la reclamada.

A los efectos del pago se le concederá al expropiante un plazo no menor de sesenta días, a contar desde el momento en que quede firme la aprobación de la planilla de liquidación.

Al hacer efectivo el pago, el expropiante podrá deducir los importes que el expropiado adeuda a la Provincia o Municipalidades en concepto de impuestos, tasas, contribuciones, aportes y todo otro tipo de deuda líquida y exigible a favor del Estado Provincial o sus Municipalidades.

**ARTICULO 43°.-** PERENCIÓN DE LA INSTANCIA. No habrá perención o caducidad de la instancia, si el expropiante hubiere tomado posesión del objeto expropiado.

**ARTICULO 44°.-** CONDENA EN LAS COSTAS. Las costas del juicio serán a cargo del expropiante cuando la indemnización fijada por la sentencia definitiva sea superior a la cantidad ofrecida en más del cincuenta por ciento de la diferencia entre ésta y la reclamada.

Las costas serán a cargo del expropiado cuando la indemnización se fije en igual o inferior cantidad que la ofrecida por el expropiante o cuando haya una evidente y notoria plus petitio por parte del expropiado.

Se entenderá que existe plus petitio cuando la indemnización fijada sea inferior a las tres cuartas partes de la cantidad reclamada.

19/2/24, 9:36

Case: 23-7370, 03/01/2024, DktEntry: 89.1, Page 66 of 290
LEY N° 3018 – Dirección Provincial de Boletín Oficial e Imprenta del Estado

Las costas serán por su orden cuando la indemnización fijada no exceda del margen establecido en el primer apartado del presente artículo, o cuando siendo superior el expropiado no hubiese contestado la demanda, o si contestada no hubiese fijado el monto reclamado en la primera presentación.

Para la estimación de los honorarios en el juicio de expropiación, el juez regulará los mismos tomando como monto cuestionado la diferencia entre la cantidad ofrecida y la indemnización establecida, sin tener en cuenta los intereses devengados durante la secuela del juicio.

**ARTICULO 45°.-** DESISTIMIENTO. El expropiante podrá desistir del juicio de expropiación mientras no haya recaído sentencia definitiva en el mismo satisfaciendo las costas, que no podrán exceder del veinte por ciento de las que corresponderían a un juicio terminado, tomando como base la cantidad consignada.

Será requisito indispensable para el desistimiento que haya desaparecido la causa de utilidad pública origen de la expropiación, debiendo calificarse esta nueva situación por medio de una ley especial.

**ARTICULO 46°.-** EFECTOS DE LA POSESIÓN JURÍDICA SOBRE ARRENDAMIENTOS. Otorgada la posesión judicial del bien quedarán resueltos los arrendamientos acordándose a los ocupantes un plazo de diez días para su desalojo; si se tratare de casa habitación sus moradores tendrán veinte días para desalojarla. En ambos supuestos, el expropiante podrá prorrogar tales plazos, cuando a su juicio existan justas razones que así lo aconsejen.

**ARTICULO 47°.-** INSCRIPCIÓN DE LA DECLARACIÓN EXPROPIATORIA. La sentencia que declare expropiado el bien, completada con el pago de las indemnizaciones dispuestas, constituirán el título traslativo del dominio a favor del expropiante. El actuario expedirá de éste testimonio de la parte dispositiva de la sentencia y una certificación en que conste la ubicación, medidas, linderos y demás detalles del bien expropiado y el pago o consignación de las indemnizaciones fijadas. Ese instrumento será suficiente para inscribir el dominio en el registro inmobiliario si se tratare de un bien inmueble.

## CAPÍTULO TERCERO

## EXPROPIACIÓN DE URGENCIA

**ARTICULO 48°.-** DISPOSICIÓN PRELIMINAR. La promoción de la expropiación de urgencia, de ningún modo impedirá la prosecución y el acabado cumplimiento del procedimiento administrativo, conforme se establece en el Capítulo Primero del presente Título.

**ARTÍCULO 49°.-** DEMANDA. El expropiante tendrá derecho, en caso de urgencia, a que se le dé inmediatamente posesión del bien expropiado, siempre que consigne judicialmente el importe de la valuación fiscal del inmueble o el que establezca el Tribunal de Tasaciones si resultare posible. Si se tratare de bienes muebles o inmuebles, que no tengan valuación fiscal, se consignará la suma que el Tribunal de Tasación fije provisoriamente.-

**ARTICULO 50°.-** POSESIÓN JUDICIAL. Hecha la consignación el Juez dará posesión al expropiante, acordándose a los ocupantes plazo de diez días para efectuar el desalojo, plazo éste que podrá ser ampliado existiendo justa y probada causa.
Notificado el propietario de la consignación, declarará el juez transferida la propiedad, sirviendo el auto y sus antecedentes de suficiente título traslativo; el que deberá ser inscripto en el Registro Inmobiliario en su caso.

19/2/24, 9:36

Case: 23-7370, 03/01/2024, DktEntry: 89.1, Page 67 of 290
LEY N° 3018 – Dirección Provincial de Boletín Oficial e Imprenta del Estado

**ARTICULO 51°.-** RETIRO DE LO CONSIGNADO. El expropiado podrá retirar la suma depositada, previa justificación de su dominio y que el bien no reconoce hipoteca u otro derecho real, que no está embargado y que no pesan sobre él restricciones a la libre disposición de sus bienes.

**ARTICULO 52°.-** CONFORMIDAD DEL PROPIETARIO, CONTRATACIÓN. El expropiante podrá tomar la posesión y efectuar la anotación correspondiente en el Registro Inmobiliario, sin consignar la suma que ofrezca si el propietario manifiesta su conformidad.

Si expropiante y expropiado llegaren al acuerdo a que se refiere el artículo 26°, se pondrá el convenio en conocimiento del juez.

**ARTICULO 53°.-** PROCEDIMIENTO. Se aplicarán para el procedimiento de la expropiación de urgencia las normas del capítulo anterior, y las del Código Procesal Civil.

**CAPÍTULO CUARTO**

**EXPROPIACIÓN ANORMAL**

**ARTICULO 54°.-** CASOS EN LOS CUALES PROCEDE. En caso de fuerza mayor, o cuando se tratare de una zona afectada por incendio, terremoto, inundación, epidemia, medidas de carácter militar por causa de guerra o cualquier otra circunstancia igualmente grave, el Poder Ejecutivo podrá prescindir de todo trámite legal para tomar la propiedad particular, mueble o inmueble haciéndose cargo de la responsabilidad emergente de sus actos.

**ARTICULO 55°.-** FORMA DE ACTUAR. Siempre que fuere posible el Poder Ejecutivo al ocupar el bien, labrará acta circunstanciada con intervención del propietario si estuviere, consignando todos los detalles de alguna relevancia a los efectos de la ulterior indemnización. El acta deberá ser firmada por la autoridad interviniente, el propietario y si éste no se encontrare presente o se negare a hacerlo, firmarán dos testigos.

**ARTICULO 56°.-** INICIACIÓN DEL JUICIO DE EXPROPIACIÓN. En los casos de expropiación anormal, el Poder Ejecutivo gestionará ante la Honorable Legislatura la sanción de una ley declarando de utilidad pública de lo expropiado, y de inmediato iniciará el procedimiento administrativo o el juicio de expropiación correspondiente. Todo este trámite, deberá ser cumplido dentro del plazo de seis meses como máximo, pudiendo ser prorrogado por tres meses más, por decreto del Poder Ejecutivo, invocando causas suficientemente justificadas.

**ARTICULO 57°.-** APLICACIÓN DE LAS NORMAS DE PROCEDIMIENTO. Son aplicables a la expropiación anormal, en cuanto resultaren pertinente, las disposiciones de los capítulos primero, segundo y tercero de la presente ley.

**TITULO SEXTO**

**LA EXPROPIACIÓN INVERSA**

**ARTICULO 58°.-** CASOS EN QUE PROCEDE. El propietario de un bien puede promover el juicio de expropiación en los siguientes casos:

1) Cuando calificada la utilidad pública del bien, o comprendido éste dentro de una declaración genérica de utilidad pública, el expropiante haya tomado posesión sin consentimiento expreso del propietario;

2) Cuando la posesión haya sido tomada con consentimiento del propietario y el juicio de expropiación no hubiere sido promovido en el plazo fijado de común acuerdo, o dentro de los seis meses siguientes a la toma de posesión, a falta de plazo convenido;

3) Cuando el expropiante haya tomado posesión inmediata del bien en los casos de expropiación de urgencia y anormal y sin llegar a un acuerdo en el procedimiento administrativo no haya iniciado juicio de expropiación dentro del plazo de seis meses.

**ARTICULO 59°.-** PRESCRIPCIÓN DE LA PRETENCIÓN. La pretensión expropietaria inversa se prescribe a los diez años desde el momento de la toma de posesión del bien registrable.

**ARTICULO 60°.-** PROCEDIMIENTO. El proceso de expropiación inversa se tramitará conforme a las normas procedimentales fijadas por la presente y por las del Código Procesal Civil sobre el juicio ordinario escrito.

## TITULO SEPTIMO

## ABANDONO DE LA EXPROPIACIÓN

**ARTICULO 61°.-** CASOS QUE DETERMINAN EL ABANDONO DE LA EXPROPIACIÓN. Se considerará abandonada la expropiación –salvo disposición expresa de ley especial-, si el expropiante no continúa el procedimiento administrativo o no promueve el juicio dentro de los dos años de sancionada la ley que lo autorice, cuando se trata de llevarla a cabo sobre bienes individualmente determinados; de diez años, cuando se trata de bienes comprendidos en una enumeración genérica cuya adquisición por el expropiante pueda postergarse hasta que el propietario modifique o intente modificar las condiciones físicas del bien.

No regirá la disposición precedente en los casos en que las leyes orgánicas de las municipalidades autoricen a éstas a expropiar la porción de los inmuebles afectados a rectificaciones o ensanches de calles y ochavas en virtud de ordenanzas de los departamentos deliberativos.

**ARTICULO 62°.-** CASOS DE EXPROPIACIÓN PARA OTROS. En los casos en que la expropiación sea el medio indispensable para que bienes que se encuentren en el dominio de personas de existencia visible o jurídica puedan ser adquiridos por la generalidad de la población para satisfacer sus necesidades, la ley que la autorice establecerá el lapso dentro del cual habrá de regir; y si no lo estableciere, se considerará caducada la autorización a los dos años de promulgada la ley.

**ARTICULO 63°.-** INTERRUPCIÓN DEL PLAZO. La iniciación del procedimiento administrativo o la interposición de la demanda de expropiación, interrumpe el plazo del abandono.

## TITULO OCTAVO

## ACCIÓN DE RETROCESIÓN

**ARTICULO 64°.-** CASOS EN QUE PROCEDE. El propietario expropiado o sus sucesores a título universal, pueden, previa la interpelación a que se refiere el artículo 65°, retroceder el bien en los casos siguientes:

1) Cuando el expropiante dé al bien un destino distinto al establecido para efectuar la expropiación; salvo que el cambio de destino sea dispuesto por ley y la sustitución tenga por objeto lograr el bien común;

2) Cuando después de dos años de perfeccionada la expropiación, o vencido el plazo que fije la ley para la realización de la obra, no se hubiere dado al bien el destino que motivó aquella.

19/2/24, 9:36

Case: 23-7370, 03/01/2024, DktEntry: 89.1, Page 69 of 290
LEY N° 3018 – Dirección Provincial de Boletín Oficial e Imprenta del Estado

**ARTICULO 65°.-** INTERPELACIÓN JUDICIAL PREVIA. La interpelación judicial previa se hará bajo apercibimiento de promover la acción de retrocesión si dentro del plazo de dos años, a contar desde la notificación, no se diere al bien el destino previsto.

**ARTICULO 66°.-** PRESCRIPCIÓN DE LA PRETENSIÓN RETROCESORIA. La pretensión retrocesoria prescribe a los diez años, a contar desde la toma de posesión por el expropiante, sin excepción.

**ARTICULO 67°.-** OBLIGACIÓN DEL EXPROPIADO. En la sentencia que haga lugar a la demanda de retrocesión, se exigirá el previo pago del valor actualizado del bien a devolver por el expropiante. Dicho valor será determinado por el dictamen del Tribunal de Tasaciones.

El pago del valor actualizado del bien expropiado debe efectuarse dentro de los treinta días de reconocido el derecho de retrocesión, y este derecho caducará definitivamente si dentro del plazo mencionado no se cumpliese con la obligación de pagar el valor del bien expropiado.

**ARTICULO 68°.-** NORMAS DE PROCEDIMIENTO. Para el trámite de la pretensión de retroceso se observarán las normas de la presente ley y las del Código Procesal Civil en lo que respecta al juicio ordinario escrito.

**TITULO NOVENO**

**TRIBUNAL DE TASACIÓN**

**ARTICULO 69°.-** CREACIÓN Y COMPOSICIÓN. Créase el Tribunal de Tasación de la Provincia como organismo permanente, el cual estará integrado por los siguientes funcionarios técnicos: el Director General de Inmuebles; el Director General de Arquitectura, el Director General de Rentas y el Subsecretario de Obras Públicas. Cada uno de estos funcionarios podrá designar su reemplazante para cumplir las funciones.

El Tribunal de Tasación se compondrá con un representante del expropiado, cuando se tratare de un procedimiento de expropiación por vía judicial. A tales fines el juez invitará al expropiado para que en un plazo de cinco días nombre su representante.

**ARTICULO 70°.-** FUNCIONES DEL TRIBUNAL DE TASACIÓN. Son funciones del Tribunal de Tasación:

1) Actuar en el procedimiento administrativo de expropiación y en el judicial, como organismo técnico, dictaminando respecto al monto de las indemnizaciones;

2) Practicar tasaciones especiales en toda clase de juicios a propuesta de las partes;

3) Todas las demás que se le fijen por las leyes.

**ARTICULO 71°.-** CARÁCTER DE LAS FUNCIONES DEL TRIBUNAL DE TASACIÓN. Las funciones del Tribunal de Tasaciones tendrán el carácter de carga pública gratuita en el caso del artículo 70° inc. 1).

**ARTICULO 72°.-** EMPLEADOS DEL TRIBUNAL DE TASACIÓN. El Tribunal de Tasación podrá tener empleados designados por el Poder Ejecutivo.

Serán destacados por la actuación y conocimientos técnicos en la materia.

**ARTICULO 73°.-** FACULTADES DEL TRIBUNAL DE TASACIÓN. Para el cumplimiento de sus funciones el Tribunal de Tasación podrá requerir a las dependencias de la Administración Provincial, a las Entidades Autárquicas y a las Municipalidades, como así también a las entidades vinculadas a los problemas técnicos sometidos a su consideración, todos los datos y elementos que le sean necesarios.

**ARTICULO 74°.-** DE LOS DICTÁMENES DEL TRIBUNAL DE TASACIÓN. El Tribunal de Tasación se expedirá por simple mayoría, debiendo sus dictámenes y la disidencia, en su caso, ser suficientemente fundados e ilustrativos.

LEY N° 3018 – Dirección Provincial de Boletín Oficial e Imprenta del Estado

**ARTICULO 75°.-** DE SU FUNCIONAMIENTO INTERNO. El Tribunal de Tasación elegirá sus autoridades y dictará su reglamento interno, a los fines de un mejor cumplimiento de las funciones que por ésta ley se le atribuyen.

**ARTICULO 76°.-** RECUSACIÓN Y EXCUSACIONES. Los integrantes del Tribunal de Tasación podrán ser recusados y se podrán excusar, en los casos y circunstancias establecidas por el Código Procesal Civil, salvo los casos de recusación sin expresión de causa. En tal caso, el funcionario será reemplazado por un nombrado ad-honorem por el Poder Ejecutivo de la Provincia.

## TÍTULO DÉCIMO

## DISPOSICIONES GENERALES

**ARTICULO 77°.-** SITUACIÓN DE LOS TERCEROS. Ninguna actuación de terceros podrá impedir la expropiación ni sus efectos. Los derechos del reclamante se considerarán transferidos de la cosa a su precio o a la indemnización, quedando aquella libre de toda carga.

**ARTICULO 78°.-** BIENES GRAVADOS. Cuando los bienes expropiados reconozcan algún gravamen, el monto de la indemnización se consignará a la orden del Juez de la expropiación y se notificará al interesado para que hagan valer sus derechos.

**ARTICULO 79°.-** REVALÚO DE INMUEBLES. En los casos en que a un inmueble expropiado se le haya fijado un valor definitivo superior al 25% del que registre la Dirección correspondiente, para el pago de los tributos respectivos. A esos fines, Fiscalía de Estado remitirá a la repartición correspondiente copia íntegra del fallo judicial o del dictamen del Tribunal de Tasación o de la oferta o contra-oferta del expropiado en los casos de procedimiento administrativo de expropiación. En la misma forma se procederá, a petición de partes, si el valor definitivo del inmueble fuera fijado en el 25% menor.

La repartición correspondiente reajustará también la valuación fiscal del inmueble en los cinco años anteriores a la fecha de la sentencia, de acuerdo a lo que dispone el apartado anterior, debiendo formular la rectificación de la valuación y el cargo correspondiente al propietario expropiado o la devolución de los importes pagados en exceso. En caso de falta de pago, se procurará el cobro por la vía correspondiente.

**ARTICULO 80°.-** VIGENCIA DE LA LEY, PROCESOS EN TRÁMITE. La presente ley entrará en vigencia a partir de su publicación. Se aplicará a los juicios que se encuentren en trámite, sin perjuicio de lo actuado en virtud de las disposiciones legales anteriores.

**ARTICULO 81°.-** DEROGACIONES. Deróganse a las Leyes Provinciales N° 1865, N° 1950, N° 2359, N° 2408, Decreto Ley N° 68-H-62, y toda otra disposición que se oponga a la presente.

**ARTICULO 82°.-** Comuníquese al Poder Ejecutivo.-

SALA DE SESIONES, SAN SALVADOR DE JUJUY, 27 de julio de 1973.-
JOSE I. LOPEZ IRIARTE

Secretario General Parlamentario

ALFREDO L. BENITEZ

Presidente

19/2/24, 9:36

Case: 23-7370, 03/01/2024, DktEntry: 89.1, Page 71 of 290
LEY N° 3018 – Dirección Provincial de Boletín Oficial e Imprenta del Estado

Sancionada 27/07/1973

Publicado en BO N° 86 de fecha 01/08/1973

## BUSCAR PUBLICACIONES

Search...



Advanced

Los resultados mostrados en la página puede no coincidir exactamente con el archivo PDF correspondiente del Boletín Oficial.

Base de datos para búsquedas Sección Legislativa (Leyes -
Decretos - Resoluciones - Ordenanzas) 25/11/05.-
Base de datos para búsquedas Boletines completos desde 11/12/15.-

Si necesita información anterior por favor contáctese con nuestra Oficina.-

## CONTACTO

**Boletín Oficial e Imprenta del Estado**
**Teléfono/Fax:** 0388-4221384
**Dirección:** Avda. Almirante Brown N° 1363, San Salvador de Jujuy
**E-mail:** boletinoficialjujuy@gmail.com (mailto:boletinoficialjujuy@gmail.com)



© 2016 DIRECCIÓN PROVINCIAL DE BOLETÍN OFICIAL E IMPRENTA DEL ESTADO

# LAW NO. 3018

UNDER: LAWS

**THE H. LEGISLATURE OF THE PROVINCE ENACTS WITH THE FORCE OF LAW**

**LAW N° 3018 (AS AMENDED BY LAW N° 5607)**

**OF THE EXPROPRIATION**

**TITLE ONE**

**OF THE QUALIFICATION OF PUBLIC UTILITY**

**ARTICLE 1.-** CONCEPT OF PUBLIC UTILITY. The concept of public utility is extensive to all aspects and demands of the common good; that is to say, to everything necessary to create the moral and material conditions for the development and perfection of the human person.

Said concept of public utility applies even if the immediate benefit belongs to a single individual and the mediate benefit belongs to the community, as long as it is certain, not hypothetical or remote.

**ARTICLE 2.-** QUALIFYING BODY. The qualification of "public utility" must be made by the Legislative Power, without the individual enumeration of the affected properties being indispensable. However, the Law must limit the object of the expropriation in terms that do not allow extending the expropriation action to other properties than those necessary to achieve the common good that the Legislature seeks to manage and realize.

**TITLE TWO**

**OF THE SUBJECT**

**ARTICLE 3.-** EXPROPRIATING ENTITIES. Expropriation may be carried out by the Province, the Municipalities and the concessionaires of public works or services.

**ARTICLE 4.-** EXPROPRIATION BY THE PROVINCE. Expropriation may be carried out by the Provincial State:

1) In the case of property necessary to carry out or construct works by the Province to satisfy the needs or convenience of the provincial community;

2) In the case of assets necessary to carry out works that contemplate the needs or convenience of the Nation or its autarchic entities (whether the work is carried out by the Province or by the Nation);

3) When it is a question of incorporating private property into the public domain of the Provincial State to satisfy the needs or convenience or welfare of the provincial community;

4) When it is the indispensable means for goods that are in the domain of persons of visible or juridical existence, to be acquired by the generality of the population, to satisfy their needs to carry out state plans of social or economic or moral improvement;
5) When it is a matter of incorporating into the private domain of the Province goods that are indispensable or convenient for the development of its functions.

6) When it is to provide, in any form or by any means, for the common good of the population or its members, thus achieving greater distributive justice.


**ARTICLE 5.-** EXPROPRIATION BY THE MUNICIPALITIES. Expropriation may be carried out by the Municipalities:

1) In the case of goods necessary to carry out works convenient for the Municipality;

2) When it is a question of incorporating private property to the municipal public domain, to satisfy the needs, convenience or welfare of the inhabitants of the Municipality;

3) When it is the indispensable means for the inhabitants of the Municipality to acquire, in order to satisfy their needs, or as a means of carrying out state plans for social improvement, assets that are in the domain of persons of visible or juridical existence;

4) When it is a question of incorporating to the private domain of the Municipalities indispensable or convenient goods for the development of their functions;

5) When it is a matter of promoting, in any way, the common good of the inhabitants of the Municipality, tending to achieve distributive justice.


**ARTICLE 6.-** PRIOR QUALIFICATION BY THE LEGISLATURE. The Municipalities may not expropriate without the prior qualification of public utility made by the Legislative Branch. The Legislature may authorize the expropriation of specific or generically enumerated properties, as provided for in Article 2 of this Law. Only in the case that the enumeration is generic, the Deliberative Department of the Municipality shall declare in each case and within the legislative authorization, the properties affected to expropriation.


**ARTICLE 7.-** EXPROPRIATION BY CONCESSIONAIRES OF PUBLIC SERVICES. Expropriation may be carried out by the concessionaires of public works or services, even in the case of assets that are necessary or convenient for the execution of the work or for the efficient performance of the public service granted.
 The concessionaires of public works or services may not expropriate without the prior qualification of "public utility" made by the Legislative Power and without the express power to expropriate specially granted by the same Power. The Legislative Power may authorize the expropriation of specific or generically enumerated assets, as provided for in Section 2 of this Law. If the enumeration is generic, the Executive Branch (or the Executive Department in the case of a municipal concession), shall declare, in each case, and within the legislative authorization, the properties affected by expropriation.

**ARTICLE 8.-** SUBSTITUTION OF RIGHTS AND OBLIGATIONS. The concessionaires of public works or services for whose execution the expropriation is sanctioned, substitute themselves for the expropriating authority in the rights and obligations created by this Law, and which are not related to the quality of the political power. However, the State or the municipalities, as the case may be, retain, with respect to the expropriated parties, their character of guarantee, with the benefit of excusation, against abuses and insolvency of the concessionaires.


**TITLE THREE**

**OBJECT OF THE EXPROPRIATION**


**ARTICLE 9.-** PROPERTY SUBJECT TO EXPROPRIATION. All property convenient or necessary for the satisfaction of the public utility may be subject to expropriation, regardless of its legal nature; whether or not they are in commerce, whether or not they are things.

Industrial, mining or commercial establishments and, in general, de jure or de facto universities may also be subject to expropriation.

**ARTICLE 10.-** EXPROPRIATION OF PROPERTY AFFECTED TO A PUBLIC SERVICE. The Province may expropriate property affected to a public service granted by the Province or by the Municipalities. The Municipalities may expropriate property affected to a public service granted by them.

In all hypotheses, the expropriation may include all or only part of the assets affected to the public service, always taking into account the effective presentation thereof. If, by reason of the expropriation of the assets, the concessionaire is unable to provide the service to which he has committed himself in accordance with the concession, he may request the expropriation of the latter, or of the totality of the assets affected to it, or the compensation for the damage he proves to have suffered.


**ARTICLE 11.-** LIMITATION OF THE PURPOSE OF THE EXPROPRIATION. The expropriation may include not only the necessary properties but also those whose occupation is convenient to the main purpose of the expropriation.


**ARTICLE 12.-** EXPROPRIATION OF PROPERTY ADJACENT TO A PUBLIC WORK. Expropriation may be disposed of and carried out on property adjacent or not to a public work, linked or not to it, for the purpose of carrying out plans for the common good, as established by law.


**ARTICLE 13.-** REQUEST FOR TOTAL EXPROPRIATION. In the case of partial expropriation of any real property and the part that remains unexpropriated is unsuitable for rational use or exploitation, the expropriated party may request the expropriation of the entire property.

In urban lands, inadequate surpluses will be considered to be those which, due to expropriation, will have frontage, depth or surface area less than that authorized for building by the respective local ordinances or uses.

In rural properties, the Executive Branch or the competent body will determine in each case the inadequate areas; that is to say, those that do not constitute an economic unit.

**ARTICLE 14.-** INTEGRAL PART OF THE EXPROPRIATED PROPERTY. Its physical accessories shall be considered an integral part of the expropriated property. If the accession is moral, it is optional for the expropriating party to include the accessories of the expropriated property, but the expropriated party may include them provided that their removal is possible, without material detriment to the main property, and that such accessories have not been considered by the Legislature as a primary object -exclusive or concurrent- of the expropriation.

**ARTICLE 15.-** EXPROPRIATION OF THE SUBSOIL. The subsoil is subject to expropriation independently of the surface property, without detriment or damage to the existing constructions on the surface.

**ARTICLE 16.-** TEMPORARY EXPROPRIATION. The temporary use of a property may be expropriated.

## TITLE FOUR

## THE INDEMNITY

**ARTICLE 17.-** CONCEPT OF EXPROPRIATION COMPENSATION. The compensation shall only include the objective value of the property and the damages that are a direct and immediate consequence of the expropriation. Circumstances of a personal nature, emotional values, or hypothetical gains shall not be taken into account. No loss of profit will be paid.

Panoramic value or value derived from historical facts will also not be considered.

Likewise, the value of the goods must be estimated at the value they would have had if the work had not been executed or even authorized.

**ARTICLE 18.-** INDEMNIFICATION FOR EXPROPRIATION OF COMPANIES OR ESTABLISHMENTS, GOODWILL OR CAPITAL ASSETS. The indemnification for the expropriation of mining, industrial or commercial enterprises or establishments, or of goodwill or capital assets, shall be the original or revaluation value of the assets, less the amounts that have been amortized during the period since the commencement of the activities or since the revaluation was made according to the laws established on the matter, and the surplus over a reasonable profit, which shall also be considered as reintegration of the invested capital.

**ARTICLE 19.-** CONTENT OF THE INDEMNITY. The indemnity shall be fixed in money, unless the expropriating party and the expropriated party agree to substitute the total or part thereof for the performance of work, supply of material or other consideration.

**ARTICLE 20.-** IMPROVEMENTS, CONTRACTS AND WORKS. No compensation shall be paid for improvements made to the property after the act declaring it to be subject to expropriation, except for those improvements that have been necessary.

Likewise, contracts and works carried out by the owner after the act that declared the property to be affected by expropriation will not be taken into account for the purposes of compensation.

**ARTICLE 21.-** PARTIAL EXPROPRIATION. In all cases of partial expropriation, the greater value acquired by the remainder or surplus of the property, as a consequence of the work or public service, shall be deducted from the compensation.
 Such deduction shall be expressly stated in the judgment.

**ARTICLE 22.-** ACQUISITION AT PUBLIC AUCTION. Once the expropriation has been legally authorized, the expropriating party may acquire the property at public auction. In such case, the bidder of the expropriating party, if he has made the best offer, shall record in the respective record that he shall pay a deposit within thirty days and the balance within one hundred and eighty days.

**TITLE FIVE**

**PROCEDURAL RULES**

**CHAPTER ONE**

**ADMINISTRATIVE PROCEDURE**

**ARTICLE 23.-** NOTIFICATION OF THE EXPROPRIATION.- Once the public utility has been declared, the Executive Power (or the Municipal Executive Department) shall inform the owner of the property included in the expropriation that it will be expropriated.

The notification must contain:

1. a) Transcription of the pertinent part of the Law or municipal ordinance and of the decree issued as a consequence thereof;
2. b) Invitation to appear within five working days and to declare, under oath, the amount of money he/she considers sufficient for the purpose of the indemnity;
3. c) Invitation to establish its legal domicile.

**ARTICLE 24.-** FORM OF NOTIFICATION. The notification may be made by letter or telegram.

If the domicile of the expropriated party is unknown or is unknown, he shall be summoned by edicts to be published in the Official Gazette and in a newspaper circulating throughout the Province for five days.

**ARTICLE 25.-** FAILURE OF THE EXPROPRIATED PARTY TO APPEAR. In case the expropriated party does not appear or does not make the estimate of the price within five days of notification or from

the last publication, he shall be invited to accept or reject the compensation offered by the Executive Branch or the Municipal Executive Department, as the case may be, within five days.

For such purpose, the Executive Branch or the Municipal Executive Department shall estimate the amount of the indemnity after the technical opinion of the Appraisal Court, which shall take into account the provisions of this law. Such quantum of indemnity may not exceed the maximum value fixed by the aforementioned Court.
 The expropriated party may make a counter-offer. Such counter-offer may be accepted or rejected by the expropriating party within 30 days.


**ARTICLE 26.-** ACCEPTANCE OF THE INDEMNITY, CONTRACTING. If the expropriating party considers the offer or counter-offer of the expropriated party to be convenient, or if the owner accepts the indemnity offered by the expropriating party, the transfer of ownership shall be effected by means of tradition, deed and registration, and the indemnity shall be paid. The owner shall transfer the domain free of all encumbrances, seizure and occupation.


**ARTICLE 27.-** SILENCE OR REJECTION OF THE INDEMNITY. In case of

silence, failure to appear or rejection of the indemnity amount offered, the corresponding legal actions may be initiated.


**ARTICLE 28.-** TAX EFFECTS. In the event that the expropriated party appears and in the respective document declares under oath the amount of compensation that he/she considers sufficient as provided in Article 20, such amount shall have effects for tax purposes. The same effect shall have the counter-offer referred to in Article 24 below, provided that it is greater than the amount offered. In the event that the counter-offer is lower, the Appraisal Court may review, following the administrative procedure, the value determined for the property, fixing the value it deems more convenient in each case or sector, except that the lower value may be accepted without affecting the estimated value for similar property or for the rest of the property.


**ARTICLE 29.-** ACTION AND PROCEDURE. The rules of the provincial law on Administrative Procedure and its regulatory decree shall be applicable in the administrative procedure.

All the expropriated party's actions shall be made on plain paper, free of tax burdens.


**ARTICLE 30.-** COSTS. The expropriating party shall be responsible for the costs, and all expenses incurred in determining the compensation shall be borne by the latter.


**ARTICLE 31.-** EXPROPRIATION BY AUTARKIC ENTITIES. In those cases in which the expropriation is authorized to be carried out by autarchic entities, the latter shall proceed as established for the Executive Branch.


**ARTICLE 32.-** EXPROPRIATION BY CONCESSIONAIRES OF PUBLIC WORKS OR SERVICES. If the expropriation is to be carried out by concessionaires of public works or services, the acquisition shall also be carried out by means of the extrajudicial procedure, pursuant to the rules set forth above, plus the conformity, with respect to the indemnification, of the authority in charge of the control of the concession.

**ARTICLE 33.-** MANDATORY NATURE OF THE ADMINISTRATIVE PROCEDURE. In all cases of expropriation, it is mandatory to observe the administrative procedure prior to any type of expropriation trial, except in the case of abnormal expropriation.

**ARTICLE 34 -** The expropriated party when appearing with the first presentation to the administrative procedure, in accordance with the provisions of the present law, shall denounce the name, surname and domicile of those who may have the right to be compensated for being holders of a real right over things or a personal right constituted in their favor by the owner in relation to the property.

**CHAPTER TWO**

**JUDICIAL PROCEEDING**

**ARTICLE 35.-** CASES IN WHICH IT IS APPROPRIATE TO FOLLOW THE JUDICIAL PROCEDURE. The judicial procedure shall be followed when:

1) The parties have not reached an agreement in the administrative proceedings;

2) The owner does not appear at the summons for the administrative procedure or refuses or does not answer the offer made by the expropriating party;

3) The name of the owner of the property to be expropriated is not known;

4) The owner is incapable;

5) In the case of the exception provided for in Article 32;

6) The owner does not grant the deed transferring ownership or does not make the expropriated property a tradition within the term established by the Executive Power or the Municipal Executive Department, which shall not be less than fifteen days running nor more than thirty days counted in the same manner.

**ARTICLE 36.-** JURISDICTION AND PROCEDURE IN EXPROPRIATION PROCEEDINGS. Expropriation proceedings shall be heard and resolved by the Civil and Commercial Judges of First Instance of the Capital City in turn. Their decisions may be appealed before the Superior Court of Justice.

All expropriation lawsuits shall be processed, without prejudice to the provisions of this law, in accordance with the procedure established by the Code of Civil Procedure for ordinary written lawsuits (ORIGINAL TEXT).

**Article 36**.- Jurisdiction and Procedure in Expropriation Proceedings: In expropriation lawsuits shall be heard and resolved by the Contentious Administrative Court of the Province of Jujuy. All expropriation lawsuits shall be processed without prejudice to the provisions of this Law, in accordance with the procedure established by the Code of Civil Procedure for ordinary written lawsuits." ( CURRENT TEXT MODIFIED BY LAW NO. 5607).

**ARTICLE 37.-** EXPROPRIATION CLAIM. The expropriation claim, in addition to the requirements established by the Code of Civil Procedure, shall contain the following information:

1) Designation of the property whose expropriation is sought with precise determination of location, measurements and other individualizing elements;

2) Indication of the Law that has declared the property subject to expropriation for public utility, with transcription of the pertinent part;

3) Authenticated copy of the acts of the Executive Power or Executive Department, in the event that the property or properties affected by the expropriation have been generically listed by the law of appropriation, in such a way that the expropriated objects are duly individualized;

4) Certification of the Dirección General de Rentas in which the tax valuation corresponding to the affected property is established;

5) Expression of the sum offered by the expropriator as total expropriation;

6) Copy of the opinion of the Appraisal Tribunal.


**ARTICLE 38.-** ANSWER TO THE CLAIM. Without prejudice to the requirements established in the Code of Civil Procedure for the answer to the claim, it must contain the requirements listed below:

1) Conformity or disagreement with the location, measurements and other elements of individualization that the plaintiff attributes to the property; expressing in case of disagreement those attributed to the defendant;

2) Conformity or opposition of the defendant to the expropriation, stating the grounds for his opposition in case of invoking it;

3) Concrete and exact expression of the amount sought by the expropriated party as total compensation;

4) Presentation of the property titles, or in case it is not possible, it shall request from the Court, the pertinent measures to accredit its ownership and shall accompany all its documents that it deems convenient to support its claims.

5) Declaration of the name, surname and domicile of those who may have the right to be indemnified for being holders of a real right over things or a personal right constituted in their favor by the owner, in relation to the property.

The expression of the amount intended by the expropriated party shall have sufficient value to carry out the tax revaluation of the rest of the expropriated property, for the corresponding tax purposes. For such purpose, the State Attorney's Office shall send a true copy of the answer to the respective department.


**ARTICLE 39.-** NON COMPLIANCE WITH THE REQUIREMENTS EXIGNED FOR THE RESPONDENT. The lack of compliance with the requirements demanded for the respondent, shall make the exception of legal defect applicable, imposing the costs to the expropriated party.

**ARTICLE 40.-** EVIDENCE IN EXPROPRIATION OF REAL ESTATE. In the case of real estate, no expert evidence may be requested. In order to rule on the real and objective value of the expropriated property, the Court shall request the Provincial Appraisal Court to issue the pertinent

pronouncement, for which purpose it shall forward the records with the points offered by the parties on which the ruling must be based.

Prior to the forwarding of the records, the Court shall summon the expropriated party to appear in person or by means of representatives within a term of five days to be part of the Appraisal Court, under the penalty of not being required to intervene.

The Appraisal Court must issue its opinion within a maximum term of one hundred and twenty days, and may, for justified reasons, extend the term for up to sixty more days.

The opinion of the Appraisal Court shall be irreplaceable and indispensable within the proceedings of the trial, and must also be obtained ex officio.

**ARTICLE 41.-** GREATER VALUE. In the claim or when pleading proven property, the expropriating party shall request, as the case may be, the deduction of the greater value acquired by the remainder of the property, as provided for in article 21.

**ARTICLE 42.-** JUDGMENT AND PAYMENT OF THE EXPROPRIATION. Judgment shall be rendered within sixty days from the date on which the settlement of the case has become final, unless measures for better provision are ordered.

The judgment may not order compensation in excess of the amount claimed.

For the purposes of payment, the expropriating party shall be granted a term of not less than sixty days from the date on which the approval of the liquidation schedule becomes final.

When making the payment, the expropriating party may deduct the amounts that the expropriated party owes to the Province or Municipalities for taxes, rates, contributions, contributions and any other type of liquid and enforceable debt in favor of the Provincial State or its Municipalities.

**ARTICLE 43 -** PEREMPTION OF THE INSTANCE. There shall be no peremption or expiration of the instance, if the expropriating party has taken possession of the expropriated object.

**ARTICLE 44.-** AWARD OF COSTS. The costs of the trial shall be borne by the expropriating party when the compensation fixed by the final judgment is higher than the amount offered by more than fifty percent of the difference between the latter and the amount claimed.

The costs shall be borne by the expropriated party when the compensation is fixed at the same or lower amount than that offered by the expropriator or when there is an obvious and notorious plus petition on the part of the expropriated party.

It shall be understood that there is "plus petitio" when the compensation fixed is less than three quarters of the amount claimed.

The costs shall be in their order when the compensation fixed does not exceed the margin established in the first paragraph of this article, or when being higher, the expropriated party has not answered the claim, or if the amount claimed in the first presentation has not been fixed.

For the estimation of the fees in the expropriation trial, the judge will regulate them by taking as the amount in question the difference between the amount offered and the compensation established, without taking into account the interest accrued during the course of the trial.

**ARTICLE 45.-** WITHDRAWAL. The expropriating party may withdraw from the expropriation proceeding until a final judgment has been rendered thereon, paying the costs, which may not exceed twenty percent of those that would correspond to a completed proceeding, taking as a basis the amount deposited.

It will be an indispensable requirement for the withdrawal that the cause of public utility originating the expropriation has disappeared, and this new situation must be qualified by means of a special law.

**ARTICLE 46.-** EFFECTS OF LEGAL POSSESSION ON LEASES. Once judicial possession of the property has been granted, the leases shall be terminated and the occupants shall be granted a term of ten days to vacate; in the case of a dwelling house, the occupants shall have twenty days to vacate it. In both cases, the expropriating party may extend such terms when, in his opinion, there are just reasons that make it advisable to do so.

**ARTICLE 47.-** REGISTRATION OF THE DECLARATION OF EXPROPRIATION. The judgment declaring the expropriation of the property, together with the payment of the compensation ordered, shall constitute the title transferring the ownership in favor of the expropriating party. The clerk of the court shall issue a certificate of the operative part of the judgment and a certificate stating the location, measurements, boundaries and other details of the expropriated property and the payment or consignment of the compensation fixed. This instrument will be sufficient to register the ownership in the real estate registry if the property is real estate.

**CHAPTER THREE**

**EMERGENCY EXPROPRIATION**

**ARTICLE 48.-** PRELIMINARY PROVISION. The promotion of the emergency expropriation shall in no way prevent the continuation and complete fulfillment of the administrative procedure, as established in Chapter One of this Title.

**ARTICLE 49.-** CLAIM. The expropriating party shall have the right, in case of urgency, to be immediately given possession of the expropriated property, provided that the amount of the tax valuation of the real property or the amount established by the Appraisal Court, if possible, shall be judicially consigned. In the case of movable or immovable property, which does not have a fiscal valuation, the amount provisionally fixed by the Appraisal Court shall be consigned.

**ARTICLE 50.-** JUDICIAL POSSESSION. Once the consignment has been made, the Judge shall give possession to the expropriating party, and the occupants shall be granted a term of ten days to carry out the eviction, which term may be extended if there is just and proven cause.
 Once the owner has been notified of the consignment, the judge shall declare the property transferred, and the order and its antecedents shall serve as a sufficient transfer title, which shall be registered in the Real Estate Registry, as the case may be.

**ARTICLE 51.-** WITHDRAWAL OF THE DEPOSITED AMOUNT. The expropriated party may withdraw the amount deposited, prior justification of his ownership and that the property does not recognize a mortgage or other real right, that it is not seized and that there are no restrictions on the free disposition of his property.

**ARTICLE 52.-** CONFORMITY OF THE OWNER, CONTRACTING. The expropriating party may take possession and make the corresponding entry in the Real Estate Registry, without consigning the sum offered if the owner agrees.

If the expropriating party and the expropriated party reach the agreement referred to in Article 26, the agreement shall be brought to the attention of the judge.

**ARTICLE 53.-** PROCEDURE. The rules of the preceding chapter and those of the Code of Civil Procedure shall apply to the emergency expropriation procedure.

**CHAPTER FOUR**

**ABNORMAL EXPROPRIATION**

**ARTICLE 54.-** CASES IN WHICH IT MAY PROCEED. In case of force majeure, or in the case of an area affected by fire, earthquake, flood, epidemic, military measures due to war or any other equally serious circumstance, the Executive Power may dispense with all legal proceedings to take the private property, movable or immovable, assuming the liability arising from its acts.

**ARTICLE 55.-** FORM OF ACTION. Whenever possible, the Executive Branch, upon occupying the property, shall draw up a detailed report with the intervention of the owner, if present, recording all the details of any relevance for the purposes of the subsequent indemnification. The minutes shall be signed by the intervening authority, the owner, and if the latter is not present or refuses to do so, two witnesses shall sign.

**ARTICLE 56.-** INITIATION OF THE EXPROPRIATION PROCEEDING. In cases of abnormal expropriation, the Executive Branch shall take before the Honorable Legislature the enactment of a law declaring the expropriated property to be of public utility, and shall immediately initiate the corresponding administrative proceeding or expropriation lawsuit. All this procedure must be complied with within a maximum term of six months, which may be extended for a further three months by decree of the Executive Branch, invoking sufficiently justified causes.

**ARTICLE 57.-** APPLICATION OF PROCEDURAL RULES. The provisions of the first, second and third chapters of this Law shall be applicable to abnormal expropriation, insofar as pertinent.

**SIXTH TITLE**

**REVERSE EXPROPRIATION**

**ARTICLE 58.-** CASES IN WHICH IT PROCEEDS. The owner of a property may file for expropriation in the following cases:

1) When the public utility of the property, or when it is included within a generic declaration of public utility, the expropriating party has taken possession without the express consent of the owner;

2) When possession has been taken with the consent of the owner and the expropriation proceeding has not been filed within the time limit fixed by mutual agreement, or within six months after the taking of possession, in the absence of an agreed time limit;

3) When the expropriating party has taken immediate possession of the property in cases of emergency and abnormal expropriation and without reaching an agreement in the administrative procedure has not initiated an expropriation proceeding within six months.

**ARTICLE 59.-** PRESCRIPTION OF THE CLAIM. The inverse expropriation claim is prescribed ten years from the moment of taking possession of the registrable property.

**ARTICLE 60.-** PROCEDURE. The reverse expropriation process shall be processed in accordance with the procedural rules set forth herein and those of the Code of Civil Procedure on ordinary written trial.

**TITLE SEVENTH**

**ABANDONMENT OF EXPROPRIATION**

**ARTICLE 61.-** CASES THAT DETERMINE THE ABANDONMENT OF THE EXPROPRIATION. The expropriation shall be deemed to have been abandoned -unless expressly provided by special law-, if the expropriating party does not continue the administrative procedure or does not file a lawsuit within two years of the enactment of the law authorizing it, in the case of individually determined property; ten years, in the case of property included in a generic list whose acquisition by the expropriating party may be postponed until the owner modifies or attempts to modify the physical conditions of the property.

The preceding provision shall not apply in those cases in which the organic laws of the municipalities authorize them to expropriate the portion of the real estate affected to rectify or widen streets and alleys by virtue of ordinances of the deliberative departments.

**ARTICLE 62.-** CASES OF EXPROPRIATION FOR OTHERS. In those cases in which the expropriation is the indispensable means for the acquisition by the general population of property in the domain of persons of visible or juridical existence in order to satisfy their needs, the law authorizing it shall establish the period of time within which it shall be in force; and if it does not so establish, the authorization shall be deemed to have expired two years after the enactment of the law.

**ARTICLE 63.** INTERRUPTION OF THE TERM. The initiation of the administrative proceeding or the filing of the expropriation lawsuit interrupts the abandonment term.

**TITLE EIGHT**

**RETROCESSION ACTION**

__ARTICLE 64.-__ CASES IN WHICH IT IS APPROPRIATE. The expropriated owner or his successors in title may, after the interpellation referred to in article 65, revert the property in the following cases:

1) When the expropriating party gives the property a destination different from the one established to carry out the expropriation; unless the change of destination is provided by law and the purpose of the substitution is to achieve the common good;

2) When two years after the expropriation has been completed, or upon expiration of the term established by law for the completion of the work, the property has not been used for the purpose for which it was expropriated.

__ARTICLE 65.-__ PRIOR JUDICIAL INTERPELLATION. The prior judicial interpellation shall be made under a warning to initiate the retrocession action if within a period of two years, as from the notification, the property is not used for the intended purpose.

__ARTICLE 66.-__ PRESCRIPTION OF THE RETROCESSION CLAIM. The retrocession claim shall lapse after ten years, counting from the date of taking possession by the expropriating party, without exception.

__ARTICLE 67.-__ OBLIGATION OF THE EXPROPRIATED PARTY. In the judgment granting the retrocession claim, the prior payment of the updated value of the property to be returned by the expropriating party shall be required. Said value shall be determined by the opinion of the Appraisal Court.

The payment of the updated value of the expropriated property must be made within thirty days of recognition of the right of retrocession, and this right will expire definitively if the obligation to pay the value of the expropriated property is not fulfilled within the aforementioned term.

__ARTICLE 68.-__ PROCEDURAL RULES. The rules of this law and those of the Code of Civil Procedure with respect to the ordinary written trial shall be observed for the processing of the claim for reversal.

**TITLE NINE**

**APPRAISAL COURT**

__ARTICLE 69.-__ CREATION AND COMPOSITION. The Appraisal Court of the Province is hereby created as a permanent body, which shall be composed of the following technical officers: the Director General of Real Estate; the Director General of Architecture, the Director General of

Revenues and the Undersecretary of Public Works.
 Each of these officials may designate a replacement to fulfill their functions.

The Appraisal Court shall be composed of a representative of the expropriated party, in the case of a judicial expropriation proceeding. For such purposes, the judge shall invite the expropriated party to appoint his representative within five days.

**ARTICLE 70.-** FUNCTIONS OF THE APPRAISAL COURT. The functions of the Appraisal Court are as follows

1) To act in the administrative procedure of expropriation and in the judicial procedure, as a technical body, ruling on the amount of compensation;

2) To perform special appraisals in all kinds of lawsuits at the proposal of the parties;

3) All other duties established by law.

**ARTICLE 71.-** NATURE OF THE APPRAISAL COURT'S FUNCTIONS. The functions of the Appraisal Court shall have the character of a free public charge in the case of Article 70, paragraph 1).

**ARTICLE 72.-** EMPLOYEES OF THE APPRAISAL COURT. The Appraisal Court may have employees appointed by the Executive Branch.

They shall be distinguished for their performance and technical knowledge in the matter.

**ARTICLE 73.-** POWERS OF THE APPRAISAL COURT. For the fulfillment of its functions, the Appraisal Court may request all the necessary data and elements from the offices of the Provincial Administration, the Autarchic Entities and the Municipalities, as well as from the entities related to the technical problems submitted to its consideration.

**ARTICLE 74 -** APPRAISAL COURT RULINGS. The Appraisal Court shall issue its decisions by simple majority, and its opinions and dissenting opinions, if any, shall be sufficiently grounded and illustrative.

**ARTICLE 75 -** INTERNAL OPERATION OF THE APPRAISAL COURT. The Appraisal Court shall elect its authorities and shall issue its internal regulations, for the purpose of a better performance of the functions assigned to it by this law.

**ARTICLE 76.-** RECUSAL AND EXCUSALS. The members of the Appraisal Court may be recused and excused in the cases and circumstances established by the Code of Civil Procedure, except in cases of recusal without cause. In such case, the official shall be replaced by one appointed ad-honorem by the Executive Branch of the Province.

**TITLE TEN**

**GENERAL PROVISIONS**

**ARTICLE 77.-** SITUATION OF THIRD PARTIES. No action by third parties may impede the expropriation or its effects. The rights of the claimant shall be deemed transferred from the thing to its price or to the compensation, and the latter shall be free of any encumbrance.

**ARTICLE 78.-** ENCUMBERED ASSETS. When the expropriated properties recognize any encumbrance, the amount of the compensation shall be consigned to the order of the Judge of the expropriation and the interested party shall be notified so that they may assert their rights.

**ARTICLE 79.-** REVALUATION OF REAL ESTATE. In those cases in which an expropriated property has been set at a definitive value higher than 25% of the value recorded by the corresponding Directorate, for the payment of the respective taxes. For such purposes, the State Attorney's Office will send to the corresponding department a complete copy of the court decision or of the opinion of the Appraisal Court or of the offer or counter-offer of the expropriated party in the cases of administrative expropriation proceedings. The same procedure shall be followed, at the request of the parties, if the definitive value of the property is set at 25% less.

The corresponding department shall also readjust the tax valuation of the property in the five years prior to the date of the judgment, in accordance with the provisions of the preceding paragraph, and shall formulate the rectification of the valuation and the corresponding charge to the expropriated owner or the refund of the amounts paid in excess. In case of non-payment, collection shall be sought through the corresponding channels.

**ARTICLE 80.-** VALIDITY OF THE LAW, PENDING PROCEEDINGS. This law shall become effective as of its publication. It shall apply to the lawsuits that are in process, without prejudice to the actions taken under the previous legal provisions.

**ARTICLE 81.-** REPEALS. Provincial Laws N° 1865, N° 1950, N° 2359, N° 2408, Decree Law N° 68-H-62, and any other provision that may oppose the present provisions are hereby repealed.

**ARTICLE 82.-** Communicate to the Executive Power.

SESSION ROOM, SAN SALVADOR DE JUJUY, July 27, 1973
. LOPEZ IRIARTE

Parliamentary Secretary General

ALFREDO L. BENITEZ

Chairman

Enacted 27/07/1973

Published in BO N° 86 dated 01/08/1973

## SEARCH FOR PUBLICATIONS

The results shown on the page may not exactly match the corresponding PDF file in the Official Gazette.

Database for searches Legislative Section (Laws - Decrees - Resolutions - Ordinances) 25/11/05.- Database for searches Complete bulletins since 11/12/15.

If you need further information please contact our office.

EXHIBIT 4

**Provincia de La Pampa**
**LEY 908**
**Expropiación**

**Ley de Expropiaciones. Sanción. Sujetos. Objeto. Procedimiento**
sanc. 13/02/1979 ; promul. 13/02/1979 ; publ. 23/02/1979

Visto lo actuado en el expte. 2829/78, registro del Gobierno de la provincia, y la autorización otorgada por resoluciones 2347/1978 y 100/1979 del ministro del Interior, en ejercicio de las facultades legislativas conferidas por la Junta Militar,

**El gobernador de la provincia de La Pampa sanciona y promulga con fuerza de ley:**

## TÍTULO I:

## CALIFICACIÓN DE UTILIDAD PÚBLICA

**Art.** 1.- La utilidad pública que debe servir de fundamento legal a la expropiación, comprende todos los casos en que se procure la satisfacción del bien común, sea éste de naturaleza material o espiritual.

## TÍTULO II:

## SUJETOS DE LA RELACIÓN EXPROPIATORIA

**Art.** 2.- Podrá actuar como expropiante el Estado provincial, las municipalidades y comisiones de fomento, las entidades autárquicas provinciales y las empresas o sociedades del Estado provincial, en tanto estén expresamente facultadas para ello por sus respectivas leyes orgánicas o por leyes especiales.

Los particulares, sean personas de existencia visible o jurídicas, podrán actuar como expropiantes cuando estuvieren autorizados por ley o por acto administrativo fundado en ley.

**Art.** 3.- La acción expropiatoria podrá promoverse contra cualquier clase de personas de carácter público o privado.

## TÍTULO III:

## OBJETO EXPROPIABLE

**Art.** 4.- Pueden ser objeto de expropiación todos los bienes convenientes o necesarios para la satisfacción de la "utilidad pública, cualquiera sea su naturaleza jurídica, pertenezcan al dominio público o al dominio privado, sean cosas o no.

**Art.** 5.- La expropiación se referirá específicamente a bienes determinados. También podrá referirse genéricamente a los bienes que sean necesarios para la construcción de una obra o la ejecución de un plan o proyecto, en tal caso la declaración de utilidad pública se hará sobre la base de informes técnicos referidos a planos descriptivos, análisis de costos u otros elementos que fundamentan los planes y programas a concretarse mediante la expropiación de los bienes de que se trate debiendo surgir la directa vinculación o conexión de los bienes a expropiar con la obra, plan o proyecto a realizar. En caso de que la declaración genérica de utilidad pública se refiriese a inmuebles, deberán determinarse además, las distintas zonas, de modo que a falta de individualización de cada propiedad queden especificadas las áreas afectadas por la expresada declaración.

**Art.** 6.- Es susceptible de expropiación el subsuelo con independencia de la propiedad del suelo. Igualmente son susceptibles de expropiación los inmuebles sometidos al régimen de propiedad horizontal.

**Art.** 7.- La declaración de utilidad pública podrá comprender no solamente los bienes que sean necesarios para lograr tal finalidad, sino también todos aquellos cuya razonable utilización sobre la base de planos y proyectos específicos convenga material o financieramente a ese efecto, de modo que se justifique que las ventajas estimadas serán utilizadas concretamente en la ejecución del programa que motivó la declaración de utilidad pública.

**Art.** 8.- Si se tratase de la expropiación parcial de un inmueble y la parte que quedase sin expropiar fuere inadecuada para un uso o explotación racional, el expropiado podrá exigir la expropiación de la totalidad del inmueble.

En los terrenos urbanos se considerarán sobrantes inadecuados los que por causa de la expropiación quedaren con frente, fondo o superficie inferiores a lo autorizado para edificar por las ordenanzas o usos locales.

Tratándose de inmuebles rurales, en cada caso serán determinadas las superficies inadecuadas, teniendo en cuenta la unidad económica para la zona y la explotación efectuada por el expropiado.

En el supuesto de avenimiento, las partes de común acuerdo determinarán la superficie inadecuada, a efectos de incluirla en la transferencia de dominio, en el juicio de expropiación dicha superficie será establecida por el juez.

**Art.** 9.- Cuando la expropiación de un inmueble incida sobre otros con los que constituye una unidad orgánica, el o los propietarios de estos últimos estarán habilitados para accionar por expropiación irregular si se afectara su estructura arquitectónica, su aptitud funcional o de algún modo resultare lesionado el derecho de propiedad en los términos del art. 60 Ver Texto incs. b y c.

TÍTULO IV:

EL TRIBUNAL DE TASACIONES

**Art.** 10.- El Tribunal de Tasaciones previsto en la presente ley estará integrado, cuando el Estado provincial sea el sujeto expropiante, por el ministro de Economía y Asuntos Agrarios, el subsecretario de Obras Públicas y el director general de Catastro, siendo presidido por el primero de ellos.

Cuando el sujeto expropiante sea un municipio o comisión de fomento, será presidido por el titular del organismo e integrado por dos técnicos designados por aquél.

Cuando se trate de una entidad autárquica o descentralizada el tribunal será integrado por tres técnicos designados por el Poder Ejecutivo a propuesta del titular del organismo, uno de los cuales ejercerá la presidencia.

En los demás supuestos, el Tribunal de Tasaciones será integrado como se establece en el párr. 1 del presente artículo.

**Art.** 11.- El Tribunal de Tasaciones sesionará válidamente con la totalidad de sus miembros y sus decisiones serán motivadas, debiéndose transcribir los fundamentos del dictamen y las disidencias que existieran.

**Art.** 12.- El desempeño en el Tribunal de Tasaciones será honorario, y su presidente podrá requerir de todo organismo público o entidad privada, los informes que resulten necesarios.

**Art.** 13.- Cuando el Tribunal de Tasaciones deba dictaminar a requerimiento judicial, se integrará además con un representante del expropiado que podrá designarse hasta diez días de la apertura de la causa a prueba. Caso

contrario se prescindirá de su intervención.

## TÍTULO V:

## LA INDEMNIZACIÓN

**Art.** 14.**- *La indemnización sólo comprenderá el valor objetivo del bien y los daños que sean una consecuencia directa o inmediata de la expropiación***. No se tomarán en cuenta circunstancias de carácter personal, valores afectivos, ganancias hipotéticas, ni el mayor valor que pueda conferir al bien la obra a ejecutarse. No se pagará lucro cesante. Integrarán la indemnización el importe que correspondiere por depreciación de la moneda y el de los respectivos intereses.

**Art.** 15.- No se indemnizarán las mejoras realizadas en el bien con posterioridad al acto que lo declaró afectado a expropiación, salvo las mejoras necesarias. A los fines establecidos en el art. 29 Ver Texto de la Constitución, déjase constancia que en ningún caso se indemnizará el valor o mayor valor que tenga o pueda tener el inmueble, como consecuencia de obras públicas de riego, hidráulicas, hidroeléctricas, viales, de electroducto, gasoducto, comunicación o cualquier otra que la Nación, la provincia o el municipio haya realizado, realice o proyecte realizar.

**Art.** 16.- La indemnización se pagará en dinero en efectivo salvo conformidad del expropiado para que dicho pago se efectúe en otra especie de valor.

**Art.** 17.- Si el o alguno de los titulares del bien a expropiar fuera incapaz o tuviere algún impedimento para disponer de sus bienes, la autoridad judicial podrá autorizar al representante del incapaz o impedido para la transferencia directa del bien al expropiante.

**Art.** 18.- No se considerarán válidos, respecto al expropiante, los contratos celebrados por el propietario con posterioridad a la vigencia de la ley que declaró afectado el bien a expropiación y que impliquen la constitución de algún derecho relativo al bien.

## TÍTULO VI:

## DEL PROCEDIMIENTO EXTRAJUDICIAL

**Art.** 19.- Declarada la utilidad pública de un bien, el expropiante podrá adquirirlo directamente del propietario dentro de los valores máximos que estimen a ese efecto el Tribunal de Tasaciones para los bienes inmuebles, o las oficinas técnicas competentes que en cada caso se designarán para los bienes que no sean inmuebles. Tratándose de inmuebles, el valor máximo estimado será incrementado automáticamente y por todo concepto en un 10%.

A tal fin el expropiante comunicará al Tribunal de Tasaciones la decisión administrativa, procediendo éste al estudio de las indemnizaciones pertinentes, agregándose los datos del propietario y los del bien.

**Art.** 20.- Las conclusiones del Tribunal de Tasaciones serán notificadas al propietario intimándosele para que dentro de los quince días hábiles manifieste su conformidad o, en su caso, el monto pretendido.

**Art.** 21.- La contraoferta será considerada por el Tribunal de Tasaciones en el término de diez días hábiles, y si aquélla resultara conveniente, o habiéndose aceptado la oferta, quedará concluido el acuerdo, dictándose el pertinente acto administrativo ordenando la transferencia del bien de conformidad a lo previsto por el art. 41 Ver Texto , disponiéndose el pago pertinente.

**Art.** 22.- Para el supuesto de rechazo de la contraoferta, se notificará al interesado la decisión fundada de mantener el ofrecimiento originario o sus modificaciones. El interesado deberá manifestar dentro del plazo de

cinco días hábiles únicamente su conformidad o disconformidad. El silencio será interpretado como disconformidad.

**Art.** 23.- En caso de resultar exitoso el trámite de avenimiento le será pagado al interesado, dentro de los 30 días hábiles administrativos, el importe acordado contra la presentación de los títulos pertinentes. La demora imputable a la administración dará derecho al expropiado a percibir el importe acordado con interés e incrementado conforme la depreciación monetaria operada.

Para establecer la depreciación monetaria se procederá a actualizar la suma estipulada hasta el momento del efectivo pago. En tal caso los intereses se liquidarán a la tasa del 6% anual, desde el momento de la entrega del bien hasta el del pago, sobre el total de la indemnización.

TÍTULO VII:

DEL PROCEDIMIENTO JUDICIAL

**Art.** 24.- No habiendo avenimiento, el expropiante deberá promover la acción judicial de expropiación.

El proceso tramitará por las normas del juicio sumario, con las modificaciones establecidas en esta ley y no estará sujeto al fuero de atracción de los juicios universales.

**Art.** 25.- Tratándose de inmuebles será competente el juez de primera instancia del lugar donde se encuentre el bien.

Tratándose de bienes que no sean inmuebles será competente el juez de primera instancia del lugar donde se encuentren éstos o el del domicilio del demandado, a elección del actor.

Para el supuesto previsto en el art. 2 Ver Texto párr. 1 de la presente ley, regirá lo dispuesto por el art. 5 inc. 7 del Código Procesal Civil y Comercial.

**Art.** 26.- Promovida la acción, se dará traslado por 15 días al demandado. Si se ignorase su domicilio, se publicarán edictos por una vez en el Boletín Oficial y un diario provincial.

**Art.** 27.- (Texto según ley 973, art. 1 Ver Texto ) Si se tratara de bienes inmuebles, el expropiante deberá consignar ante el juez respectivo el importe de la valuación que al efecto hubiese practicado en Tribunal de Tasaciones. Efectuada dicha consignación, el juez le otorgará la posesión del bien.

Si la expropiación versare sobre bienes que no sean inmuebles, el expropiante obtendrá la posesión inmediata de ellos, previa consignación judicial del valor que se determine por las oficinas técnicas mencionadas en el art. 19 Ver Texto .

En ambos casos la consignación judicial del importa a que alude el presente artículo, deberá efectuarse siempre y cuando el expropiado se hubiera presentado en las actuaciones especiales correspondientes.

Será de aplicación en lo pertinente, lo establecido en el art. 28 Ver Texto .

Cuando no se presentar en los autos el expropiado, la consignación requerida será correspondiente al 5% del valor del bien motivo de la expropiación, quedando el expropiante obligado al depósito del saldo del total del importe que el juez interviniente determine en la sentencia respectiva.

Art. 27.- (Texto originario) Si se tratare de bienes inmuebles, el expropiante deberá consignar ante el juez respectivo el importe de la valuación que al efecto hubiese practicado el Tribunal de Tasaciones. Efectuada dicha consignación, el juez le otorgará la posesión del bien.

Si la expropiación versare sobre bienes que no sean inmuebles, el expropiante obtendrá la posesión inmediata de ellos, previa

consignación judicial del valor que se determine por las oficinas técnicas mencionadas en el art. 19 Ver Texto .

Será de aplicación, en lo pertinente, lo establecido en el art. 28 Ver Texto .

**Art.** 28.- El expropiado podrá retirar la suma depositada previa justificación de su dominio, que el bien no reconoce hipoteca u otro derecho real y que no está embargado ni pesan sobre él restricciones a la libre disposición de sus bienes.

**Art.** 29.- La litis se anotará en el Registro de la Propiedad, siendo desde ese momento indisponible e inembargable el bien.

**Art.** 30.- Otorgada la posesión judicial del bien, quedarán resueltos los arrendamientos, acordándose a los ocupantes un plazo de 30 días para su desalojo, que el expropiante podrá prorrogar cuando a su juicio existan justas razones que así lo aconsejen.

**Art.** 31.- La acción emergente de cualquier perjuicio que se irrogase a terceros por contratos de locación u otros que tuvieren celebrados con el propietario, se ventilará en juicio por separado.

**Art.** 32.- Si existieren hechos controvertidos se abrirá la causa a prueba por el término de cuarenta días.

Tratándose de bienes inmuebles, el juez, respecto de la indemnización prevista en el art. 14 Ver Texto y sin perjuicio de otros medios probatorios, requerirá dictamen del Tribunal de Tasaciones el que deberá pronunciarse dentro de los treinta días. Las maquinarias instaladas o adheridas al inmueble serán tasadas conforme se establece seguidamente.

Para los bienes que no sean inmuebles y sin perjuicio de la intervención de las oficinas técnicas a que alude el art. 19 Ver Texto , deberá sustanciarse prueba pericial. Cada parte designará un perito y el juez un tercero, a no ser que los interesados se pusieren de acuerdo con el nombramiento de uno solo.

**Art.** 33.- Las partes podrán alegar sobre la prueba por escrito dentro del plazo común de diez días, contados a partir de la certificación del secretario sobre la producción de aquélla.

Presentados los alegatos o vencido el plazo para hacerlo, el juez llamará autos para sentencia, la que deberá pronunciarse dentro de los 30 días de quedar firme aquella providencia.

**Art.** 34**.- *(Texto según ley 1210, art. 1 Ver Texto ) La sentencia fijará la indemnización teniendo en cuenta el valor del bien al tiempo de la desposesión*.**

Se concederá al expropiante, para el pago, el plazo de treinta (30) días hábiles a contar de la liquidación aprobada judicialmente. El mismo plazo de treinta (30) días hábiles gozará el Fisco, a contar desde la aprobación de la liquidación definitiva, para hacer efectivo el pago de los honorarios de los profesionales intervinientes que deben ser soportados por el expropiante.

Para establecer la depreciación monetaria, se descontará del valor fijado la suma consignada en el proceso, conforme lo dispuesto en el art. 27 Ver Texto , efectuándose la actualización sobre la diferencia resultante. En tal caso, los intereses se liquidarán a la tasa del 6% anual desde el momento de la desposesión, sobre el total de la indemnización o sobre la diferencia, según corresponda.

***Los rubros que compongan la indemnización no estarán sujetos al pago de impuesto o gravamen alguno.***

Art. 34.- (Texto originario) La sentencia fijará la indemnización teniendo en cuenta el valor del bien al tiempo de la desposesión.

Para establecer la depreciación monetaria, se descontará del valor fijado la suma consignada en el proceso, conforme lo dispuesto en el art. 27 Ver Texto , efectuándose la actualización sobre la diferencia resultante hasta el momento del efectivo pago. En tal caso, los intereses se liquidarán a la tasa del 6% anual desde el momento de la desposesión hasta el pago, sobre el total de la indemnización o sobre la diferencia, según corresponda.

Los rubros que compongan la indemnización no estarán sujetos al pago de impuesto o gravamen alguno.

**Art.** 35.- El cargo de las costas del proceso así como su monto y el de los honorarios profesionales se regirán por las normas del Código Procesal Civil y Comercial y las respectivas leyes de aranceles, sin perjuicio de lo dispuesto por la ley 826 .

**Art.** 36.- Las partes podrán interponer todos los recursos admitidos por la ley procesal, civil y comercial vigente.

**Art.** 37.- Ninguna acción de terceros podrá impedir la expropiación ni sus efectos. Los derechos del reglamento se considerarán transferidos de la cosa a su precio o a la indemnización, quedando aquélla libre de todo gravamen.

**Art.** 38.- El expropiante podrá desistir de la acción promovida en tanto la expropiación no haya quedado perfeccionada. Las costas serán a su cargo.

Se entenderá que la expropiación ha quedado perfeccionada cuando se ha operado la transferencia del dominio al expropiante lo que se declarará en sentencia firme previos toma de posesión y pago de la indemnización.

**Art.** 39.- Es improcedente la caducidad de la instancia cuando en el juicio el expropiante haya tomado posesión del bien y el expropiado sólo cuestionare el monto de la indemnización.

**Art.** 40.- La acción del expropiado para exigir el pago de la indemnización prescribe a los cinco años, computados desde que el monto respectivo quede determinado con carácter firme y definitivo.

**Art.** 41.- *Para la transferencia del dominio de inmuebles al expropiante, no se requerirá escritura pública otorgada ante escribano, siendo suficiente al efecto la inscripción en el respectivo Registro de la Propiedad del decreto que apruebe el avenimiento o, en su caso, de la sentencia judicial que haga lugar a la expropiación. No podrá imponerse al expropiado el pago de suma alguna en concepto de impuestos, contribuciones o tasas por el acto de la inscripción.*

TÍTULO VIII:

PLAZO DE LA EXPROPIACIÓN

**Art.** 42.- Se tendrá por abandonada la expropiación -salvo disposición expresa de la ley especial- si no se promoviere el juicio dentro de los dos años de vigencia de la ley que la autorice, cuando se trate de llevarla a cabo sobre bienes individualmente determinados; de cinco años, cuando se trate de bienes comprendidos dentro de una zona determinada; y de diez años cuando se trate de bienes comprendidos en una enumeración genérica.

No regirá la disposición precedente en los casos en que las leyes orgánicas de las municipalidades y Dirección Provincial de Vialidad autoricen a expropiar la porción de los inmuebles afectados a rectificación o ensanche de calles y ochavas, en virtud de las ordenanzas respectivas, o caminos y rutas provinciales, en su caso.

**Art.** 43.- Las disposiciones contenidas en el párr. 1 del artículo anterior no serán aplicables en los casos de reserva de inmuebles para obras o planes de ejecución diferida calificados por ley formal.

En tal supuesto se aplicarán las siguientes normas:

a) El expropiante, luego de declarar que se trata de una expropiación diferida, obtendrá la tasación del bien afectado con intervención del Tribunal de Tasaciones y notificará al propietario el importe resultante;

b) Si el valor de tasación fuere aceptado por el propietario, cualquiera de las partes podrá pedir su

homologación judicial y, una vez homologado, dicho valor será considerado como firme para ambas partes, pudiendo reajustarse sólo de acuerdo con el procedimiento previsto en el inc. d del presente artículo;

c) Si el propietario no aceptara el valor de tasación ofrecido, el expropiante deberá solicitar judicialmente la fijación del valor del bien, de conformidad con las normas de los arts. 14 Ver Texto y 15 Ver Texto ;

d) La indemnización será reajustada en la forma prevista en el art. 14 Ver Texto ;

e) Si durante la tramitación del caso y antes de que se dicte la sentencia definitiva el expropiante necesitara disponer en forma inmediata del inmueble, regirá lo dispuesto en los arts. 27 Ver Texto , 28 Ver Texto , y 29 Ver Texto ;

f) Los inmuebles afectados podrán ser transferidos libremente a terceros, a condición de que el adquirente conozca la afectación y consienta el valor fijado, si éste estuviera determinado. Con tal finalidad una vez firme dicho valor, será comunicado de oficio por el ente expropiante o, en su caso, por el juzgado interviniente al Registro de la Propiedad Inmueble. Los certificados que expida el registro en relación con el inmueble afectado deberán hacer constar ese valor firme. En las escrituras traslativas de dominio de los inmuebles comprendidos en este artículo los escribanos que las autoricen deberán dejar expresa constancia del conocimiento por el adquirente de la afectación, o de su consentimiento del valor firme, según corresponda.

TÍTULO IX:

DE LA RETROCESIÓN

**Art.** 44.- Procede la acción de retrocesión cuando al bien expropiado se le diera un destino diferente al previsto en la Ley Expropiatoria, o cuando no se le diera destino alguno en un lapso de dos años computados desde que la expropiación quedó perfeccionada en la forma prevista en el art. 38 Ver Texto .

**Art.** 45.- Se entenderá que no hubo cambio de destino cuando el acordado al bien mantenga conexidad, interdependencia o correlación con el específicamente previsto en la ley.

Tampoco se considerará que medió cambio de destino si a una parte del bien expropiado se le asignara uno complementario o que tiende a integrar y facilitar el previsto por la ley.

**Art.** 46.- La retrocesión también procede en los supuestos en que el bien hubiere salido del patrimonio de su titular por el procedimiento de avenimiento.

**Art.** 47.- La retrocesión no sólo podrá lograrse por acción judicial, sino también mediante avenimiento o gestión administrativa.

**Art.** 48.- Cuando al bien no se le hubiere dado destino alguno dentro del plazo mencionado en el art. 44 Ver Texto , a efectos de la acción de retrocesión el expropiado deberá intimar fehacientemente al expropiante para que se asigne al bien el destino que motivó la expropiación, transcurridos seis meses desde esa intimación sin que el expropiante le asignara al bien ese destino, o sin que hubiera iniciado los respectivos trabajos, los que deberá mantener conforme a los planes de aprobados, la acción de retrocesión quedará expedita, sin necesidad de reclamo administrativo previo.

Si al bien se le hubiera dado un destino diferente al previsto en la Ley Expropiatoria, deberá formularse el reclamo administrativo previo.

**Art.** 49.- Si el bien expropiado hubiera cumplido la finalidad que motivó la expropiación, y por esa circunstancia quedare desvinculado de aquella finalidad, la retrocesión será improcedente.

**Art.** 50.- Es admisible la acción de retrocesión ejercida parcialmente sobre una parte del bien expropiado.

**Art.** 51.- Para que la retrocesión sea procedente se requiere:

a) Que la expropiación que la motive haya quedado perfeccionada, en la forma prevista en el art. 38 Ver Texto ;

b) Que se dé alguno de los supuestos que prevé el art. 44 Ver Texto y en su caso cumpliese lo dispuesto en el art. 48 Ver Texto ; y

c) Que el accionante, dentro del plazo que fije la sentencia, reintegre al expropiante lo que percibió de éste en concepto de precio o de indemnización, con la actualización que correspondiere. Si el bien hubiere disminuido de valor por actos del expropiante, esa disminución será deducida de lo que debe ser reintegrado por el accionante. Si el bien hubiera aumentado el valor por mejoras necesarias o útiles introducidas por el expropiante, el expropiado deberá reintegrar el valor de las mismas. Si el bien hubiere aumentado de valor por causas naturales, el reintegro de dicho valor no será exigido al accionante. Si el bien por causas naturales hubiere disminuido de valor, el monto de esa disminución no será deducido del valor a reintegrar por el accionante.

**Art.** 52.- Cuando la expropiación se hubiera llevado a cabo mediante avenimiento, la acción de retrocesión deberá promoverse ante el juez que debería haber entendido en el caso de que hubiera existido en juicio de expropiación.

**Art.** 53.- Si la expropiación se hubiere efectuado mediante juicio, la demanda de retrocesión debe radicarse ante el mismo juzgado que intervino en el juicio de expropiación.

**Art.** 54.- La acción de retrocesión corresponde únicamente al propietario expropiado y a sus sucesores universales.

**Art.** 55.- La retrocesión podrá ser demandada contra el expropiante, o contra éste y los terceros a quienes hubiere sido transferido el bien.

**Art.** 56.- El procedimiento aplicable en el juicio de retrocesión y la naturaleza de la litis, serán los establecidos para el juicio de expropiación.

**Art.** 57.- Si en la sentencia se hiciera lugar a la acción, deberá establecerse la suma que debe reintegrar el accionante por retrocesión y el plazo en que ha de hacerlo: asimismo se establecerá el plazo en que el expropiante debe devolver el bien expropiado.

**Art.** 58.- La devolución del bien al expropiado deberá hacerse libre de todo ocupante, cargas, gravámenes y servidumbre que hubieren tenido lugar después de la desposesión.

**Art.** 59.- La acción de retrocesión prescribe a los tres años, computados desde que, habiendo quedado perfeccionada la expropiación en la forma prevista en el art. 38 Ver Texto , al bien se le dio un destino ajeno al que la determinó, o desde que no habiéndosele dado al bien destino alguno, hubieren transcurrido los plazos previstos en los arts. 44 Ver Texto y 48 Ver Texto .

El trámite previsto en el art. 48 Ver Texto suspende el curso de esta prescripción.

TÍTULO X:

DE LA EXPROPIACIÓN IRREGULAR

**Art.** 60.- Procede la acción de expropiación irregular en los siguientes casos:

a) Cuando existiendo una ley que declara de utilidad pública un bien, el Estado lo toma sin haber cumplido con el pago de la respectiva indemnización;

b) Cuando, con motivo de la Ley de Declaración de Utilidad Pública, de hecho una cosa mueble o inmueble resulte indisponible por evidente dificultad o impedimento para disponer de ella en condiciones normales; y

c) Cuando el Estado imponga al derecho del titular de un bien o cosa una indebida restricción o limitación, que importen una lesión a su derecho de propiedad.

**Art.** 61.- No corresponde la acción de expropiación irregular cuando el Estado paraliza o no activa los procedimientos después de haber obtenido la posesión judicial del bien.

**Art.** 62.- El que accione por expropiación irregular está exento de la reclamación administrativa previa.

**Art.** 63.- En el juicio de expropiación irregular los valores indemnizables serán fijados en la misma forma prevista para el juicio de expropiación regular, contemplada en el art. 14 Ver Texto y ss. de la presente ley.

**Art.** 64.- Las normas del procedimiento judicial establecidas para la expropiación regular, rigen también para la expropiación irregular, en cuanto fueren aplicables.

**Art.** 65.- La acción de expropiación irregular prescribe a los cinco años, computados desde la fecha en que tuvieron lugar los actos o comportamientos del Estado que tornan viable la referida acción.

TÍTULO XI:

DE LA OCUPACIÓN TEMPORÁNEA

**Art.** 66.- Cuando por razones de utilidad pública fuese necesario el uso transitorio de un bien o cosa determinados, mueble o inmueble, o de una universalidad determinada de ellos, podrá recurrirse a la ocupación temporánea.

**Art.** 67.- La ocupación temporánea puede responder a una necesidad anormal, urgente, imperiosa, o súbita, o a una necesidad normal no inminente.

**Art.** 68.- La ocupación temporánea anormal, puede ser dispuesta directamente por la autoridad administrativa, y no dará lugar a indemnización alguna, salvo la reparación de los daños o deterioros que se causaren a la cosa o el pago de daños y perjuicios debido por el uso posterior de la cosa en menesteres ajenos a los que estrictamente determinaron su ocupación.

**Art.** 69.- Ninguna ocupación temporánea anormal tendrá mayor duración que el lapso estrictamente necesario para satisfacer la respectiva necesidad.

**Art.** 70.- La ocupación temporánea por razones normales, previa declaración legal de utilidad pública, podrá establecerse por avenimiento; de lo contrario deberá ser dispuesta por la autoridad judicial, a requerimiento de la Administración Pública.

**Art.** 71.- La ocupación temporánea normal apareja indemnización, siendo aplicables en subsidio las reglas vigentes en materia de expropiación.

La indemnización a que se refiere el presente artículo comprenderá el valor del uso y los daños y perjuicios ocasionados al bien o cosa ocupados así como también el valor de los materiales que hubiesen debido extraerse necesaria o indispensablemente con motivo de la ocupación.

**Art.** 72.- El bien ocupado no podrá tener otro destino que el que motivó su ocupación.

**Art.** 73.- Ninguna ocupación temporánea normal puede durar más de dos años; vencido este lapso, el propietario intimará fehacientemente la devolución del bien. Transcurridos treinta días desde dicha intimación sin que el bien hubiere sido devuelto, el propietario podrá exigir la expropiación del mismo, promoviendo una acción de expropiación irregular.

**Art.** 74.- El procedimiento judicial establecido para el juicio de expropiación es aplicable, en lo pertinente, al juicio de ocupación temporánea normal.

**Art.** 75.- Sin conformidad del propietario, el ocupante temporáneo de un bien o cosa, no puede alterar la sustancia del mismo ni extraer o utilizar de éste elementos que lo integren sin perjuicio del supuesto previsto en el art. 71 Ver Texto última parte.

**Art.** 76.- Si la ocupación temporánea afectase a terceros, los derechos de éstos se harán valer sobre el importe de la indemnización.

**Art.** 77.- Las cuestiones judiciales que promoviese el propietario del bien ocupado están exentas de reclamación administrativa previa.

**Art.** 78.- La acción del propietario del bien ocupado para exigir el pago de la indemnización prescribe a los cinco años, computados desde que el ocupante tomó posesión del bien.

**Art.** 79.- La acción del propietario del bien ocupado para requerir su devolución prescribe a los cinco años, computados desde que el ocupante debió devolver el bien.

TÍTULO XII (Título según ley 1210, art. 2):

DISPOSICIONES COMPLEMENTARIAS

**Art.** 80.- (Texto según ley 1210, art. 2 Ver Texto ) Cuando el Estado provincial o sus organismos autárquicos sean condenados en juicio de expropiación a pagar un precio superior al de la valuación fiscal y la obra implique una plusvalía para el resto del inmueble, se remitirán los antecedentes respectivos a la Dirección General de Rentas de la provincia de La Pampa para que reajuste su valuación, a los efectos del pago del impuesto inmobiliario, al valor que le asignara la sentencia judicial en un todo de acuerdo a lo que establezca la Ley de Contribución Territorial.

**Art.** 81.- (Texto según ley 1210, art. 2 Ver Texto ) Todo aquel que a título propietario, de simple poseedor, o a mérito de cualquier otro título, resistiere de hecho la ejecución de los estudios u operaciones técnicas que en virtud de la presente ley fuesen dispuestos por el Estado, se hará pasible de una multa que se fijará entre el 10 y el 1000 por ciento del salario mínimo vital móvil vigente por entonces, al arbitrio del juez, quien procederá a su aplicación, previo informe sumarísimo del hecho, sin perjuicio de oír al imputado y resolver como corresponde: la multa se exigirá por vía ejecutiva.

**Art.** 82.- (Texto según ley 1210, art. 2 Ver Texto ) La presente ley se aplicará exclusivamente a las causas que se inicien a partir de su vigencia. No obstante, en los juicios en trámite el expropiante podrá proponer la adquisición del bien por vía de avenimiento, en la forma prevista en el art. 19 Ver Texto .

**Art.** 83.- (Texto según ley 1210, art. 2 Ver Texto ) El Estado podrá adquirir inmuebles en forma directa sobre la base de títulos perfectos, por el valor que en cada caso dictamine el Tribunal de Tasaciones integrado de conformidad a lo dispuesto en el art. 10 Ver Texto .

**Art.** 83 bis.- (Incorporado por ley 2315, art. 28 Ver Texto (*)) En los casos en que queden remanentes de inmuebles expropiados o que se expropien, una vez cumplida la finalidad asignada en la ley respectiva, o cuando se asegure la subsistencia de un remanente sin interferir con dicha finalidad, el Poder Ejecutivo podrá disponer con otra finalidad, la utilización de tales remanentes en forma directa o a través de terceros, conforme se establezca reglamentariamente.

(*) El art. 43 Ver Texto de la ley 2315 establece: "La presente ley entrará en vigencia el 1 de enero de 2007...".

**Art.** 84.- (Texto según ley 1210, art. 2 Ver Texto ) Deróganse la ley 14 , el decreto ley 625/1972 y toda otra disposición legal que se oponga o contraríe la presente, excepción hecha del sistema establecido por la ley 858 Ver Texto y sus posteriores modificatorias o sustitutivas.

**Art.** 85.- (Texto según ley 1210, art. 2 Ver Texto ) La presente ley entrará en vigencia el día 2 de abril de 1979.

**Art.** 86.- (Texto según ley 1210, art. 2 Ver Texto ) Dése al registro oficial y al Boletín Oficial, comuníquese, publíquese y archívese.

TÍTULO XII (Título originario):

DISPOSICIONES COMPLEMENTARIAS

Art. 80.- (Texto originario) Todo aquel que a título de propietario, de simple poseedor, o a mérito de cualquier otro título, resistiere de hecho la ejecución de los estudios u operaciones técnicas que en virtud de la presente ley fuesen dispuestos por el Estado, se hará pasible de una multa que se fijará entre el 10% y el 1000% del salario mínimo vital móvil vigente por entonces, al arbitrio del juez, quien procederá a su aplicación, previo informe sumarísimo del hecho, sin perjuicio de oír al imputado y resolver como corresponde; la multa se exigirá por vía ejecutiva.

Art. 81.- (Texto originario) La presente ley se aplicará exclusivamente a las causas que se inicien a partir de su vigencia. No obstante, en los juicios en trámite el expropiante podrá proponer la adquisición del bien por vía de avenimiento, en la forma prevista en el art. 19 Ver Texto .

Art. 82.- (Texto originario) El Estado podrá adquirir inmuebles en forma directa sobre la base de títulos perfectos, por el valor que en cada caso dictamine el Tribunal de Tasaciones integrado de conformidad a lo dispuesto en el art. 10 Ver Texto .

Art. 83.- (Texto originario) Deróganse la ley 14 , el decreto ley 625/1972 y toda otra disposición legal que se oponga o contraríe la presente, excepción hecha del sistema establecido por la ley 858 Ver Texto y sus posteriores modificatorias o sustitutivas.

Art. 84.- (Texto originario) La presente ley entrará en vigencia el día 2 de abril de 1979.

Art. 85.- (Texto originario) Dése al registro oficial, etc.

**Etchegoyen - Rueda**

**Province of La Pampa**
**LAW 908**
**Expropriation**

**Expropriation Law. Sanction. Subjects. Subject matter. Procedure**
sanc. 13/02/1979 ; promul. 13/02/1979 ; publ. 23/02/1979

In view of the proceedings in file 2829/78, registered by the Government of the Province, and the authorization granted by resolutions 2347/1978 and 100/1979 of the Minister of the Interior, in exercise of the legislative powers conferred by the Military Junta,

**The Governor of the Province of La Pampa hereby enacts and promulgates with force of law:**

TITLE I:

QUALIFICATION OF PUBLIC UTILITY

**Article** 1 - The public utility which must serve as the legal basis for expropriation includes all cases in which the satisfaction of the common good, whether of a material or spiritual nature, is sought.

TITLE II:

SUBJECTS OF THE EXPROPRIATION RELATIONSHIP

**Article** 2 - The provincial State, municipalities and development commissions, provincial autarkic entities and provincial State companies or corporations may act as expropriators, insofar as they are expressly empowered to do so by their respective organic laws or by special laws.

Private persons, whether legal or natural persons, may act as expropriators when authorized by law or by administrative act based on law.

**Article** 3 - The expropriation action may be brought against any kind of public or private persons.

TITLE III:

EXPROPRIABLE OBJECT

**Article** 4 - All property suitable or necessary for the satisfaction of the "public utility, whatever its legal nature may be, whether it belongs to the public or private domain, whether it is property or not, may be subject to expropriation.

**Article** 5 - Expropriation shall refer specifically to specific properties. In such case, the declaration of public utility shall be made on the basis of technical reports referring to descriptive plans, cost analysis or other elements that support the plans and programs to be carried out by means of the expropriation of the property in question, and the direct link or connection of the property to be expropriated with the work, plan or project to be carried out must be established. In the event that the generic declaration of public utility refers to real estate, the different zones must also be determined, so that in the absence of individualization of each property, the areas affected by the aforementioned declaration are specified.

**Article** 6 - The subsoil is subject to expropriation regardless of the ownership of the land. Likewise, properties subject to the horizontal property regime are also subject to expropriation.

**Article** 7 - The declaration of public utility may include not only the properties that are necessary to achieve such purpose, but also all those whose reasonable use on the basis of specific plans and projects is materially or financially convenient for that purpose, so as to justify that the estimated benefits will be used concretely in the execution of the program that motivated the declaration of public utility.

**Article** 8 - In the case of the partial expropriation of a property, and if the part that remains unexpropriated is unsuitable for rational use or exploitation, the expropriated party may demand the expropriation of the whole of the property.

In urban lands, inadequate surpluses will be considered to be those that, as a result of expropriation, have frontage, depth or surface area less than that authorized for building by local ordinances or uses.

In the case of rural properties, the inadequate areas will be determined in each case, taking into account the economic unit for the area and the exploitation carried out by the expropriated party.

In the event of a settlement, the parties shall determine the inadequate area by mutual agreement, for the purpose of including it in the transfer of ownership; in the expropriation proceeding, such area shall be established by the judge.

**Section** 9 - When the expropriation of a property affects other properties with which it forms an organic unit, the owner or owners of the latter shall be entitled to bring an action for irregular expropriation if its architectural structure or functional suitability is affected or if the right of ownership is in any way injured under the terms of Section 60 See Text subsections b and c.

TITLE IV:

THE APPRAISAL COURT

**Article** 10 - The Appraisal Tribunal provided for in this Law shall be composed, when the provincial State is the expropriating party, of the Minister of Economy and Agrarian Affairs, the Undersecretary of Public Works and the General Director of Cadastre, with the former presiding.

When the expropriating party is a municipality or development commission, it shall be presided over by the head of the agency and composed of two technical experts appointed by the former.

In the case of an autarchic or decentralized entity, the tribunal shall be made up of three technical experts appointed by the Executive Branch at the proposal of the head of the agency, one of whom shall preside.

In all other cases, the Appraisal Tribunal shall be composed as set forth in paragraph 1 of this Article.

**Article** 11 - The Appraisal Tribunal shall validly meet with all of its members and its decisions shall be reasoned, and the grounds for the opinion and any dissenting opinions shall be transcribed.

**Art.** 12.- The performance in the Appraisal Tribunal shall be honorary, and its president may request from any public agency or private entity, the necessary reports.

**Article** 13 - When the Appraisal Tribunal is called upon to give its opinion at the request of the court, it shall also include a representative of the expropriated party, who may be appointed up to ten days after the opening of the case for trial. Case

otherwise, their intervention shall be dispensed with.

## TITLE V:

### COMPENSATION

***Compensation shall only include the objective value of the property and the damages that are a direct or immediate consequence of the expropriation***. Circumstances of a personal nature, emotional values, hypothetical profits, or the greater value that the work to be carried out may confer on the property shall not be taken into account. No loss of profit will be paid. The amount corresponding to the depreciation of the currency and the respective interest will be included in the compensation.

**Article** 15 - No compensation shall be paid for improvements made to the property subsequent to the act declaring it to be subject to expropriation, except for necessary improvements. For the purposes set forth in Section 29 See Text of the Constitution, it is hereby stated for the record that in no case shall compensation be paid for the value or greater value that the property has or may have as a consequence of public works for irrigation, hydraulic, hydroelectric, road, electric, gas, pipeline, communication or any other work that the Nation, the province or the municipality has carried out, carries out or plans to carry out.

**Article** 16 - Compensation shall be paid in cash, unless the expropriated party agrees that such payment be made in another kind of value.

**Article** 17 - If the owner or owners of the property to be expropriated are incapable or have any impediment to dispose of their property, the judicial authority may authorize the representative of the incapable or impeded person to transfer the property directly to the expropriating party.

**Article** 18 - Contracts entered into by the owner after the entry into force of the law declaring the property to be affected by expropriation and which imply the constitution of any right relating to the property shall not be considered valid with respect to the expropriating party.

## TITLE VI:

### OF THE OUT-OF-COURT PROCEDURE

**Article** 19 - Once the public utility of a property has been declared, the expropriating party may acquire it directly from the owner within the maximum values estimated for this purpose by the Appraisal Court for real estate, or by the competent technical offices to be designated in each case for property other than real estate. In the case of real estate, the maximum estimated value will be automatically increased by 10% for all purposes.

For such purpose, the expropriating party shall communicate the administrative decision to the Appraisal Court, which shall proceed to the study of the pertinent indemnities, adding the data of the owner and of the property.

**Article** 20 - The conclusions of the Appraisal Tribunal shall be notified to the owner, who shall be notified in order that he may, within fifteen working days, express his conformity or, as the case may be, the amount claimed.

**Article** 21 - The counter-offer shall be considered by the Appraisal Tribunal within ten working days, and if it is convenient, or if the offer is accepted, the agreement shall be concluded, and the pertinent administrative act shall be issued ordering the transfer of the property pursuant to the provisions of Article 41 See Text, and the pertinent payment shall be made.

**Article** 22 - In the event of rejection of the counter-offer, the interested party shall be notified of the well-founded decision to maintain the original offer or its modifications. The interested party must state within a period of

five working days only its conformity or disagreement. Silence will be interpreted as disagreement.

**Article** 23 - If the settlement procedure is successful, the interested party shall be paid, within 30 administrative working days, the agreed amount upon presentation of the relevant deeds. Any delay attributable to the administration shall entitle the expropriated party to receive the agreed amount with interest and increased in accordance with the monetary depreciation.

In order to establish the monetary depreciation, the amount stipulated shall be updated until the time of actual payment. In such case, interest shall be paid at the rate of 6% per annum, from the time of delivery of the property until the time of payment, on the total amount of the indemnity.

TITLE VII:

OF THE JUDICIAL PROCEEDING

**Article** 24 - In the absence of a settlement, the expropriating party shall bring the judicial action for expropriation.

The proceeding will be processed according to the rules of the summary trial, with the modifications established in this law and will not be subject to the jurisdiction of attraction of universal trials.

**Article** 25 - In the case of real property, the judge of first instance of the place where the property is located shall have jurisdiction.

In the case of property other than real estate, the judge of first instance of the place where the property is located or the judge of the defendant's domicile, at the plaintiff's choice, shall have jurisdiction.

In the case provided for in section 2 See Text paragraph 1 of this law, the provisions of section 5 clause 7 of the Code of Civil and Commercial Procedure shall apply.

**Article** 26 - Once the action has been filed, the defendant shall be notified for 15 days. If his domicile is unknown, edicts shall be published once in the Official Gazette and in a provincial newspaper.

(Text according to Law 973, Section 1 See Text) In the case of real property, the expropriating party shall deposit with the respective judge the amount of the valuation made for that purpose by the Appraisal Court. Once such consignment has been made, the judge shall grant him possession of the property.

If the expropriation concerns property other than real estate, the expropriating party shall obtain immediate possession of such property upon judicial consignment of the value determined by the technical offices mentioned in Article 19 See Text.

In both cases, the judicial consignment of the amount referred to in this article shall be made as long as the expropriated party has presented himself in the corresponding special proceedings.

The provisions of Article 28 See Text shall be applicable as applicable.

When the expropriated party does not appear in the proceedings, the required deposit shall be 5% of the value of the property subject to expropriation, and the expropriating party shall be obliged to deposit the balance of the total amount determined by the intervening judge in the respective judgment.

Article 27 - (Original text) In the case of real property, the expropriating party shall deposit with the respective judge the amount of the valuation made for such purpose by the Appraisal Court. Once such deposit has been made, the judge shall grant him possession of the property.

If the expropriation concerns property other than real estate, the expropriating party shall obtain immediate possession of the property, prior

judicial consignment of the value to be determined by the technical offices mentioned in art. 19 See Text .

The provisions of article 28 See Text shall be applicable, as applicable.

**Article** 28 - The expropriated party may withdraw the amount deposited upon proof of ownership, that the property does not recognize a mortgage or other real right and that it is not seized and that there are no restrictions on the free disposition of his property.

**Article** 29 - The dispute shall be recorded in the Land Registry, and from that moment the property shall be unavailable and unseizable.

Once judicial possession of the property has been granted, the leases shall be terminated, and the occupants shall be granted a period of 30 days for their eviction, which may be extended by the expropriator when, in his opinion, there are just reasons for doing so.

**Article** 31 - The action arising from any prejudice caused to third parties by lease agreements or other contracts entered into with the owner shall be heard in a separate trial.

**Article** 32 - If there are disputed facts, the case shall be opened to evidence for a period of forty days.

In the case of real estate, the judge, with respect to the indemnity provided for in Article 14 See Text and without prejudice to other evidentiary means, shall require the opinion of the Appraisal Court, which shall render its opinion within thirty days. Machinery installed or attached to the real estate shall be appraised in accordance with the following provisions.

For assets other than real estate and without prejudice to the intervention of the technical offices referred to in Article 19 See Text, expert evidence must be substantiated. Each party shall appoint an expert and the judge shall appoint a third, unless the interested parties agree on the appointment of only one.

**Article** 33 - The parties may argue on the evidence in writing within a common period of ten days, counted from the date of certification by the clerk on the production of the evidence.

Once the pleadings have been presented or the term to do so has expired, the judge shall call the case for sentencing, which shall be pronounced within 30 days of the date on which the sentence becomes final.

**Article** 34 - *(Text according to Law 1210, Article 1 See Text) The sentence shall fix the compensation taking into account the value of the property at the time of dispossession.*

The expropriating party shall be granted a term of thirty (30) working days from the date of the judicially approved liquidation for payment. The same period of thirty (30) working days shall be granted to the Treasury, as from the approval of the final settlement, to pay the fees of the intervening professionals to be borne by the expropriating party.

In order to establish the monetary depreciation, the amount recorded in the process shall be discounted from the fixed value, in accordance with the provisions of Article 27 See Text, and the resulting difference shall be updated. In such case, interest shall be paid at the rate of 6% per annum from the time of dispossession, on the total compensation or on the difference, as the case may be.

***The items comprising the indemnity shall not be subject to the payment of any tax or levy.***

(Original text) The judgment shall fix the compensation taking into account the value of the property at the time of dispossession.

In order to establish the monetary depreciation, the amount recorded in the process shall be discounted from the fixed value, in accordance with the provisions of Article 27 See Text, and the resulting difference shall be updated until the time of actual payment. In such case, interest shall be paid at the rate of 6% per annum from the time of dispossession until the time of payment, on the total amount of the indemnity or on the difference, as the case may be.

The items comprising the indemnity shall not be subject to the payment of any tax or levy.

**Article** 35.- The charge of the costs of the proceeding as well as the amount thereof and the professional fees shall be governed by the rules of the Code of Civil and Commercial Procedure and the respective tariff laws, without prejudice to the provisions of Law 826.

**Article** 36 - The parties may file all the appeals allowed by the civil and commercial procedural law in force.

**Article** 37.- No action by third parties may impede the expropriation or its effects. The rights of the claimant shall be deemed transferred from the thing to its price or to the compensation, and the thing shall remain free of any encumbrance.

**Article** 38 - The expropriating party may withdraw from the action filed as long as the expropriation has not been completed. The costs shall be borne by him.

It will be understood that the expropriation has been completed when the transfer of ownership to the expropriating party has taken place, which will be declared in a final judgment prior to the taking of possession and payment of compensation.

**Article** 39 - The forfeiture of the proceeding is inadmissible when in the trial the expropriating party has taken possession of the property and the expropriated party only questions the amount of the compensation.

**Article** 40 - The expropriated party's action to demand payment of the indemnity shall be barred after five years, computed as from the date on which the respective amount is firmly and definitively determined.

**Article** 41 - *For the transfer of ownership of real estate to the expropriating party, a public deed executed before a notary public shall not be required, and the registration in the respective Land Registry of the decree approving the settlement or, as the case may be, of the court decision granting the expropriation, shall be sufficient for this purpose. The expropriated party may not be required to pay any taxes, contributions or fees for the act of registration.*

TITLE VIII:

TERM OF THE EXPROPRIATION

**Article** 42 - The expropriation shall be deemed to have been abandoned - unless expressly provided for in the special law - if the lawsuit is not filed within two years from the effective date of the law authorizing it, in the case of expropriation of individually determined property; five years, in the case of property included within a determined area; and ten years in the case of property included in a generic list.

The preceding provision shall not apply in those cases in which the organic laws of the municipalities and the Provincial Directorate of Roads authorize the expropriation of the portion of the properties affected by the rectification or widening of streets and shoulders, by virtue of the respective ordinances, or provincial roads and routes, as the case may be.

**Article** 43 - The provisions contained in paragraph 1 of the preceding article shall not be applicable in cases of reservation of real estate for works or plans of deferred execution qualified by formal law.

In such case, the following rules shall apply:

a) The expropriating party, after declaring that it is a deferred expropriation, shall obtain the appraisal of the affected property with the intervention of the Appraisal Court and shall notify the owner of the resulting amount;

b) If the appraised value is accepted by the owner, any of the parties may ask for its judicial approval and once approved, such value shall be considered as firm for both parties, and may be readjusted only in accordance with the procedure set forth in paragraph d of this article;

c) If the owner does not accept the appraised value offered, the expropriating party must request the judicial determination of the value of the property, in accordance with the provisions of articles 14 See Text and 15

See Text;

d) The indemnity shall be readjusted in the manner provided for in Article 14 See Text ;

e) If during the processing of the case and before the final judgment is issued, the expropriating party needs to dispose immediately of the property, the provisions of articles 27 See Text , 28 See Text , and 29 See Text shall apply;

f) The affected real estate may be freely transferred to third parties, provided that the acquirer is aware of the assignment and agrees to the value set, if such value is determined. For such purpose, once such value is firm, it shall be communicated ex officio by the expropriating entity or, as the case may be, by the intervening court to the Real Property Registry. The certificates issued by the registry in relation to the affected property shall state such firm value. In the deeds transferring ownership of the real estate included in this Article, the notaries who authorize them shall expressly record the knowledge of the acquirer of the assignment, or of his consent to the firm value, as the case may be.

TITLE IX:

OF THE RETROCESSION

**Section** 44.- The action for retrocession is admissible when the expropriated property is used for a purpose other than that provided for in the Expropriation Law, or when it is not used for any purpose within a period of two years from the date on which the expropriation was completed as provided for in Section 38 See Text.

**Article** 45 - It shall be understood that there has been no change of use when the use of the property maintains a connection, interdependence or correlation with that specifically provided for in the law.

Nor will it be considered that there has been a change of use if part of the expropriated property is assigned a complementary use or one that tends to integrate and facilitate the use provided for by law.

**Article** 46 - Retrocession shall also be applicable in cases where the property has left the patrimony of its owner by means of a compromise procedure.

**Article** 47 - Retrocession may be achieved not only by judicial action, but also by compromise or administrative action.

**Article** 48 - When the property has not been assigned any purpose within the term mentioned in Article. 44 See Text, for the purposes of the retrocession action, the expropriated party shall give notice to the expropriating party to assign the property to the purpose for which the expropriation was made, after six months have elapsed from such notice without the expropriating party having assigned the property to such purpose, or without having started the respective works, which must be maintained in accordance with the approved plans, the retrocession action shall be expedited, without the need for prior administrative claim.

If the property has been used for a purpose other than that provided for in the Expropriation Law, a prior administrative claim must be filed.

**Article** 49 - If the expropriated property has fulfilled the purpose for which the expropriation was intended, and for that reason it is no longer related to that purpose, the retrocession shall be inadmissible.

**Article** 50 - The action of retrocession exercised partially on a part of the expropriated property is admissible.

**Art.** 51.- In order for the retrocession to be admissible, the following is required:

a)  That the expropriation that motivates it has been perfected, in the manner provided for in Article 38 See Text ;

b) That any of the cases provided for in section 44 See Text and, if applicable, comply with the provisions of section 48 See Text; and

c) That the claimant, within the term established by the judgment, reimburse the expropriator for what he received from the latter as price or compensation, with the corresponding update. If the value of the property has decreased as a result of acts of the expropriator, such decrease shall be deducted from the amount to be reimbursed by the claimant. If the value of the property has increased due to necessary or useful improvements made by the expropriator, the expropriated party must reimburse the value of such improvements. If the value of the property has increased due to natural causes, the claimant shall not be required to reimburse the value thereof. If the value of the property has decreased due to natural causes, the amount of such decrease shall not be deducted from the value to be reimbursed by the claimant.

**Article** 52 - When the expropriation has been carried out by agreement, the action for retrocession shall be brought before the judge who should have heard the case if there had been an expropriation proceeding.

**Article** 53 - If the expropriation has been effected by lawsuit, the claim for retrocession must be filed before the same court that intervened in the expropriation lawsuit.

**Article** 54 - The action of retrocession shall accrue only to the expropriated owner and his universal successors.

**Article** 55.- Retrocession may be sued against the expropriator, or against the latter and third parties to whom the property has been transferred**.**

**Article** 56 - The procedure applicable in the retrocession trial and the nature of the litigation shall be those established for the expropriation trial.

**Article** 57 - If the judgment upholds the action, the amount to be reimbursed by the claimant for retrocession and the term within which he must do so shall be established; the term within which the expropriating party must return the expropriated property shall also be established.

**Article** 58 - The return of the property to the expropriated party shall be free of all occupants, encumbrances, liens and easements that may have arisen after the dispossession.

**Section** 59.- The action for retrocession shall lapse after three years, calculated from the time when, the expropriation having been completed in the manner provided for in section 38 See Text, the property was given a use other than that which determined it, or from the time when the property had not been given any use whatsoever and the periods provided for in sections 44 See Text and 48 See Text had elapsed.

The procedure provided for in Article 48 See Text suspends the course of this statute of limitations.

TITLE X:

OF IRREGULAR EXPROPRIATION

**Article** 60 - An irregular expropriation action may be brought in the following cases:

a) When there is a law declaring a property to be of public utility, the State takes it without having complied with the payment of the respective compensation;

b) When, as a result of the Public Utility Declaration Law, a movable or immovable thing becomes unavailable due to evident difficulty or impediment to dispose of it under normal conditions; and

c) When the State imposes an undue restriction or limitation on the right of the owner of a good or thing, which would amount to an injury to his right of ownership.

**Article** 61.- An irregular expropriation action is not applicable when the State paralyzes or does not activate the proceedings after having obtained judicial possession of the property.

**Article** 62.- Whoever brings an action for irregular expropriation is exempt from the prior administrative claim.

**Article** 63 - In irregular expropriation proceedings, the compensable values shall be fixed in the same manner as provided for in regular expropriation proceedings, as contemplated in Article 14 See Text et seq. of this Law.

**Article** 64 - The rules of judicial procedure established for regular expropriation shall also apply to irregular expropriation, insofar as they are applicable.

**Article** 65 - An action for unlawful expropriation shall be barred after five years, calculated from the date on which the acts or conduct of the State rendering such action viable took place.

TITLE XI:
OF TEMPORARY OCCUPANCY

**Article** 66 - When, for reasons of public utility, the temporary use of a specific asset or thing, movable or immovable, or of a determined universality thereof, temporary occupation may be used.

**Article** 67 - Temporary occupation may respond to an abnormal, urgent, imperative or sudden need, or to a normal need that is not imminent.

**Article** 68 - Temporary abnormal occupation may be ordered directly by the administrative authority, and shall not give rise to any compensation whatsoever, except for the repair of any damage or deterioration caused to the thing or the payment of damages due to the subsequent use of the thing for purposes other than those which strictly determined its occupation.

**Article** 69 - No abnormal temporary occupation shall last longer than the time strictly necessary to satisfy the respective need.

**Article** 70 - Temporary occupation for normal reasons, after a legal declaration of public utility, may be established by agreement; otherwise, it shall be ordered by the judicial authority, at the request of the Public Administration.

**Article** 71 - Normal temporary occupation shall be subject to compensation, and the rules in force on expropriation shall be applicable as an alternative.

The compensation referred to in this article shall include the value of the use and damages caused to the property or thing occupied as well as the value of the materials that should have been extracted necessary or indispensable for the occupation.

**Article** 72 - The occupied property may not be used for any purpose other than that for which it was occupied.

**Article** 73 - No normal temporary occupation may last for more than two years; upon expiration of this period, the owner shall give notice of the return of the property. Once thirty days have elapsed since such notice without the property having been returned, the owner may demand its expropriation by filing an irregular expropriation action.

**Article** 74 - The judicial procedure established for expropriation proceedings shall be applicable, as appropriate, to normal temporary occupancy proceedings.

**Article** 75 - Without the consent of the owner, the temporary occupant of a property or thing may not alter the substance thereof, nor extract or use elements of which it is composed, without prejudice to the case provided for in Article 71, last part of the text.

**Article** 76 - If the temporary occupation affects third parties, the rights of such third parties shall be enforced on the amount of the indemnity.

**Article** 77 - Judicial matters brought by the owner of the occupied property are exempt from prior administrative claim.

**Article** 78 - The action of the owner of the occupied property to demand payment of the indemnity shall be barred after five years, calculated from the time the occupant took possession of the property.

**Article** 79 - The action of the owner of the occupied property to require its return shall be barred after five years, calculated from the date on which the occupant should have returned the property.

TITLE XII (Title according to law 1210, art. 2):

SUPPLEMENTARY PROVISIONS

**Article** 80.- (Text according to Law 1210, Art. 2 See Text) When the provincial State or its autonomous agencies are condemned in expropriation proceedings to pay a price higher than the tax valuation and the work implies a capital gain for the rest of the property, the respective records shall be sent to the General Revenue Office of the Province of La Pampa so that its valuation may be readjusted, for the purposes of payment of the real estate tax, to the value assigned by the court sentence in accordance with the provisions of the Law on Land Taxes.

**Article** 81.- (Text according to law 1210, art. 2 See Text ) Any person who, as owner, simple possessor, or by virtue of any other title, resists in fact the execution of the studies or technical operations that by virtue of the present law were ordered by the State, shall be liable to a fine to be fixed between 10 and 1000 percent of the minimum living wage in force at the time, at the discretion of the judge, who shall proceed to its application, after a summary report of the fact, without prejudice to hear the accused and decide accordingly: the fine shall be enforceable by executive action.

**Article** 82**. -** (Text according to Law 1210, Section 2 See Text) This Law shall apply exclusively to cases commenced as from the date of its entry into force. Notwithstanding the foregoing, in pending lawsuits the expropriating party may propose the acquisition of the property by way of compromise, in the manner provided for in section 19 See Text.

(Text according to Law 1210, Section 2 See Text) The State may acquire real estate directly on the basis of perfect titles, for the value determined in each case by the Appraisal Court, in accordance with the provisions of Section 10 See Text.

**Article** 83 bis.- (Incorporated by Law 2315, Section 28 See Text (\*)) In those cases in which there are remainders of expropriated or to be expropriated properties, once the purpose assigned in the respective law has been fulfilled, or when the subsistence of a remainder is ensured without interfering with such purpose, the Executive Branch may provide for the use of such remainders directly or through third parties, as established by regulation.

(\*) Art. 43 See Text of Law 2315 states: "The present law shall become effective on January 1, 2007...".

**Article** 84.- (Text according to law 1210, art. 2 See Text ) Law 14, decree law 625/1972 and any other legal provision that opposes or contradicts the present, with the exception of the system established by law 858 See Text and its subsequent amendments or substitutes, are hereby repealed.

**Article** 85.- (Text according to law 1210, section 2 See Text) This law shall enter into force on April 2, 1979.

**Article** 86.- (Text according to Law 1210, Section 2 See Text) Be filed with the official registry and the Official Gazette, communicated, published and filed.

TITLE XII (Original Title):

SUPPLEMENTARY PROVISIONS

Article 80.- (Original text) Any person who, as owner, simple possessor, or by virtue of any other title, resists in fact the execution of the studies or technical operations which by virtue of the present law are ordered by the State, shall be liable to a fine to be fixed between 10% and 1000% of the minimum mobile living wage in force at the time, at the discretion of the judge, who shall proceed to its application, after a summary report of the fact, without prejudice to hearing the accused and ruling accordingly; the fine shall b e  enforceable by means of executive action.

Article 81 - (Original text) This law shall apply exclusively to cases initiated as from the date of its entry into force. Notwithstanding the foregoing, in pending lawsuits the expropriating party may propose the acquisition of the property by way of compromise, in the manner provided for in Article 19 See Text.

Article 82.- (Original text) The State may acquire real estate directly on the basis of perfect titles, for the value determined in each case by the Appraisal Tribunal established pursuant to the provisions of Section 10 See Text.

Article 83 - (Original text) Law 14, Decree Law 625/1972 and any other legal provision that may oppose or contradict the present, with the exception of the system established by Law 858 See Text and its subsequent amendments or substitutes, are hereby repealed.

Article 84 - (Original text) This Act shall enter into force on April 2, 1979.

Article 85- (Original text) Be deposited in the official registry, etc.

Etchegoyen - Rueda

EXHIBIT 5



Norma: LEY490
Emisor: PODER EJECUTIVO PROVINCIAL (P.E.P.)
Jurisdicción: Provincia de Formosa
Sumario: Ley general de expropiación -- Derogación de la ley 82.
Fecha de Sanción: 23/04/1977
Fecha de Promulgación: 23/04/1977
Publicado en: BOLETIN OFICIAL 27/04/1977 - ADLA1977 - B, 2083
Cita Online: AR/LEGI/2XPZ

TITULO I -- Calificación de utilidad pública

Art. 1º -- La utilidad pública que debe servir de fundamento legal a la expropiación, comprende todos los casos en que se procure la satisfacción del bien común, sea éste de naturaleza material o espiritual.

TITULO II -- Sujetos de la relación expropiatoria

Art. 2º -- Podrá actuar como expropiante el Estado provincial, las municipalidades, las entidades autárquicas y las empresas del Estado, en tanto estén expresamente facultadas para ello por sus respectivas leyes orgánicas o por leyes especiales.

Art. 3º -- La acción expropiatoria podrá promoverse contra cualquier clase de persona de carácter público o privado.

Art. 4º -- Pueden ser beneficiarios de la expropiación no solo los entes públicos, sino también los sujetos privados, cuando a la utilidad particular acompañe también el interés público en medida predominante o, cuando menos, equivalente.

TITULO III -- Objeto expropiable

Art. 5º -- Pueden ser objeto de expropiación todos los bienes convenientes o necesarios para la satisfacción de la utilidad pública, cualquiera sea su naturaleza jurídica, pertenezcan al dominio público o al dominio privado, sean cosas o no.

Art. 6º -- La expropiación se referirá específicamente a bienes determinados.

También podrá referirse genéricamente a los bienes que sean necesarios para la construcción de una obra o la ejecución de un plan o proyecto; en tal caso la declaración de utilidad pública se hará en base a informes técnicos referidos a planos descriptivos, análisis de costos u otros elementos que fundamenten los planes y programas a concretarse mediante la expropiación de los bienes de que se trate, debiendo surgir la directa vinculación o conexión de los bienes a expropiar con la obra, plan o proyecto a realizar. En caso de que la declaración genérica de utilidad pública se refiriese a inmuebles, deberán determinarse, además las distintas zonas, de modo que a falta de individualización de cada propiedad, queden especificadas las áreas afectadas por la expresada declaración.

Art. 7º -- Es susceptible de expropiación el subsuelo con independencia de la propiedad del suelo.

Igualmente son susceptibles de expropiación los inmuebles sometidos al régimen de propiedad horizontal.

Art. 8º -- La declaración de utilidad pública podrá comprender no solamente los bienes que sean necesarios para lograr tal finalidad, sino también todos aquéllos, cuya razonable utilización en base a planos y proyectos específicos convenga material o financieramente a ese efecto, de modo que se justifique que las ventajas estimadas serán utilizadas concretamente en la ejecución del programa que motivó la declaración de utilidad pública.

Expropiación parcial

Art. 9º -- Si se tratase de expropiación parcial de un inmueble y la parte que quedase sin expropiar fuere inadecuada para un uso o explotación racional, el expropiado podrá exigir la expropiación de la totalidad del inmueble.

En los terrenos urbanos se considerarán sobrantes inadecuados los que por causa de la expropiación quedaren con frente, fondo o superficie inferiores a lo autorizado para edificar por las ordenanzas o usos locales.

Tratándose de inmuebles rurales, en cada caso serán determinadas las superficies inadecuadas, teniendo en cuenta la explotación efectuada por el expropiado.

En el supuesto de avenimiento, las partes de común acuerdo determinarán la superficie inadecuada, a efectos



de incluirla en la transferencia de dominio; en el juicio de expropiación dicha superficie será establecida por el juez.

Art. 10. -- Cuando la expropiación de un inmueble incida sobre otros con los que constituye una unidad orgánica, el o los propietarios de estos últimos estarán habilitados para accionar por expropiación irregular si se afectase su estructura arquitectónica, su aptitud funcional o de algún modo resultare lesionado el derecho de propiedad en los términos del art. 60, incs. b) y c).

TITULO IV -- La indemnización

Art. 11. -- La indemnización sólo comprenderá el valor objetivo del bien y los daños que sean una consecuencia directa e inmediata de la expropiación. No se tomarán en cuenta circunstancias de carácter personal, valores afectivos, ganancias hipotéticas, ni el mayor valor que puede conferir al bien la obra a ejecutarse. No se pagará lucro cesante, Integrarán la indemnización el importe correspondiere por depreciación de la moneda y el de los respectivos intereses.

Art. 12. -- No se indemnizarán las mejoras realizadas en el bien con posterioridad al acto que lo declaró afectado a expropiación, salvo las mejoras necesarias.

Art. 13. -- La indemnización se pagará en dinero en efectivo, salvo conformidad del expropiado para que dicho pago se efectúe en otra especie de valor.

Titular incapaz

Art. 14. -- Si el titular del bien a expropiar fuere incapaz o tuviere algún impedimento para disponer de sus bienes, la autoridad judicial podrá autorizar al representante del incapaz o impedido para la transferencia directa del bien al expropiante.

Contratos sobre el bien

Art. 15. -- No se considerarán válidos, respecto al expropiante, los contratos celebrados por el propietario con posterioridad a la vigencia de la ley que declaró afectado el bien a expropiación y que impliquen la constitución de algún derecho relativo al bien.

TITULO V -- Del procedimiento extrajudicial. Avenimiento expropiatorio

Art. 16. -- Declarada la utilidad pública de un bien o dispuesta su afectación cuando la clasificación lo sea con carácter genérico, el expropiante podrá adquirirlo directamente del propietario dentro del valor máximo que, en concepto de indemnización total, estime la Comisión de Tasaciones conforme a lo previsto en el título IV - De la indemnización. Tratándose de inmuebles el valor máximo estimado será incrementado automáticamente y por todo concepto en un diez por ciento.

A tal fin y con la antelación debida el funcionario mencionado en el art. 17 comunicará a la Comisión la decisión administrativa, procediendo ésta al estudio de las indemnizaciones pertinentes, iniciándose tantas actuaciones como sean los bienes afectados y agregándose, salvo imposibilidad, los datos y elementos de individualización del bien, datos personales y domicilio del o de los propietarios.

Ofrecimiento

Art. 17. -- Finalizado el trámite fijado por la disposición precedente, el que no podrá exceder del plazo de treinta (30) días hábiles administrativos desde la fecha de la comunicación al organismo, la Comisión de Tasaciones producirá su dictamen en la forma establecida en el título IV y remitirá el mismo al fiscal de Estado.

Este funcionario procederá notificar al o los interesados que el bien de su propiedad será expropiado, ofreciéndole la indemnización resultante de los estudios pertinentes, y se le intimará para que dentro del término de quince (15) días hábiles administrativos manifieste su conformidad o, en caso contrario, estime fundadamente el monto de la indemnización a que se considere con derecho y constituya domicilio especial a los efectos del trámite administrativo.

La notificación se hará en el domicilio real del interesado por medios fehacientes. Tratándose de inmuebles se tendrá por tal, si existiese, el domicilio fiscal fijado con respecto al bien. En caso de desconocer el domicilio se recurrirá directamente a la vía judicial.

En el ofrecimiento se transcribirá el art. 22 bajo la responsabilidad del funcionario actuante.

Contrapropuesta

Art. 18. -- Si en su presentación el interesado formulase contrapropuesta, será considerada por la Comisión, que elevará su informe en el plazo de cinco (5) días hábiles administrativos, desde el momento de la remisión de aquélla por el funcionario actuante. Será responsabilidad del funcionario actuante adoptar las medidas



necesarias para el cumplimiento de los plazos previstos en las instancias administrativas.

Acuerdo

Art. 19. -- Resultando equitativa o conveniente la estimación hecha por el expropiado, o aceptando éste la ofrecida, quedará concluido el acuerdo y se dictará el acto administrativo ordenando la transferencia del bien, conforme al art. 40.

Pago

Art. 20. -- En caso de resultar exitoso el trámite de avenimiento le será pagado al interesado, dentro de los treinta (30) días hábiles administrativos, el importe acordado contra la presentación de los títulos pertinentes. La demora imputable a la administración dará derecho al expropiado a percibir solamente intereses al tipo oficial cobrados por el Banco de la Provincia de Formosa.

Rechazo de la contrapropuesta

Art. 21. -- En caso de no considerarse equitativa o conveniente la contrapropuesta efectuada por el interesado, se le notificará la decisión fundada de mantener el ofrecimiento originario o las modificaciones de que éste hubiere sido objeto.

El interesado deberá manifestar dentro del plazo de tres (3) días hábiles administrativos, únicamente su conformidad o disconformidad. El silencio será interpretado como disconformidad.

Falta de respuesta al ofrecimiento

Art. 22. -- La falta de respuesta por parte del expropiado al trámite de avenimiento, salvo casos debidamente justificados o fundados, dará lugar a que las costas del juicio de expropiación sean soportadas en el orden causado, aun cuando, conforme al art. 41 de la presente ley, debieran ser a cargo de la expropiante.

TITULO VI -- Comisión de Tasaciones

Art. 23. -- La Comisión de Tasaciones será presidida por el ministro de Obras y Servicios Públicos y la integrarán los directores de Catastro, Arquitectura y Estadística y Censos. Cuando la naturaleza del bien expropiado lo exija podrán incorporarse a requerimiento del presidente, otros dos representantes de organismos oficiales con competencia en la materia de que se trate.

Funcionará en jurisdicción del Ministerio de Obras y Servicios Públicos y tendrá su asiento en la Dirección de Catastro. El personal necesario será asignado por el presidente y el que establezca la ley de presupuesto.

Art. 24. -- Sesionará válidamente con la totalidad de sus miembros y sus decisiones serán motivadas, transcribiéndose en el dictamen los fundamentos que lo informan y las disidencias, si existieran.

Art. 25. -- Para el cumplimiento de sus fines podrá requerir la colaboración e informes necesarios de los organismos públicos así como de entidades privadas representativas de su actividad.

Art. 26. -- Cuando la Comisión de Tasaciones deba dictaminar a requerimiento judicial en la oportunidad prevista en el art. 29, se integrará además con un representante del expropiado que podrá designarse hasta diez días después de la apertura de la causa a prueba. Si no lo hiciera dentro de ese período se prescindirá de su intervención.

TITULO VII -- Del procedimiento judicial

Art. 27. -- No habiendo avenimiento, el expropiante deberá promover la acción judicial de expropiación.

Proceso

Art. 28. -- El proceso tramitará por juicio sumario, con las modificaciones establecidas por esta ley y no estará sujeto al fuero de atracción de los juicios universales.

Promovida la acción, se dará traslado por quince (15) días al demandado. Si se ignorare su domicilio, se publicarán edictos durante cinco (5) días en el Boletín Oficial y en el diario de mayor circulación de la Provincia.

En la contestación de la demanda el expropiado deberá limitar sus pretensiones expresándolas en forma concreta, considerándose, caso contrario, que acepta el dictamen que produzca la Comisión de Tasaciones.

Las partes podrán alegar por escrito sobre la prueba dentro del plazo común de diez días, computándose desde que el secretario certifique de oficio sobre la producción de la misma.

Presentados los alegatos o vencido el plazo para hacerlo, el juez llamará autos para sentencia, la que deberá pronunciarse dentro de los treinta (30) días de quedar firme aquella providencia.

Las partes podrán interponer todos los recursos admitidos por el Código Procesal Civil y Comercial.



Comisión de Tasaciones

Art. 29. -- Clausurado el término ordinario de prueba se dará intervención a la Comisión de Tasaciones, la que deberá expedirse dentro de los treinta (30) días del requerimiento judicial. Este plazo podrá ser ampliado por otro igual a pedido del órgano citado. Deberá tenerse presente lo dispuesto por el art. 26.

Sentencia

Art. 30. -- La sentencia fijará la indemnización teniendo en cuenta el valor del bien al tiempo de la desposesión.

Para establecer la depreciación monetaria, se descontará del valor fijado la suma consignada en el juicio, conforme con lo previsto en el art. 31, efectuándose la actualización sobre la diferencia resultante hasta el momento del efectivo pago.

En tal caso, los intereses se liquidarán a la tasa del seis por ciento anual, desde el momento de la desposesión hasta el del pago, sobre el total de la indemnización o sobre la diferencia, según corresponda.

Los rubros que compongan la indemnización no estarán sujetos al pago de impuesto o gravamen alguno.

Posesión

Art. 31. -- Si se tratare de bienes inmuebles, el expropiante deberá consignar ante el juez respectivo el 80 % del importe de la valuación que al efecto hubiese practicado la Comisión de Tasaciones. Efectuada dicha consignación, el juez le otorgará la posesión del bien.

Si la expropiación versase sobre bienes que no sean inmuebles, el expropiante obtendrá la posesión inmediata de ellos, previa consignación judicial del valor que se hubiere fijado por el organismo administrativo.

Retiro de la suma depositada

Art. 32. -- El expropiado podrá retirar la suma depositada previa justificación de su dominio, que el bien no reconoce hipoteca u otro derecho real y que no está embargado ni pesan sobre él restricciones a la libre disposición de sus bienes.

Anotación de la litis

Art. 33. -- La litis se anotará en el Registro de la Propiedad, siendo desde ese momento indisponible e inembargable el bien.

Arrendamientos

Art. 34. -- Otorgada la posesión judicial del bien, quedarán resueltos los arrendamientos, acordándose a los ocupantes un plazo de treinta (30) días para su desalojo, que el expropiante podrá prorrogar cuando a su juicio existan justas razones que así lo aconsejen.

Perjuicios a terceros

Art. 35. -- La acción emergente de cualquier perjuicio que se irrogase a terceros por contratos de locación u otros que tuvieren celebrados con el propietario, se ventilará en juicio por separado.

Acciones de terceros

Art. 36. -- Ninguna acción de terceros podrá impedir la expropiación ni sus efectos. Los derechos del reclamante se considerarán transferidos de la cosa a su precio o a la indemnización, quedando aquélla libre de todo gravamen.

Desistimiento

Art. 37. -- Mientras no haya sentencia firme, el expropiante podrá desistir de la expropiación, siendo las costas en el orden causado.

Caducidad de instancia

Art. 38. -- Es improcedente la caducidad de la instancia cuando en el juicio el expropiante haya tomado posesión del bien, judicial extrajudicialmente.

Prescripción

Art. 39. -- La acción del expropiado para exigir el pago de la indemnización prescribe a los cinco (5) años, computados desde que el monto respectivo quede determinado con carácter firme y definitivo.

Transferencia del dominio

Art. 40. -- Para la transferencia del dominio de inmuebles al expropiante, no se requerirá escritura pública otorgada ante escribano, siendo suficiente al efecto la inscripción en el respectivo Registro de la Propiedad del



decreto que apruebe el avenimiento o, en su caso, de la sentencia judicial que haga lugar a la expropiación.

Costas

Art. 41. -- Las costas del juicio de expropiación serán soportadas:

1. Por el expropiante:

Cuando la indemnización que se fijare excediere a la ofrecida más de la mitad de la diferencia entre la suma ofrecida y la reclamada.

2. En el orden causado:

a) Cuando la indemnización no excediere de la cantidad señalada en el apartado anterior;

b) Cuando el expropiado no hubiese respondido al trámite de avenimiento o cuando en el mismo no hubiere expresado la suma pretendida;

c) Cuando el expropiado no hubiese contestado la demanda o en la misma no hubiere expresado la suma pretendida no obstante la presunción del art. 28.

d) Cuando por razones fundadas y justificadas a juicio del Tribunal, aducidas en el trámite del avenimiento, no hubiere sido posible llegar a un acuerdo previo y siempre que mediare allanamiento en sede judicial.

e) En el caso del art. 37.

f) En el caso del art. 9º cuando la exigencia no se hubiere formulado en sede administrativa.

3. Por la expropiada:

a) Cuando no siendo el caso contemplado en el apartado 2., d) de este artículo, se allanare a la demanda.

b) Cuando la indemnización se fijare en igual suma que la ofrecida por el expropiante.

TITULO VIII -- Plazo de la expropiación. Abandono

Art. 42. -- Se tendrá por abandonada la expropiación --salvo disposición expresa de ley especial-- si el expropiante no promueve el juicio dentro de los dos años de vigencia de la ley que la autorice, cuando se trate de llevarla a cabo sobre bienes individualmente determinados; de cinco años, cuando se trate de bienes comprendidos dentro de una zona determinada; y de diez años cuando se trate de bienes comprendidos en una enumeración genérica. No regirá la disposición precedente en los casos en que las leyes orgánicas de las municipalidades autoricen a éstas a expropiar la porción de los inmuebles afectados a rectificaciones o ensanches de calles y ochavas, en virtud de las ordenanzas respectivas.

Expropiación diferida

Art. 43. -- Las disposiciones contenidas en el primer párrafo del artículo anterior no serán aplicables en los casos de reserva de inmuebles para obras o planes de ejecución diferida, calificados por ley formal.

En tal supuesto se aplicarán las siguientes normas:

a) El expropiante, luego de declarar que se trata de una expropiación diferida, obtendrá la tasación del bien afectado con intervención de la Comisión de Tasaciones y notificará al propietario el importe resultante.

b) Si el valor de tasación fuere aceptado por el propietario, cualquiera de las partes podrá pedir su homologación judicial y, una vez homologado, dicho valor será considerado como firme para ambas partes, pudiendo reajustarse solo de acuerdo con el procedimiento previsto en el inc. d) del presente artículo.

c) Si el propietario no aceptara el valor de tasación ofrecida, el expropiante deberá solicitar judicialmente la fijación del valor del bien, de conformidad con las normas de los arts. 11 y 12. Serán de aplicación las normas contenidas en el capítulo VII en lo que resultaren pertinentes.

d) La indemnización será reajustada en la forma prevista en el art. 11.

e) Si durante la tramitación del caso y antes de que se dicte la sentencia definitiva el expropiante necesitara disponer en forma inmediata del inmueble, regirá lo dispuesto en los arts. 31, 32 y 33.

f) Los inmuebles afectados podrán ser transferidos libremente a terceros, a condición de que el adquirente conozca la afectación y consienta el valor fijado, si ésta estuviere determinada. Con tal finalidad una vez firme dicho valor, será comunicado de oficio por el ente expropiante o, en su caso, por el juzgado interviniente al Registro de la Propiedad Inmueble que corresponda. Los certificados que expida el Registro en relación con el inmueble afectado deberán hacer constar ese valor firme. En las escrituras traslativas de dominio de los inmuebles comprendidos en este artículo los escribanos que las autoricen deberán dejar expresa constancia del conocimiento por el adquirente de la afectación o de su consentimiento del valor firme, según corresponda.



TITULO IX -- De la retrocesión

Art. 44. -- Procede la acción de retrocesión cuando al bien expropiado se le diere un destino diferente al previsto en la ley expropiatoria, o cuando no se le diere destino alguno en un lapso de dos años computados desde que la expropiación quedó perfeccionada con el pago de la indemnización.

Art. 45. -- Se entenderá que no hubo cambio de destino cuando el acordado al bien mantenga conexidad, interdependencia o correlación con el específicamente previsto en la ley.

Tampoco se considerará que medió cambio de destino si a una parte del bien expropiado se le asignara uno complementario o que tienda a integrar y facilitar el previsto por la ley.

Art. 46. -- La retrocesión también procede en los supuestos en que el bien hubiere salido del patrimonio de su titular por el procedimiento de avenimiento.

Art. 47. -- La retrocesión no solo podrá lograrse por acción judicial, sino también mediante avenimiento o gestión administrativa.

Art. 48. -- Cuando al bien no se le hubiere dado destino alguno dentro del plazo mencionado en el art. 44, a efectos de la acción de retrocesión el expropiado deberá intimar fehacientemente al expropiante para que le asigne al bien el destino que motivó la expropiación.

Transcurridos seis meses desde esa intimación sin que el expropiante le asignare al bien ese destino, o sin que hubiere iniciado los respectivos trabajos, los que deberá mantener conforme a los planes de obras aprobados, la acción de retrocesión quedará expedita, sin necesidad de reclamo administrativo previo.

Si al bien se le hubiera dado un destino diferente al previsto en la ley expropiatoria, deberá formularse el reclamo administrativo previo.

Art. 49. -- Si el bien expropiado hubiere cumplido la finalidad que motivó la expropiación, y por esa circunstancia quedara desvinculada de aquella finalidad, la retrocesión será improcedente.

Art. 50. -- Es admisible la acción de retrocesión ejercida parcialmente sobre una parte del bien expropiado.

Art. 51. -- Para que la retrocesión sea procedente se requiere:

a) Que la expropiación que la motiva haya quedado perfeccionada, en la forma prevista en el art. 44.

b) Que se den algunos de los supuestos que prevé dicho artículo y en su caso se cumpliese lo dispuesto en el art. 48.

c) Que el accionante, dentro del plazo que fija la sentencia, reintegre al expropiante lo que percibió de éste en concepto de precio o de indemnización, con la actualización que correspondiere. Si el bien hubiere disminuido de valor por actos del expropiante, esa disminución será deducida de lo que debe ser reintegrado por el accionante.

Si el bien hubiere aumentado de valor por mejoras necesarias o útiles introducidas por el expropiante, el expropiado deberá reintegrar el valor de las mismas. Si el bien hubiere aumentado de valor por causas naturales, el reintegro de dicho valor no será exigido al accionante. Si el bien, por causas naturales hubiere disminuido de valor, el monto de esa disminución no será deducido del valor a reintegrar por el accionante.

Art. 52. -- Cuando la expropiación se hubiere llevado a cabo mediante avenimiento, la acción de retrocesión deberá promoverse ante el juez que debería haber entendido en el caso de que hubiere existido un juicio de expropiación.

Art. 53. -- Si la expropiación se hubiere efectuado mediante juicio, la demanda de retrocesión debe radicarse ante el mismo juzgado que intervino en el juicio de expropiación.

Art. 54. -- La acción de retrocesión corresponde únicamente al propietario expropiado y a sus sucesores universales.

Art. 55. -- La retrocesión podrá ser demandada contra el expropiante o contra éste y los terceros a quienes hubiere sido transferido el bien.

Art. 56. -- El procedimiento aplicable en el juicio de retrocesión y la naturaleza de la litis, serán los establecidos para el juicio de expropiación.

Art. 57. -- Si en la sentencia se hiciere lugar a la acción, deberá establecerse la suma que debe reintegrar el accionante por retrocesión y el plazo en que ha de hacerlo; asimismo se establecerá el plazo en que el expropiante debe devolver el bien expropiado.

Art. 58. -- La devolución del bien al expropiado deberá hacerse libre de todo ocupante, cargas, gravámenes y



servidumbre que hubiere tenido lugar después de la desposesión.

Art. 59. -- La acción de retrocesión prescribe a los tres años, computados desde que, habiendo quedado perfeccionada la expropiación en la forma prevista en el art. 44, al bien se le dio un destino ajeno al que la determinó, o desde que no habiéndosele dado al bien destino alguno, hubieran transcurrido los plazos previstos en los arts. 44 y 48.

El trámite previsto en el art. 48 suspende el curso de esta prescripción.

TITULO X -- De la expropiación irregular

Art. 60. -- Procede la acción de expropiación irregular en los siguientes casos:

a) Cuando existiendo una ley que declara de utilidad pública un bien, el Estado lo toma sin haber cumplido con el pago de la respectiva indemnización.

b) Cuando, con motivo de la ley de declaración de utilidad pública, de hecho una cosa mueble resulte indisponible por evidente dificultad o impedimento para disponer de ella en condiciones normales.

c) Cuando el Estado imponga al derecho del titular de un bien o cosa una indebida restricción o limitación que importen una lesión a su derecho de propiedad, existiendo ley que declare la utilidad pública.

Art. 61. -- No corresponde la acción de expropiación irregular cuando el Estado paraliza o no activa los procedimientos después de haber obtenido la posesión judicial del bien.

Art. 62. -- El que accione por expropiación irregular está exento de la reclamación administrativa previa.

Art. 63. -- En el juicio de expropiación irregular los valores indemnizables serán fijados en la misma forma prevista para el juicio de expropiación regular, contemplada en los arts. 11 y siguientes de la presente ley.

Art. 64. -- Las normas del procedimiento judicial establecidas para la expropiación regular, rigen también para la expropiación irregular, en cuanto fueran aplicables.

Art. 65. -- La acción de expropiación irregular prescribe a los cinco años, computados desde la fecha en que tuvieron lugar los actos o comportamientos del Estado que tornen viable la referida acción.

TITULO XI -- De la ocupación temporánea

Art. 66. -- Cuando por razones de utilidad pública fuese necesario el uso transitorio de un bien o cosa determinada, mueble o inmueble, o de una universalidad determinada de ellos, podrá recurrirse a la ocupación temporánea.

Art. 67. -- La ocupación temporánea puede responder a una necesidad anormal, urgente, imperiosa, o súbita, o a una necesidad normal no inminente.

Art. 68. -- La ocupación temporánea anormal, puede ser dispuesta directamente por la autoridad administrativa, y no dará lugar a indemnización alguna, salvo la reparación de los daños o deterioros que se causaren a la cosa o el pago de daños y perjuicios debidos por el uso posterior de la cosa en menesteres ajenos a los que estrictamente determinaron su ocupación.

Art. 69. -- Ninguna ocupación temporánea anormal tendrá mayor duración que el lapso estrictamente necesario para satisfacer la respectiva necesidad.

Art. 70. -- La ocupación temporánea por razones normales, previa declaración legal de utilidad pública, podrá establecerse por avenimiento; de lo contrario deberá ser dispuesta por la autoridad judicial, a requerimiento de la Administración pública.

Art. 71. -- La ocupación temporánea normal apareja indemnización siendo aplicable en subsidio las reglas vigentes, en materia de expropiación. La indemnización a que se refiere el presente artículo comprenderá el valor del uso y los daños y perjuicios ocasionados al bien o cosa ocupados así como también el valor de los materiales que hubiesen debido extraerse necesaria e indispensablemente con motivo de la ocupación.

Art. 72. -- El bien ocupado no podrá tener otro destino que el que motivó su ocupación.

Art. 73. -- Ninguna ocupación temporánea normal puede durar más de dos años; vencido este lapso, el propietario intimará fehacientemente la devolución del bien. Transcurridos treinta días desde dicha intimación sin que el bien hubiere sido devuelto, el propietario podrá exigir la expropiación del mismo, promoviendo una acción de expropiación irregular.

Art. 74. -- El procedimiento judicial establecido para el juicio de expropiación es aplicable, en lo pertinente, al juicio de ocupación temporánea normal.

Art. 75. -- Sin conformidad del propietario, el ocupante temporáneo de un bien o cosa, no puede alterar la



sustancia del mismo ni extraer o utilizar de éste elementos que lo integren sin perjuicio del supuesto previsto en el art. 71, última parte.

Art. 76. -- Si la ocupación temporánea afectase a terceros, los derechos de éstos se harán valer sobre el importe de la indemnización.

Art. 77. -- La acción del propietario del bien ocupado para exigir el pago de la indemnización prescribe a los cinco años computados desde que el ocupante tomó posesión del bien.

TITULO XII -- Disposiciones complementarias

Art. 78. -- Todo aquel que a título de propietario, de simple poseedor, o a mérito de cualquier otro título, resistiere de hecho la ejecución de los estudios u operaciones técnicas que en virtud de la presente ley fuesen dispuestos por el Estado, se hará pasible de una multa del 10 % al 1000 % del salario mínimo vital móvil vigente por entonces, al arbitrio del juez, quien procederá a su aplicación, previo informe sumarísimo del hecho, sin perjuicio de oír al imputado y resolver como corresponda.

La multa se exigirá por vía ejecutiva.

Art. 79. -- La presente ley se aplicará, exclusivamente, a las causas que se inicien a partir de su vigencia. No obstante, en los juicios en trámite el expropiante podrá proponer la adquisición del bien por vía de avenimiento, en la forma prevista en el título V. A tal efecto, la Administración lo manifestará en el juicio correspondiente, suspendiéndose desde entonces los trámites del mismo hasta tanto se presente el acto administrativo que resuelva el trámite extrajudicial.

En caso de avenimiento se procederá conforme a lo dispuesto por el art. 40, desistiéndose del proceso e imponiéndose las costas en el orden causado.

Art. 80. -- Derógase la ley 82 y toda otra disposición que se oponga a la presente.

Art. 81. -- Comuníquese, etc.



Rule: LAW490
Issuer: PODER EJECUTIVO PROVINCIAL (P.E.P.)
Jurisdiction: Province of Formosa
Summary: General Expropriation Law -- Repeal of Law 82. Date of
Approval: April 23, 1977
Date of Enactment: 04/23/1977
Published in: OFFICIAL GAZETTE 27/04/1977 - ADLA1977 - B, 2083.
Online Citation: AR/LEGI/2XPZ

TITLE I -- Qualification of public utility

Article 1 -- The public utility that must serve as the legal basis for expropriation includes all cases in which the satisfaction of the common good, whether of a material or spiritual nature, is sought.

TITLE II -- Subjects of the expropriation relationship

Article 2 -- The provincial State, municipalities, autarkic entities and State enterprises may act as expropriators, insofar as they are expressly empowered to do so by their respective organic laws or by special laws.

Article 3 - The expropriation action may be brought against any kind of person, whether public or private.

Article 4 -- Not only public entities may be beneficiaries of expropriation, but also private parties, when the private utility is accompanied by the public interest to a predominant or at least equivalent extent.

TITLE III -- Expropriable subject matter

Article 5 -- All property convenient or necessary for the satisfaction of the public utility may be subject to expropriation, regardless of its legal nature, whether it belongs to the public domain or to the private domain, whether it is property or not.

Article 6 - Expropriation shall refer specifically to specific assets.

In such case, the declaration of public utility shall be made on the basis of technical reports referring to descriptive plans, cost analysis or other elements that support the plans and programs to be carried out by means of the expropriation of the properties in question, and the direct link or connection of the properties to be expropriated with the work, plan or project to be carried out must be established. In the event that the generic declaration of public utility refers to real estate, the different zones must also be determined, so that in the absence of individualization of each property, the areas affected by the aforementioned declaration must be specified.

Article 7 -- The subsoil is subject to expropriation regardless of the ownership of the land. Likewise,

properties subject to the horizontal property regime are also subject to expropriation.

Article 8 - The declaration of public utility may include not only the assets that are necessary to achieve such purpose, but also all those whose reasonable use, based on specific plans and projects, is materially or financially convenient for such purpose, so as to justify that the estimated advantages will be concretely used in the execution of the program that motivated the declaration of public utility.

Partial expropriation

Article 9 - In the case of partial expropriation of a property and the part that remains unexpropriated is inadequate for a rational use or exploitation, the expropriated party may demand the expropriation of the entire property.

In urban lands, inadequate surpluses will be considered to be those that, as a result of expropriation, have frontage, depth or surface area less than that authorized for building by local ordinances or uses.

In the case of rural properties, the inadequate areas will be determined in each case, taking into account the exploitation carried out by the expropriated party.

In the event of an agreement, the parties by mutual agreement will determine the inadequate surface area, in order to include it in the transfer of ownership; In the expropriation trial, said surface area will be established by the judge.

Article 10. -- When the expropriation of a property affects other properties with which it forms an organic unit, the owner or owners of the latter shall be entitled to bring an action for irregular expropriation if its



architectural structure or functional suitability is affected or if the right of ownership is in any way injured under the terms of section 60, subsections b) and c).

TITLE IV -- Indemnification

Article 11. -- Compensation shall only include the objective value of the property and the damages that are a direct and immediate consequence of the expropriation. No account shall be taken of circumstances of a personal nature, emotional values, hypothetical profits, or the greater value that the work to be carried out may confer on the property. No loss of profit will be paid. The amount corresponding to the depreciation of the currency and the respective interest will be included in the indemnity.

Article 12. -- No compensation shall be paid for improvements made to the property subsequent to the act declaring it to be subject to expropriation, except for necessary improvements.

Article 13. -- Compensation shall be paid in cash, unless the expropriated party agrees that such payment be made in another kind of value.

Incapable holder

Article 14 -- If the owner of the property to be expropriated is incapable or has any impediment to dispose of his property, the judicial authority may authorize the representative of the incapable or impeded person to transfer the property directly to the expropriator.

Contracts on the property

Article 15. -- Contracts entered into by the owner after the law declaring the property to be affected by expropriation and which imply the constitution of any right relating to the property shall not be considered valid with respect to the expropriator.

TITLE V -- Of the extrajudicial procedure. Expropriation settlement

Article 16. -- Once the public utility of an asset has been declared, or its assignment has been ordered when the classification is generic in nature, the expropriating party may acquire it directly from the owner within the maximum value that, as total compensation, is estimated by the Appraisal Commission in accordance with the provisions of Title IV - Compensation. In the case of real estate, the estimated maximum value will be automatically increased by ten percent for all items.

To this end and with due notice, the official mentioned in Article 17 shall communicate the administrative decision to the Commission, which shall proceed to study the pertinent indemnities, initiating as many proceedings as there are properties affected and adding, unless impossible, the data and elements of individualization of the property, personal data and domicile of the owner or owners.

Offering

Article 17. -- Once the procedure set forth in the preceding provision has been completed, which may not exceed thirty (30) administrative working days from the date of communication to the agency, the Appraisal Commission shall issue its opinion in the manner set forth in Title IV and shall forward the same to the State Prosecutor.

This official will proceed to notify the interested party or parties that their property will be expropriated, offering them the compensation resulting from the pertinent studies, and they will be notified so that within a term of fifteen (15) administrative business days they may express their conformity or, if not, estimate the amount of the compensation to which they consider themselves entitled and establish a special domicile for the purposes of the administrative procedure.

The notification shall be made at the real domicile of the interested party by reliable means. In the case of real estate, the tax domicile fixed with respect to the property shall be considered as such, if it exists. If the domicile is not known, recourse shall be had directly to the courts.

Art. 22 shall be transcribed in the offer under the responsibility of the acting officer.

Counterproposal

Article 18 -- If the interested party submits a counter-proposal, it shall be considered by the Commission, which shall submit its report within five (5) administrative working days from the time of its submission by the acting officer. It shall be the responsibility of the acting officer to adopt the measures



necessary to comply with the deadlines established in the administrative instances.

Agreement

Article 19. -- If the estimate made by the expropriated party is equitable or convenient, or if the latter accepts the estimate offered, the agreement shall be concluded and the administrative act ordering the transfer of the property shall be issued, pursuant to section 40.

Payment

Article 20 - In the event that the settlement procedure is successful, the interested party shall be paid, within thirty (30) administrative working days, the agreed amount upon presentation of the relevant deeds. The delay attributable to the administration shall entitle the expropriated party to receive only interest at the official rate charged by the Bank of the Province of Formosa.

Rejection of the counterproposal

Article 21. -- In the event that the counter-proposal made by the interested party is not considered equitable or advisable, he shall be notified of the well-founded decision to maintain the original offer or the modifications made to it.

The interested party must express, within three (3) administrative working days, only its conformity or disagreement. Silence shall be interpreted as disagreement.

Lack of response to the offer

Article 22. -- Failure on the part of the expropriated party to respond to the settlement procedure, except in duly justified or well-founded cases, shall result in the costs of the expropriation proceeding being borne in the order caused, even though, pursuant to section 41 of this Law, they should be borne by the expropriating party.

TITLE VI -- Appraisal Committee

Article 23. -- The Appraisal Commission shall be presided over by the Minister of Public Works and Services and shall be composed of the Directors of Cadastre, Architecture and Statistics and Census. When the nature of the expropriated property so requires, two other representatives of official agencies with competence in the matter in question may be included at the request of the Chairman.

It shall operate within the jurisdiction of the Ministry of Public Works and Services and shall have its seat in the Directorate of Cadastre. The necessary personnel will be assigned by the President and the one established by the budget law.

Article 24. -- It shall validly meet with all of its members and its decisions shall be reasoned, and the reasons for the decision and dissenting opinions, if any, shall be transcribed in the opinion.

Article 25. -- For the fulfillment of its purposes, it may request the necessary collaboration and reports from public bodies as well as from private entities representative of its activity.

Article 26. -- When the Appraisal Commission is called upon to give its opinion at the request of the court at the time provided for in Article 29, it shall also include a representative of the expropriated party, who may be appointed up to ten days after the opening of the case for trial. If he fails to do so within that period, his intervention shall be dispensed with.

TITLE VII -- Judicial Proceedings

Article 27. -- In the absence of a settlement, the expropriating party shall bring the judicial action for expropriation.

Process

Article 28. -- The proceeding shall be processed by summary judgment, with the modifications established by this law, and shall not be subject to the jurisdiction of attraction of universal judgments.

Once the action has been filed, the defendant shall be notified for fifteen (15) days. If the defendant's domicile is unknown, edicts shall be published for five (5) days in the Official Gazette and in the most widely circulated newspaper of the Province.

In the answer to the claim, the expropriated party must limit its claims by expressing them in concrete terms, otherwise it shall be deemed to accept the opinion issued by the Appraisal Commission.

The parties may argue in writing on the evidence within the common term of ten days, computed from the time the clerk certifies ex officio the production of the same.

Once the pleadings have been presented or the term to do so has expired, the judge shall call the case for



judgment, which shall be pronounced within thirty (30) days of the date on which the decision becomes final.

The parties may file all appeals allowed by the Code of Civil and Commercial Procedure.

Appraisal Committee

Article 29. -- Once the ordinary term of proof has been closed, the Appraisal Commission shall intervene, and shall issue its report within thirty (30) days of the judicial requirement. This term may be extended for an equal period at the request of the aforementioned body. The provisions of article 26 shall be taken into account.

Judgment

Article 30. The judgment shall fix the compensation taking into account the value of the property at the time of dispossession.

In order to establish the monetary depreciation, the amount recorded in the judgment shall be discounted from the fixed value, in accordance with the provisions of Article 31, and the resulting difference shall be updated until the time of actual payment.

In such case, interest shall be paid at the rate of six percent per annum, from the time of dispossession until the time of payment, on the total indemnity or on the difference, as the case may be.

The items comprising the indemnity shall not be subject to the payment of any tax or levy.

Possession

Article 31. -- In the case of real estate, the expropriating party shall deposit with the respective judge 80% of the amount of the valuation made by the Appraisal Commission. Once such deposit has been made, the judge shall grant him possession of the property.

If the expropriation concerns property other than real estate, the expropriating party shall obtain immediate possession thereof, upon judicial consignment of the value fixed by the administrative agency.

Withdrawal of the deposited amount

Article 32. The expropriated party may withdraw the amount deposited upon proof of his ownership, that the property does not recognize a mortgage or other real right and that it is not seized and that there are no restrictions on the free disposition of his property.

Record of the litigation

Article 33. The dispute shall be recorded in the Property Registry, and from that moment the property shall be unavailable and unseizable.

Leases

Article 34. Once judicial possession of the property has been granted, the leases shall be terminated, and the occupants shall be granted a term of thirty (30) days for their eviction, which may be extended by the expropriator when, in his judgment, there are just reasons for doing so.

Damages to third parties

Article 35. The action arising from any damage caused to third parties by lease agreements or other contracts entered into with the owner shall be heard in a separate trial.

Third-party shares

Article 36. No action by third parties may prevent the expropriation or its effects. The rights of the claimant shall be deemed to have been transferred from the thing to its price or to the compensation, and the thing shall remain free of all encumbrances.

Withdrawal

Article 37. -- As long as there is no final judgment, the expropriating party may desist from the expropriation, and the costs shall be in the order caused.

Lapsing of instance

Article 38. The forfeiture of the right of appeal is inadmissible when in the trial the expropriating party has taken possession of the property, judicially and extra-judicially.

Prescription

Article 39. The action of the expropriated party to demand payment of the indemnity shall be barred after five (5) years, computed as from the date on which the respective amount is firmly and definitively determined.

Domain transfer



Article 40. -- For the transfer of ownership of real estate to the expropriating party, a public deed executed before a notary public shall not be required, the registration in the respective Property Register of the decree approving the settlement or, as the case may be, of the judicial decision granting the expropriation.

Costs

Article 41 - The costs of the expropriation trial shall be borne by the parties:

1. By the expropriator:

When the compensation to be fixed exceeds the amount offered by more than half of the difference between the amount offered and the amount claimed.

2. In the order caused:

a) When the indemnity does not exceed the amount indicated in the preceding paragraph;

b) When the expropriated party has not responded to the settlement procedure or when in the same he has not expressed the amount claimed;

c) When the expropriated party has not answered the claim or in the same has not expressed the amount claimed, notwithstanding the presumption of Art. 28.

d) When, for reasons founded and justified in the opinion of the Court, adduced in the process of the settlement, it has not been possible to reach a prior agreement and provided that there has been an agreement in court.

e) In the case of art. 37.

f) In the case of Art. 9 when the demand has not been formulated in administrative proceedings.

3. For the expropriated:

a) When not being the case contemplated in paragraph 2. d) of this article, he/she accepts the claim.

b) When the compensation is fixed at the same amount as that offered by the

expropriating party.

TITLE VIII -- Term of expropriation. Abandonment

Article 42.-- Expropriation shall be deemed to have been abandoned - unless expressly provided for in a special law - if the expropriating party does not file suit within two years from the effective date of the law authorizing it, in the case o f  expropriation of individually determined property; five years in the case of property included within a determined area; and ten years in the case of property included in a generic enumeration. The foregoing provision shall not apply in those cases in which the organic laws of the municipalities authorize them to expropriate the portion of the properties affected by the rectification or widening of streets and alleys, by virtue of the respective ordinances.

Deferred expropriation

Article 43. -- The provisions contained in the first paragraph of the preceding Article shall not be applicable in cases of reservation of real estate for works or plans of deferred execution, qualified by formal law.

In such case, the following rules shall apply:

a) The expropriating party, after declaring that it is a deferred expropriation, shall obtain the appraisal of the affected property with the intervention of the Appraisal Commission and shall notify the owner of the resulting amount.

b) If the appraised value is accepted by the owner, either party may request its judicial approval and, once approved, such value shall be considered as firm for both parties, and may be readjusted only in accordance with the procedure provided for in paragraph d) of this article.

c) If the owner does not accept the appraised value offered, the expropriating party must request a judicial determination of the value of the property, in accordance with the rules set forth in Articles 11 and 12.

d) The indemnity shall be readjusted as provided for in Art. 11.

e) If during the processing of the case and before the final judgment is rendered, the expropriating party needs to dispose of the property immediately, the provisions of Articles 31, 32 and 33 shall apply.

f) The affected real estate may be freely transferred to third parties, provided that the acquirer is aware of the assignment and consents to the value set, if such value is determined. For such purpose, once such value is firm, it will be communicated ex officio by the expropriating entity or, as the case may be, by the intervening court to the corresponding Real Property Registry. The certificates issued by the Registry in relation to the



affected real estate shall state such firm value. In the deeds transferring ownership of the real estate covered by this Article, the notaries who authorize them shall expressly record the knowledge of the acquirer of the assignment or his consent to the firm value, as the case may be.

TITLE IX -- Retrocession

Article 44. -- The action for retrocession shall proceed when the expropriated property is given a different destination from that provided for in the expropriation law, or when it is not given any destination within a period of two years from the date on which the expropriation was completed with the payment of the compensation.

Article 45. -- It shall be understood that there has been no change of use when the use of the property maintains a connection, interdependence or correlation with that specifically provided for in the law.

Nor will it be considered that there has been a change of use if part of the expropriated property is assigned a complementary use or one that tends to integrate and facilitate the use provided for by law.

Article 46. - Retrocession shall also be applicable in cases where the property has left the patrimony of its owner by means of a compromise procedure.

Article 47.- Retrocession may be achieved not only by judicial action, but also by compromise or administrative action.

Article 48. - When the property has not been used for any purpose within the term mentioned in Article 44, for the purposes of the retrocession action, the expropriated party shall duly notify the expropriating party to assign the property to the purpose for which the expropriation was made.

If six months have elapsed since that notice without the expropriating party assigning the property to that destination, or without having started the respective works, which must be maintained in accordance with the approved work plans, the retrocession action will be expedited, without the need for a prior administrative claim.

If the property has been used for a purpose other than that provided for in the expropriation law, a prior administrative claim must be filed.

Article 49. -- If the expropriated property has fulfilled the purpose for which the expropriation was intended, and for that reason it is no longer connected with that purpose, the retrocession shall be inadmissible.

Article 50. -- The action of retrocession exercised partially on a part of the expropriated property is admissible.

Article 51. -- For retrocession to be admissible, the following are required:

a) That the expropriation that motivates it has been perfected, in the manner provided for in Art. 44.

b) That some of the cases provided for in said article occur and, if applicable, the provisions of article 48 are complied with.

c) That the claimant, within the term fixed by the judgment, reimburse the expropriating party for what he received from the latter as price or compensation, with the corresponding update. If the value of the property has decreased due to acts of the expropriator, such decrease shall be deducted from the amount to be reimbursed by the claimant.

If the value of the property has increased due to necessary or useful improvements made by the expropriating party, the expropriated party must reimburse the value thereof. If the value of the property has increased due to natural causes, the claimant shall not be required to reimburse the value thereof. If the value of the property has decreased due to natural causes, the amount of such decrease shall not be deducted from the value to be reimbursed by the claimant.

Article 52. -- When the expropriation has been carried out by agreement, the action for retrocession shall be brought before the judge who should have heard the case if there had been an expropriation proceeding.

Article 53. -- If the expropriation has been effected by lawsuit, the claim for retrocession must be filed before the same court that intervened in the expropriation lawsuit.

Article 54. -- The action of retrocession belongs only to the expropriated owner and his universal successors.

Article 55. Retrocession may be sued against the expropriator or against the latter and third parties to whom the property has been transferred.

Article 56. The procedure applicable in the retrocession trial and the nature of the litigation shall be those established for the expropriation trial.



Article 57.--If the judgment upholds the action, the amount to be reimbursed by the claimant for retrocession and the term within which he must do so shall be established; the term within which the expropriator must return the expropriated property shall also be established.

Article 58 -- The return of the property to the expropriated party shall be free of all occupants, charges, and encumbrances that has taken place after the dispossession.

Article 59. The action for retrocession shall lapse after three years, calculated from the time when, the expropriation having been completed in the manner provided for in Article 44, the property was given a use other than that for which it was intended, or from the time when the property had not been given any use whatsoever and the periods provided for in Articles 44 and 48 had elapsed.

The procedure provided for in Article 48 suspends the course of this statute of

limitations.

TITLE X -- Irregular expropriation

Article 60.-- An irregular expropriation action may be brought in the following cases:

a) When there is a law declaring a property to be of public utility, the State takes it without having complied with the payment of the respective compensation.

b) When, by reason of the law of declaration of public utility, a movable thing is in fact unavailable due to evident difficulty or impediment to dispose of it under normal conditions.

c) When the State imposes an undue restriction or limitation on the right of the owner of a good or thing, which would be detrimental to his right to property, even though there is a law declaring the public utility.

Article 61. -- An irregular expropriation action does not correspond when the State paralyzes or does not activate the proceedings after having obtained judicial possession of the property.

Article 62. Whoever brings an action for irregular expropriation is exempt from the prior administrative claim.

Article 63.--In the trial of irregular expropriation, the compensable values shall be fixed in the same manner as provided for in the trial of regular expropriation, as contemplated in Articles 11 and following of this Law.

Article 64. The rules of judicial procedure established for regular expropriation shall also apply to irregular expropriation, insofar as they are applicable.

Article An action for irregular expropriation shall be barred after five years, computed from the date on which the acts or conduct of the State rendering such action viable took place.

TITLE XI -- Temporary Occupancy

Article 66. When, for reasons of public utility, the temporary use of a specific asset or thing, movable or immovable, or of a specific unit thereof, may be necessary, temporary occupation may be resorted to.

Article 67. Temporary occupation may respond to an abnormal, urgent, imperious or sudden need, or to a normal need that is not imminent.

Article 68. -- Temporary abnormal occupation may be ordered directly by the administrative authority, and shall not give rise to any compensation whatsoever, except for the repair of damage or deterioration caused to the thing or the payment of damages due for the subsequent use of the thing for purposes other than those which strictly determined its occupation.

Article 69. -- No abnormal temporary occupation shall be of longer duration than the period strictly necessary to satisfy the respective need.

Article 70.--Temporary occupation for normal reasons, after a legal declaration of public utility, may be established by agreement; otherwise, it shall be ordered by the judicial authority, at the request of the public administration.

Article 71.--Normal temporary occupation shall be subject to indemnification, the rules in force on expropriation being applicable as an alternative. The compensation referred to in this Article shall include the value of the use and damages caused to the property or thing occupied, as well as the value of the materials that should have been extracted necessarily and indispensably by reason of the occupation.

Article 72. -- The occupied property may not be used for any purpose other than that for which it was occupied.

Article 73. -- No normal temporary occupation may last for more than two years; on expiry of this period, the owner shall give notice of the return of the property. After thirty days have elapsed from such notice without



the property having been returned, the owner may demand the expropriation thereof by filing an action for irregular expropriation.

Article 74.--The judicial procedure established for the expropriation trial is applicable, as applicable, to the normal temporary occupation trial.

Article 75.--Without the consent of the owner, the temporary occupant of a good or thing, may not alter the substance of the same, nor extract or use elements that are part of the same, without prejudice to the case foreseen in article 71, last part.

Article 76.--If the temporary occupation affects third parties, the rights of such third parties shall be enforced on the amount of the indemnity.

Article 77. -- The action of the owner of the occupied property to demand payment of the indemnity prescribes after five years computed from the time the occupant took possession of the property.

TITLE XII -- Supplementary Provisions

Article 78. -- Any person who, as owner, simple possessor, or by virtue of any other title, resists in fact the execution of the studies or technical operations which by virtue of this law are ordered by the State, shall be liable to a fine of 10% to 1000% of the minimum living wage in force at the time, at the discretion of the judge, who shall proceed to apply it, after a summary report of the fact, without prejudice to hearing the accused and resolving accordingly.

The fine will be enforced by executive means.

Article 79. -- This Law shall apply exclusively to cases commenced as from the date of its coming into force. Notwithstanding the foregoing, in proceedings in progress, the expropriating party may propose the acquisition of the property by way of compromise, in the manner provided for in Title V. To such effect, the Administration shall so state in the corresponding lawsuit, suspending from then on the proceedings thereof until the administrative act resolving the extrajudicial proceeding is filed.

In the event of a settlement, the proceeding shall proceed in accordance with the provisions of Article 40, the proceeding shall be dismissed and the costs shall be imposed in the order in which they were incurred.

Article 80. Law 82 and any other provision in conflict herewith is hereby repealed.

Article 81.-- Be it communicated, etc.

EXHIBIT 6

1

# DECRETO 1447/75

MENDOZA, 25 de abril de 1975.

*(Ver Decreto Provincial Nº 2457/17: - Créese la Comisión Valuadora General de la Provincia, que realizará las valuaciones que servirán como base para las indemnizaciones de las expropiaciones a las que se refiere el Artículo 10 del Decreto-Ley Nº 1447/75, conforme lo establece el Artículo 11 de la citada norma y toda otra normativa que requiera valuación de derechos y bienes muebles e inmuebles, siempre que no tenga una normativa específica.)*

B.O.      : 02/05/75

NRO. ARTS. : 0069

# TEMA      : LEY GENERAL DE EXPROPIACION

TITULO I- GENERALIDADES (arts. 1 al 10)
Sujeto expropiante
Sujeto expropiado
Objeto de la expropiación
Expropiación parcial
Expropiación del subsuelo
Indemnización:
Mejoras y derechos posteriores al acto resolutivo  de  la
expropiación
Pautas para determinar la indemnización.

TITULO II- INSTANCIA ADMINISTRATIVA (arts. 11 al 18)
Concentración directa - valor de la indemnización
Notificación  y  citación  al  expropiado
Formas de notificación
Efectos de la notificación
Intervención de la dependencia de valuación
Ampliación  del  plazo  al  expropiado
Plazos de pronunciamiento de la dependencia de  valuación-
responsabilidades
Acuerdo de partes - requisito.

TITULO III- INSTANCIA JUDICIAL (arts. 19 al 45)
Iniciación de la instancia  judicial
Naturaleza  administrativa  de  la  expropiación
Casos en que procede
Presentación en instancia judicial - posesión - propiedad
Contenido del escrito de demanda
Traslado
Edictos - intervención del defensor de pobres y ausentes
Contestación del traslado - derechos de terceros
Ofrecimiento de prueba  -  determinación  indemnización reclamada
Traslado  al  expropiante
Plazo de sustanciación de la prueba
Prueba no rendida - integración del Tribunal Provincial de
Tasaciones  por  el expropiado y el expropiante
Prueba  pericial  única  del  Tribunal  Provincial  de Tasaciones
Indemnización judicial
Creación  y  composición  del  tribunal  provincial  de tasaciones
Colaboración al tribunal provincial de tasaciones
Plazo para pronunciamiento
Pedido de informes
Retiro de la consignación por el  expropiado
Caducidad de la instancia
Limites de la indemnización - imposición de  costas
Regulación de honorarios - costas
Incidentes
Rescisión de arrendamientos

Trabajos y estudios a cargo del estado – infracciones
Retiro de fondos por el expropiante

TITULO IV- CASOS ESPECIALES

CAPITULO I- EXPROPIACIÓN INVERSA (arts. 46 a 48)
Concepto y  procedencia
Requisito previo
Procedimiento

CAPITULO 2- RETROCESIÓN(arts. 49 a 52)
Procedencia
Requisitos previos
Reintegro de lo percibido
Juez  competente

CAPITULO 3-EXPROPIACIÓN DE URGENCIA (art. 53)
Declaración de urgencia – depósito.

CAPITULO 4-ABANDONO DE LA EXPROPIACIÓN(arts. 54 a 55)
Cuando  hay  abandono
Efecto del abandono

CAPITULO 5- OCUPACIÓN TEMPORARIA(arts. 56 a 61)
Sujetos activos - naturaleza del derecho - normas  de aplicación
Ocupación  ordinaria
Declaración  de utilidad  pública
Duración
Indemnización
Modificación de la sustancia y  alteración  del  destino económico

TITULO V-DISPOSICIONES COMPLEMENTARIAS (arts. 62 a 69)
Plazos:
Fuero de atracción:
Criterio aplicable a las variaciones  monetarias
Retiro de fondos en la expropiación de urgencia:
Derogaciones
Vigencia

## EL INTERVENTOR FEDERAL EN LA PROVINCIA DECRETA CON FUERZA DE
## L E Y :

Ley General de Expropiación

# TITULO I
# GENERALIDADES

Artículo  1 - El régimen general de expropiaciones en la Provincia
queda sujeto a las disposiciones del presente decreto-ley.

Artículo  2 - La expropiación procede por CAUSA DE UTILIDAD
PUBLICA, la cual  se  configura  en  todos  los  casos  en  que
se  persiga  la satisfacción de una exigencia determinada, por el
perfeccionamiento social.  La declaración de utilidad pública se
hará, en  cada  caso, por  Ley y  con  referencia  a  bienes
determinados. Cuando  la calificación  sea sancionada con
carácter  genérico,  el  Poder Ejecutivo  individualizará los
bienes requeridos a los fines  de  la Ley, con referencia a planos
descriptivos, informes técnicos y otros elementos suficientes para
su determinación.

Artículo  3 - SUJETO EXPROPIANTE: podrán ser  sujetos
expropiantes  el Estado  Provincial, las Municipalidades y las

3

entidades de carácter autárquico, provinciales o municipales, conforme a la facultad que les confiera la respectiva ley.

Los concesionarios de obras o servicios públicos, para cuya realización se hubiere sancionado la expropiación, sustituyen a la autoridad expropiante en los derechos y obligaciones que crea la presente Ley y que no sean inherentes a la calidad de poder político.

Artículo 4 - SUJETO EXPROPIADO: podrán ser sujetos expropiados, las personas físicas o de existencia ideal, y las municipalidades que resulten propietarias del bien objeto de la expropiación. Tratándose de bienes registrables, serán sujetos expropiados aquellos que figuren como titulares.

Artículo 5 - OBJETO DE LA EXPROPIACIÓN: pueden ser objeto de la expropiación todos los bienes convenientes o necesarios para la satisfacción de la utilidad pública, cualquiera sea su naturaleza jurídica, estén o no en el comercio, sean cosas o no. La expropiación podrá igualmente extenderse a bienes adyacentes o no a una obra pública pero vinculados a esta, con el objeto de llevar a cabo planes de mejoramiento social, en cuyo caso se consideraran duplicados los plazos establecidos en el artículo 50 del presente decreto-ley.

Artículo 6 - EXPROPIACIÓN PARCIAL: si se tratase de la expropiación parcial de algún bien, y la parte que quedase sin expropiar perdiese, sustancialmente su valor o convirtiere en antieconómico su uso o aprovechamiento, el expropiado podrá exigir expropiación de la totalidad del bien.

En tal caso, el sujeto expropiante podrá optar entre la expropiación total reclamada, o la indemnización al expropiado por la desvalorización económica del remanente sin expropiar. Esta indemnización se ajustará a los principios establecidos en el artículo 8, y será proporcional a la parte del bien no comprendido en la expropiación. en ningún caso esta indemnización podrá exceder del ochenta por ciento (80%) de la que se hubiere ofrecido si el remanente de que se trata hubiera sido también expropiado. Excedido dicho porcentaje se procederá a la expropiación del excedente.

Tratándose de TERRENOS URBANOS se consideraran sobrantes inadecuados los que, por causa de la expropiación, quedaran con frentes, fondos o superficie inferiores a los autorizados para edificar por las ordenanzas o usos locales respectivos. En los INMUEBLES RURALES, el sujeto expropiante determinará en cada caso, previo informe a la repartición técnica competente de la Provincia, las extensiones inadecuadas, teniendo en cuenta la superficie de la "unidad económica", conforme a su ubicación, características ecológicas, climáticas y otros factores ambientales, y de acuerdo a las disposiciones legales especiales que rijan la materia.

Artículo 7 - EXPROPIACIÓN DEL SUBSUELO: es susceptible de expropiación el subsuelo, con independencia de la propiedad superficial. En el supuesto caso de que la superficie sea afectada por la expropiación del subsuelo, será tambien expropiada la misma. El presente artículo regirá en todo aquello que no contradiga las disposiciones de derecho público contenidas en el Código de Minería.

Artículo 8 - INDEMNIZACIÓN: la indemnización solo comprenderá el valor objetivo del bien al tiempo de la desposesión y los daños que sean una consecuencia directa e inmediata de la expropiación. no se tomarán en cuenta las circunstancias de

4

carácter personal, valores afectivos ni ganancias hipotéticas.
No se pagará lucro cesante. En materia de inmuebles tampoco se
considerara el valor panorámico. El valor histórico será
indemnizado sólo cuando sea el motivo determinante de la
expropiación del bien de que se trate. El valor de los bienes se
estimará por el que hubieren tenido de no haberse declarado la
utilidad pública de los mismos, o si la obra no hubiese sido
ejecutada, o ni aun autorizada, o proyectada. En el caso de
obras pública s construidas por etapas o de ejecución diferida,
el mayor valor emergente de lo realizado tampoco deberá ser
tenido en cuenta a los efectos de la indemnización. No son
indemnizables las restricciones administrativas de carácter
general establecidas por leyes especiales. El sujeto expropiado
queda exento del pago de los gastos de escrituración.

Artículo 9 - MEJORAS Y DERECHOS POSTERIORES AL ACTO RESOLUTIVO
DE LA EXPROPIACIÓN: no será objeto de indemnización aquellas
mejoras realizadas en el bien con posterioridad al acto que
dispuso hacer efectiva la expropiación, salvo las que hubieren
sido necesarias para la conservación o explotación racional del
mismo.

No le serán oponibles al sujeto expropiante los contratos
celebrados y los derechos reales constituidos por el
expropiado con posterioridad a la Ley que declaró de utilidad
pública del bien, cuando este estuviera individualizado.

En los casos en que la Ley no hubiere individualizado el bien, no
le serán oponibles los contratos celebrados y los derechos
reales constituidos con posterioridad a la notificación
del acto administrativo que lo hubiera individualizado.

Artículo 10 - PAUTAS PARA DETERMINAR LA INDEMNIZACIÓN: la
indemnización que se fije en la instancia administrativa o
judicial, será la resultante del análisis concurrente de los
siguientes elementos de juicio, sin excluir otros que contribuyan
a la misma finalidad:

a)     Precio que se abonó en la última transferencia de
dominio, siempre que esta no se hubiere realizado con
posterioridad a la individualización del bien.
b)     Valuación asignada para el pago del impuesto de
contribución directa.
c)     las ofertas fundadas hechas por el expropiado y el
expropiante, en el caso concreto de que se trate.
d)     Valores de propiedades linderas y precios abonados en los
últimos cinco (5) años anteriores individualización del bien
expropiado y los acordados en otras expropiaciones originadas
por la misma obra pública a la que la indemnización de que se
trate pudiera estar vinculada.
e)     Valores registrados por los bancos nacionales y provinciales
en la localidad o en los correspondientes a la zona en que se
encuentre el bien a expropiar.
f)     Valor de su productividad y rentabilidad efectivas durante
los últimos cinco (5) años, según la naturaleza de los bienes
y el destino a que se los aplicaba.

# TITULO II
## INSTANCIA ADMINISTRATIVA

Artículo 11 - CONCENTRACIÓN DIRECTA - VALOR DE LA INDEMNIZACIÓN:
una vez resuelta la expropiación, el sujeto expropiante
procurará la adquisición del bien objeto de la misma
mediante concertación directa y voluntaria con el propietario de
dicho bien. a tal efecto, la autoridad respectiva iniciará las
actuaciones tendientes a individualizar el bien o los bienes

5

comprendidos en la expropiación, su situación jurídica, gravámenes que pudieran afectarlos, y la determinación de sus respectivos propietarios.

Del mismo modo, el sujeto expropiante fijará, por intermedio de las comisiones o dependencias técnicamente idóneas de la Provincia que, de acuerdo a la naturaleza y características de los bienes, establezca la reglamentación que al efecto dicte el Poder Ejecutivo, los valores de la indemnización que se ofrecerá al propietario. Tratándose de bienes inmuebles, la primera oferta será determinada directamente por el sujeto expropiante conforme al avalúo para el pago de la contribución directa, el que podrá ser incrementado hasta un treinta por ciento (30%).

Artículo 11 bis: Declarado de utilidad pública y sujeto a expropiación un inmueble, el sujeto expropiante deberá comunicarlo a la Dirección de Registros Públicos y Archivo Judicial que corresponda a la jurisdicción del inmueble, a fin de que inscriba la anotación preventiva de la expropiación. Para ello deberá acompañar copia certificada de las normas que dispusieron la expropiación e individualizar la nota de dominio del inmueble.
Las anotaciones preventivas de expropiación caducarán de pleno derecho a los cinco (5) años de su registración, pudiendo reinscribirse antes de su vencimiento. El titular afectado podrá requerir la cancelación de la anotación cuando se hubiese declarado judicialmente el abandono de la expropiación.
*(Artículo 11 bis incorporado según Ley 8300 art. 1°, B.O. 21/07/2011)*

Artículo 12 - NOTIFICACIÓN Y CITACIÓN AL EXPROPIADO: el sujeto expropiante notificará al sujeto expropiado, acompañando los antecedentes y documentos del caso, el acto por el cual se declara de utilidad pública y sujeto a expropiación el bien de su propiedad, a efectos de que dentro del término de veinte (20) días de su notificación, manifieste si acepta la indemnización ofrecida o, en caso contrario, estime el monto de la indemnización a que se considera con derecho. en este último supuesto, el propietario del bien objeto de la expropiación, deberá aportar los elementos de juicio y documentación justificativos de la suma que pretende.

En esta misma oportunidad, con carácter de declaración jurada, el propietario del bien deberá manifestar los gravámenes que pesan sobre el mismo y los derechos reales o personales que terceros pudieran tener con respecto a dicho bien, denunciando en este caso el nombre, apellido y domicilio de los titulares de tales derechos.

Artículo 13 - FORMAS DE NOTIFICACIÓN: la notificación deberá hacerse por cédula o telegrama colacionado. si se ignora el domicilio del expropiado, o éste fuera desconocido, se lo citará por edictos que se publicaran en el Boletín Oficial y en un diario de los de mayor circulación en toda la Provincia, durante cinco (5) días alternados.

Artículo 14 - EFECTOS DE LA NOTIFICACIÓN: la notificación por cédula o telegrama colacionado al sujeto expropiado, a que se refiere el artículo anterior, se realizará, en todos los casos, bajo apercibimiento de que si no compareciere, o no efectuare estimación fundada del valor del bien, en el supuesto de estar en desacuerdo con la indemnización ofrecida, esta se tendrá por aceptada a los efectos del juicio respectivo.

Debidamente notificado el sujeto expropiado en la forma indicada precedentemente, dicha presunción será de puro derecho, y la indemnización ofrecida constituirá el valor que el sujeto expropiante deberá consignar en el respectivo juicio de expropiación, teniéndose la misma por firme y definitiva por el juez de la causa. No mediante oposición

del demandado, no procederá la imposición de costas.

Artículo 15 - INTERVENCIÓN DE LA DEPENDENCIA DE VALUACIÓN: en el caso de estar en desacuerdo el sujeto expropiado con la indemnización ofrecida, y habiendo presentado el mismo estimación fundada de la que pretende, el sujeto expropiante procederá, dentro de los tres (3) días subsiguientes al de la presentación, a dar intervención, con pase de todo lo actuado, a las comisiones o dependencias técnicas a que se refiere el artículo 11, las que reconsiderarán la oferta formulada teniendo en cuenta las pautas dadas por el artículo 10.

Artículo 16 - AMPLIACIÓN DEL PLAZO AL EXPROPIADO: a pedido del interesado, presentado dentro de los diez (10) primeros días del término fijado en el artículo 12, y cuando la complejidad del caso así lo justifique, el sujeto expropiante podrá prorrogar el mencionado plazo para la presentación de la estimación fundada de la indemnización, hasta un máximo total de sesenta (60) días contados a partir de la fecha de la notificación a que se refiere el artículo 12.

Artículo 17 - PLAZOS DE PRONUNCIAMIENTO DE LA DEPENDENCIA DE VALUACIÓN- RESPONSABILIDADES: las comisiones o dependencias técnicamente idóneas mencionadas en el artículo 11, deberán expedirse dentro del término perentorio de treinta (30) días a contar de la recepción de las actuaciones, sobre el valor que el sujeto expropiante ofrecerá de manera definitiva en calidad de total indemnización. Dicho pronunciamiento deberá estar debidamente fundado, y la falta del mismo, dentro del término antes aludido, dará dudar a la aplicación a los responsables de las sanciones que, para tales casos, prevea la reglamentación respectiva.

Las comisiones o dependencias técnicas aludidas, podrán solicitar, dentro de los diez (10) primeros días del plazo en que deben producir su pronunciamiento, una ampliación de dicho término, cuando la complejidad del caso así lo justifique. la autoridad competente que determine la reglamentación, podrá, por resolución fundada, autorizar la ampliación del plazo solicitado, el que solo se extenderá hasta un máximo total de sesenta (60) días contados a partir de la recepción de las actuaciones por tales comisiones o dependencias.

Artículo 18 - ACUERDO DE PARTES - REQUISITO: mediante acuerdo entre las partes, en cualquier estado del procedimiento, se efectuará la transmisión de la propiedad del bien libre de todo gravamen, embargos y ocupación, mediante el pago de la indemnización correspondiente, y, según proceda, la tradición, escrituración y registro.

La contratación directa no podrá llevarse a cabo si no existen títulos perfectos y suficientes, como también la disponibilidad actual y total del bien por parte del propietario, o cuando su titulo fuera dudoso u objeto de litigio.

# TITULO III
## INSTANCIA JUDICIAL

Artículo 19 - INICIACIÓN DE LA INSTANCIA JUDICIAL: agotada la vía administrativa, el sujeto expropiante abrirá la instancia judicial elevando las actuaciones administrativas al tribunal competente, las que, conjuntamente con el escrito de demanda, servirán de cabeza al proceso.

Artículo 20 - NATURALEZA ADMINISTRATIVA DE LA

7

EXPROPIACIÓN: el procedimiento del juicio de expropiación es especial. los jueces deberán ajustarse a las normas de esta ley, aplicando subsidiariamente lo dispuesto para el proceso sumario por el Código Procesal Civil.

La competencia de los jueces civiles y la aplicación subsidiaria del Código Procesal Civil, no importa alterar la naturaleza administrativa de la expropiación.

Artículo 21 - CASOS EN QUE PROCEDE: correspondiente iniciar la instancia judicial de expropiación en los siguiente casos:

a)    Cuando las partes no hubieren llegado a un acuerdo en las gestiones administrativas.
b)    Cuando, no obstante existir acuerdo sobre el precio, no se puede concretar la transferencia del bien en sede administrativa por no darse los requisitos indicados por el artículo 18, o por inconvenientes formales. en estos casos la instancia judicial solo tendrá por objeto que el Juez ordene la transferencia, sin perjuicio de los derechos de terceros.
c)    Cuando el propietario no hubiere comparecido a la citación practicada en el procedimiento administrativo, o no hubiese estimado su pretensión resarcitoria.

Artículo 22 - COMPETENCIA: en la instancia judicial será competente el Juez Civil de primera instancia de la circunscripción judicial correspondiente a la ubicación del bien expropiado. si estos fuesen varios, o uno sólo pero situado en diferentes circunscripciones judiciales, será Juez competente el del lugar de cualquiera de ellos, o de alguna de sus partes, a elección del actor.

El actor igualmente podrá optar por el juez del domicilio del demandado.

Artículo 23 - PRESENTACIÓN EN INSTANCIA JUDICIAL - POSESIÓN - PROPIEDAD: la presentación en la instancia judicial será efectuada por el expropiante acompañando las actuaciones producidas en la etapa administrativa, conjuntamente con la consignación del importe de la liquidación practicada por la comisión aludida en el artículo 11, o el acordado por las partes en el supuesto del inc. b) del artículo 21.

De inmediato se otorgará la posesión del bien objeto de la expropiación, facultando al oficial de justicia para allanar domicilio y pedir el auxilio de la fuerza pública si fuera necesario, declarándose transferida la propiedad a nombre del expropiante, sirviendo la resolución de suficiente título traslativo, el que deberá inscribirse en el registro respectivo, según corresponda.

Artículo 24 - CONTENIDO DEL ESCRITO DE DEMANDA: el escrito de demanda deberá contener:

a)    Nombre y domicilio del sujeto expropiante.
b)    Nombre y domicilio del expropiado.
c)    Designación del bien cuya expropiación se persigue, con determinación precisa de ubicación, medidas y demás elementos individualizantes.
d)    Indicación de la Ley que ha declarado el bien sujeto de expropiación por causa de utilidad pública, y del decreto o resolución que lo determine, en caso de declaración genérica, con trascripción de las partes pertinentes de los mismos.
e)    Una relación suscinta de la tramitación en la instancia administrativa, con expresa mención de todo lo actuado,

no siendo suficiente la simple remisión a las constancias
anteriormente producidas.
f)    Expresión de la suma que constituye la indemnización
que corresponde al sujeto expropiado, y fundamentación de la
misma.
g)    Derecho que se invoca.
h)    La petición en términos claros y positivos.

Artículo 25 - TRASLADO: del escrito de demanda se dará
traslado al expropiado y a todos cuantos tengan o aleguen tener
derechos reales o contratos sobre el bien que se intenta
expropiar, para que comparezca y lo contesten dentro del término
de diez (10) días.

Artículo 26 - EDICTOS - INTERVENCIÓN DEL DEFENSOR DE POBRES Y
AUSENTES: se conozca o no al propietario, se publicarán edictos
por diez (10) días alternados en el Boletín Oficial y en un
diario de circulación en toda la Provincia, citando a todos los
posibles interesados bajo apercibimiento de ser representados
"ex lege" por el Defensor de Pobres y Ausentes, a quien se
notificará para que actúe en representación de todos los
presuntos interesados que no concurran a defender sus derechos.

La notificación edictal es supletoria y no podrá ser invocada
por los que hayan sido notificados por cedula.

Artículo 27 - CONTESTACIÓN DEL TRASLADO - DERECHOS DE TERCEROS:
en la contestación del traslado el expropiado deberá denunciar el
nombre, apellido y domicilio de quienes pudieren tener
derecho a ser indemnizados, por ser titulares de un derecho real
sobre las cosas o de un derecho personal constituido a su favor
por el propietario, con relación al bien.

Ninguna acción de terceros podrá impedir la expropiación ni
sus efectos. Los derechos del reclamante se consideraran
transferidos de la cosa a la indemnización.

Artículo 28 - OFRECIMIENTO DE PRUEBA - DETERMINACIÓN
INDEMNIZACIÓN RECLAMADA: los citados deberán contestar la demanda
y ofrecer toda la prueba que haga a sus derechos y indemnización
que pretendan. No podrán sustanciarse como previas las
excepciones que enumera el artículo 173 del Código Procesal
Civil.

Exceptuase de las disposiciones del presente artículo, el
caso previsto en el artículo 14 de esta ley.

Artículo 29 - TRASLADO AL EXPROPIANTE: de la contestación
del expropiado, o de la presentación de terceros que aleguen
derechos, se correrá traslado al sujeto expropiante por el
término de cinco (5) días, para que responda y ofrezca
contraprueba.

Artículo 30 - PLAZO DE SUSTANCIACIÓN DE LA PRUEBA: vencido el
plazo del artículo anterior, el término para sustanciar la
prueba, a excepción de la pericial a cargo del Tribunal de
Tasaciones, no podrá exceder de treinta (30) días, contados
a partir de la providencia que acepte la prueba ofrecida por
las partes.

Artículo 31 - PRUEBA NO RENDIDA - INTEGRACIÓN DEL TRIBUNAL
PROVINCIAL DE TASACIONES POR EL EXPROPIADO Y EL EXPROPIANTE:
vencido el plazo expresado para la sustanciación de prueba, la
no rendida se tendrá por desistida, disponiendo la remisión de
las actuaciones al Tribunal Provincial de Tasaciones y la
notificación al expropiado y al expropiante, cuando

correspondiere, a los efectos de que concurran a integrar dicho tribunal en el término improrrogable de cinco (5) días, bajo apercibimiento de prescindir de su intervención.

Artículo 32 - PRUEBA PERICIAL ÚNICA DEL TRIBUNAL PROVINCIAL DE TASACIONES: la prueba pericial estará exclusivamente a cargo del Tribunal Provincial de Tasaciones, creado por esta Ley, cuyo dictamen será insustituible e imprescindible, debiendo incluso ser recabado de oficio. no se admitirá, en ningún caso, otro medio de prueba que tienda directa e indirectamente, a sustituir o ampliar el dictamen del Tribunal Provincial de Tasaciones, incluyendo las que, bajo apariencias de meras informaciones o testimonios, encubran pericias.

Artículo 33 - INDEMNIZACIÓN JUDICIAL: el juez decidirá la diferencia fijando la indemnización en base a las actuaciones y dictámenes que elaborara en cada caso el Tribunal Provincial de Tasaciones, el cual será integrado, a este solo efecto, por el expropiante, si correspondiere, y por el expropiado o su representante. La función de todos los integrantes del Tribunal Provincial de Tasaciones, incluso el particular o su representante, tendrá carácter de carga pública honoraria y, en ningún caso, el sujeto expropiante será obligado al pago de emolumento alguno por este concepto. La indemnización judicial tendrá en cuenta las oscilaciones que se hubieran producido en el signo monetario entre la fecha del desapoderamiento y la del pago, así como los intereses sobre el saldo que aun no hubiera percibido el expropiado. estos intereses serán estimados por el juez en el caso de haber tenido en cuenta la indemnización las oscilaciones operadas en el signo monetario.

Artículo 34 - CREACIÓN Y COMPOSICIÓN DEL TRIBUNAL PROVINCIAL DE TASACIONES: con carácter permanente y técnico, crease el Tribunal Provincial de Tasaciones, cuyas funciones serán las que resulten de la presente ley. Estará integrado por cuatro (4) representantes del sector público y tres (3) representantes del sector privado con carácter de miembros estables, en la forma que lo establezca la reglamentación respectiva. uno de los representantes del sector público ejercerá la presidencia de dicho cuerpo, ejerciendo el derecho de doble voto en caso de empate. El Poder Ejecutivo fijará el lugar, presupuesto y las normas de integración y funcionamiento a que se ajustará el mencionado organismo.

Artículo 35 - COLABORACIÓN AL TRIBUNAL PROVINCIAL DE TASACIONES: todas las dependencias de la administración pública quedan obligadas a prestar la más eficaz colaboración al Tribunal Provincial de Tasaciones, a simple requerimiento de este. La respectiva reglamentación fijará las sanciones a que se harán pasibles los agentes de la administración que no cumplieran con tal colaboración.

Artículo 36 - PLAZO PARA PRONUNCIAMIENTO: el Tribunal Provincial de Tasaciones deberá pronunciarse dentro de los treinta (30) días de recibidas las actuaciones remitidas por el Juez de la causa, plazo que podrá ser prorrogado por igual periodo. Si vencido el término y su prórroga el Tribunal no se expidiese, el Poder Ejecutivo a requerimiento del Juez interviniente procederá a remover los miembros del tribunal y a designar a otros en su reemplazo.

Artículo 37 - PEDIDO DE INFORMES: el juez, de oficio, requerirá informe a las reparticiones públicas sobre los gravámenes fiscales que adeudare el bien objeto de la expropiación.

Artículo 38 - RETIRO DE LA CONSIGNACIÓN POR EL EXPROPIADO: la suma consignada podrá ser retirada por el expropiado una vez vencido el término para comparecer y contestar dispuesto en la publicación edictal, y previa justificación de la propiedad del bien, que este no reconoce hipoteca, prenda u otro derecho real, así como que no esta embargado y que no pesan sobre el expropiado restricciones a la libre disposición de sus bienes. a tal efecto deberán presentar los comprobantes de pago de las obligaciones fiscales, provinciales y municipales, exigibles a la fecha de la desposes ión. hasta el momento del retiro de la consignación, corren los intereses sobre la suma consignada, a favor del expropiado.

Artículo 39 - CADUCIDAD DE LA INSTANCIA: la caducidad de la instancia no se operará en el juicio de expropiación.

Artículo 40 - LIMITES DE LA INDEMNIZACIÓN - IMPOSICIÓN DE COSTAS: la sentencia no podrá fijar indemnización alguna menor a la ofrecida, ni superior a la reclamada.

Las costas se impondrán de acuerdo a las siguientes normas:

a) Serán a cargo del expropiado, en el caso de que la indemnización se haya fijado en una suma igual a la ofrecida por el expropiante.
b) Serán en el orden causado, cuando la indemnización se haya fijado en una suma superior a la ofrecida pero aproximándose mas a esta que a la suma reclamada por el expropiado.
c) Estarán a cargo del expropiante, si la indemnización se hubiera fijado en cantidad mas aproximada a la reclamada por el expropiado que a la ofrecida por el expropiante, o en el justo medio entre una y otra.

Artículo 41 - REGULACIÓN DE HONORARIOS - COSTAS: el juez regulará los honorarios tomando como monto cuestionado la diferencia entre la cantidad ofrecida y la indemnización establecida en la sentencia. Tanto en el caso del inciso a) del artículo anterior, como cuando no hubiere mediado reclamo por parte del expropiado, la regulación de honorarios se hará conforme a lo que establece la Ley de aranceles para abogados y procuradores respecto a los juicios cuyo monto no pueda ser valuado por ningún procedimiento (articulo 10 de la Ley 3641).

A los efectos de la imposición de costas y regulación de honorarios, no se tendrán en cuenta las oscilaciones del signo monetario.

Artículo 42 - INCIDENTES: todo incidente o cuestión que se suscitare a raíz del juicio de expropiación, deberá tramitarse por pieza separada, de acuerdo al procedimiento que corresponda según la naturaleza del asunto. en ningún caso tales cuestiones, o la interposición de recursos ordinarios o extraordinarios, podrán dilatar o suspender el trámite del principal.

Artículo 43 - RESCISIÓN DE ARRENDAMIENTOS: otorgada la posesión a que hace referencia el artículo 23, quedarán rescindidos los arrendamientos y se acordará a los ocupantes un plazo de treinta (30) días para la desocupación del bien. en caso de tratarse de inmuebles destinados a vivienda, el Juez podrá prorrogar este plazo siempre que no medien circunstancias de urgencia para la disponibilidad del bien.

Artículo 44 - TRABAJOS Y ESTUDIOS A CARGO DEL ESTADO - INFRACCIONES: el propietario, poseedor, y cualquier otro que se

considere con derecho sobre el bien, esta obligado a facilitar la ejecución de los estudios u operaciones técnicas que en virtud de la presente Ley fuesen dispuestas por el Estado, por sus mandatarios o por los concesionarios de obras y servicios públicos. Toda violación a esta obligación dará lugar a la remoción judicial de tales obstáculos con el auxilio de la fuerza pública y allanamiento de domicilio, y a la aplicación, al o a los infractores, de una multa de mil pesos (1000,00) a cien mil pesos ($100.000,00).

El Juez de Faltas será competente para entender en el caso.

Artículo 45 - RETIRO DE FONDOS POR EL EXPROPIANTE: si, dentro del plazo de un (1) año, contado a partir del vencimiento del término a que se refiere el artículo 25, no se hubiere presentado ningún interesado con derecho suficiente a la indemnización ofrecida, o si su derecho estuviese limitado a solo una parte de la misma, el sujeto expropiante deberá solicitar la transferencia de los fondos consignados, a una cuenta especial que se abrirá a tal efecto en el Banco de Previsión Social, a la orden del juzgado interviniente.

## TITULO IV
## CASOS ESPECIALES

## CAPITULO I
## EXPROPIACIÓN INVERSA

Artículo 46 - CONCEPTO Y PROCEDENCIA: entiéndase por expropiación inversa aquella en la que la instancia judicial es iniciada por el propietario del bien declarado de utilidad pública, a fin de que el expropiante lleve a cabo la expropiación dispuesta y proceda al pago de la indemnización respectiva. Procede en los siguientes casos:

a) Cuando el sujeto expropiante haya tomado posesión del bien sin intervención judicial o sin consentimiento expreso del propietario.
b) Cuando la posesión haya sido tomada con consentimiento del propietario y el juicio de expropiación no se hubiere promovido dentro del plazo fijado de común acuerdo, dentro de los seis (6) meses siguientes a la toma de posesión, a falta de plazo convenido.
c) Cuando, hallándose el bien sujeto a expropiación, la autoridad respectiva, provincial o municipal, o el sujeto expropiante, restrinjan o limiten en cualquier otra forma los derechos del propietario.
d) Cuando se dieran los casos contemplados en la última parte del artículo 54 y en él artículo 61.

Artículo 47 - REQUISITO PREVIO: para el ejercicio de la acción prevista en el artículo anterior, el expropiado deberá acreditar haber agotado previamente sin éxito, de conformidad a la Ley general que regula el procedimiento ante la Administración Pública, la vía administrativa para obtener la expropiación del bien y su indemnización.

Artículo 48 - PROCEDIMIENTO: la acción de expropiación inversa se tramitará conforme a las normas establecidas para la expropiación directa en la instancia judicial.

## CAPITULO 2
## RETROCESIÓN

Artículo 49 - PROCEDENCIA: entiéndase por retrocesión la
retroversión o reintegro del bien expropiado al patrimonio
de su anterior propietario. La retrocesión procederá
únicamente cuando el bien no se hubiese afectado al interés
público que determinó la expropiación.

Artículo 50 - REQUISITOS PREVIOS: si transcurridos tres (3) años
de la fecha de toma de posesión del bien por el sujeto
expropiante, este no hubiese dado al mismo destino de utilidad
pública que determinó la expropiación, el expropiado deberá
intimar en forma fehaciente al expropiante para que proceda,
dentro de los (2) años siguientes a dicha intimación, a dar
al bien el mencionado destino, bajo apercibimiento de iniciarle
acción de retrocesión. Si transcurrido dicho término el bien
continuara sin cumplir la finalidad mencionada, el
expropiado tendrá expedita la vía para iniciar la acción
judicial de retrocesión, la que prescribirá en él término de un
(1) año a partir del vencimiento del plazo anterior.

Artículo 51 - REINTEGRO DE LO PERCIBIDO: la sentencia que
dispone la retrocesión se tendrá por no pronunciada si, dentro
de los noventa (90) días de haber quedado firme, el expropiado no
hubiera procedido a depositar en el juicio, a favor del
expropiante, las sumas percibidas en concepto de indemnización,
sin intereses. A la suma resultante, se deducirá el importe
correspondiente a los daños, objetivos y directos
sobrevinientes en el bien desde el momento de la desposesión, y
se le sumará el importe de las mejoras realizadas con
anterioridad a la fecha de la intimación a que de refiere el
artículo 50, salvo las que, posteriores a dicha fecha, hubiesen
sido necesarias para la conservación o explotación racional
del mismo.

Los contratos celebrados y los derechos reales constituidos por
el expropiante no podrán ser oponibles al expropiado. La entrega
del bien a este por parte del expropiante deberá ser hecha
libre del ocupante. En tales casos, serán exclusivamente a
cargo del expropiante las indemnizaciones correspondientes, cuyo
interés podrá ser deducido por el expropiado de la suma a cuya
devolución está obligado.

Artículo 52 - JUEZ COMPETENTE: la demanda de retrocesión
deberá deducirse ante el mismo Juez que intervino en el
juicio de expropiación y, si este no hubiese existido por
haberse llegado a acuerdo en la instancia administrativa, ante el
juez que resulta de la aplicación de lo dispuesto en el
artículo 22. La acción se sustanciará conforme a las
normas establecidas por el Código Procesal Civil para el
proceso sumario, no pudiendo oponerse en ella la fuerza de la cosa
juzgada de la sentencia expropiatoria.

# CAPITULO 3
## EXPROPIACIÓN DE URGENCIA

Artículo 53 - DECLARACIÓN DE URGENCIA - DEPOSITO: en caso de
urgencia, la que deberá ser declarada por el sujeto expropiante
mediante el correspondiente acto administrativo debidamente
fundado, se iniciará la vía judicial en forma directa, a efectos
de obtener la disponibilidad del bien.

Tratándose de inmuebles, se depositará el monto del avalúo para
el pago de contribución directa, el que podrá ser incrementado
hasta un treinta (30) por ciento.

Tratándose de bienes no inmuebles, se depositará el valor que fije
la comisión o dependencia técnica a que se refiere el artículo

11. En ambos casos, el juez de la causa procederá a ordenar la inmediata entrega de la posesión del bien y a disponer la transferencia del dominio a favor del expropiante y su inscripción en los registros pertinentes, cuando ello corresponda; procediéndose de inmediato, por parte del expropiante, a cumplimentar los procedimientos de la instancia administrativa prevista en los artículos 12 y siguientes, a proseguir posteriormente, si así correspondiere, con los de la instancia judicial.

# CAPITULO 4
## ABANDONO DE LA EXPROPIACIÓN

Artículo 54 - CUANDO HAY ABANDONO: se reputará abandonada la expropiación si el sujeto expropiante, no habiendo tomado la posesión del bien y salvo disposición en contrario de la Ley especial, no promueve la instancia judicial dentro de los ciento ochenta (180) días de sancionada la Ley que lo autoriza, cuando se trate de bienes individualmente determinados; dentro de un (1) año, cuando se trate de bienes comprendidos dentro de una zona indeterminada; y, dentro de los dos (2) años, cuando se trate de bienes comprendidos dentro de una enumeración genérica, y cuya adquisición por el sujeto expropiante pueda postergarse hasta que el propietario modifique -o intente modificar- las condiciones físicas del bien.

No se tendrá por operado el abandono de la expropiación, cuando leyes orgánicas municipales autoricen a estas a expropiar la fracción de los inmuebles afectados a rectificaciones o ensanches de calles y ochavas, en virtud de las ordenanzas respectivas.

La instancia administrativa interrumpe el plazo para que se opere el abandono. Esta interrupción se tendrá por no sucedida si no se impulsara el procedimiento dentro de los ciento (180) días contados a partir de la última diligencia practicada.

Los interesados podrán requerir judicialmente la declaración del abandono de la expropiación, sea por vía de acción o de excepción.

No hay abandono y quedan excluidas de las disposiciones de este artículo, las declaraciones de utilidad pública de bienes afectados a obras proyectadas con visión de futuro, que no sean por tal razón de realización inmediata o continuada y que para posibilitar su construcción se prohíba la introducción en ellos de mejoras y/o la constitución de nuevos derechos. En estos casos el sujeto expropiado solo podrá reclamar la expropiación de tales bienes, de acuerdo a las disposiciones que regulan la expropiación inversa.

Artículo 55 - EFECTO DEL ABANDONO: el abandono de la expropiación deja sin efecto, de pleno derecho, la declaración de utilidad pública dispuesta por la Ley respectiva.

# CAPITULO 5
## OCUPACIÓN TEMPORARIA

Articulo 56 - SUJETOS ACTIVOS - NATURALEZA DEL DERECHO - NORMAS DE APLICACIÓN: los sujetos activos a que se refiere el artículo 3 de la presente Ley, podrá proceder, con motivo de una expropiación o no, a la ocupación y uso de aquellos bienes no fungibles que pueden ser objeto de expropiación, cuando razones de utilidad pública, de acuerdo al concepto fijado en el artículo

2, así lo requiera.

La ocupación temporaria por causa de utilidad pública constituye un derecho real administrativo, a favor de los sujetos ocupantes, sobre un bien ajeno cuyo titular continúa manteniendo la propiedad del mismo. La ocupación temporaria, en todo lo que se conforme con su naturaleza especial, se rige por las normas y procedimientos para la expropiación fijados en la presente Ley, con las modificaciones contenidas en este capítulo.

Artículo 57 - OCUPACIÓN ORDINARIA Y EXTRAORDINARIA: la ocupación temporaria será ordinaria cuando la utilidad pública de la misma haya sido previamente declarada por Ley, o indemnizada. Será extraordinaria, cuando sin mediar tales requisitos previos, ella esté determinada por una necesidad de tal manera imperiosa, que sea imposible ninguna forma de procedimiento. La ocupación extraordinaria puede transformarse en ordinaria cuando, en el transcurso de aquella, la Ley la declare de utilidad pública y sea indemnizada.

La ocupación temporaria, ordinaria o extraordinaria, debe limitarse a la necesidad pública que la determina y ser proporcionada a la misma.

Artículo 58 - DECLARACIÓN DE UTILIDAD PÚBLICA: la declaración de utilidad pública de la ocupación temporaria será expresa cuando la Ley de manera especial así lo manifieste. Será implícita cuando, sin manifestarlo expresamente la Ley en cuanto a la ocupación, tal manifestación ha sido formulada con relación a la expropiación a la cual la ocupación temporaria está directamente referida.

Artículo 59 - DURACIÓN: la ocupación temporaria se extenderá por el tiempo que fije la Ley especial que la disponga. A falta de plazo legal, la autoridad ocupante determinará dicho plazo, el que en uno u otro supuesto, quedará condicionado a la necesidad pública que la ha motivado. En ningún caso, el plazo de la ocupación temporaria podrá exceder de tres (3) años, debiendo al cabo de dicho término el sujeto ocupante optar entre la expropiación del bien o la devolución del mismo a su propietario.

Artículo 60 - INDEMNIZACIÓN: el propietario será indemnizado por los daños que fueran una consecuencia inmediata y directa de la ocupación, tomándose como base principal a tal efecto la rentabilidad real del bien ocupado durante el quinquenio inmediato anterior a la ocupación, el tiempo cierto o presuntivo de la misma, la disminución del valor económico del bien o la plusvalía del mismo a causa o con motivo de aquella, o de la obra pública a la que dicha ocupación estuviera referida, así como cualquier otro elemento de juicio que contribuya a la misma finalidad.

En la ocupación temporaria de bienes de empresas cuyos titulares fueran declarados en quiebra y respecto de las cuales la Provincia por razones de interés público hubiera dispuesto o dispusiera la continuidad de su funcionamiento, el valor de aquellos, al objeto de la indemnización, se estimará en el que tuvieran al tiempo de comenzar la intervención del Estado, y como si esta no hubiera tenido lugar. Igual principio regirá para la fijación de la indemnización a que se refiere el artículo 8, en el caso de disponerse la expropiación de tales bienes.

Artículo 61 - MODIFICACIÓN DE LA SUSTANCIA Y ALTERACIÓN DEL DESTINO ECONÓMICO: cuando el interés público que determinó la ocupación temporaria exigiese modificar la sustancia del bien

ocupado, sea por remoción de tierra, extracción de materiales u otros actos semejantes, la indemnización -además de contemplar la disminución del bien- estará referida al valor de los productos o materiales removidos o extraídos, con respecto a los cuales no habrá ocupación sino expropiación. Tanto con relación a estos productos, como en el caso de que los actos aludidos desnaturalizaran el bien ocupado alterando gravemente el destino económico a que se encontraba afectado, el propietario, podrá perseguir la expropiación del mismo de acuerdo a las normas que regulan la expropiación inversa.

## TITULO V
## DISPOSICIONES COMPLEMENTARIAS

Artículo 62 - PLAZOS: los plazos fijados en el presente Decreto-Ley se computarán por días hábiles.

Artículo 63 - FUERO DE ATRACCIÓN: los juicios de expropiación no estarán sujetos al fuero de atracción de los juicios universales.

Artículo 64 - CRITERIO APLICABLE A LAS VARIACIONES MONETARIAS: cuando proceda ajustar la indemnización a causa de las oscilaciones del signo monetario, a que se refiere el artículo 33, el Juez deberá ponderar, en cada caso, la naturaleza del bien de que se trata y sus características, apreciando su valor real al tiempo de la sentencia.

Artículo 65 - RETIRO DE FONDOS EN LA EXPROPIACIÓN DE URGENCIA: el retiro de fondos en la expropiación de urgencia será hecho por el expropiado sin perjuicio de los procedimientos de la instancia administrativa, previo cumplimiento de los pertinentes requisitos exigidos en el artículo 38.

Artículo 66 - Derógase la Ley 1922, el Decreto-Ley 6745/57, modificatorio de la misma y toda otra disposición que se oponga a la presente.

Artículo 67 - El presente Decreto-Ley comenzará a regir a partir de la fecha de su publicación en el Boletín Oficial, siendo de aplicación a los procedimientos de expropiación, iniciados desde dicha fecha.

Artículo 68 - El Tribunal de Tasaciones a que se refiere el artículo 34 entrará en funcionamiento cuando lo disponga el Poder Ejecutivo, conforme a las previsiones contenidas en el citado articulo, y se avocará desde entonces incluso al conocimiento de los casos pendientes, aplicando respecto de los iniciados con anterioridad a la vigencia del presente Decreto-Ley, las disposiciones de la Ley 1922 y del Decreto-Ley 6745/57.

Artículo 69 - Cúmplase, comuníquese, publíquese y dése al registro oficial.

**ANTONIO CAFIERO**
INTERVENTOR FEDERAL 1974-75
**Lic. NICOLAS WELSZ-WASSING**
Asesor a cargo de la Subsecretaría de Hacienda.

# DECREE 1447/75

MENDOZA, April 25, 1975.

*(See Provincial Decree No. 2457/17: - The General Appraisal Commission of the Province is hereby created, which will carry out the appraisals that will serve as the basis for the indemnifications of the expropriations referred to in Article 10 of Decree-Law No. 1447/75, as established in Article 11 of the aforementioned regulation and all other regulations that require appraisal of rights and movable and immovable property, provided that it does not have a specific regulation).*

**B.O.      : 02/05/75**

ARTICLE NOS.: 0069

# SUBJECT : GENERAL EXPROPRIATION LAW

TITLE I- GENERAL (arts. 1 to 10)
Expropriating party
Subject of expropriation
Object of expropriation
Partial expropriation
Expropriation of the subsoil
Indemnification:
Improvements and rights subsequent to the act of resolution of the expropriation
Guidelines for determining compensation.

TITLE II - ADMINISTRATIVE INSTANCE (arts. 11 to 18)
Direct concentration - compensation value
Notification and summons to the expropriated party
Forms of notification
Effects of notification
Intervention of the valuation unit
Extension of the term to the expropriated party
Valuation unit pronouncement deadlines-.
responsibilities
Agreement of parties - requirement.

TITLE III- JUDICIAL INSTANCE (arts. 19 to 45)
Initiation of legal action
Administrative nature of expropriation
Cases in which it is appropriate
Presentation in court - possession - ownership
Contents of the statement of claim
Transfer
Edicts - intervention of the defender of the poor and absentees
Response to the transfer - rights of third parties
Offer of proof - determination of compensation claimed
Transfer to the expropriator
Time limit for substantiation of evidence
Evidence not submitted - integration of the Provincial Court of Appraisals by the expropriated and the expropriating party
Single expert evidence of the Provincial Appraisal Court
Legal indemnification

Creation and composition of the provincial appraisal court
Collaboration with the provincial appraisal court
Deadline for pronouncement
Request for information
Withdrawal of the consignment by the expropriated party
Expiry of the instance
Limits of compensation - imposition of costs
Regulation of fees - costs
Incidents
Termination of leases
Works and studies at the state's expense - infringements
Withdrawal of funds by the expropriator

TITLE IV- SPECIAL CASES

CHAPTER I- REVERSE EXPROPRIATION (arts. 46 to 48)
Concept and origin
Prerequisite
Procedure

CHAPTER 2 - RETROGRESSION (arts. 49 to 52)
Source
Prerequisites
Reimbursement of the amount received
Competent judge

CHAPTER 3-EURGENCY EXPROPRIATION (Art. 53)
Declaration of urgency - deposit.

CHAPTER 4-ABANDONMENT OF THE EXPROPRIATION(arts. 54 to 55)
When there is abandonment
Effect of abandonment

CHAPTER 5- TEMPORARY OCCUPATION (arts. 56 to 61)
Active subjects - nature of the right - rules of application
Ordinary occupation
Declaration of public utility
Duration
Indemnification
Modification of substance and alteration of economic destination

TITLE V-SUPPLEMENTARY PROVISIONS (arts. 62 to 69)
Deadlines:
Attraction jurisdiction:
Criterion applicable to monetary variations
Withdrawal of funds in emergency expropriation:
Derogations
Validity

# THE FEDERAL INTERVENER IN THE PROVINCE DECREES WITH THE FORCE OF LAW:

General Expropriation Law

# TITLE I
# GENERAL

Article 1 - The general expropriation regime in the Province is subject to the provisions of this Decree-Law.

Article 2 - Expropriation may be carried out for a PUBLIC UTILITY CAUSE, which is established in all cases in which the satisfaction of a specific need is pursued, for social improvement. The declaration of public utility will be made, in each case, by Law and with reference to specific assets. When the qualification is sanctioned with generic character, the Executive Power will individualize the assets required for the purposes of the Law, with reference to descriptive plans, technical reports and other sufficient elements for its determination.

Article 3 - EXPROPRIATING SUBJECT: the Provincial State, the Municipalities and the entities of an autarkic nature, provincial or municipal, may be expropriating subjects, according to the power conferred to them by the respective law.the concessionaires of public works or services, for whose realization the expropriation has been sanctioned, substitute the expropriating authority in the rights and obligations created by this Law and which are not inherent to the quality of political power.

Article 4 - EXPROPRIATED SUBJECT: the expropriated parties may be individuals or legal entities, and the municipalities that are the owners of the property subject to expropriation. In the case of registrable property, the expropriated parties shall be those who appear as owners.

Article 5 - OBJECT OF EXPROPRIATION: Expropriation may be applied to all property suitable or necessary for the satisfaction of the public utility, regardless of its legal nature, whether or not it is in commerce, whether or not it is property or not. Expropriation may also be extended to property adjacent or not to a public work but linked to it, for the purpose of carrying out social improvement plans, in which case the terms established in Article 50 of this Decree-Law shall be considered duplicated.

Article 6 - PARTIAL EXPROPRIATION: if it is a partial expropriation of any property, and the part that is not expropriated substantially loses its value or makes its use or exploitation uneconomical, the expropriating party may demand expropriation of the entire property. in such case, the expropriating party may choose between the total expropriation claimed, or the compensation to the expropriated party for the economic devaluation of the remaining part that is not expropriated.  This compensation shall be in accordance with the principles set forth in Article 8, and shall be proportional to the part of the property not included in the expropriation. In no case may this compensation exceed eighty percent (80%) of that which would have been offered if the remainder in question had also been expropriated. Once this percentage has been exceeded, the surplus shall be expropriated.

In the case of URBAN LAND, inadequate surpluses shall be considered to be those which, as a result of the expropriation, have fronts, depths or surface areas inferior to those authorized for building by the respective local ordinances or uses.In RURAL PROPERTY, the expropriating party shall determine in each case, after a report to the competent technical department of the Province, the inadequate extensions, taking into account the surface of the "economic unit", according to its location, ecological and climatic

characteristics and other environmental factors, and in accordance with the special legal provisions governing the matter.

Article 7 - EXPROPRIATION OF THE SUBSOIL: the subsoil is subject to expropriation, regardless of the surface property. In the event that the surface is affected by the expropriation of the subsoil, the same shall also be expropriated. This Article shall apply in all matters that do not contradict the public law provisions contained in the Mining Code.

Article 8 - INDEMNIFICATION: Compensation shall only include the objective value of the property at the time of dispossession and damages that are a direct and immediate consequence of the expropriation. no personal circumstances, emotional values or hypothetical gains shall be taken into account. No loss of profit will be paid. In the case of real estate, the panoramic value will not be considered either. The historical value will be compensated only when it is the determining reason for the expropriation of the property in question. The value of the property will be estimated at the value it would have had if the public utility of the same had not been declared, or if the work had not been executed, or not even authorized, or planned. In the case of public works constructed in stages or of deferred execution, the higher value of the work carried out shall not be taken into account for the purposes of compensation. Administrative restrictions of a general nature established by special laws are not compensable. The expropriated party is exempted from the payment of deed expenses.

Article 9 - IMPROVEMENTS AND RIGHTS SUBSEQUENT TO THE RESOLUTIVE ACT OF THE EXPROPRIATION: the improvements made to the property subsequent to the act that made the expropriation effective shall not be subject to compensation, except for those necessary for the conservation or rational exploitation of the property.Contracts entered into and rights in rem constituted by the expropriated party after the Law declaring the property to be of public utility, when the property has been identified, shall not be enforceable against the expropriating party, in cases where the Law has not identified the property, contracts entered into and rights in rem constituted after the notification of the administrative act that has identified the property shall not be enforceable against the expropriating party.

Article 10 - GUIDELINES FOR DETERMINING THE COMPENSATION: the compensation to be fixed in the administrative or judicial instance, shall be the result of the concurrent analysis of the following elements of judgment, without excluding others that contribute to the same purpose:
a)     Price paid in the last transfer of ownership, provided that this was not made after the individualization of the property.
b)     Valuation assigned for the payment of the direct contribution tax.
c)     the well-founded offers made by the expropriated and the expropriator, in the specific case in question.
d)     Values of neighboring properties and prices paid in the last five (5) years prior to the individualization of the expropriated property and those agreed upon in other expropriations originated by the same public work to which the compensation in question may be linked.
e)     Values registered by the national and provincial banks in the locality or in those corresponding to the area in which the property to be expropriated is located.
f)     Value of its effective productivity and profitability during the last five (5) years, according to the nature of the assets and the destination to which they were applied.

# TITLE II
# ADMINISTRATIVE AUTHORITY

Article 11 - DIRECT CONCENTRATION - VALUE OF THE INDEMNIFICATION: once the expropriation has been resolved, the expropriating party shall seek the acquisition of the property subject to expropriation through direct and voluntary agreement with the owner of such property. for such purpose, the respective authority shall initiate the proceedings aimed at identifying the property or properties included in the expropriation, their legal situation, encumbrances that may affect them, and the determination of their respective owners. Likewise, the expropriating party shall fix, through the technically qualified commissions or agencies of the Province which, according to the nature and characteristics of the property, shall be established by the regulations issued for such purpose by the Executive Branch, the values of the compensation to be offered to the owner. In the case of real estate, the first offer shall be determined directly by the expropriating party in accordance with the appraisal for the payment of the direct contribution, which may be increased by up to thirty percent (30%).Article 11 bis: Once a property is declared of public utility and subject to expropriation, the expropriating party shall communicate it to the Public Registry and Judicial Archive Office corresponding to the jurisdiction of the property, in order to register the preventive annotation of the expropriation. For such purpose, a certified copy of the regulations that provided for the expropriation must be attached and the note of ownership of the property must be identified. The preventive annotations of expropriation will expire by right five (5) years after its registration, being able to re-register before its expiration. The affected owner may request the cancellation of the annotation when the abandonment of the expropriation has been judicially declared. *(Article 11 bis incorporated according to Law 8300 art. 1, B.O. 21/07/2011).*

Article 12 - NOTIFICATION AND NOTIFICATION TO THE EXPROPRIATED: the expropriating party shall notify the expropriated party, together with the relevant background and documents, of the act by which the property owned by him is declared of public utility and subject to expropriation, so that, within twenty (20) days of notification, he may state whether he accepts the compensation offered or, if not, estimate the amount of compensation to which he considers himself entitled. In the latter case, the owner of the property object of the expropriation must provide the elements of judgment and documentation supporting the amount he is seeking.in this same opportunity, as a sworn statement, the owner of the property must state the encumbrances weighing on the property and the real or personal rights that third parties may have with respect to such property, in this case stating the name, surname and domicile of the holders of such rights.

ARTICLE 13 - FORMS OF NOTIFICATION: If the domicile of the expropriated party is unknown, or is unknown, it shall be notified by edicts to be published in the Official Gazette and in one of the most widely circulated newspapers in the Province, for five (5) days alternately.

Article 14 - EFFECTS OF NOTIFICATION: the notification to the expropriated party, referred to in the preceding article, shall be made, in all cases, under penalty that if he does not appear, or does not make a well-founded estimate of the value of the property, in the event of disagreement with the compensation offered, such compensation shall be deemed accepted for the purposes of the respective trial.Once the expropriated party has been duly notified in the manner indicated above, such presumption shall be purely

legal, and the compensation offered shall constitute the value that the expropriating party shall deposit in the respective expropriation trial, and such compensation shall be considered firm and definitive by the judge of the case. In the absence of opposition by the defendant, the imposition of costs shall not be applicable.

Article 15 - INTERVENTION OF THE VALUATION DEPENDENCY: in the event that the expropriated party disagrees with the compensation offered, and having submitted a well-founded estimate of the compensation sought, the expropriating party shall proceed, within three (3) days following the date of submission, to intervene, with the passing of all the proceedings, to the commissions or technical units referred to in Article 11, which shall reconsider the offer made, taking into account the guidelines set forth in Article 10.

Article 16 - EXTENSION OF THE TERM FOR THE EXPROPRIATE: at the request of the interested party, submitted within the first ten (10) days of the term set forth in Article 12, and when the complexity of the case so justifies, the expropriating party may extend the aforementioned term for the submission of the substantiated estimate of compensation, up to a maximum total of sixty (60) days as from the date of the notice referred to in Article 12.

Article 17 - DECLARATION PERIOD OF THE VALUATION DEPENDENCY - RESPONSIBILITIES: the commissions or technically qualified agencies mentioned in Article 11, shall issue a statement within a peremptory term of thirty (30) days as from the receipt of the proceedings, on the value that the expropriating party shall definitively offer as full compensation. Said pronouncement must be duly grounded, and the lack thereof, within the aforementioned term, shall give rise to the application to those responsible of the penalties provided for in the respective regulations for such cases.the aforementioned commissions or technical agencies may request, within the first ten (10) days of the term in which they must issue their pronouncement, an extension of said term, when the complexity of the case so justifies it. The competent authority, as determined by the regulations, may, by means of a substantiated resolution, authorize the extension of the requested term, which shall only be extended up to a maximum total of sixty (60) days as from the receipt of the proceedings by such commissions or agencies.

Article 18 - AGREEMENT OF PARTIES - REQUIREMENT: by agreement between the parties, at any stage of the procedure, the transfer of ownership of the property free of all encumbrances, liens and occupation, by payment of the corresponding compensation, and, as the case may be, tradition, deed and registration shall be effected.Direct contracting may not be carried out if there are not perfect and sufficient titles, as well as the current and total availability of the property by the owner, or when its title is doubtful or subject to litigation.

# TITLE III
# JUDICIAL INSTANCE

Article 19 - INITIATION OF THE JUDICIAL PROCEDURE: once the administrative process has been exhausted, the expropriating party shall initiate the judicial process by submitting the administrative proceedings to the competent court, which, together with the writ of claim, shall serve as the head of the proceeding.

Article 20 - ADMINISTRATIVE NATURE OF THE EXPROPRIATION: the procedure of the expropriation trial is special. the judges shall adjust to the rules of this law, applying subsidiarily the provisions of the Code of Civil Procedure for summary proceedings. the competence of the civil judges and the subsidiary application of the Code of Civil Procedure do not alter the administrative nature of the expropriation.

Article 21 - CASES IN WHICH PROCEEDS: it is appropriate to initiate the judicial instance of expropriation in the following cases:
a)    When the parties have not reached an agreement in the administrative proceedings.
b)    When, notwithstanding the existence of an agreement on the price, the transfer of the property cannot be completed at the administrative venue due to lack of the requirements indicated in article 18, or due to formal inconveniences. In these cases, the only purpose of the judicial proceeding will be for the Judge to order the transfer, without prejudice to the rights of third parties.)      When the owner has not appeared at the summons issued in the administrative proceeding, or when his claim for compensation has not been considered.

Article 22 - COMPETENCY: in the judicial instance, the Civil Judge of first instance of the judicial district corresponding to the location of the expropriated property shall be competent. if there are several of them, or only one but located in different judicial districts, the judge of the place of any of them, or of any of their parts, at the choice of the plaintiff, shall be competent. the plaintiff may also choose the judge of the domicile of the defendant.

Article 23 - PRESENTATION AT THE JUDICIAL INSTANCE - POSSESSION - OWNERSHIP: the presentation at the judicial instance shall be made by the expropriating party accompanying the proceedings produced at the administrative stage, together with the payment of the amount of the liquidation made by the commission referred to in Article 11, or the amount agreed upon by the parties in the case of paragraph b) of Article 21. Immediately possession of the property object of the expropriation shall be granted, empowering the officer of justice to search the domicile and request the assistance of the public force if necessary, and the property shall be declared transferred to the name of the expropriating party, and the resolution shall serve as sufficient transfer title, which shall be recorded in the respective registry, as the case may be.

Article 24 - CONTENT OF THE STATEMENT OF CLAIM: the statement of claim shall contain:
a)    Name and domicile of the expropriating party.
b)    Name and address of the expropriated party.
c)    Designation of the property whose expropriation is sought, with precise determination of location, measurements and other individualizing elements.
d)    Indication of the Law that has declared the property subject to expropriation for reasons of public utility, and of the decree or resolution that determines it, in case of generic declaration, with transcription of the pertinent parts thereof.
e)    A summary of the administrative proceedings, with express mention of everything that has been done, and it is not sufficient to simply refer to the records previously produced.
f)    Expression of the amount that constitutes the compensation that corresponds to the expropriated subject, and justification thereof.

g)    Right invoked.
h)    The petition in clear and positive terms.

Article 25 - TRANSMISSION: the writ of claim shall be transferred to the
expropriated party and to all those who have or allege to have real rights or
contracts over the property to be expropriated, so that they may appear and
answer it within a term of ten (10) days.

Article 26 - EDICTS - INTERVENTION OF THE DEFENDER FOR THE POOR AND ABSENT
PERSONS: whether or not the owner is known, edicts shall be published for ten
(10) days alternately in the Official Gazette and in a newspaper with
circulation throughout the Province, summoning all possible interested
parties under penalty of being represented "ex lege" by the Defender for the
Poor and Absent, who shall be notified to act on behalf of all presumed
interested parties who do not attend to defend their rights.The edictal
notification is supplementary and may not be invoked by those who have been
notified by writ of summons.

Article 27 - RESPONSE TO THE TRANSFER - RIGHTS OF THIRD PARTIES: in the
response to the transfer, the expropriated party shall declare the name,
surname and domicile of those who may have the right to be indemnified, as
holders of a real right over things or of a personal right constituted in
their favor by the owner, in relation to the property.

No action by third parties may prevent the expropriation or its effects.
The claimant's rights shall be deemed transferred from the thing to the
compensation.

Article 28 - OFFERING OF EVIDENCE - DETERMINATION OF CLAIMED INDEMNIFICATION:
those summoned shall answer the claim and offer all the evidence related to
their rights and the compensation they claim. The exceptions enumerated in
article 173 of the Code of Civil Procedure may not be substantiated as
previous ones, except in the case envisaged in article 14 of this law.

Article 29 - TRANSMISSION TO THE EXPROPRIATE OWNER: of the expropriated
party's answer, or of the presentation of third parties alleging rights, the
expropriating party shall be notified for a term of five (5) days, so that it
may answer and offer counter-evidence.

Article 30 - TERM FOR SUBSTANTIATION OF EVIDENCE: once the term of the
preceding article has expired, the term to substantiate the evidence, with
the exception of the expert evidence in charge of the Appraisal Court, may
not exceed thirty (30) days, counted as from the date of the order accepting
the evidence offered by the parties.

Article 31 - PROOF NOT SUBMITTED - INTEGRATION OF THE PROVINCIAL APPRAISAL
COURT BY THE EXPROPRIATE AND THE EXOWNER: upon expiration of the term set
forth for the substantiation of evidence, evidence not rendered shall be
deemed to have been waived, and the proceedings shall be forwarded to the
Provincial Appraisal Court and the expropriated and the expropriating party
shall be notified, when applicable, so that they may attend to integrate said
court within a non-extendable term of five (5) days, under penalty of waiver
of their intervention.

Article 32 - PROVINCIAL APPRAISAL TRIBUNAL'S SOLE EXPERT EVIDENCE: the expert
evidence shall be exclusively in charge of the Provincial Appraisal Court,
created by this Law, whose opinion shall be irreplaceable and indispensable,

and must even be obtained ex officio. no other means of evidence shall be admitted, in any case, which directly or indirectly tends to substitute or expand the opinion of the Provincial Appraisal Court, including those which, under the appearance of mere information or testimony, conceal expert opinions.

Article 33 - JUDICIAL INDEMNIFICATION: the judge shall decide the difference, fixing the indemnity based on the proceedings and opinions prepared in each case by the Provincial Appraisal Court, which shall be formed, for this sole purpose, by the expropriating party, if applicable, and by the expropriated party or its representative. The function of all the members of the Provincial Appraisal Court, including the individual or his representative, shall have the character of honorary public charge and, in no case, the expropriating party shall be obliged to pay any emolument for this concept. The judicial indemnity shall take into account the fluctuations that may have occurred in the monetary sign between the date of the expropriation and the date of payment, as well as the interest on the balance that the expropriated party has not yet received.

Article 34 - CREATION AND COMPOSITION OF THE PROVINCIAL APPRAISAL TRIBUNAL: The Provincial Appraisal Tribunal is hereby created as a permanent and technical body, whose functions shall be those resulting from this law. It shall be composed of four (4) representatives of the public sector and three (3) representatives of the private sector as permanent members, as established in the respective regulations. One of the representatives of the public sector shall preside over said body, exercising the right to double vote in case of a tie. The Executive Power will establish the place, budget and the rules of integration and operation to be followed by the aforementioned body.

Article 35 - COLLABORATION WITH THE PROVINCIAL APPRAISAL COURT: all public administration agencies are obliged to provide the most effective collaboration to the Provincial Appraisal Court, at its simple request. The respective regulation shall establish the penalties to which the agents of the administration who do not comply with such collaboration shall be liable.

Article 36 - DEADLINE FOR DECLARATION: the Provincial Appraisal Court shall render its decision within thirty (30) days of receipt of the proceedings sent by the Judge in the case, term that may be extended for the same period. If upon expiration of the term and its extension, the Court does not issue a decision, the Executive Branch, at the request of the intervening Judge, shall proceed to remove the members of the court and appoint others to replace them.

Article 37 - REQUEST FOR REPORTS: the judge, ex officio, shall request a report from the public agencies on the tax liens owed by the property subject to expropriation.

Article 38 - WITHDRAWAL OF THE CONSIGNMENT BY THE EXPROPRIATED: the consigned sum may be withdrawn by the expropriated party upon expiration of the term to appear and answer as provided in the edictal publication, and upon proof of ownership of the property, that the property does not recognize mortgage, pledge or other real right, as well as that it is not seized and that there are no restrictions on the free disposal of the expropriated party's property. to this effect, proof of payment of tax, provincial and municipal obligations due at the date of dispossession must be presented. until the

time of withdrawal of the consignment, interest on the consigned amount shall be payable to the expropriated party.

Article 39 - EXPIRATION OF THE INSTANCE: the expiration of the instance shall not operate in the expropriation lawsuit.

Article 40 - LIMITS OF THE INDEMNIFICATION - IMPOSITION OF COSTS: the judgment may not fix any compensation less than that offered, nor more than that claimed. The costs shall be imposed according to the following rules:
a)    They shall be borne by the expropriated party, in the event that the compensation has been fixed at an amount equal to that offered by the expropriator.
b)    They will be in the order caused, when the compensation has been fixed in a higher amount than the offered one but closer to this one than to the amount claimed by the expropriated party.
c)    They shall be at the expense of the expropriator, if the compensation has been fixed in an amount closer to the amount claimed by the expropriated than the amount offered by the expropriator, or in the fair average between one and the other.

Article 41 - REGULATION OF FEES - COSTS: the judge shall regulate the fees taking as the amount in question the difference between the amount offered and the compensation established in the judgment. Both in the case of paragraph a) of the preceding article, and when no claim has been made by the expropriated party, the regulation of fees shall be made in accordance with the provisions of the Law on Fees for Lawyers and Attorneys with respect to lawsuits whose amount cannot be assessed by any procedure (article 10 of Law 3641), and for the purposes of the imposition of costs and the regulation of fees, the fluctuations of the monetary sign shall not be taken into account.

Article 42 - INCIDENTS: any incident or question that may arise as a result of the expropriation proceeding shall be processed in a separate piece, in accordance with the corresponding procedure according to the nature of the matter. in no case may such questions, or the filing of ordinary or extraordinary appeals, delay or suspend the processing of the main proceeding.

Article 43 - TERMINATION OF LEASES: once the possession referred to in Article 23 has been granted, the leases shall be terminated and the occupants shall be granted a term of thirty (30) days to vacate the property. in the case of properties intended for housing, the Judge may extend this term provided that there are no urgent circumstances for the availability of the property.

Article 44 - WORK AND STUDIES IN CHARGE OF THE STATE - INFRINGEMENTS: the owner, possessor, and any other person who considers himself entitled to the property, is obliged to facilitate the execution of the studies or technical operations that by virtue of the present Law were ordered by the State, by its agents or by the concessionaires of public works and services. Any violation of this obligation shall give rise to the judicial removal of such obstacles with the assistance of the public force and search of domicile, and to the application, to the offender or offenders, of a fine of one thousand pesos ($1,000.00) to one hundred thousand pesos ($100,000.00). The Judge of Misdemeanors will be competent to hear the case.

Article 45 - WITHDRAWAL OF FUNDS BY THE EXPROPRIOR: if, within a period of one (1) year from the expiration of the term referred to in Article 25, no

interested party with sufficient right to the compensation offered has come forward, or if his right is limited to only a part thereof, the expropriating party shall request the transfer of the funds consigned, to a special account to be opened for such purpose at the Banco de Previsión Social, to the order of the intervening court.

# TITLE IV
# SPECIAL CASES

# CHAPTER I
# REVERSE EXPROPRIATION

Article 46 - CONCEPT AND PROCEEDINGS: Reverse expropriation is understood as that in which the judicial instance is initiated by the owner of the property declared of public utility, in order for the expropriator to carry out the expropriation ordered and proceed to the payment of the respective compensation. It proceeds in the following cases:
a)   When the expropriating party has taken possession of the property without judicial intervention or without the express consent of the owner.
b)   When the possession has been taken with the consent of the owner and the expropriation lawsuit has not been filed within the term fixed by mutual agreement, within six (6) months after the taking of possession, in the absence of an agreed term.
c)   When, being the property subject to expropriation, the respective provincial or municipal authority, or the expropriating party, restrict or limit in any other way the rights of the owner.

Article 47 - PREVIOUS REQUIREMENT: in order to exercise the action provided for in the preceding article, the expropriated party must prove having previously exhausted without success, in accordance with the General Law regulating the procedure before the Public Administration, the administrative channels to obtain the expropriation of the property and its compensation.

Article 48 - PROCEDURE: the inverse expropriation action shall be processed in accordance with the rules established for direct expropriation in the judicial instance.

# CHAPTER 2
# RETROCESSION

Article 49 - PROCEEDANCE: retrocession shall be understood as the retroversion or reintegration of the expropriated property to the patrimony of its previous owner. Retrocession shall proceed only when the property has not been affected to the public interest that determined the expropriation.

Article 50 - PREREQUISITES: if after three (3) years from the date of taking possession of the property by the expropriating party, the expropriated party has not given the same purpose of public utility that determined the expropriation, the expropriated party shall give notice in a reliable manner to the expropriator to proceed, within two (2) years following such notice, to give the property the mentioned purpose, under penalty of initiating a retrocession action. If after said term has elapsed the property continues not to comply with the aforementioned purpose, the expropriated party shall

have the right to initiate a judicial action for retrocession, which shall expire within one (1) year as from the expiration of the above term.

Article 51 - REINSTATEMENT OF THE LOST: the judgment that provides for the retrocession shall be deemed not to have been pronounced if, within ninety (90) days after it has become final, the expropriated party has not proceeded to deposit in the judgment, in favor of the expropriator, the sums received as compensation, without interest. The resulting sum shall be reduced by the amount corresponding to objective and direct damage to the property as from the time of dispossession, plus the amount of the improvements made prior to the date of the notice referred to in Article 50, except for those which, after that date, have been necessary for the conservation or rational use of the property. The delivery of the property to him by the expropriating party shall be made free of the occupant. In such cases, the expropriating party shall be exclusively liable for the corresponding indemnities, the interest on which may be deducted by the expropriated party from the sum he is obliged to repay.

Article 52 - COMPETENT JUDGE: the claim for retrocession shall be filed before the same judge who intervened in the expropriation proceeding and, if the latter had not existed due to an agreement having been reached in the administrative instance, before the judge resulting from the application of the provisions of Article 22. The action shall be substantiated in accordance with the rules established by the Code of Civil Procedure for the summary proceeding, and the res judicata of the expropriation judgment may not be invoked therein.

## CHAPTER 3
## EMERGENCY EXPROPRIATION

Article 53 - DECLARATION OF URGENCY - DEPOSIT: in case of urgency, which shall be declared by the expropriating party by means of the corresponding duly grounded administrative act, the judicial process shall be initiated directly, in order to obtain the availability of the property.In the case of real estate, the amount of the appraisal shall be deposited for the payment of the direct contribution, which may be increased by up to thirty (30) percent.In the case of non-real estate, the value set by the commission or technical unit referred to in Article 11 shall be deposited. In both cases, the judge of the case shall proceed to order the immediate delivery of the possession of the property and to order the transfer of the domain in favor of the expropriating party and its registration in the pertinent registries, when appropriate; proceeding immediately, on the part of the expropriating party, to comply with the procedures of the administrative instance provided for in Articles 12 and following, to continue later, if appropriate, with those of the judicial instance.

## CHAPTER 4
## ABANDONMENT OF EXPROPRIATION

Article 54 - WHEN THERE IS ABANDONMENT: the expropriation shall be deemed abandoned if the expropriating party, not having taken possession of the property and unless otherwise provided by the special Law, does not promote the judicial instance within one hundred and eighty (180) days of the enactment of the Law authorizing it, in the case of individually determined

property; and, within one (1) year, in the case of property included within an undetermined area; and, within two (2) years, in the case of property included within an undetermined area; within one (1) year, in the case of properties included within an undetermined area; and, within two (2) years, in the case of properties included within a generic enumeration, and whose acquisition by the expropriating subject may be postponed until the owner modifies -or tries to modify- the physical conditions of the property.The abandonment of the expropriation shall not be deemed to have taken place when municipal organic laws authorize the municipalities to expropriate the fraction of the properties affected to rectify or widen streets and alleys by virtue of the respective ordinances. This interruption shall be deemed not to have occurred if the procedure is not initiated within one hundred (180) days as from the last proceeding carried out.the interested parties may request the declaration of abandonment of the expropriation, either by way of action or exception. There is no abandonment and are excluded from the provisions of this article, the declarations of public utility of properties affected to works projected with a vision of future, which for such reason are not of immediate or continuous realization and that to make possible their construction the introduction in them of improvements and/or the constitution of new rights is prohibited. In such cases, the expropriated party may only claim the expropriation of such property, in accordance with the provisions governing reverse expropriation.

Article 55 - EFFECT OF ABANDONMENT: the abandonment of the expropriation renders null and void, by operation of law, the declaration of public utility provided by the respective Law.

# CHAPTER 5
# TEMPORARY OCCUPATION

Article 56 - ACTIVE SUBJECTS - NATURE OF THE RIGHT - RULES OF APPLICATION: the active subjects referred to in Article 3 of this Law, may proceed, on the occasion of an expropriation or not, to the occupation and use of those non-fungible goods that may be subject to expropriation, when reasons of public utility, in accordance with the concept set forth in Article 2, so require.Temporary occupation for reasons of public utility constitutes a real administrative right, in favor of the occupying parties, over another's property, the owner of which continues to maintain the ownership thereof. Temporary occupation, in all that conforms to its special nature, is governed by the rules and procedures for expropriation set forth in this Law, with the modifications contained in this Chapter.

Article 57 - ORDINARY AND EXTRAORDINARY OCCUPATION: Temporary occupation shall be ordinary when the public utility thereof has been previously declared by Law, or indemnified. It will be extraordinary when, without such prerequisites, it is determined by such an imperative need that no other form of procedure is possible. Extraordinary occupation may be transformed into ordinary occupation when, in the course of such occupation, it is declared by law to be of public utility and is compensated.

Article 58 - DECLARATION OF PUBLIC UTILITY: the declaration of public utility of the temporary occupation shall be express when the Law so declares in a special manner. It shall be implied when, without being expressly stated by the Law as to the occupation, such statement has been formulated in relation to the expropriation to which the temporary occupation is directly referred.

Article 59 - DURATION: Temporary occupation shall be for the period of time established by the special law providing for it. In the absence of a legal term, the occupying authority shall determine such term, which, in either case, shall be conditioned to the public need that has motivated it. In no case may the term of the temporary occupation exceed three (3) years, and at the end of such term the occupying party must choose between the expropriation of the property or the return of the same to its owner.

Article 60 - INDEMNIFICATION: the owner shall be indemnified for the damages that were an immediate and direct consequence of the occupation, taking as the main basis for such purpose the real profitability of the property occupied during the five-year period immediately prior to the occupation, the certain or presumed time of the occupation, the decrease in the economic value of the property or the added value thereof due to or as a result thereof, or of the public work to which such occupation referred, as well as any other element of judgment that contributes to the same purpose.In the temporary occupation of assets of companies whose owners were declared bankrupt and in respect of which the Province, for reasons of public interest, had ordered or provided for the continuity of their operation, the value of such assets, for the purpose of compensation, shall be estimated at the value they had at the time the State intervention began, and as if the latter had not taken place. The same principle shall apply for the determination of the compensation referred to in Article 8, in the event of the expropriation of such property.

Article 61 - MODIFICATION OF THE SUBSTANCE AND ALTERATION OF THE ECONOMIC PURPOSE: when the public interest that determined the temporary occupation requires modifying the substance of the occupied property, whether by removal of earth, extraction of materials or other similar acts, the compensation - in addition to contemplating the diminution of the property - shall refer to the value of the products or materials removed or extracted, with respect to which there shall be no occupation but expropriation. Both with respect to these products, and in the event that the aforementioned acts denature the occupied property, seriously altering the economic purpose for which it was intended, the owner may pursue the expropriation thereof in accordance with the rules governing inverse expropriation.

# TITLE V
# SUPPLEMENTARY PROVISIONS

Article 62 - TIME LIMITS: the time limits set forth in this Decree-Law shall be computed by working days.

Article 63 - FORUM OF ATTRACTION: expropriation lawsuits shall not be subject to the jurisdiction of attraction of universal lawsuits.

Article 64 - CRITERIA APPLICABLE TO MONETARY VARIATIONS: when it is necessary to adjust the compensation due to the fluctuations of the monetary sign, as referred to in Article 33, the Judge shall weigh, in each case, the nature of the property in question and its characteristics, assessing its real value at the time of the sentence.

Article 65 - WITHDRAWAL OF FUNDS IN EMERGENCY EXPROPRIATION: the withdrawal of funds in emergency expropriation shall be made by the expropriated party without prejudice to the procedures of the administrative instance, upon compliance with the pertinent requirements set forth in Article 38.

Article 66 - Law 1922, Decree-Law 6745/57, amending the same and any other provision in opposition to the present Law are hereby repealed.

Article 67 - This Decree-Law shall become effective as from the date of its publication in the Official Gazette, and shall be applicable to expropriation proceedings initiated as from said date.

Article 68 - The Appraisal Court referred to in Article 34 shall become operative when so ordered by the Executive Branch, pursuant to the provisions contained in the aforementioned Article, and from that time onwards it shall also take cognizance of pending cases, applying the provisions of Law 1922 and Decree-Law 6745/57 with respect to those initiated prior to the effective date of this Decree-Law.

Article 69 - Be complied with, be communicated, be published and be filed with the official registry.

**ANTONIO CAFIERO**
FEDERAL COMPTROLLER 1974-75
**Lic. NICOLAS WELSZ-WASSING**
Advisor in charge of the Undersecretariat of Finance.

EXHIBIT 7

**PODER JUDICIAL DE NEUQUÉN** | Secretaría de Biblioteca y Jurisprudencia

# LEY 804

Modifica la Ley 17
Modificada por Ley 896, 971
Deroga a Ley 256, 745

Sancionada: 28-11-20173
Promulgada: 07-12-1973
Publicada: 04-01-1974

## TÍTULO PRIMERO

## DE LA CALIFICACIÓN DE UTILIDAD PÚBLICA

Artículo 1° **Concepto de Utilidad.** El concepto de utilidad pública es extensivo a todos los aspectos y exigencias del bien común; es decir, a todo lo necesario para crear las condiciones morales y materiales que hacen al desarrollo y perfeccionamiento de la persona humana.

Dicho concepto de utilidad pública concurre aunque el beneficio inmediato pertenezca a un solo particular y el mediato a la comunidad, siempre que éste sea cierto, no hipotético ni remoto.

Artículo 2° **Órgano de Calificación.** La calificación de utilidad pública debe ser efectuada por el Poder Legislativo, sin que sea indispensable la enumeración individual de los bienes afectados. Sin embargo, la ley debe delimitar el objeto de la expropiación en términos que no permitan extender la acción expropiatoria a otros bienes que a aquellos que sean necesarios para lograr el bien común que la Honorable Legislatura procura gestionar y concretar.

(Artículo modificado por ley 971)

## TÍTULO SEGUNDO

## DEL SUJETO

Artículo 3° **Entidades expropiatorias**. La expropiación puede ser efectuada por la Provincia, las municipalidades y los concesionarios de obras o servicios públicos.

Artículo 4° **Expropiación por la Provincia**. La expropiación puede ser efectuada por el Poder Ejecutivo:

1) Cuando se trate de bienes necesarios para realizar o construir obras por la Provincia para satisfacer las necesidades o conveniencias de la comunidad provincial;
2) Cuando se trate de bienes necesarios para llevar a cabo obras que contemplen las necesidades o conveniencias de la Nación o de sus entidades autárquicas, se lleve a cabo la obra por la Provincia o por la Nación;
3) Cuando se trate de incorporar al dominio público del Estado provincial bienes particulares para satisfacer necesidades o conveniencias o el bienestar de la comunidad provincial;
4) Cuando sea el medio indispensable para que bienes que se encuentren en el dominio de personas de existencia visible o jurídica, puedan ser adquiridos por la generalidad de la población, para satisfacer sus necesidades o para llevar a cabo planes estaduales de mejoramiento social o económico o moral;
5) Cuando se trate de incorporar al dominio privado de la Provincia bienes indispensable o convenientes para el desenvolvimiento de sus funciones;
6) Cuando se trate de proveer -de cualquier forma o por cualquier medio- el bien común de la población o de sus integrantes, logrando así una mayor justicia distributiva;
7) Cuando sea necesario reservar bienes para la evolución futura de planes de gobierno, evitándose la especulación sobre los mismos.

Artículo 5° **Expropiación por las municipalidades.** La expropiación podrá ser efectuada por los departamentos ejecutivos municipales:



PODER JUDICIAL
DE NEUQUÉN | Secretaría de Biblioteca
y Jurisprudencia

1) Cuando se trate de bienes necesarios para llevar a cabo las obras convenientes para el Municipio;
2) Cuando se trate de incorporar al dominio público municipal bienes particulares, para satisfacer necesidades, conveniencias o el bienestar de los habitantes del municipio;
3) Cuando sea el medio indispensable para que los habitantes del municipio puedan adquirir, para satisfacer sus necesidades, o como medio de llevar a cabo planes estaduales de mejoramiento social, bienes que se encuentren en dominio de personas de existencia visible o jurídica;
4) Cuando se trate de incorporar al dominio privado de las municipalidades bienes indispensables o convenientes para el desenvolvimiento de sus funciones;
5) Cuando se trate de promover -de cualquier forma- el bien común de los habitantes del municipio, tendiente a realizar la justicia distributiva.

Artículo 6°      **Calificación previa del Poder Legislativo.** Las municipalidades no podrán expropiar sin la previa calificación de utilidad pública hecha por el Poder Legislativo. El órgano legislador podrá autorizar la expropiación de bienes determinados o la de bienes enumerados genéricamente, conforme lo dispone el artículo 2° de la presente Ley. Sólo en el caso que la enumeración fuera genérica, el concejo deliberante de la municipalidad declarará en cada caso, y dentro de la autorización legislativa, los bienes afectados a expropiación.

(Artículo modificado por ley 896)

Artículo 7°      **Expropiación por concesionarios de servicios públicos.** La expropiación podrá ser efectuada por los concesionarios de obras o servicios públicos cuando se trate de bienes que sean necesarios o convenientes para la ejecución de la obra o para realizar con eficiencia el servicio público concedido.

Los concesionarios de obras o servicios públicos no podrán expropiar sin previa calificación de utilidad pública hecha por el Poder Legislativo y sin la expresa facultad de expropiar, acordada especialmente por el mismo Poder. El Poder Legislativo podrá autorizar la expropiación de bienes determinados o la de bienes enumerados genéricamente. Si la enumeración fuera genérica, el Poder Ejecutivo (o el Departamento Ejecutivo si se tratara de una concesión municipal) declarará en cada caso, y dentro de la autorización legislativa, los bienes afectados a expropiación.

Artículo 8°      **Sustitución de derechos y obligaciones.** Los concesionarios de obras o servicios públicos para cuya ejecución se sanciona la expropiación, se sustituyen a la autoridad expropiante en los derechos y obligaciones que crea la presente Ley y que no sean atinentes a la calidad del poder político. Conserva sin embargo el Estado o las municipalidades en su caso-, frente a los expropiados, su carácter de garantía, con beneficio de excusión contra los abusos y la insolvencia de los concesionarios.


**TÍTULO TERCERO**

**OBJETO DE LA EXPROPIACIÓN**

Artículo 9°      **Bienes objeto de la expropiación.** Pueden ser objeto de la expropiación los   bienes convenientes o necesarios para la satisfacción de la utilidad pública -cualquiera sea su naturaleza jurídica-, estén o no en el comercio, sean cosas o no.

Pueden ser también objeto de la expropiación los establecimientos industriales, mineros o comerciales y -en general- las universalidades de derecho o de hecho.

Artículo 10°      **Expropiación por entidades autárquicas.** En los casos en que se autorice a efectuar la expropiación a entidades autárquicas, éstas procederán como se ha establecido para el Poder Ejecutivo.

Artículo 11      **Expropiación de bienes afectados a un servicio público.** La Provincia puede expropiar los bienes afectados a un servicio público, concedido por ella o por las municipalidades. Las municipalidades pueden expropiar los bienes afectados a un servicio público concedido por las mismas.

En todas las hipótesis, la expropiación puede comprender el todo o el solo parte de los bienes afectados al servicio público, teniendo siempre en cuenta la eficaz prestación de él. Si por causa de la expropiación de los bienes el concesionario no pudiera prestar -de conformidad a la concesión- el servicio al cual se obligó, podrá pedir la expropiación de éste, o la del total de los bienes afectados a él o la indemnización del perjuicio que acredite haber sufrido.

Artículo 12      **Limitación del objeto de la expropiación.** La expropiación podrá comprender, no solamente los bienes necesarios, sino también aquellos cuya ocupación convenga al fin principal de la misma.

Artículo 13      **Expropiación de bienes adyacentes a una obra pública.** La expropiación puede disponerse



y realizarse sobre adyacentes o no a una obra pública, vinculada o no a ésta, con el objeto de llevar a cabo planes de bien común, establecido por la ley.

<u>Artículo 14</u>        **Pedido de la expropiación total.** Si se tratase de la expropiación parcial de algún inmueble y la parte que quedase sin expropiar fuera inadecuada para uso o explotación racional, el expropiado podrá exigir la expropiación de la totalidad del inmueble.

En los terrenos urbanos, se considerarán sobrantes inadecuados los que, por causa de la expropiación, quedaran con frente, fondo o superficie, inferior a lo autorizado para edificar por las ordenanzas o usos locales respectivos.

En los inmuebles rurales, el Poder Ejecutivo o el órgano competente al efecto- determinará en cada caso las superficies inadecuadas, es decir, las que no constituyan una unidad económica.

<u>Artículo 15</u>        **Parte integrante del bien expropiado.** Considéranse parte integrante del bien expropiado sus accesorios físicos; si la accesión fuese moral, es facultativo del sujeto expropiante incluir los accesorios de la expropiación, pero el expropiado no podrá excluirlos siempre que su retiro sea posible, sin desmedro material del bien principal y que tales accesorios no hayan sido considerados por el Poder Legislativo como objeto primordial exclusivo o concurrente de la expropiación.

<u>Artículo 16</u>        **Expropiación del subsuelo.** Es susceptible de expropiación el subsuelo -con independencia de la propiedad superficial- sin desmedro o daño para las construcciones en la superficie.

## TÍTULO CUARTO

### LA INDEMNIZACIÓN

<u>Artículo 17</u>        **Concepto de indemnización expropiatoria.** La indemnización sólo comprenderá el valor objetivo del bien y de los daños que sean una consecuencia directa e inmediata de la expropiación. No se tomarán en cuenta las circunstancias de carácter personal, valores Efectivos ni ganancias hipotéticas. No se pagará lucro cesante. Tampoco se considerará el valor panorámico o el derivado de hechos de carácter histórico.

Asimismo, el valor de los bienes debe estimarse por el que hubieran tenido si la obra no hubiese sido ejecutada ni aún autorizada.

<u>Artículo 18</u>        **Indemnización por expropiación de empresas o establecimientos, fondos de comercio o bienes de capital.** La indemnización por la expropiación de empresas o establecimientos mineros, industriales o comerciales o fondos de comercio o bienes de capital, será el valor de origen o de revalúo de los bienes, menos las sumas que se hubieran amortizado durante el lapso cumplido desde la iniciación de las actividades o desde efectuado el revalúo según las leyes establecidas sobre la materia y los excedentes sobre una ganancia razonable, que serán considerados también como reintegración del capital invertido.

<u>Artículo 19</u>        **Contenido de la indemnización.** La indemnización debe fijarse en dinero, a no ser que expropiante y expropiado convengan en sustituir el total o parte de ella por la realización de trabajo, suministro de material u otra contraprestación.

<u>Artículo 20</u>        **Mejoras, contratos y obras.** No se indemnizarán las mejoras realizadas en el bien con posterioridad al acto que lo declaró afectado a expropiación, salvo aquellas que hubieran sido necesarias.

Igualmente, no se tendrán en cuenta -a los efectos de la indemnización- los contratos y las obras efectuadas por el propietario, con posterioridad al acto que declaró afectado el bien a expropiación.

<u>Artículo 21</u>        **Expropiación parcial.** En todos los casos de expropiación parcial, se deducirá de la indemnización el mayor valor adquirido por el remanente o sobrante del bien, como consecuencia de la obra o del servicio público. Tal deducción se hará constar expresamente en la sentencia.

<u>Artículo 22</u>        **Adquisición en remate público.** Una vez autorizada legalmente la expropiación, el expropiante podrá adquirir el bien en remate público. En tal caso, el que ofertare por parte del expropiante -de haber realizado la mejor oferta- hará dejar constancia en el acta respectiva, que abonará la seña en el plazo de treinta (30) días y el saldo en el de ciento ochenta (180) días.

PODER JUDICIAL | Secretaría de Biblioteca
DE NEUQUÉN | y Jurisprudencia

**TÍTULO QUINTO**

**NORMAS DE PROCEDIMIENTO**

CAPÍTULO PRIMERO

PROCEDIMIENTO ADMINISTRATIVO

**Artículo 23** **Notificación de la afectación de expropiación.** Declarada la utilidad pública, el Poder Ejecutivo (o el Departamento Ejecutivo municipal) hará saber al propietario del bien comprendido en la expropiación, que éste será expropiado. La notificación deberá contener:

a) Transcripción de la parte pertinente de la ley u ordenanza municipal y del decreto dictado en su consecuencia;
b) Invitación a que comparezca -dentro del plazo de cinco (5) días hábiles- y que declare bajo juramento la suma de dinero que considera suficiente a los efectos de la indemnización;
c) Intimación a constituir su domicilio legal, en el plazo perentorio de cinco (5) días.

Previo a la iniciación del trámite, se requerirán informes al Registro de la Propiedad sobre las condiciones de dominio y demás datos de los titulares del mismo y/o terceros interesados, cuando se trate de bienes inmuebles o registrables.

**Artículo 24** **Forma de la notificación.** La notificación podrá hacerse por cédula o telegrama colacionado. Si se ignora el domicilio del expropiado o éste fuera desconocido, se lo citará por edictos que se publicarán en el Boletín Oficial y en un diario de circulación en toda la Provincia, durante tres (3) días.

**Artículo 25** **Incomparencia del expropiado.** En caso que el expropiado no compareciere o no efectuara la estimación del precio -dentro del plazo de cinco (5) días de notificado o desde la última publicación- se lo intimará para que, dentro del plazo de cinco (5) días, acepte o rechace la indemnización que le ofrezca el Poder Ejecutivo o el Departamento Ejecutivo municipal, en su caso.

A tal efecto, el Poder Ejecutivo -o el Departamento Ejecutivo municipal- estimará el quantum de la indemnización previo dictamen técnico del Tribunal de Tasaciones, el que tendrá en cuenta lo dispuesto en la presente Ley. Ese quantum indemnizatorio no podrá exceder el valor máximo fijado por el mencionado Tribunal.

El expropiado podrá efectuar una contraoferta. La misma podrá ser aceptada o rechazada por el expropiante, dentro de un plazo de treinta (30) días.

**Artículo 26** **Aceptación de la indemnización. Contratación.** Si el expropiante considerare conveniente la oferta o contraoferta del expropiado o el propietario aceptare la indemnización ofrecida por el expropiante, se efectuará la transmisión de dominio mediante la tradición, escrituración y registro, abonándose la indemnización. El propietario transferirá el dominio, libre de todo gravamen, embargo y ocupación.

**Artículo 27** **Silencio o rechazo de la indemnización.** En caso de silencio, incomparencia o rechazo del monto indemnizatorio, podrá procederse a iniciar las acciones judiciales correspondientes.

**Artículo 28** **Efectos impositivos.** En caso que compareciere el expropiante y en el escrito respectivo declarare bajo juramento el importe indemnizatorio que considera suficiente -conforme se establece en el artículo 20-, dicho importe tendrá efecto a los fines impositivos. Igual efecto tendrá la contraoferta a que se refiere el artículo 24 in fine, siempre que ella fuere mayor que la ofrecida. En el caso que la contraoferta fuere menor, el Tribunal de Tasaciones podrá rever -siguiendo el procedimiento administrativo- el valor determinado para los bienes fijando el que estimare más conveniente en cada caso o sector, pudiendo dejarse a salvo que se acepta el menor valor sin que éste afecte el valor estimado para bienes similares o para el resto del bien.

**Artículo 29** **Expropiación por concesionarios de obras o servicios públicos.** Si la expropiación debiera ser realizada por concesionarios de obras o servicios públicos, deberá efectuarse la adquisición mediante el procedimiento extrajudicial, conforme a las normas precedentemente establecidas, con más la conformidad -respecto a la indemnización- de la autoridad a cuyo cargo se encuentre el contralor de la concesión.

**Artículo 30** **Obligatoriedad del procedimiento administrativo.** En todos los casos de expropiación, es obligatorio observar el procedimiento administrativo previo a cualquier juicio de expropiación, salvo el caso de expropiación anormal.

(Artículo modificado por ley 971)

<u>Artículo 31</u>      El expropiado cuando compareciere con la primera presentación al procedimiento administrativo -establecido por la presente Ley-, deberá denunciar el nombre, apellido y domicilio de quienes pudieran tener derecho a ser indemnizados por ser titulares de un derecho real sobre las cosas o un derecho personal constituido a su favor por el propietario con relación al bien.

(Artículo modificado por ley 971)

<u>Artículo 31 bis</u>   (Artículo incorporado por ley 971)


CAPÍTULO SEGUNDO

PROCEDIMIENTO JUDICIAL

<u>Artículo 32</u>      **Casos en que corresponde seguir el procedimiento judicial** Corresponde seguir el procedimiento judicial, cuando:

1) Las partes no hubieran llegado a un acuerdo en las gestiones administrativas;
2) El propietario no compareciere a la citación -para el caso del procedimiento administrativo-, o rechazare o no contestare el ofrecimiento realizado por el expropiante;
3) Se ignore el nombre del titular del dominio del bien a expropiarse, si no fuera bien registrable o inmueble.

<u>Artículo 33</u>      **Competencia y procedimiento en los juicios de expropiación.** Todos los juicios de expropiación se tramitarán por el procedimiento previsto en la presente Ley y -supletoriamente- por las disposiciones del Código de Procedimientos en lo Civil y Comercial, para los juicios ordinarios.

(Artículo modificado por ley 896)

<u>Artículo 34</u>      **Demanda de expropiación.** La demanda de expropiación, además de los requisitos establecidos por el Código de Procedimientos en lo Civil y Comercial, contendrá los siguientes datos:

1) Designación del bien cuya expropiación se persigue, con determinación precisa de ubicación, medidas y demás elementos individualizantes;
2) Indicación de la ley que ha declarado el bien sujeto a expropiación por utilidad pública, con trascripción de la parte pertinente;
3) Copia auténtica de los actos del Poder Ejecutivo o Departamento Ejecutivo, para el caso que el bien o los bienes afectados a la expropiación, hayan sido enumerados en forma genérica por la ley de afectación, de tal forma que los objetos expropiados queden debidamente individualizados;
4) Certificación de la Dirección General de Recaudaciones, en la cual se establezca la valuación fiscal correspondiente al bien afectado;
5) Expresión de la suma que ofrece el expropiante en concepto total de expropiación;
6) Copia del dictamen del Tribunal de Tasación, si se hubiere producido.

<u>Artículo 35</u>      **Contestación de la demanda.** Sin perjuicio de las exigencias establecidas en el Código de Procedimientos en los Civil y Comercial para la contestación de la demanda, ésta deberá contener los requisitos que se enumeran a continuación:

1) Conformidad o disconformidad con la ubicación, medidas y demás elementos de individualización que la actora atribuye al bien, expresando, en caso de disconformidad, las que atribuye al demandado;
2) Conformidad u oposición del demandado a la expropiación, exponiendo los fundamentos de su oposición en caso de invocarla;
3) Expresión concreta y exacta de la suma que pretende el sujeto expropiado en concepto total de indemnización;
4) Presentación de los títulos de propiedad o, en caso de serle posible, requerir del Tribunal las medidas pertinentes para acreditar su dominio; deberá acompañar todos los documentos que estime convenientes para sustentar sus pretensiones;
5) Denuncia del nombre, apellido y domicilio de quienes pudieren tener derecho a ser indemnizados, por ser titulares de un derecho real sobre las cosas o un derecho personal constituido a su favor por el propietario, con relación al bien.



PODER JUDICIAL DE NEUQUÉN | Secretaría de Biblioteca y Jurisprudencia

La expresión de la suma que pretende el expropiado, tendrá el suficiente valor como para realizar el revalúo fiscal del resto del bien expropiado, a los fines impositivos correspondientes. A tal efecto, la Fiscalía de Estado remitirá a la repartición respectiva copia fiel del responde.

**Artículo 36** **Incumplimiento de los requisitos exigidos para el responde.** La falta de cumplimiento con los requisitos establecidos para el responde, dará lugar a que el Tribunal supla los defectos u omisiones -aun de oficio- e implicará para el responsable el soportar las costas en el causado, en caso de resultar vencedor en el pleito.

**Artículo 37** **Pruebas en expropiación de inmuebles.** Cuando se trate de expropiación de inmuebles, se requerirá al Tribunal de Tasaciones el pronunciamiento pertinente, remitiéndole los autos con los puntos ofrecidos por las partes y sobre los que deberá versar el dictamen.

Previo al envío de los autos, el Tribunal intimará al expropiado para que dentro del término de cinco (5) días comparezca por sí o por medio de representante a integrar el Tribunal de Tasaciones, bajo apercibimiento de prescindir de su intervención.

El Tribunal de Tasaciones deberá expedirse en el plazo máximo de noventa (90) días, pudiendo -por razones justificadas- prorrogar el plazo por treinta (30) días más.

El dictamen del Tribunal de Tasaciones será, dentro del trámite del juicio, insustituible e imprescindible, debiendo ser recabado, incluso de oficio.

**Artículo 38** **Mayor Valor.** En la demanda o al alegar de bien probado, el expropiante deberá pedir -en su caso- la deducción del mayor valor adquirido por el remanente del bien, como surge del artículo 21.

Si se pidiese en el alegato, de la solicitud se dará vista al expropiado por el plazo de tres (3) días.

La desvalorización monetaria sólo podrá acordarse al sentenciar -si se hubiera pedido expresamente en el responde-, debiendo determinarse solamente por informe del Estado nacional en materia cambiaría, a través de los organismos respectivos, prueba a cargo del expropiado en la etapa procesal correspondiente.

**Artículo 39** **Sentencia y pago de la expropiación.** La sentencia será dictada en el plazo de sesenta (60) días de haber quedado firme el llamamiento de autos, salvo que se dispusieran medidas para mejor proveer.

En la sentencia no podrá ordenarse una indemnización que sea superior a la reclamada.

A efectos del pago, se le concederá al expropiante un plazo no menor de sesenta (60) días, a contar desde el momento en que quede firme la aprobación de la planilla de liquidación. Al hacer efectivo el pago, el expropiante deducirá los importes que el expropiado adeude a la Provincia o municipalidades en concepto de impuestos, tasas, contribuciones, aportes y todo otro tipo de deuda líquida y exigible a favor del Estado provincial o sus municipalidades.

A los fines de la determinación de la deuda por impuestos, tasas y contribuciones, se requerirá al organismo recaudador -previo al pago- informe el monto de la misma. En caso de ser mayor el monto de la sentencia al de la tasación fiscal, los impuestos, tasas y contribuciones se reajustarán de acuerdo al monto de la misma, con inclusión de los recargos que correspondan por el pago en menos de los mismos.

**Artículo 40** **Perención de la instancia.** No habrá perención o caducidad de la instancia, si el expropiante hubiere tomado posesión del objeto expropiado.

(Artículo modificado por ley 971)

**Artículo 41** **Condena en las costas.** Las costas del juicio serán a cargo del expropiante, cuando la indemnización fijada por la sentencia definitiva sea superior a la cantidad ofrecida, en más del cincuenta por ciento (50%) de la diferencia entre ésta y la reclamada.

Las costas serán a cargo del expropiado, cuando la indemnización se fije en igual o inferior cantidad que la ofrecida por el expropiante o cuando haya una evidente y notoria plus petitio por parte del expropiado.

Se entenderá que existe plus petitio cuando la indemnización fijada sea inferior a las tres cuartas (3/4) partes de la cantidad demandada.

Las costas serán por su orden cuando la indemnización fijada no exceda del margen establecido en el primer apartado del presente artículo o cuando, siendo superior, el expropiado no hubiese contestado la demanda o, contestada, no hubiese fijado el monto reclamado en la primera presentación.



PODER JUDICIAL
DE NEUQUÉN | Secretaría de Biblioteca
y Jurisprudencia

Para la estimación de los honorarios en el juicio de expropiación, el juez regulará los mismos, tomando como monto cuestionado la diferencia entre la cantidad ofrecida y la indemnización establecida, sin tener en cuenta los intereses devengados durante la secuela del juicio.

*(Artículo modificado por ley 971)*

Artículo 42        **Desistimiento.** El expropiado podrá desistir del juicio de expropiación mientras no haya recaído sentencia definitiva en el mismo, satisfaciendo las costas, que no podrán exceder del veinte por ciento (20%) de las que correspondería a un juicio terminado, tomando como base la cantidad consignada.

Será requisito indispensable para el desistimiento, que haya desaparecido la causa de utilidad pública origen de la expropiación, debiendo calificarse esta nueva situación por medio de una ley especial.

*(Artículo modificado por ley 971)*

Artículo 43        Otorgada la posesión judicial del bien, quedarán resueltos los arrendamientos, acordándose a los ocupantes un plazo de diez (10) días para su desalojo; si se tratare de casa-habitación, sus moradores tendrán veinte (20) días para desalojarla. En ambos supuestos, el expropiante podrá prorrogar tales plazos, cuando a su juicio existan razones que así lo aconsejen.

*(Artículo modificado por ley 971)*

Artículo 44        **Inscripción de la declaración expropiatoria.** La sentencia que declare expropiado el bien - complementada con el pago de las indemnizaciones dispuestas- constituirá el título traslativo del dominio a favor del expropiante. El actuario expedirá a éste testimonio de la parte dispositiva de la sentencia y una certificación en que conste la ubicación, medidas, linderos y demás detalles del bien expropiado y el pago o consignación de las indemnizaciones fijadas. Ese instrumento será suficiente para inscribir el dominio en el Registro de la Propiedad, si se tratara de un bien inmueble.


## CAPÍTULO TERCERO

### EXPROPIACIÓN DE URGENCIA

Artículo 45        **Disposición preliminar.** La promoción de la expropiación de urgencia, de ningún modo impedirá la prosecución y el acabado cumplimiento del procedimiento administrativo, conforme se establece en el capítulo primero del presente título.

Artículo 46        **Demanda.** El expropiante tendrá derecho -en caso de urgencia- a que se le dé inmediata posesión del bien expropiado, siempre que consigne judicialmente el importe de la valuación fiscal del inmueble o el que establezca el Tribunal de Tasaciones, si fuera posible. Si se tratase de bienes muebles o inmuebles sin valuación fiscal, se consignará la suma que el Tribunal de Tasaciones fije provisoriamente, a requerimiento del expropiante y en un plazo máximo de diez (10) días.

Artículo 47        **Posesión Judicial.** Hecha la consignación, el juez dará posesión al expropiante, acordándose a los ocupantes el plazo de diez (10) días para efectuar el desalojo, plazo éste que podrá ser ampliado existiendo justa y probada causa.

Notificado el propietario de la consignación, declarará el juez transferida la propiedad, sirviendo el auto y sus antecedentes de suficiente título traslativo, el que deberá ser inscripto en el Registro de la Propiedad.

Artículo 48        **Retiro de lo consignado.** El expropiado podrá retirar la suma consignada, previa justificación de su dominio y que el bien no reconoce hipoteca u otro derecho real; que no está embargado y que no pesan sobre él restricciones a la libre disposición de sus bienes, adjuntando los comprobantes de pago de las obligaciones fiscales, provinciales y municipales a la fecha de la posesión que regla el artículo 47.

Artículo 49        **Conformidad del propietario contratación.** El expropiante podrá tomar la posesión y efectuar la anotación correspondiente en el Registro de la Propiedad -sin consignar la suma que ofrece- si el propietario manifiesta su conformidad.

Si expropiante y expropiado llegaren al acuerdo a que se refiere el artículo 26, se pondrá el convenio en conocimiento del juez.

Artículo 50        **Procedimientos.** Se aplicarán -para el procedimiento de la expropiación de urgencia- las normas del capítulo anterior y las del Código de Procedimientos en lo Civil y Comercial.



<u>CAPÍTULO CUARTO</u>

EXPROPIACIÓN ANORMAL

<u>Artículo 51</u>        **Casos en los cuales procede.** En caso de fuerza mayor o cuando se tratare de una zona afectada por incendio, terremoto, inundaciones, epidemia, medidas de carácter militar por causas de guerra o cualquiera otra circunstancia igualmente grave, el Poder Ejecutivo podrá prescindir de todo trámite legal para tomar la propiedad particular -mueble o inmueble- haciéndose cargo de la responsabilidad emergente de sus actos.

<u>Artículo 52</u>        **Forma de actuar.** Siempre que fuera posible, el Poder Ejecutivo -al ocupar el bien- labrará actas circunstanciadas con intervención del propietario -si estuviere-, consignando todos los detalles de alguna relevancia a los efectos de la ulterior indemnización. El acta deberá ser firmada por la autoridad interviniente y el propietario; si éste no se encontrare presente o se negare a hacerlo, firmarán dos (2) testigos.

<u>Artículo 53</u>        **Iniciación del juicio de expropiación.** En los casos de expropiación anormal el Poder Ejecutivo gestionará ante la Honorable Legislatura la sanción de una ley declarando la utilidad pública de lo expropiado y, de inmediato, iniciará el procedimiento administrativo o el juicio de expropiación correspondiente. Todo este trámite deberá ser cumplido dentro del plazo de seis (6) meses -como máximo-, pudiendo ser prorrogado por tres (3) meses más -mediante decreto-, invocando causas suficientemente justificadas.

<u>Artículo 54</u>        **Aplicación de las normas de procedimiento.** Son aplicables a la expropiación anormal -en cuanto resulten pertinentes- las disposiciones de los capítulos primero, segundo y tercero del presente título.

TÍTULO SEXTO

**EXPROPIACIÓN INVERSA**

<u>Artículo 55</u>        **Casos en que procede.** El propietario de un bien puede promover el juicio de expropiación, en los siguientes casos:

> 1) Cuando calificada la utilidad pública del bien, o comprendido éste dentro de una declaración genérica de utilidad pública, el expropiante haya tomado posesión sin consentimiento expreso del propietario;
> 2) Cuando la posesión haya sido tomada con consentimiento del propietario y el juicio de expropiación no haya sido promovido en el plazo fijado de común acuerdo, o dentro de los seis (6) meses siguientes a la toma de posesión, a falta de plazo convenido;
> 3) Cuando el expropiante haya tomado posesión inmediata del bien -en los casos de expropiación de urgencia o anormal- y sin llegar a un acuerdo en el procedimiento administrativo, no haya iniciado juicio de expropiación dentro del plazo de seis (6) meses.

<u>Artículo 56</u>        **Procedimiento.** El proceso de expropiación inversa, se tramitará conforme a las normas procesales fijadas -por la presente Ley y por las del Código de Procedimientos en lo Civil y Comercial- en el juicio ordinario.

TÍTULO SEPTIMO

**ABANDONO DE LA EXPROPIACIÓN**

<u>Artículo 57</u>        **Casos que determinan el abandono de la expropiación.** Se considerará abandonada la expropiación -salvo disposición expresa de la ley especial- si el expropiante no continúa el procedimiento administrativo o no promueve el juicio dentro de los dos (2) años de sancionada la ley que lo autorice, cuando se trata de llevarla a cabo sobre bienes individualmente determinados; de diez (10) años, cuando se trata de bienes comprendidos en una enumeración genérica cuya adquisición por el expropiante pueda postergarse hasta que el propietario modifique o intente modificar las condiciones físicas del bien.

No regirá la disposición precedente, en los casos en que las leyes orgánicas de las municipalidades autoricen a éstas a expropiar la porción de los inmuebles afectados a rectificaciones o ensanches de calles y ochavas, en virtud de ordenanzas de los departamentos deliberativos.

(Artículo modificado por ley 896)



**PODER JUDICIAL DE NEUQUÉN** | Secretaría de Biblioteca y Jurisprudencia

<u>Artículo 58</u>       **Casos de expropiación para otros**. En los casos que la expropiación sea el medio indispensable para que bienes que se encuentran en el dominio de personas de existencia visible o jurídica, puedan ser adquiridos por la generalidad de la población -para satisfacer sus necesidades-, la ley que la autorice, establecerá el lapso dentro del cual habrá de regir; si no lo estableciere, se caducará la autorización a los dos (2) años de promulgada la ley.

<u>Artículo 59</u>       **Interrupción del plazo.** La iniciación del procedimiento administrativo o la interposición de la demanda de expropiación, interrumpen plazo del abandono.

## TÍTULO OCTAVO

### ACCIÓN DE RETROCESIÓN

<u>Artículo 60</u>       **Casos en que procede.** El propietario expropiado o sus sucesores a título universal, pueden -previa la interpelación a la que se refiere el artículo 61- retroceder el bien, en los casos siguientes:

1) Cuando el expropiante dé al bien un destino distinto al establecido para efectuar la expropiación, salvo que el cambio de destino sea dispuesto por la ley y la sustitución tenga por objeto lograr el bien común;
2) Cuando después de dos (2) años de perfeccionada la expropiación, o vencido el plazo que fija la ley para la realización de la obra, no se hubiere dado al bien el destino que motivó aquélla.

<u>Artículo 61</u>       **Interpelación judicial previa.** La interpelación previa -hecha en forma fehaciente- se hará bajo apercibimiento de promover la acción de retrocesión, si dentro del plazo de dos (2) años, a contar desde la interpelación, no se diera el bien al destino previsto.

<u>Artículo 62</u>       **Prescripción de la pretensión retrocesoria.** La pretensión retrocesoria prescribe a los diez (10) años -a contar desde la toma de posesión por el expropiante- sin excepción.

<u>Artículo 63</u>       **Obligación del expropiado.** En la sentencia que haga lugar a la retrocesión, se determinará el monto de la suma a reintegrar por el expropiado, con la desvalorización monetaria producida, si así correspondiere. El pago deberá efectuarse en el plazo de treinta (30) días, bajo apercibimiento de dejar sin efecto la retrocesión.

<u>Artículo 64</u>       **Normas de procedimiento.** Para el trámite de la pretensión de retroceso, se observarán las normas de la presente Ley y las del Código de Procedimientos en lo Civil y Comercial, en lo que respecta al juicio ordinario.

## TÍTULO NOVENO

### DEL TRIBUNAL DE TASACIONES

<u>Artículo 65</u>       Créase el Tribunal de Tasaciones de la Provincia, con carácter permanente, técnico y orgánico, el que tendrá las funciones que le asigna la presente Ley. Estará integrado por dos (2) representantes del sector público -a designar por el Poder Ejecutivo, ejerciendo uno (1) de ellos la presidencia del Cuerpo- y un (1) representante por cada sector privado, conforme lo establezca la reglamentación respectiva.

<span style="color:red">(Artículo modificado por ley <u>971</u>)</span>

<u>Artículo 66</u>       Serán funciones específicas del Tribunal de Tasaciones:

a) Intervenir en el procedimiento administrativo y en el judicial, instrumentados en el título quinto, capítulos uno y dos;
b) Determinar el monto de las indemnizaciones a pagar en toda clase de expropiaciones, de conformidad a procedimientos técnicos probados, no bastando la simple estimación de valores;
c) Emitir opinión en asuntos litigiosos, a requerimiento de parte interesada;
d) Asesorar a los distintos órganos del Estado provincial y a las municipalidades, a requerimiento de los mismos. Salvo en el caso contemplado en el inciso c), la actuación del Tribunal será gratuita.

<span style="color:red">(Artículo modificado por ley <u>971</u>)</span>

<u>Artículo 67</u>       El Tribunal de Tasaciones se desenvolverá en forma independiente y contará con una Secretaría



**PODER JUDICIAL DE NEUQUÉN** | **Secretaría de Biblioteca y Jurisprudencia**

General, ejercida por un funcionario permanente que recibirá las actuaciones donde debe emitirse dictamen y podrá convocar a los miembros titulares del Tribunal a las sesiones que sean necesarias, conforme los asuntos entrados. Contará además con el personal necesario para su desenvolvimiento (empleados, técnicos y profesionales), todo lo cual será contemplado en la ley de presupuesto de cada año.

El Poder Ejecutivo dotará al Tribunal de Tasaciones de las dependencias edilicias indispensables para su funcionamiento.

*(Artículo modificado por ley 971)*

Artículo 68    El Tribunal de Tasaciones dictará su Reglamento Interno, dentro de los treinta (30) días de entrar en funciones.

*(Artículo modificado por ley 971)*

Artículo 69    Los miembros del Tribunal de Tasaciones percibirán una remuneración fija por cada reunión. Si faltare algún miembro a dos (2) o más reuniones -sin causa justificada- será separado de sus funciones por el Poder Ejecutivo, quedando inhabilitado para desempeñar cualquier cargo público, por un (1) año la primera vez y cinco (5) años, en caso de reincidencia.

El Poder Ejecutivo reglamentará exhaustivamente los casos de justificación a las inasistencias.

*(Artículo modificado por ley 971)*

Artículo 70    El Tribunal de Tasaciones entrará en receso durante las épocas de feria judicial.

*(Artículo modificado por ley 971)*

Artículo 71    Los integrantes del Tribunal de Tasaciones podrán ser recusados o podrán excusarse por las mismas causas que se establecen en la Ley Procesal vigente o en las que establezca el Código de Procedimiento Civil a dictarse en la Provincia. En la oportunidad del artículo 68, el Poder Ejecutivo designará por orden a seis (6) suplentes: dos (2) para el presidente, dos (2) para el representante del sector público y dos (2) para el del sector privado.

*(Artículo modificado por ley 971)*

Artículo 72    Todas las dependencias de la Administración Pública, quedan obligadas a prestar la más eficaz colaboración al Tribunal de Tasaciones, a simple requerimiento de éste.

*(Artículo modificado por ley 971)*

Artículo 73    **Situación de los terceros.** Ninguna actuación de terceros podrá impedir la expropiación ni sus efectos. Los derechos del reclamante se considerarán transferidos de la cosa a su precio o a la indemnización, quedando aquélla libre de toda carga.

*(Artículo modificado por ley 971)*

**Nota**: Según Artículo 10 de la ley 971: "El actual artículo 73 de la Ley 804, pasará a numerarse como artículo "73 bis", … ."

Artículo 74    **Bienes gravados.** Cuando los bienes expropiados reconozcan algún gravamen, el monto de la indemnización se consignará a la orden del juez de la expropiación y se notificará al interesado o interesados para que hagan valer sus derechos.

Artículo 75    **Revalúo de inmuebles.** En los casos en que a un inmueble expropiado se le haya fijado un valor definitivo superior al veinticinco por ciento (25%) del que registró la Dirección correspondiente, para el pago de los tributos respectivos, se procederá a revaluar la propiedad restante. A estos fines, Fiscalía del Estado remitirá a la repartición correspondiente copia íntegra del fallo judicial o del dictamen del Tribunal de Tasaciones o de la oferta o contraoferta del expropiado en casos de procedimientos administrativos de expropiación. En la misma forma se procederá a petición de partes, si el valor definitivo del inmueble fuera fijado en el veinticinco por ciento (25%) menor. La repartición correspondiente reajustará también la valuación fiscal del inmueble en los cinco (5) años anteriores a la fecha de la sentencia, de acuerdo a lo que dispone el apartado anterior, debiendo formular la rectificación de la valuación y el cargo correspondiente al propietario expropiado o la devolución de los importes pagados en exceso. En caso de falta de pago se procurará el cobro por la vía correspondiente.

Artículo 76    **Vigencia de la Ley. Procesos en trámite.** La presente Ley entrará en vigencia a partir de su publicación. Se aplicará a los juicios que se encuentren en trámite, sin perjuicio de lo actuado en virtud de las


**PODER JUDICIAL DE NEUQUÉN** | Secretaría de Biblioteca y Jurisprudencia

disposiciones legales anteriores.

<u>Artículo 77</u>      Refórmase el artículo 27 de la Ley 17, el que quedará redactado de la siguiente manera:

"<u>Artículo 27</u>      inciso f). En las causas contencioso-administrativas y en los juicios de expropiación cualquiera sea el ente público que las promueva."

<u>Artículo 78</u>      **Derogaciones.** Derógase la Ley 256 y la Ley 745 y toda otra disposición que se oponga a la presente.

<u>Artículo 79</u>      Comuníquese al Poder Ejecutivo.

San Martín 161 | 8300 | Neuquén | Tel. 0299 448 0572/0703/0705 | biblnq@jusneuquen.gov.ar./ sbyjnq@jusneuquen.gov.ar

**LAW 804**

Amends Law 17 Modified by Law 896 , 971 Repeals Law 256, 745

Sanctioned: 11-28-20173 Promulgated: 12-07-1973 Published: 01-04-1974

FIRST TITLE

OF PUBLIC UTILITY QUALIFICATION

Article 1 Concept of Utility. The concept of public utility is extensive to all aspects and demands of the common good; that is, everything necessary to create the moral and material conditions that lead to the development and perfection of the human person.

This concept of public utility exists even if the immediate benefit belongs to a single individual and the immediate benefit belongs to the community, as long as this is true, not hypothetical or remote.

Article 2nd Qualification Body. The classification of public utility must be carried out by the Legislative Branch, without the individual enumeration of the affected assets being essential. However, the law must delimit the object of the expropriation in terms that do not allow the expropriation action to be extended to other assets than those that are necessary to achieve the common good that the Honorable Legislature seeks to manage and achieve.

(Article modified by law 971)

SECOND TITLE

OF THE SUBJECT

Article 3 Expropriatory entities . Expropriation can be carried out by municipalities and concessionaires of public works or services.

Article 4 Expropriation by the Province . The expropriation can be carried out by the Executive Branch:

1) When it involves goods necessary to carry out or construct works by the Province to satisfy the needs or conveniences of the provincial community;
2) When it comes to goods necessary to carry out works that contemplate the needs or conveniences of the Nation or its autonomous entities, whether the work is carried out by the Province or the Nation;

3) When it comes to incorporating particular goods into the public domain of the provincial State to satisfy the needs or conveniences or the well-being of the provincial community;
4) When it is the indispensable means so that goods that are in the domain of persons of visible or legal existence can be acquired by the general population, to satisfy their needs or to carry out state plans for social or economic improvement. or moral;

5) When it comes to incorporating into the private domain of the Province goods that are essential or convenient for the development of its functions;
6) When it comes to providing - in any form or by any means - the common good of the population or its members, thus achieving greater distributive justice;

7) When it is necessary to reserve assets for the future evolution of government plans, avoiding speculation on them.

Article 5° Expropriation by municipalities. The expropriation may be carried out by the municipal executive departments:

1) When it involves assets necessary to carry out the appropriate works for the Municipality;
2) When it involves incorporating particular goods into the municipal public domain, to satisfy the needs, conveniences or well-being of the inhabitants of the municipality; 3) When it is the indispensable means for the inhabitants of the municipality to acquire, to satisfy their needs, or as a means of carrying out state plans for social improvement, goods that are in the domain of persons of visible or legal existence; 4) When it comes to incorporating into the private domain of the municipalities goods that are essential or convenient for the development of their functions; 5) When it comes to promoting - in any way - the common good of the inhabitants of the municipality, aimed at achieving distributive justice.

Article 6° Prior qualification of the Legislative Branch. Municipalities may not expropriate without prior qualification of public utility made by the Legislative Branch. The legislative body may authorize the expropriation of specific assets or of assets listed generically, as provided in Article 2 of this Law. Only in the event that the enumeration is generic, the deliberative council of the municipality will declare in each case, and within the legislative authorization, the assets affected by expropriation.

(Article modified by law 896 )

Article 7 Expropriation by public service concessionaires. Expropriation may be carried out by concessionaires of public works or services when it involves assets that are necessary or convenient for the execution of the work or to efficiently carry out the public service granted.

Concessionaires of public works or services may not expropriate without prior qualification of public utility made by the Legislative Branch and without the express power to expropriate, specially agreed upon by the same Branch. The Legislative Branch may authorize the expropriation of specific assets or of generically listed assets. If the enumeration is generic, the Executive Branch (or the Executive Department if it is a municipal concession) will declare in each case, and within the legislative authorization, the assets affected by expropriation.

Article 8 Replacement of rights and obligations. The concessionaires of public works or services for whose execution the expropriation is sanctioned, replace the expropriating authority in the rights and obligations created by this Law and that are not related to the quality of political power. However, the State or the municipalities, where applicable, retain their guarantee character against the expropriated, with the benefit of excussion against abuses and insolvency of the concessionaires.

TITLE THREE

OBJECT OF EXPROPIATION

Article 9. Assets subject to expropriation. Goods convenient or necessary for the satisfaction of public utility - whatever their legal nature - may be subject to expropriation, whether or not they are in commerce, whether they are things or not.

Industrial, mining or commercial establishments and - in general - legal or de facto universalities may also be subject to expropriation.

Article 10 Expropriation by autonomous entities. In cases in which autonomous entities are authorized to carry out the expropriation, they will proceed as established for the Executive Branch.

Article 11 Expropriation of assets assigned to a public service. The Province may expropriate assets affected by a public service, granted by it or by the municipalities. Municipalities may expropriate assets affected by a public service granted by them.

In all hypotheses, expropriation may include all or only part of the assets assigned to the public service, always taking into account its effective provision. If, due to the expropriation of the assets, the concessionaire could not provide - in accordance with the concession - the service to which it was obligated, it may request the expropriation of this, or that of the total assets affected by it, or compensation for the damage. that proves having suffered.

Article 12 Limitation of the object of expropriation. The expropriation may include not only necessary goods, but also those whose occupation is convenient to its main purpose.

Article 13 Expropriation of property adjacent to a public work. Expropriation can be arranged

and be carried out on adjacent or not to a public work, linked or not to it, in order to carry out common good plans, established by law.

Article 14 Request for total expropriation. If it involves the partial expropriation of some property and the part that remains unexpropriated is inadequate for rational use or exploitation, the expropriated party may demand the expropriation of the entire property.

In urban lands, those that, due to the expropriation, are left with a front, back or surface less than what is authorized for building by the respective ordinances or local uses, will be considered inadequate surpluses.

In rural properties, the Executive Branch or the competent body for this purpose will determine in each case the inadequate surfaces, that is, those that do not constitute an economic unit.

Article 15 Integral part of the expropriated property. Its physical accessories are considered an integral part of the expropriated property; If the accession were moral, it is optional for the expropriating subject to include the accessories of the expropriation, but the expropriated party may not exclude them as long as their removal is possible, without material detriment to the main asset and that such accessories have not been considered by the Legislative Power as exclusive or concurrent primary object of the expropriation.

Article 16 Expropriation of the subsoil. The subsoil is susceptible to expropriation - regardless of the surface property - without detriment or damage to the constructions on the surface.

FOURTH TITLE

THE COMPENSATION

Article 17 Concept of expropriation compensation. Compensation will only include the objective value of the property and the damages that are a direct and immediate consequence of the expropriation. Personal circumstances, cash values or hypothetical earnings will not be taken into account. No lost profits will be paid . Nor will the panoramic value or that derived from historical events be considered.

Likewise, the value of the assets must be estimated by what they would have had if the work had not been executed or even authorized.

Article 18 Compensation for expropriation of companies or establishments, goodwill or capital assets. Compensation for the expropriation of mining, industrial or commercial companies or establishments or goodwill or capital assets will be the original or revaluation value of the assets, less the sums that have been amortized during the period completed since the initiation of the the activities or since the revaluation has been carried out according to the laws established on the matter and the surpluses over a reasonable profit, which will also be considered as reintegration of the invested capital.

Article 19 Content of the compensation. The compensation must be set in money, unless the expropriator and expropriated agree to replace all or part of it with the performance of work, supply of material or other consideration.

Article 20 Improvements, contracts and works. Improvements made to the property after the act that declared it subject to expropriation will not be compensated, except for those that have been necessary.

Likewise, contracts and works carried out by the owner after the act that declared the property subject to expropriation will not be taken into account for the purposes of compensation.

Article 21 Partial expropriation. In all cases of partial expropriation, the highest value acquired by the remainder or surplus of the property, as a consequence of the work or public service, will be deducted from the compensation . Such deduction will be expressly stated in the sentence.

Article 22 Acquisition at public auction. Once the expropriation is legally authorized, the expropriator may acquire the property at public auction. In such case, whoever bids on behalf of the expropriator - if he has made the best offer - will record in the respective minutes that he will pay the deposit within thirty (30) days and the balance within one hundred and eighty (180) ) days.

TITLE FIVE RULES OF PROCEDURE

FIRST CHAPTER

ADMINISTRATIVE PROCEDURE

Article 23 Notification of the impact of expropriation. Once public utility has been declared, the Executive Branch (or the municipal Executive Department) will inform the owner of the property included in the expropriation that it will be expropriated. The notification must contain:

a) Transcription of the pertinent part of the municipal law or ordinance and the decree issued as a consequence;
b) Invitation to appear - within a period of five (5) business days - and to declare under oath the sum of money that is considered sufficient for the purposes of compensation ;

c) Intimation to establish your legal domicile, within the peremptory period of five (5) days.

Prior to the initiation of the process, reports will be required to the Property Registry on the ownership conditions and other data of the owners thereof and/or interested third parties, when dealing with real estate or registrable property.

Article 24 Form of notification. The notification may be made by document or collated telegram. If the address of the expropriated person is unknown or is unknown, he will be summoned by edicts that will be published in the Official Gazette and in a newspaper circulating throughout the Province, for three (3) days.

Article 25 Non-appearance of the expropriated party. In the event that the expropriated party does not appear or does not estimate the price - within a period of five (5) days from notification or from the last publication - he will be notified so that, within a period of five (5) days, he accepts or reject the compensation offered by the Executive Branch or the municipal Executive Department, if applicable.

To this end, the Executive Branch - or the municipal Executive Department - will estimate the amount of compensation following a technical opinion from the Appraisals Court, which will take into account the provisions of this Law. This amount of compensation may not exceed the maximum value set by the aforementioned Court.

The expropriated party may make a counteroffer. It may be accepted or rejected by the expropriator, within a period of thirty (30) days.

Article 26 Acceptance of compensation. Contracting. If the expropriator considers the offer or counteroffer of the expropriated to be convenient or the owner accepts the compensation offered by the expropriator, the transfer of ownership will be carried out through tradition, deed and registration, with compensation paid. The owner will transfer the domain, free of all encumbrances, embargoes and occupation.

Article 27 Silence or rejection of compensation. In case of silence, non-appearance or rejection of the compensation amount, the corresponding judicial actions may be initiated.

Article 28 Tax effects. In the event that the expropriator appears and in the respective document declares under oath the amount of compensation that he considers sufficient - as established in article 20 -, said amount will take effect for tax purposes. The counteroffer referred to in article 24 in fine will have the same effect, provided that it is greater than the one offered. In the event that the counteroffer is lower, the Appraisals Court may review - following the administrative

procedure - the value determined for the assets, setting what it deems most convenient in each case or sector, and it may be left safe to accept the lowest value without that this affects the estimated value for similar assets or for the rest of the asset.

Article 29 Expropriation by concessionaires of public works or services. If the expropriation should be carried out by concessionaires of public works or services, the acquisition must be carried out through the extrajudicial procedure, in accordance with the previously established rules, with the approval - regarding compensation - of the authority in charge of the comptroller. of the concession.

Article 30 Mandatory nature of the administrative procedure. In all cases of expropriation, it is mandatory to observe the administrative procedure prior to any expropriation trial, except in the case of abnormal expropriation.

(Article modified by law 971 )

Article 31 When the expropriated person appears with the first presentation to the administrative procedure -established by this Law-, he must report the name, surname and address of those who may have the right to be compensated for being holders of a real right over things or a personal right constituted in his favor by the owner in relation to the property.

(Article modified by law 971)
Article 31bis (Article incorporated by law 971 )

CHAPTER TWO

JUDICIAL PROCEDURE

Article 32 Cases in which it is appropriate to follow the judicial procedure It is appropriate to follow the judicial procedure, when:

1) The parties have not reached an agreement on the administrative procedures;
2) The owner does not appear at the summons - in the case of the administrative procedure -, or rejects or does not respond to the offer made by the expropriator; 3) The name of the owner of the domain of the property to be expropriated will be ignored, if it is not a registrable property or real estate.

Article 33 Jurisdiction and procedure in expropriation trials. All expropriation trials will be processed by the procedure provided for in this Law and - additionally - by the provisions of the Code of Civil and Commercial Procedures, for ordinary trials.

(Article modified by law 896 )
Article 34 Expropriation claim. The expropriation demand, in addition to the requirements established by the Code of Civil and Commercial Procedures, will contain the following data:

1) Designation of the property whose expropriation is sought, with precise determination of location, measurements and other individualizing elements;
2) Indication of the law that has declared the property subject to expropriation for public utility, with a transcription of the pertinent part;

3) Authentic copy of the acts of the Executive Branch or Executive Department, in the event that the property or assets affected by the expropriation have been listed in a generic manner by the law of affectation, in such a way that the expropriated objects are duly individualized. ;
4) Certification from the General Directorate of Collections, in which the tax valuation corresponding to the affected property is established;

5) Expression of the sum offered by the expropriator as a total expropriation; 6) Copy of the opinion of the Appraisal Court, if any.

Article 35 Answer to the claim. Without prejudice to the requirements established in the Code of Civil and Commercial Procedures for answering the claim, it must contain the requirements listed below:

1) Conformity or disagreement with the location, measurements and other elements of individualization that the plaintiff attributes to the property, expressing, in case of disagreement, those attributed to the defendant;
2) Conformity or opposition of the defendant to the expropriation, exposing the grounds for his opposition if invoked;

3) Concrete and exact expression of the sum sought by the expropriated subject as total compensation;
4) Presentation of the property titles or, if possible, request from the Court the pertinent measures to prove ownership; You must attach all the documents you deem appropriate to support your claims;

5) Report the name, surname and address of those who may have the right to be compensated, for being holders of a real right over the things or a personal right established in their favor by the owner, in relation to the property.

The expression of the amount sought by the expropriated party will have sufficient value to carry out the tax revaluation of the rest of the expropriated property, for the corresponding tax purposes . To this end, the State Prosecutor's Office will send a true copy of the response to the respective division.

Article 36 Non-compliance with the requirements demanded for the respondent. Failure to comply with the requirements established for the defendant will result in the Court making up for the defects or omissions - even ex officio - and will imply for the person responsible to bear the costs of the case, in the event of winning the lawsuit.

Article 37 Evidence in expropriation of real estate. When it comes to expropriation of real estate, the Appraisal Court will be required to make the pertinent ruling, sending it the files with the points offered by the parties and on which the opinion must focus.

Prior to sending the records, the Court will notify the expropriated party so that within a period of five (5) days he or she may appear by himself or through a representative to join the Appraisal Court, under warning to dispense with his intervention.

The Appraisals Court must issue its decision within a maximum period of ninety (90) days, and may - for justified reasons - extend the period for an additional thirty (30) days.

The opinion of the Appraisal Court will be, within the trial process, irreplaceable and essential, and must be obtained, even ex officio.

Article 38 Greater Value. In the lawsuit or when alleging proven property, the expropriator must request - if applicable - the deduction of the highest value acquired by the remainder of the property, as arises from article 21.

If requested in the pleading, the request will be given to the expropriated person for a period of three (3) days.

Monetary devaluation may only be agreed upon at sentencing - if it has been expressly requested in the response - and must be determined only by a report from the national State on exchange matters, through the respective organizations, evidence borne by the expropriated party in the corresponding procedural stage.

Article 39 Judgment and payment of expropriation. The sentence will be issued within sixty (60) days of the appeal being finalized, unless measures are ordered to better provide.

The judgment cannot order compensation that is higher than that claimed.

For payment purposes, the expropriator will be granted a period of no less than sixty (60) days, counting from the moment the approval of the liquidation form is finalized. When making the payment, the expropriator will deduct the amounts that the expropriated party owes to the Province or municipalities in the form of taxes, rates, contributions, contributions and all other types of liquid and demandable debt in favor of the Provincial State or its municipalities.

For the purposes of determining the debt for taxes, fees and contributions, the collecting agency will be required - prior to payment - to report the amount thereof. If the amount of the judgment is greater than the tax assessment, the taxes, fees and contributions will be readjusted according to the amount, including the surcharges that correspond to payment in less than the same.

Article 40 Termination of the instance. There will be no peremption or expiration of the instance, if the expropriator has taken possession of the expropriated object.

(Article modified by law 971 )

Article 41 Sentence on costs. The costs of the trial will be borne by the expropriator, when the compensation established by the final judgment is greater than the amount offered, by more than fifty percent (50%) of the difference between it and the amount claimed.

The costs will be borne by the expropriated party, when the compensation is set at the same or lower amount than that offered by the expropriator or when there is an obvious and notorious plus petition on the part of the expropriated party.

It will be understood that there is plus petitio when the compensation set is less than three-quarters (3/4) of the amount demanded.

The costs will be in their order when the compensation set does not exceed the margin established in the first section of this article or when, being higher, the expropriated party has not answered the claim or, once answered, has not set the amount claimed in the first presentation.

To estimate the fees in the expropriation trial, the judge will regulate them, taking as the disputed amount the difference between the amount offered and the established compensation, without taking into account the interest accrued during the aftermath of the trial.

(Article modified by law 971 )

Article 42 Withdrawal. The expropriated party may withdraw from the expropriation trial as long as a final judgment has not been issued, paying the costs, which may not exceed twenty percent (20%) of those that would correspond to a completed trial, based on the amount consigned.

It will be an essential requirement for withdrawal that the cause of public utility originating from the expropriation has disappeared, and this new situation must be qualified by means of a special law.

(Article modified by law 971 )

Article 43 Once judicial possession of the property is granted, the leases will be resolved, granting the occupants a period of ten (10) days for their eviction; If it is a residential house, its inhabitants will have twenty (20) days to vacate it. In both cases, the expropriator may extend such deadlines, when in his opinion there are reasons that so advise.

(Article modified by law 971 )

Article 44 Registration of the expropriation declaration. The ruling declaring the property expropriated - complemented by the payment of the compensation provided - will constitute the transfer title of the domain in favor of the expropriator. The actuary will issue to this witness testimony of the operative part of the sentence and a certification stating the location, measurements, boundaries and other details of the expropriated property and the payment or consignment of the compensation established. This instrument will be sufficient to register the domain in the Property Registry, if it is real estate.

CHAPTER THREE

EMERGENCY EXPROPIATION

Article 45 Preliminary provision. The promotion of emergency expropriation will in no way prevent the continuation and complete compliance with the administrative procedure, as established in the first chapter of this title.

Article 46 Demand. The expropriator will have the right - in case of urgency - to be given immediate possession of the expropriated property, provided that he judicially registers the amount of the tax valuation of the property or the amount established by the Appraisal Court, if possible. If it involves movable or immovable property without a tax valuation, the sum that the

Appraisal Court provisionally sets will be recorded, at the request of the expropriator and within a maximum period of ten (10) days.

Article 47 Judicial Possession. Once the consignment is made, the judge will give possession to the expropriator, granting the occupants a period of ten (10) days to carry out the eviction, a period that may be extended if there is just and proven cause.

Once the owner of the consignment has been notified, the judge will declare the property transferred, with the car and its records providing sufficient transfer title, which must be registered in the Property Registry.

Article 48 Withdrawal of what was consigned. The expropriated person may withdraw the consigned amount, after justifying his ownership and that the property does not recognize a mortgage or other real right; that it is not seized and that there are no restrictions on the free disposal of its assets, attaching proof of payment of tax, provincial and municipal obligations on the date of possession as governed by article 47.

Article 49 Conformity of the contracting owner. The expropriator may take possession and make the corresponding entry in the Property Registry - without recording the amount offered - if the owner expresses his or her consent.

If the expropriator and expropriated reach the agreement referred to in article 26, the agreement will be brought to the attention of the judge.

Article 50 Procedures. For the emergency expropriation procedure, the rules of the previous chapter and those of the Code of Civil and Commercial Procedures will be applied.

CHAPTER FOUR

ABNORMAL EXPROPIATION

Article 51 Cases in which it applies. In case of force majeure or when it is an area affected by fire, earthquake, floods, epidemic, military measures due to war or any other equally serious circumstance, the Executive Branch may dispense with all legal procedures to take the property. individual - movable or immovable - taking responsibility for their actions.

Article 52 Way of acting. Whenever possible, the Executive Branch - when occupying the property - will draw up detailed records with the intervention of the owner - if present -, recording all the details of any relevance for the purposes of subsequent compensation. The minutes must be signed by the intervening authority and the owner; If the latter is not present or refuses to do so, two (2) witnesses will sign.

Article 53 Initiation of the expropriation trial. In cases of abnormal expropriation, the Executive Branch will manage before the Honorable Legislature the sanction of a law declaring the public utility of what was expropriated and, immediately, will initiate the administrative procedure or the corresponding expropriation trial. This entire procedure must be completed within a period of six (6) months -at most-, and may be extended for three (3) more months -by decree-, invoking sufficiently justified causes.

Article 54 Application of procedural rules. The provisions of the first, second and third chapters of this title are applicable to abnormal expropriation - insofar as they are relevant.

TITLE SIX

REVERSE EXPROPIATION
Article 55 Cases in which it applies. The owner of an asset can file an expropriation trial, in the following cases:

1) When the public utility of the property is qualified, or it is included within a generic declaration of public utility, the expropriator has taken possession without the express consent of the owner;
2) When possession has been taken with the consent of the owner and the expropriation trial has not been filed within the period established by mutual agreement, or within six (6) months following the taking of possession, in the absence of an agreed period ;

3) When the expropriator has taken immediate possession of the property - in cases of emergency or abnormal expropriation - and without reaching an agreement in the administrative procedure, he has not initiated an expropriation trial within the period of six (6) months.

Article 56 Procedure. The reverse expropriation process will be processed in accordance with the procedural rules established - by this Law and by those of the Code of Civil and Commercial Procedures - in the ordinary trial.

TITLE SEVENTH

ABANDONMENT OF EXPROPIATION

Article 57 Cases that determine the abandonment of expropriation. The expropriation will be considered abandoned - except as expressly provided in the special law - if the expropriator does not continue the administrative procedure or does not promote the trial within two (2) years of the passing of the law that authorizes it, when it comes to carrying it out. on individually determined goods; of ten (10) years, when it concerns assets included in a generic list whose acquisition by the expropriator can be postponed until the owner modifies or attempts to modify the physical conditions of the asset.

The preceding provision will not govern in cases where the organic laws of the municipalities authorize them to expropriate the portion of the properties affected by rectifications or widening of streets and ochavas, by virtue of ordinances of the deliberative departments.

(Article modified by law 896 )

Article 58 Cases of expropriation for others . In cases where expropriation is the indispensable means so that assets that are in the domain of persons of visible or legal existence can be acquired by the general population - to satisfy their needs -, the law that authorizes it will establish the period within which it will govern; If it is not established, the authorization will expire two (2) years after the law is enacted.

Article 59 Interruption of the deadline. The initiation of the administrative procedure or the filing of the expropriation claim interrupts the abandonment period.

TITLE EIGHTH

RETROCESSION ACTION

Article 60 Cases where applicable. The expropriated owner or his successors on a universal basis, may - prior to the interpellation referred to in article 61- return the property, in the following cases:

1) When the expropriator gives the property a destination other than that established to carry out the expropriation, unless the change of destination is provided by law and the substitution aims to achieve the common good;
2) When after two (2) years after the expropriation was perfected, or the deadline established by law for carrying out the work has expired, the property has not been given the destination that motivated it.

Article 61 Prior judicial interpellation. The prior interpellation - done in a reliable manner - will be made under warning of promoting the retrocession action, if within the period of two (2) years, counting from the interpellation, the property is not given to the intended destination.

Article 62 Prescription of the retroactive claim. The retrogression claim prescribes after ten (10) years - counting from the taking of possession by the expropriator - without exception.

Article 63 Obligation of the expropriated. In the sentence that gives rise to the retrocession, the amount of the amount to be repaid by the expropriated party will be determined, with the monetary devaluation produced, if applicable. Payment must be made within thirty (30) days, under warning of nullifying the retrocession.

Article 64 Rules of procedure. For the processing of the claim for setback, the rules of this Law and those of the Code of Civil and Commercial Procedures will be observed, with regard to the ordinary trial.

TITLE NINTH

OF THE APPRAISAL COURT

Article 65 The Appraisal Court of the Province is created, with a permanent, technical and organic nature, which will have the functions assigned to it by this Law. It will be made up of two (2) representatives of the public sector - to be designated by the Executive Branch, one (1) of them exercising the presidency of the Body - and one (1) representative for each private sector, as established by the respective regulations.

(Article modified by law 971 )
Article 66 The following will be specific functions of the Appraisals Court:

a) Intervene in the administrative and judicial procedures, implemented in the fifth title, chapters one and two;
b) Determine the amount of compensation to be paid in all types of expropriations, in accordance with proven technical procedures, and simply estimating values is not enough;

c) Issue an opinion on contentious matters, at the request of an interested party;
d) Advise the different bodies of the provincial State and the municipalities, at their request.
Except in the case contemplated in section c), the Court's action will be free of charge.

(Article modified by law 971 )

Article 67 The Appraisal Court will operate independently and will have a Secretariat

General, exercised by a permanent official who will receive the proceedings where an opinion must be issued and may summon the regular members of the Court to the sessions that are necessary, according to the matters entered. It will also have the necessary personnel for its development (employees, technicians and professionals), all of which will be contemplated in each year's budget law.

The Executive Branch will provide the Appraisal Court with the building units essential for its operation.

(Article modified by law 971 )
Article 68 The Appraisal Court will dictate its Internal Regulations, within thirty (30) days of entering in functions.

(Article modified by law 971 )

Article 69 The members of the Appraisal Court will receive a fixed remuneration for each meeting. If any member misses two (2) or more meetings - without justified cause - he will be removed from his duties by the Executive Branch, and will be disqualified from holding any public office, for one (1) year the first time and five (5) years , in case of recidivism.

The Executive Branch will exhaustively regulate cases of justification for absences.

(Article modified by law 971 )

Article 70 The Appraisal Court will go into recess during judicial fair periods. (Article modified by law 971 )

Article 71 The members of the Appraisal Court may be challenged or excused for the same reasons established in the current Procedural Law or in those established by the Code of Civil Procedure to be issued in the Province. At the time of article 68, the Executive Branch will designate six (6) substitutes in order: two (2) for the president, two (2) for the representative of the public sector and two (2) for the representative of the private sector.

(Article modified by law 971 )
Article 72 All departments of the Public Administration are obliged to provide the most effective collaboration with the Appraisal Court, at its simple request.

(Article modified by law 971 )

Article 73 Situation of third parties. No action by third parties may prevent the expropriation or its effects. The rights of the claimant will be considered transferred from the thing at its price or compensation, leaving it free of all encumbrances.

(Article modified by law 971 )
Note : According to Article 10 of law 971 : "The current article 73 of Law 804 will be numbered as article "73 encore", ... . "

Article 74 Encumbered assets. When the expropriated assets recognize any encumbrance, the amount of compensation will be consigned to the order of the expropriation judge and the interested party or interested parties will be notified so that they can assert their rights.

Article 75 Revaluation of real estate. In cases where an expropriated property has had a definitive value greater than twenty-five percent (25%) of that registered by the corresponding Directorate, for the payment of the respective taxes, the remaining property will be revalued. For these purposes, the State Prosecutor's Office will send to the corresponding department a full copy of the judicial ruling or the opinion of the Appraisal Court or the offer or counteroffer of the expropriated party in cases of administrative expropriation procedures. The same procedure will be followed at the request of the parties, if the definitive value of the property is set at the lower twenty-five percent (25%). The corresponding distribution will also readjust the tax valuation of the property in the five (5) years prior to the date of the sentence, in accordance with the provisions of the previous section, and must formulate the rectification of the valuation and the corresponding charge to the expropriated owner or the refund of amounts paid in excess. In case of non-payment, collection will be sought through the corresponding means.

Article 76 Validity of the Law. Processes in progress. This Law will come into force upon its publication. It will be applied to trials that are in process, without prejudice to what has been done under the previous legal provisions.

Article 77 Reform article 27 of Law 17, which will be worded as follows:

"Article 27 paragraph f). In contentious-administrative cases and in expropriation trials, regardless of the public entity that promotes them."

Article 78 Repeals. Law 256 and Law 745 and any other provision that opposes this is repealed.

Article 79 Contact the Executive Branch.

EXHIBIT 8

LA LEGISLATURA DE LA PROVINCIA DE RIO NEGRO
SANCIONA  CON FUERZA DE
**LEY : 1015**

TITULO I
CALIFICACION

**Artículo 1º** - El concepto de utilidad pública comprende todos los casos en que se persiga la satisfacción de una exigencia determinada por el perfeccionamiento social.

**Artículo 2º** - La declaración de utilidad pública se hará en cada caso por Ley, con referencia a bienes determinados. Cuando la calificación sea sancionada con carácter genérico, el Poder Ejecutivo individualizará  los bienes requeridos a los fines de la ley, con referencia a planos descriptos, informes técnicos u otros elementos suficientes para su determinación.

TITULO II
SUJETO EXPROPIANTE

**Artículo 3º** - La expropiación puede ser efectuada:

a) Por el Estado Provincial.
b) Por las Municipalidades y exclusivamente sobre bienes ubicados dentro de sus respectivas jurisdicciones. El Organo colegiado del Municipio declarar la autorización legislativa los bienes afectados a expropiar.
c) Por las entidades públicas de carácter autárquico provinciales o municipales, conforme a la autorización especial o gen,rica que le confiera la ley y ordenanza de creación exclusivamente para sus fines específicos.
d) Por los concesionarios de obras o servicios públicos, para cuya realización se hubiere sancionado la expropiación ; sustituyen a la autoridad expropiante en los derechos y obligaciones que crea la presente Ley y que no sean atinentes a la calidad del Poder político.

TITULO III
OBJETO DE LA EXPROPIACION

**Artículo 4º**  - Pueden ser objeto de expropiación los bienes convenientes o necesarios para la satisfacción de la utilidad publica, cualquiera sea su naturaleza jurídica, est,n o no en el comercio, sean cosas o no. También puede expropiarse el uso temporario de un bien.

**Artículo 5º**  - La Provincia podrá expropiar bienes del dominio municipal, de particulares y del dominio privado de otras provincias, de la Nación o de otros estados nacionales.

**Artículo 6º** - La expropiación podrá comprender además de los bienes necesarios, aquellos otros que convengan al fin principal de la utilidad pública declarada.

**Artículo 7º** - La expropiación puede disponerse y realizarse sobre bienes adyacentes o no a una obra pública, vinculados o no a estas, con el objeto de llevar a cabo planes de mejoramiento social establecido por la Ley.

**Artículo 8º** - Si se tratare de la expropiación parcial de algún inmueble y la parte que quedase sin expropiar fuera inadecuada para uso o explotación racional, el expropiado podrá exigir la expropiación de la totalidad del inmueble. En los terrenos urbanos se considerará sobrantes inadecuados los que por causas de la expropiación quedaran con frente, fondo o superficies inferiores a lo autorizado para edificar por las ordenanzas o usos locales respectivos.
En los inmuebles rurales el Poder Ejecutivo determinar en cada caso las superficies inadecuadas, tomando en cuenta la explotación primitiva dada por el expropiado.

**Artículo 9º** - Se podrán expropiar los bienes afectados a las concesiones de servicios públicos provincial y municipales.

**Artículo 10º** - Es susceptible de expropiación el subsuelo con independencia de la propiedad superficial.

TITULO IV
EJECUCION DIRECTA DE LA LEY

**Artículo 11º** -Promulgada la Ley especial de expropiación, se procurará ejecutarla mediante concertación directa con el propietario de la cosa o bien, dentro del valor máximo que, en concepto de total indemnización, estimen sus oficinas técnicas competentes.
Tratándose de inmuebles, la indemnización que se establezca de común acuerdo no podrá ser superior en ningún caso a la valuación para la contribución territorial acrecida en un treinta por ciento (30 %).
Cuando la contribución territorial no incluyera las mejoras, estas, se pagarán por separado, estimándolas en la forma indicada en el primer apartado de este artículo.

TITULO V
LA INDEMNIZACION

**Artículo 12º** - La indemnización solo comprender el valor objetivo del bien, y los daños que sean una consecuencia directa e inmediata a la expropiación. No se tomarán en cuenta circunstancias. No se pagará lucro cesante. En materia de inmuebles, tampoco se considerarán el valor panorámico o el derivado de hechos de carácter histórico. El valor de los bienes debe estimarse por el que hubieran tenido si la obra no hubiese sido ejecutada ni aún autorizada. No serán indemnizables las restricciones administrativas de carácter general establecidas por leyes especiales.

**Artículo 13º** - La indemnización del bien expropiado debe fijarse al momento del desapoderamiento. No se indemnizarán las mejoras realizadas en el bien con

posterioridad al acto que lo declaró afectado a expropiación salvo aquellas que hubiesen sido necesarias.

**Artículo 14º** - No habiendo avenimiento, el juez de Primera Instancia del lugar de ubicación de los bienes, decidir la diferencia por el trámite del juicio sumario.

Al fijar la indemnización el juez tomar en consideración las actuaciones y dictámenes que deber elaborar necesariamente para cada caso la Junta de Valuaciones creada por el artículo 138º del código Fiscal, que a este solo efecto ser integrada también por un representante de la entidad expropiante y uno del expropiado. La Junta deber pronunciarse dentro de los sesenta días del requerimiento del Juez, quien podrá prorrogar este plazo por una sola vez y por igual término.

No expidiéndose la Junta de valuaciones en el término fijado en el párrafo precedente, el Juez remitirá los antecedentes a los organismos competentes, para la instrucción de los sumarios administrativos y penales que correspondan.

**Artículo 15º** - No se consideran válidos respecto al expropiante los contratos celebrados con el propietario con posterioridad a la Ley que declaró afectado el bien a expropiación, y que impliquen la constitución de algún derecho relativo al bien.

**Artículo 16º** - Cuando se trata de bienes que no sean raíces el precio se estimar mediante tasación a efectuarse por las oficinas competentes del Estado. No habiendo avenimiento para este solo caso podrá sustanciarse prueba pericial, la que se llevar a cabo mediante un perito único designado de oficio por el Juez, en sustitución de la actuación de la Junta prevista en el Artículo 14º.-

TITULO VI
NORMAS DE PROCEDIMIENTO

**Artículo 17º** - Queda autorizado el Poder Ejecutivo para pagar al propietario o Titulares de los derechos respectivos que lo acepten al valor que corresponda de acuerdo con lo estipulado en los artículos 11º y 16º de la presente Ley.-

**Artículo 18º** - Cuando no haya avenimiento y si se tratara de bienes raíces, el expropiante consignará ante el Juez competente el importe de la valuación para el pago de la contribución territorial, que deber acrecerse hasta un treinta por ciento (30 %) acompañando la última boleta emitida para el pago de la contribución territorial, y obtendrá la inmediata posesión del bien objeto de la expropiación. La misma se anotará en el Registro de la Propiedad quedando desde ese momento indisponible el bien.

**Artículo 19º** - Notificado el propietario de la consignación, declarará el Juez transferida la propiedad, sirviendo el auto y sus antecedentes de suficiente título traslativo, el que deberá ser inscripto en el Registro de la Propiedad.

**Artículo 20º** - En caso de ignorarse quien es el propietario actual es su domicilio la notificación se efectuará por edictos los que se publicarán en el Boletín Oficial de la Provincia y en un diario del lugar de asiento del Juzgado por el término de cinco días.-

**Artículo 21º** - El expropietario podrá retirar la suma depositada, previa justificación de su domicilio, que el bien no reconoce hipoteca u otro derecho real, que no esté embargado y que no pesan sobre el restricciones a la libre disposición de sus bienes.-

**Artículo 22º** - Antes de dictar sentencia sobre la indemnización el Juez podrá ordenar de oficio para mejor proveer, una audiencia verbal a la que deber concurrir el representante del fisco y el expropiado, o sus legítimos representantes. La sentencia no podrá fijar indemnización alguna menor a la ofrecida, ni superior a la reclamada.-

**Artículo 23º** - De las resoluciones judiciales que se dicten habrá lugar para el expropiante y el expropiado a los recursos permitidos por las leyes de procedimiento. En sentencia concederá un plazo de noventa (90) días a contar de la liquidación aprobada judicialmente para el pago de la indemnización.-

**Artículo 24º** - La acción emergente de cualquier perjuicio que se irrogase a terceros por contratos de locación u otros que tuvieran celebrados por el propietario, se ventilarán por la vía ordinaria en juicio por separado.-

**Artículo 25º** - Otorgada la posesión judicial del bien, quedarán resueltos los arrendamientos, acordándose a los ocupantes un plazo de treinta (30) días para el desalojamiento, que el expropiante podrá prorrogar cuando a su juicio existan justas razones que así lo aconsejan.-

**Artículo 26º** - Si se tratara de bienes que no son raíces, el expropiante obtendrá igualmente la posesión inmediata de ellos previa consignación judicial del valor determinado por la tasación oficial a que se refiere el artículo 16º.-

**Artículo 27º** - Ninguna acción de terceros podrá impedir la expropiación ni sus efectos. Los derechos del reclamante se consideran transferidos de la cosa a su precio o a la indemnización, quedando aquellas libre de todo gravamen.-

**Artículo 28º** - Todo incidente se resolver sumariamente en forma verbal y actuada.-

**Artículo 29º** - Las costas del juicio de expropiación serán a cargo del expropiante cuando la indemnización exceda de la ofrecida más la mitad de la diferencia entre la suma ofrecida y la reclamada; se satisfarán en el orden causado cuando no excedan de esa cantidad o si siendo superior a la ofrecida el expropiante no hubiese contestado la demanda o no hubiese expresado la suma por él pretendida, y serán a cargo del expropiado cuando la indemnización se fije en igual suma que la ofrecida por el expropiante.-

TITULO VII
ACCION DE RETROCESION

**Artículo 30º** - El propietario expropiado y sus sucesores a título universal, pueden, previa la interpelación judicial a que se refiere el artículo 31º, retrotraer el bien en los siguiente casos :

a) Cuando el expropiante de al bien un destino distinto al establecido para efectuar la expropiación, salvo que el cambio de destino sea dispuesto por la Ley y la situación tenga por objeto lograr una satisfacción de la colectividad.

b) Cuando después de dos años de perfeccionada la expropiación, o vencido el plazo que fije la ley especial para la realización de la obra, no se hubiere dado al bien el destino que motivó aquella.-

**Artículo 31º** - La interpelación judicial previa se hará bajo apercibimiento de promover la acción de retrocesión si dentro del plazo de un año a contar desde la notificación no se diese al bien el destino previsto.

**Artículo 32º** - La acción de retrocesión solo podrá intentarse dentro de los dos años desde la toma de posesión por el expropiante.-

**Artículo 33º** - Para retrotraer el bien, el expropiado deberá devolver sin intereses, la suma recibida, en su valor actualizado, menos el importe correspondiente a la intimidación de edificios, instalaciones y plantaciones y más el importe correspondiente a las mejoras utilizables introducidas por el expropiante ; la devolución de la suma actualizada recibida debe efectuarse dentro de los tres (3) meses de reconocido el derecho de retrocesión, caducando definitivamente ese derecho si venciere el plazo sin cumplirse la obligación.-

**Artículo 34º** - La retrocesión será sustanciada por el procedimiento del juicio sumario.-

**Artículo 35º** - La demanda deberá deducirse ante el mismo Juez que intervino en juicio de expropiación y si este no hubiera existido por haberse llegado a acuerdo en procedimiento extrajudicial, ante el Juez de turno en la Jurisdicción correspondiente.-

TITULO VIII
DISPOSICIONES COMPLEMENTARIAS

**Artículo 36º** - Se reputará abandonada la expropiación salvo disposición expresa de ley especial, si el sujeto expropiado no promueve el juicio dentro de los dos años de sancionada la ley que la autorice cuando se trata de llevarla a cabo sobre bienes individualmente determinados ; de cinco (5) años cuando se trate de bienes comprendidos en una enumeración genérica ; cuya adquisición por el sujeto expropiante pueda postergarse hasta que el propietario modifique o intente modificar las condiciones físicas del bien. La disposición precedente no regir en los casos en que el expropiante sea una Municipalidad legalmente autorizada para expropiar bienes, inmuebles o parte de ellos afectados a la apertura, construcción, rectificación o ensanches de calles, caminos, avenidas, plazas, puentes o desagües en virtud de las ordenanzas respectivas.-

**Artículo 37º** - Todo aquel, que invocando cualquier titulo resistiera de hecho la ejecución de los estudios o operaciones técnicas que en virtud de la presente Ley fuesen dispuestas por el Estado, por sus mandatarios o por los concesionarios de la obra, incurrir en una multa de quinientos (500) a diez mil (10.000) pesos al arbitrio del Juez, quien proceder a su aplicación previo informe sumario del hecho dándosele traslado por tres días par que haga su descargo. El fallo ser apelable ante el superior en la forma

dispuesta por el art. 246º del Código Procesal Civil y Comercial de la Provincia. La multa se ejecutará por vía del apremio.-

**Artículo 38º** - La presente Ley no será aplicable a los juicios promovidos con anterioridad a su sanción.-

**Artículo 39º** - La presente Ley ser obligatoria el día siguiente al de su publicación.-

**Artículo 40º** - Derogase toda otra disposición legal que se oponga a la presente.-

**Artículo 41º** - Comuníquese al Poder Ejecutivo y Archívese.-

Dada en la Sala de Sesiones de la Legislatura de la Provincia de Río Negro, en la ciudad de Viedma, a los diez y ocho días del mes de diciembre de mil novecientos setenta y cuatro.

<table>
<tr><td>ENRIQUE A. DELAVAUT<br>Secretario<br>Legislatura de Río Negro</td><td>JUSTO R. RAMIREZ<br>Presidente<br>Legislatura de Río Negro</td></tr>
</table>

DECRETO Nº **1866**
Regisatrada bajo el número mil quince (1015)
Viedma, 19 de Diciembre de 1974

OSCAR E.ALBRIEU
SECRETARIO GENERAL DE LA GOBERNACION

**THE LEGISLATURE OF THE PROVINCE OF RIO NEGRO SANCTIONS WITH THE FORCE OF LAW: 1015**

TITLE I QUALIFICATION

**Article 1** - The concept of public utility includes all cases in which the satisfaction of a requirement determined by social improvement is pursued.

**Article 2** - The declaration of public utility will be made in each case by Law, with reference to specific assets. When the qualification is sanctioned on a generic basis, the Executive Branch will individualize the assets required for the purposes of the law, with reference to described plans, technical reports or other elements sufficient for their determination.

TITLE II
EXPROPIATING SUBJECT

**Article 3** - Expropriation can be carried out:

a) By the Provincial State.
b) By the Municipalities and exclusively on assets located within their respective jurisdictions. The collegiate body of the Municipality declares the legislative authorization of the assets affected to be expropriated. c) By the public entities of autarchic provincial or municipal nature, in accordance with the special or generic authorization conferred by the law and creation ordinance exclusively for their purposes. specific.d) By the concessionaires of public works or services, for the execution of which the expropriation has been sanctioned; They replace the expropriating authority in the rights and obligations created by this Law and that are not related to the quality of political Power.

TITLE III
OBJECT OF EXPROPIATION

**Article 4** - Goods that are convenient or necessary for the satisfaction of public utility may be subject to expropriation, regardless of their legal nature, whether they are in commerce, whether they are things or not. The temporary use of an asset can also be expropriated.

**Article 5** - The Province may expropriate property from the municipal domain, from individuals and from the private domain of other provinces, the Nation or other national states.

**Article 6** - Expropriation may include, in addition to the necessary assets, those others that are appropriate to the main purpose of the declared public utility.

**Article 7** - Expropriation can be ordered and carried out on assets adjacent or not to a public work, linked or not to them, for the purpose of carrying out social improvement plans established by Law.

**Article 8** - If it involves the partial expropriation of some property and the part that remains unexpropriated is inadequate for rational use or exploitation, the expropriated party may demand the expropriation of the entire property. In urban lands, inadequate surpluses will be considered those that, due to the expropriation, have a front, back or surfaces that are less than what is authorized for building by the respective local ordinances or uses.

In rural properties, the Executive Branch will determine in each case the inadequate surfaces, taking into account the original exploitation given by the expropriated property.

**Article 9** - Assets affected by provincial and municipal public service concessions may be expropriated.

**Article 10** - The subsoil is susceptible to expropriation regardless of the surface property.

TITLE IV
DIRECT EXECUTION OF THE LAW

**Article 11** - Once the Special Expropriation Law has been promulgated, efforts will be made to execute it through direct consultation with the owner of the thing or, within the maximum value that, as total compensation, the competent technical offices estimate.

In the case of real estate, the compensation established by common agreement may not in any case be higher than the valuation for the property tax increased by thirty percent (30%).
When the land tax does not include the improvements, these will be paid separately, estimating them in the manner indicated in the first section of this article.

TITLE V
COMPENSATION

**Article 12** - Compensation only includes the objective value of the property, and damages that are a direct and immediate consequence of the expropriation. Circumstances will not be taken into account. No lost profits will be paid. In matters of real estate, the panoramic value or that derived from historical events will not be considered either. The value of the assets must be estimated by what they would have had if the work had not been executed or even authorized. General administrative restrictions established by special laws will not be compensable.

**Article 13** - The compensation for the expropriated property must be set at the time of dispossession. Improvements made to the property with subsequent to the act that declared it subject to expropriation except those that would have been necessary.

**Article 14** - If there is no agreement, the judge of First Instance of the place where the assets are located will decide the difference by proceeding with the summary judgment.
When setting the compensation, the judge will take into consideration the actions and opinions that must necessarily be prepared for each case by the Valuation Board created by article 138 of the Tax Code, which for this purpose alone will also be made up of a representative of the expropriating entity and one of the expropriated. The Board must rule within sixty days of the request of the Judge, who may extend this period only once and for the same term.

If the Valuation Board is not issued within the period established in the preceding paragraph, the Judge will send the records to the competent organizations, for the investigation of the corresponding administrative and criminal summaries.

**Article 15** - Contracts entered into with the owner after the Law that declared the property affected by expropriation, and that imply the constitution of some right relating to the property, are not considered valid with respect to the expropriator.

2

**Article 16** - When it comes to property that is not real estate, the price will be estimated through an appraisal to be carried out by the competent offices of the State. If there is no agreement for this single case, expert evidence may be substantiated, which will be carried out by a single expert appointed ex officio by the Judge, replacing the action of the Board provided for in Article 14.-

TITLE VI
RULES OF PROCEDURE

**Article 17** - The Executive Branch is authorized to pay the owner or holders of the respective rights who accept it at the corresponding value in accordance with the provisions of articles 11 and 16 of this Law.

**Article 18** - When there is no agreement and if it is real estate, the expropriator will submit to the competent Judge the amount of the valuation for the payment of the land tax, which must be increased up to thirty percent (30%) accompanying the last ticket issued for the payment of the land tax, and will obtain immediate possession of the property that is the object of the expropriation. It will be recorded in the Property Registry, leaving the property unavailable from that moment on.

**Article 19** - Once the owner of the consignment has been notified, the Judge will declare the property transferred, providing the car and its antecedents with sufficient transfer title, which must be registered in the Property Registry.

**Article 20** - If it is not known who the current owner is and his or her address, notification will be made by edicts which will be published in the Official Gazette of the Province and in a newspaper in the place where the Court is located for a period of five days.

**Article 21** - The former owner may withdraw the deposited sum, after proving his domicile, that the property does not recognize a mortgage or other real right, that it is not seized and that there are no restrictions on the free disposal of his assets.

**Article 22** - Before issuing a ruling on compensation, the Judge may order ex officio, to better provide, a verbal hearing to which the representative of the treasury and the expropriated party, or their legitimate representatives, must attend. The sentence may not establish any compensation less than that offered, nor greater than that claimed.-

**Article 23** - Of the judicial resolutions that are issued, there will be room for the expropriator and the expropriated to the resources permitted by the procedural laws. The ruling will grant a period of ninety (90) days from the judicially approved liquidation for the payment of compensation.-

**Article 24** - The action arising from any damage caused to third parties by lease or other contracts entered into by the owner, will be heard through ordinary means in a separate trial.

**Article 25** - Once judicial possession of the property has been granted, the leases will be resolved, granting the occupants a period of thirty (30) days for eviction, which the expropriator may extend when in his opinion there are just reasons that so advise.

**Article 26** - If the property is not real estate, the expropriator will also obtain immediate possession of it after judicial consignment of the value determined by the official appraisal referred to in article 16. -

**Article 27** - No action by third parties may impede the expropriation or its effects. The rights of the claimant shall be considered transferred from the thing at its price or compensation, leaving the thing free of any encumbrance.

**Article 28** - All incidents will be resolved summarily verbally and in action.-

**Article 29** - The costs of the expropriation trial will be borne by the expropriator when the compensation exceeds that offered plus half of the difference between the amount offered and the amount claimed; They will be satisfied in the order caused when they do not exceed that amount or if it is higher than that offered, the expropriator has not answered the demand or has not expressed the sum sought by him, and they will be borne by the expropriated party when the compensation is set at the same amount. than that offered by the expropriator.-

TITLE VII RETROCESSION ACTION

**Article 30** - The expropriated owner and his successors on a universal basis may, prior to the judicial interpellation referred to in Article 31, return the property in the following cases:

a) When the expropriator gives the property a destination other than that established to carry out the expropriation, unless the change of destination is provided by Law and the situation aims to achieve satisfaction of the community.
b) When, two years after the expropriation has been completed, or the deadline established by the special law for carrying out the work has expired, the property has not been given the destination that motivated it.

**Article 31** - Prior judicial interpellation will be made under warning of promoting retrocession action if within a period of one year from the notification the property is not given the intended destination.

**Article 32** - The retrocession action may only be attempted within two years from the taking of possession by the expropriator.-

**Article 33** - To return the property, the expropriated party must return, without interest, the sum received, in its updated value, less the amount corresponding to the intimidation of buildings, facilities and plantations and plus the amount corresponding to the usable improvements introduced by the expropriator ; The return of the updated amount received must be made within three (3) months of recognizing the right of retrocession, this right expiring definitively if the period expires without fulfilling the obligation.

**Article 34** - The retrocession will be substantiated by the summary judgment procedure.-

**Article 35** - The claim must be filed before the same Judge who intervened in the expropriation trial and if this had not existed because an agreement had been reached in an extrajudicial procedure, before the Judge on duty in the corresponding Jurisdiction.-

TITLE VIII COMPLEMENTARY PROVISIONS

**Article 36** - The expropriation will be considered abandoned unless expressly provided by a special law, if the expropriated subject does not promote the trial within two years of the passing of the law that authorizes it when it comes to carrying it out on individually determined assets; five (5) years in the case

4

of goods included in a generic list; whose acquisition by the expropriating subject can be postponed until the owner modifies or attempts to modify the physical conditions of the property. The preceding provision will not govern in cases in which the expropriator is a Municipality legally authorized to expropriate property, real estate or part of it affected by the opening, construction, rectification or widening of streets, roads, avenues, squares, bridges or drains under of the respective ordinances.-

**Article 37** - Anyone who, invoking any title, actually resists the execution of the studies or technical operations that by virtue of this Law were ordered by the State, by its agents or by the concessionaires of the work, will incur a fine of five hundred (500) to ten thousand (10,000) pesos at the discretion of the Judge, who will proceed to its application after a summary report of the fact, giving him transfer for three days to make his defense. The ruling may be appealed to the superior in the manner provided by art. 246 of the Civil and Commercial Procedure Code of the Province. The fine will be executed by means of enforcement.-

**Article 38** - This Law will not be applicable to trials filed prior to its sanction.-

**Article 39** - This Law will be mandatory the day following its publication.-

**Article 40** - Any other legal provision that opposes this one is repealed.-

**Article 41** - Communicate to the Executive Branch and File.-

Given in the Session Room of the Legislature of the Province of Río Negro, in the city of Viedma, on the eighteenth day of the month of December of one thousand nine hundred and seventy-four.

ENRIQUE A. DELAVAUT                                    JUSTO R. RAMIREZ
Secretary                                                              President
Río Negro Legislature                                        Río Negro Legislature



DECREE No **1866**
Registered under number one thousand fifteen (1015)

Viedma, December 19, 1974

OSCAR E. ALBRIEU

GENERAL SECRETARY OF THE GOVERNMENT

EXHIBIT 9



CÁMARA DE DIPUTADOS DE LA PROVINCIA DE SALTA

DIGESTO PROVINCIAL

## LEY Nº 2614 (Original 1336)
Sancionada el 18/08/1951. Promulgada el 24/08/1951.
Publicada en el Boletín Oficial Nº 4.025, del 03 de setiembre de 1951.

**El Senado y la Cámara de Diputados de la provincia de Salta, sancionan con fuerza de LEY**

## RÉGIMEN DE EXPROPIACIÓN - LEY ORGÁNICA

### TÍTULO I
### LA CALIFICACIÓN
Artículo 1º.- El concepto de utilidad pública, comprende todos los casos en que se persiga la satisfacción de una exigencia determinada por el perfeccionamiento social.

### TÍTULO II
### SUJETO EXPROPIANTE
Art. 2º.- La declaración de utilidad pública se hará en cada caso por ley, con referencia a bienes determinados. Cuando la calificación sea sancionada con carácter genérico, el Poder Ejecutivo individualizará los bienes requeridos a los fines de la ley, con referencia a planos descriptivos, informes técnicos y otros elementos suficientes para su determinación.

Art. 3º.- Los concesionarios de obras o servicios públicos, para cuya realización se hubiera sancionado la expropiación, sustituye a la autoridad expropiante en los derechos y obligaciones que crea la presente ley, y que no sean atinentes a la calidad de poder político.

### TÍTULO III
### OBJETO DE LA EXPROPIACIÓN
Art. 4º.- Pueden ser objeto de expropiación todos los bienes, muebles o inmuebles, convenientes o necesarios para la satisfacción de la "utilidad pública" o interés general, cualquiera sea su naturaleza jurídica, estén o no en el comercio, sean cosa o no.

Art. 5º.- El Estado podrá expropiar bienes del dominio municipal o de particulares con fines de utilidad pública.

Art. 6º.- La expropiación podrá comprender no solamente los bienes necesarios, sino también aquellos cuya ocupación convenga al fin principal de la misma.

Art. 7º.- La expropiación puede disponerse y realizarse sobre bienes adyacentes o no a una obra pública, vinculados o no a ésta, con el objeto de llevar a cabo planes de mejoramiento social establecidos por la ley.

Art. 8º.- Si se tratase de la expropiación parcial de algún inmueble y la parte que quedase sin expropiar fuera inadecuada para uso o explotación racional, el expropiado podrá exigir la expropiación de la totalidad del inmueble.

En los terrenos urbanos se considerarán sobrantes inadecuados los que, por causa de la expropiación, quedaron con frente, fondo o superficie inferiores a lo autorizado para edificar por las leyes, ordenanzas o usos locales respectivos.

En los inmuebles rurales, el Poder Ejecutivo determinará, en cada caso, las superficies inadecuadas, teniendo en cuenta la explotación primitiva dada por el expropiado.

Art. 9º.- La Provincia está facultada para expropiar los bienes afectados a un servicio público.

Art. 10.- Es susceptible de expropiación al subsuelo con independencia de la propiedad superficial.



CÁMARA DE DIPUTADOS DE LA PROVINCIA DE SALTA

DIGESTO PROVINCIAL

## TÍTULO IV
## LA INDEMNIZACIÓN

Art. 11.- La indemnización sólo comprenderá el valor objetivo del bien y los daños que sean una consecuencia directa e inmediata de la expropiación.

No se tomará en cuenta circunstancia de carácter personal, valores afectivos, ni ganancias hipotéticas. No se pagará lucro cesante. En materia de inmuebles, tampoco se considerará el valor panorámico o el derivado de hechos de carácter histórico.

El valor de los bienes debe estimarse por el que hubiera tenido si la obra no hubiere sido ejecutada ni aun autorizada, y el precio de la expropiación debe fijarse con relación a la fecha en que se produjo la ocupación.

Art. 12.- No se indemnizarán las mejoras realizadas en el bien con posterioridad al acto que lo declare afectado a expropiación, salvo aquellas que hubieren sido necesarias.

Art. 13.- Declarada la utilidad pública de un bien, el expropiante podrá adquirirlo directamente del propietario, dentro del valor máximo que en concepto total de indemnización estimen sus organismos técnicos competentes.

Tratándose de inmuebles, el organismo que fijará el valor máximo será el Tribunal de Tasaciones, previsto por el artículo 36 de esta ley, el que citará al expropiado para que lo integre, bajo apercibimiento de prescindir de su intervención.

El Tribunal de Tasaciones practicará la tasación real y actual de la propiedad y de los perjuicios que acreditare el propietario por intermedio de su perito en la oportunidad del dictamen. *(Modificado por el Art. 1 de la Ley 4272/1968).*

Art. 14.- No se considerarán válidos, respecto al expropiante, los contratos celebrados por el propietario, con posterioridad a la ley que declare afectado el bien a expropiarse y que implique la constitución de algún derecho relativo al bien.

Art. 15.- Cuando se trate de bienes que no sean raíces, el precio se estimará mediante tasación a efectuarse por las oficinas competentes del Estado. No habiendo avenimiento, para este solo caso podrá substanciarse prueba pericial, la que se llevará a cabo por un perito único designado de oficio por el juez, en sustitución de la actuación del Tribunal de Tasaciones prevista en el artículo 13 para los bienes raíces. *(Modificado por el Art. 1 de la Ley 4272/1968).*

## TÍTULO V
## NORMAS DE PROCEDIMIENTO

Art. 16.- Queda autorizado el expropiante para pagar al propietario o titular de los derechos respectivos que lo acepten, el valor que corresponde de acuerdo a lo estipulado en el artículo 13 de la presente ley. En este caso, la indemnización comprenderá también los gastos y honorarios correspondientes a la integración del Tribunal por el perito designado por el expropiado. Los honorarios serán regulados por el Consejo Profesional de Agrimensores, Arquitectos, Ingenieros y Profesionales Afines. *(Modificado por el Art 1 de la Ley 4272/1968).*

Art. 17.- Declarada la utilidad pública de un bien inmueble el expropiante podrá obtener judicialmente la posesión inmediata del mismo consignando el importe de la última valuación fiscal de carácter general fijada para el pago del impuesto inmobiliario la que será incrementada en un 30%. La indisponibilidad del bien se anotará en la Dirección General de Inmuebles. *(Modificado por el Art. 1 de la Ley 4272/1968).*

Art. 18.- Cuando el expropiado no aceptare los valores determinados por el Tribunal de Tasaciones para los bienes raíces o para los perjuicios producidos, el expropiante deducirá demanda de



CÁMARA DE DIPUTADOS DE LA PROVINCIA DE SALTA

DIGESTO PROVINCIAL

expropiación elevando las actuaciones producidas por el Tribunal, con o sin la intervención del expropiado. El Juez fijará una audiencia a la cual deberán comparecer el representante del expropiante y el expropiado o su representante legal, bajo apercibimiento de que si así no lo hiciere el primero se tendrá por desistida la acción, y la incomparencia del segundo dará lugar a tenerlo por rebelde si hubiere dejado de concurrir sin justa causa. *(Modificado por el Art. 1 de la Ley 4272/1968).*

Art. 19.- Si de la audiencia indicada en el artículo anterior no resultare avenimiento entre las partes, el expropiado deberá indicar en ella el precio que reclama con sus fundamentos, ofreciendo toda la prueba de que intente valerse, pero no podrá solicitar nueva tasación pericial del inmueble expropiado. *(Modificado por el Art. 1 de la Ley 4272/1968).*

Art. 20.- En caso necesario el Juez fijará término para la producción de la prueba, que no excederá de 30 días. *(Modificado por el Art. 1 de la Ley 4272/1968).*

Art. 21.- Vencido el término de prueba, se pasarán los autos por cinco días a cada parte por su orden para alegar sobre su mérito. *(Modificado por el Art. 1 de la Ley 4272/1968).*

Art. 22.- Vencido el plazo para alegar, el Juez ordenará la agregación de los escritos que se hubieran presentado, y una vez cumplidas las medidas que para mejor proveer se hubieran ordenado, llamará autos para sentencia la que deberá dictarse en un plazo de veinte días desde que esté consentido dichos llamamientos.

La sentencia será apelable libremente en el plazo de cinco días.

*(Modificado por el Art. 1 de la Ley 4272/1968).*

Art. 23.- Desde que el propietario quede legalmente notificado de la consignación, declarará el juez transferida la propiedad a favor del expropiante, sirviendo el auto y sus antecedentes de suficiente título traslativo, el que deberá ser inscripto en la Dirección General de Inmuebles.

Art. 24.- Como medidas para mejor prever podrá ordenar el juez, únicamente, la inspección ocular, y una audiencia verbal a la cual deberán concurrir, necesariamente, el representante fiscal y el expropiado o su legítimo representante.

Art. 25.- En caso de ignorarse quién es el propietario o cuál es su domicilio, la notificación se efectuará por edictos que se publicarán en el Boletín Oficial y en un diario del lugar del asiento del Juzgado por el término de cinco días.

Art. 26.- De las resoluciones judiciales que se dicten habrá lugar para el expropiante y el expropiado a los recursos permitidos por las leyes de procedimientos.

Art. 27.- La acción emergente de cualquier perjuicio que se irrogase a tercero por contratos de locación u otros que tuvieran celebrado con el propietario, se ventilará por la vía ordinaria, en juicio por separado.

Art. 28.- Otorgada la posesión judicial del bien quedarán resueltos los arrendamientos, acordándose a los ocupantes un plazo de treinta días para el desalojamiento, que el expropiante podrá prorrogar cuando a su juicio existan justas razones que así lo aconseja.

Art. 29.- Si se tratara de bienes que no son raíces, el expropiante obtendrá igualmente la posesión inmediata de ellos, previa consignación judicial del valor determinado por la tasación oficial.

Art. 30.- Ninguna acción de terceros podrá impedir la expropiación ni sus efectos. Los derechos del reclamante se considerarán transferidos de la cosa a su precio o a la indemnización, quedando aquella libre de todo gravamen.

Art. 31.- Todo incidente se resolverá sumariamente, en forma verbal y actuada.

Art. 32.- Las costas del juicio de expropiación serán a cargo del expropiante cuando la indemnización exceda de la ofrecida más la mitad de la diferencia entre la suma ofrecida y la reclamada; se satisfarán en el orden causado cuando no exceda de esa cantidad o si siendo superior



CÁMARA DE DIPUTADOS DE LA PROVINCIA DE SALTA

DIGESTO PROVINCIAL

a la ofrecida el expropiado no hubiese contestado la demanda o no hubiese expresado la suma por él pretendida; y serán a cargo del expropiado cuando la indemnización se fije en igual suma que la ofrecida por el expropiante.

## TÍTULO VI
## DISPOSICIONES COMPLEMENTARIAS

Art. 33.- Se reputará abandonada la expropiación -salvo disposiciones expresas de la ley especial- si el sujeto expropiante no promueva el juicio dentro de dos años de sancionada la ley que la autorice, cuando se trate de llevarla a cabo sobre bienes individualmente determinados; de cinco años cuando se trate de bienes comprendidos dentro de una zona determinada; y de diez años, cuando no se trate de bienes comprendidos en una enumeración genérica, cuya adquisición por el sujeto expropiante puede postergarse hasta que el propietario modifique, -o intente modificar- las condiciones físicas del bien.

No regirá la disposición precedente en los casos en que las leyes orgánicas de las municipalidades autoricen a éstas a expropiar la porción de los inmuebles afectados a rectificaciones o ensanches de calles y ochavas, en virtud de las ordenanzas respectivas.

Art. 34.- En los juicios de expropiación de inmuebles en que no se hubiese dictado sentencia definitiva que haga cosa juzgada, el Tribunal que se halle abocado al conocimiento de cada causa deberá obligatoriamente requerir el dictamen a que se refiere el artículo 19 de esta ley. ***(Modificado por el Art. 1 de la Ley 2661 /1951)***.

Art. 35.- Todo aquel que a título de propietario, de simple poseedor o de cualquier otro, resistiere de hecho la ejecución de los estudios, diligencias u operaciones técnicas que en virtud de la presente ley fuesen dispuestas por el Estado, por sus mandatarios o por los concesionarios de la obra, incurrirá en una multa de $ 10.000 a $ 200.000 m/n. a criterio del Juez en lo Civil, quien procederá ejecutivamente a su aplicación previo informe sumarísimo del hecho y después de oír al inculpado. La multa que se imponga será apelable al solo efecto devolutivo. ***(Modificado por el Art. 1 de la Ley 4272/1968).***

## TÍTULO VII
## DEL TRIBUNAL DE TASACIONES

Art. 36.- Créase el Tribunal de Tasaciones de la Provincia, dependiente de la Dirección General de Inmuebles, que estará integrado por los siguientes funcionarios:
   a) Los miembros de la Junta de Catastro establecido por el artículo 153 de la Ley 1.030.
   b) Un funcionario superior de la Dirección General de Arquitectura, dentro de su personal técnico especializado.
   c) Un funcionario superior de la Administración General de Aguas de Salta, dentro de su personal técnico especializado.
   d) Un funcionario superior de la Dirección General de Vialidad de la Provincia, dentro de su personal técnico especializado.
   e) Un funcionario superior del Banco Provincial de Salta, dentro de su personal técnico especializado.

En los casos b) a e), los miembros del Tribunal serán designados por el Poder Ejecutivo a propuesta de las respectivas reparticiones.

Art. 37.- Serán funciones del Tribunal de Tasaciones:
   a) Practicar las tasaciones de bienes inmuebles que le sean requeridas en expropiaciones y de los perjuicios correspondientes.
   b) Elegir sus autoridades y dictar su reglamento interno.



(*Modificado por el Art. 1 de la Ley 4272/1968*).

Art. 38.- A los efectos previstos en el articulado anterior el Tribunal de Tasaciones deberá incorporar a su seno al perito del expropiante y al perito del expropiado, quienes deberán tener título universitario habilitante y presentarse en un plazo de diez días, so-pena de que el Tribunal produzca el dictamen requerido sin la intervención de aquellos. (*Modificado por el Art. 1 de la Ley 4272/1968*).

## TÍTULO VIII
## DEL DESISTIMIENTO EN LOS JUICIOS DE EXPROPIACIÓN

Art. 39.- Autorízase al Poder Ejecutivo a desistir de los juicios de expropiación en cualquier estado de los mismos, sin necesidad de ley especial.

Art. 40.- En caso de desistimiento, las costas del juicio no podrán exceder de un 20% de las que pudieren corresponder por ley a un juicio terminado sobre la base de la diferencia entre la suma ofrecida y la reclamada por el expropiado.

Art. 41.- Se tendrá como valor fiscal, a los efectos de la percepción de los impuestos y tasas del bien sujeto a expropiación, aquel que resulte de la propia estimación en juicio formulada por el propietario, o en su caso la fijada por los peritos en mayoría, según resulte más conveniente a los intereses del Fisco.

Art. 42.- Derógase la Ley Nº 1.136, así como todas las disposiciones de otras leyes que se opongan a la presente.

Art. 43.- Comuníquese, etc.

Dada en la Sala de Sesiones de la Honorable Legislatura de la provincia de Salta, a los dieciocho días del mes de agosto del año mil novecientos cincuenta y uno.

ANTONIO M. FERNÁNDEZ - J. Armando Caro - Alberto A. Díaz - Rafael A. Palacios.

Salta, 24 agosto de 1951.

## MINISTERIO DE GOBIERNO, JUSTICIA E INSTRUCCIÓN PÚBLICA

Téngase por Ley de la Provincia, cúmplase, comuníquese, publíquese, insértese en el Registro de Leyes y archívese.

SALVADOR MICHEL ORTIZ - Pedro De Marco

**Chamber of Deputies of the Province of Salta**

**Provincial Digest**

**LAW No 2614 (Original 1336)**

Sanctioned on 08/18/1951. Promulgated on 08/24/1951. Published in the Official Gazette No 4,025, on September 3, 1951.

The Senate and the Chamber of Deputies of the province of Salta, sanction with the force of LAW

EXPROPIATION REGIME - ORGANIC LAW

TITLE I
QUALIFICATION

Art. 1.- The concept of public utility includes all cases in which the satisfaction of a requirement determined by social improvement is pursued.

TITLE II
EXPROPIATING SUBJECT

Art. 2.- The declaration of public utility will be made in each case by law, with reference to specific assets. When the qualification is sanctioned on a generic basis, the Executive Branch will individualize the assets required for the purposes of the law, with reference to descriptive plans, technical reports and other elements sufficient for their determination.

Art. 3.- The concessionaires of public works or services, for whose execution the expropriation had been sanctioned, replace the expropriating authority in the rights and obligations created by this law, and that are not related to the quality of political power.

TITLE III
OBJECT OF EXPROPIATION
Art. 4.- All property, movable or immovable, convenient or necessary for the satisfaction of the "public utility" or general interest, may be subject to expropriation, regardless of their legal nature, whether or not they are in commerce, whether they are a thing or not.

Art. 5.- The State may expropriate property from the municipal domain or from individuals for public utility purposes.

Art. 6.- The expropriation may include not only the necessary assets, but also those whose occupation is convenient to the main purpose of the same.

Art. 7.- Expropriation can be ordered and carried out on assets adjacent or not to a public work, linked or not to it, for the purpose of carrying out social improvement plans established by law. Art. 8.- If it involves the partial expropriation of some property and the part that remains unexpropriated is unsuitable for rational use or exploitation, the expropriated party may demand the expropriation of the entire property. In urban lands, unsuitable surpluses will be considered those that, due to the expropriation, were left with a front, back or surface area less than that authorized for building by the respective laws, ordinances or local uses. In rural properties, the Executive Branch will determine, in each case, the inadequate surfaces, taking into account takes into account the primitive exploitation given by the expropriated.

Art. 9.- The Province is empowered to expropriate property assigned to a public service.

Art. 10.- It is susceptible to expropriation of the subsoil regardless of the surface property.

TITLE IV
COMPENSATION

Art. 11.- Compensation will only include the objective value of the property and the damages that are a direct and immediate consequence of the expropriation.
Personal circumstances, emotional values, or hypothetical earnings will not be taken into account. No lost profits will be paid. In matters of real estate, the panoramic value or that derived from historical events will not be considered either. The value of the property must be estimated by what it would have had if the work had not been executed or even authorized, and the price of the expropriation must be set in relation to the date on which the occupation occurred.

Art. 12.- Improvements made to the property after the act declaring it subject to expropriation will not be compensated, except for those that have been necessary.

Art. 13.- Once the public utility of a property has been declared, the expropriator may acquire it directly from the owner, within the maximum value that the competent technical organizations estimate as a total compensation. In the case of real estate, the body that will set the maximum value will be the Court of Appraisals, provided for by article 36 of this law, which will summon the expropriated person to integrate it, under warning to dispense with his intervention. The Appraisal Court will carry out the actual and current appraisal of the property and the damages that the owner will prove. through his expert at the time of the opinion. (Modified by Art. 1 of Law 4272/1968).
Art. 14.- Contracts entered into by the owner after the law that declares the property to be expropriated affected and that implies the constitution of some right relating to the property will not be considered valid with respect to the expropriator.
Art. 15.- When it comes to property that is not real estate, the price will be estimated through an appraisal to be carried out by the competent offices of the State. If there is no agreement, for this

only case, expert evidence may be substantiated, which will be carried out by a single expert appointed ex officio by the judge, replacing the action of the Appraisal Court provided for in article 13 for real estate. (Modified by Art. 1 of Law 4272/1968).

TITLE V
RULES OF PROCEDURE
Art. 16.- The expropriator is authorized to pay the owner or holder of the respective rights who accept it, the corresponding value in accordance with the provisions of article 13 of this law. In this case, the compensation will also include the expenses and fees corresponding to the integration of the Court by the expert designated by the expropriated party. The fees will be regulated by the Professional Council of Surveyors, Architects, Engineers and Related Professionals. (Modified by Art 1 of Law 4272/1968).
Art. 17.- Once the public utility of a real estate has been declared, the expropriator may judicially obtain immediate possession of the same by recording the amount of the last general tax valuation established for the payment of the real estate tax, which will be increased by 30%. The unavailability of the property will be noted in the General Directorate of Real Estate. (Modified by Art. 1 of Law 4272/1968).
Art. 18.- When the expropriated party does not accept the values determined by the Appraisal Court for the real estate or for the damages caused, the expropriator will file a claim for expropriation by raising the actions produced by the Court, with or without the intervention of the expropriated party. The Judge will set a hearing at which the representative of the expropriator and the expropriated person or his legal representative must appear, under the warning that if the former does not do so, the action will be considered withdrawn, and the failure of the latter will result in him being considered rebel if he has stopped attending without just cause. (Modified by Art. 1 of Law 4272/1968).

Art. 19.- If the hearing indicated in the previous article does not result in an agreement between the parties, the expropriated party must indicate in it the price they claim with their reasons, offering all the evidence that they intend to use, but they will not be able to request a new appraisal. expert examination of the expropriated property. (Modified by Art. 1 of Law 4272/1968).

Art. 20.- If necessary, the Judge will set a deadline for the production of evidence, which will not exceed 30 days. (Modified by Art. 1 of Law 4272/1968).
Art. 21.- Once the evidentiary period has expired, the files will be passed for five days to each party in their order to argue on their merit. (Modified by Art. 1 of Law 4272/1968).

Art. 22.- Once the deadline for pleading has expired, the Judge will order the aggregation of the documents that have been presented, and once the measures that have been ordered to better provide have been completed, he will call orders for a sentence, which must be issued within a period of twenty days from when said calls are approved.

The sentence will be freely appealable within five days.

(Modified by Art. 1 of Law 4272/1968).

Art. 23.- Once the owner is legally notified of the consignment, the judge will declare the property transferred in favor of the expropriator, with the car and its records providing sufficient transfer title, which must be registered in the General Directorate of Real Estate.

Art. 24.- As measures to better predict, the judge may order only the visual inspection, and a verbal hearing to which the fiscal representative and the expropriated person or his legitimate representative must necessarily attend.

Art. 25.- If it is not known who the owner is or what his address is, notification will be made by edicts that will be published in the Official Gazette and in a newspaper in the place where the Court is located for a period of five days.

Art. 26.- In the judicial resolutions that are issued, there will be room for the expropriator and the expropriated party to the resources permitted by the procedural laws.

Art. 27.- The action arising from any damage caused to a third party by lease contracts or others that were concluded with the owner, will be heard through ordinary means, in a separate trial.

Art. 28.- Once judicial possession of the property has been granted, the leases will be resolved, granting the occupants a period of thirty days for eviction, which the expropriator may extend when in his opinion there are just reasons that so advise.

Art. 29.- If the property is not real estate, the expropriator will also obtain immediate possession of it, after judicial consignment of the value determined by the official appraisal.

Art. 30.- No action by third parties may impede the expropriation or its effects. The rights of the claimant shall be considered transferred from the thing at its price or compensation, leaving the thing free of any encumbrance.

Art. 31.- All incidents will be resolved summarily, verbally and in action.

Art. 32.- The costs of the expropriation trial will be borne by the expropriator when the compensation exceeds that offered plus half of the difference between the amount offered and the amount claimed; They will be satisfied in the order caused when it does not exceed that amount or if, being higher than that offered, the expropriated party had not answered the demand or had not expressed the sum sought by him; and will be borne by the expropriated party when the compensation is set at the same amount as that offered by the expropriator.

TITLE VI
COMPLEMENTARY PROVISIONS

Art. 33.- The expropriation will be considered abandoned - except for express provisions of the special law - if the expropriating subject does not promote the trial within two years of the passing of the law that authorizes it, when it is attempted to be carried out. on individually

determined goods; five years in the case of assets included within a specific area; and ten years, when the property is not included in a generic list, the acquisition of which by the expropriating subject may be postponed until the owner modifies, or attempts to modify, the physical conditions of the property.

The preceding provision will not govern in cases in which the organic laws of the municipalities authorize them to expropriate the portion of the properties affected by rectifications or widening of streets and ochavas, by virtue of the respective ordinances.

Art. 34.- In property expropriation trials in which a final judgment has not been issued that constitutes res judicata, the Court that is responsible for hearing each case must obligatorily request the opinion referred to in article 19 of this law. (Modified by Art. 1 of Law 2661/1951) .

Art. 35.- Anyone who, as owner, simple possessor or any other person, actually resists the execution of the studies, procedures or technical operations that by virtue of this law were ordered by the State, by its agents. or by the concessionaires of the work, will incur a fine of $10,000 to $200,000 m/n. at the discretion of the Civil Judge, who will proceed executively to its application after a summary report of the fact and after hearing the accused. The fine imposed will be appealable for refund purposes only. (Modified by Art. 1 of Law 4272/1968).

TITLE VII
OF THE APPRAISAL COURT
Art. 36.- The Provincial Appraisal Court is created, dependent on the General Directorate of Real Estate, which will be made up of the following officials:

a) The members of the Cadastre Board established by article 153 of Law 1,030.

b) A senior official of the General Directorate of Architecture, within its specialized technical staff.

c) A senior official of the General Administration of Waters of Salta, within its specialized technical staff.

d) A senior official of the General Directorate of Roads of the Province, within its specialized technical staff.

e) A senior official of the Provincial Bank of Salta, within its specialized technical staff.

In cases b) to e), the members of the Court will be appointed by the Executive Branch at the proposal of the respective departments.

Art. 37.- The functions of the Appraisal Court will be:

1. a) Carry out the appraisals of real estate that are required in expropriations and the corresponding damages.

2.   b) Choose its authorities and dictate its internal regulations.

(Modified by Art. 1 of Law 4272/1968).

Art. 38.- For the purposes provided for in the previous articles, the Appraisal Court must incorporate into its ranks the expert of the expropriator and the expert of the expropriated, who must have a qualifying university degree and appear within a period of ten days, under penalty for the Court to produce the required ruling without their intervention. (Modified by Art. 1 of Law 4272/1968).

TITLE VIII
WITHDRAWAL IN EXPROPIATION TRIAL

Art. 39.- The Executive Branch is authorized to withdraw from expropriation lawsuits in any state thereof, without the need for a special law.

Art. 40.- In case of withdrawal, the costs of the trial may not exceed 20% of those that could correspond by law to a completed trial based on the difference between the sum offered and that claimed by the expropriated party.

Art. . 41.- The fiscal value, for the purposes of collecting taxes and fees of the property subject to expropriation, will be that which results from the estimate in court made by the owner, or, where appropriate, that established by the experts in majority, as is most convenient to the interests of the Treasury.

Art. 42.- Law No. 1,136 is repealed, as well as all provisions of other laws that oppose this one.

Art. 43.- Communicate, etc.

Given in the Session Room of the Honorable Legislature of the province of Salta, on the eighteenth day of the month of August of the year one thousand nine hundred and fifty-one.

ANTONIO M. FERNÁNDEZ - J. Armando Caro - Alberto A. Díaz - Rafael A. Palacios.

Salta, August 24, 1951.

**MINISTRY OF GOVERNMENT, JUSTICE AND PUBLIC INSTRUCTION**

It is considered the Law of the Province, it is complied with, it is communicated, it is published, it is inserted in the Registry of Laws and it is filed.

SALVADOR MICHEL ORTIZ - Pedro De Marco

EXHIBIT 10

SISTEMA ARGENTINO
DE INFORMACIÓN JURÍDICA

# Régimen de Expropiaciones

LEY N. 21
RIO GALLEGOS, 10 de Septiembre de 1958
Sin fecha,
Vigente, de alcance general
Id SAIJ: LPZ0000021

**TEMA**

Derecho administrativo, Derecho civil, declaración de utilidad pública, transmisión del dominio, registro de la propiedad inmueble, inscripción registral

El Poder Legislativo de la Provincia de Santa Cruz Sanciona con Fuerza de: LEY

## CAPITULO I CALIFICACIONES, SUJETO EXPROPIANTE, OBJETO DE LA EXPROPIACIÓN

**Artículo 1.-** Procede la expropiación de todo bien, no siendo de propiedad de la Nación, y encontrándose dentro de los límites provinciales, resulte conveniente o necesario por razones de utilidad pública. El concepto de utilidad pública comprende todos los casos en que se persiga la satisfacción de una exigencia determinada por el perfeccionamiento social.-

**Artículo 2.-** La declaración de utilidad pública se hará por Ley y con referencia a bienes determinados. Cuando sea sancionada en forma genérica el Poder Ejecutivo individualizará los bienes requeridos a los fines de la Ley con referencia a planes descriptivos, informes técnicos u otros elementos suficientes para su determinación. En el caso del Art. 73° de la Constitución Provincial, la individualización de los bienes estarán a cargo del Consejo Agrario.-

**Artículo 3.-** La expropiación será realizada por la provincia o las Municipalidades pero los derechos y obligaciones del sujeto expropiante no podrán sustituirse en concesionarios de obras o servicios públicos.-

**Artículo 4.-** La expropiación podrá tener por objeto todos los bienes cualquiera sea su naturaleza jurídica, estén o no en el comercio, sean cosas o no, pertenezcan al dominio municipal o particular, aún cuando estén afectados a un servicio público o se trate solamente del subsuelo con independencia de la propiedad superficial, y ya sea que resulten necesarios o que su ocupación convenga al fin de la misma.-

**Artículo 5.-** La expropiación puede disponerse y realizarse sobre un bien adyacente o no a una obra pública, vinculada o no a ésta, con el objeto de llevar a cabo los planes previstos en la ley que dispuso la expropiación.-

## CAPITULO II INDEMNIZACIÓN Y COMPRA DIRECTA

SISTEMA ARGENTINO
DE INFORMACIÓN JURÍDICA

**Artículo 6.-** La indemnización sólo comprenderá el valor objetivo del bien y los daños que sean una consecuencia directa o inmediata de la expropiación. No se tomarán en cuenta circunstancias de carácter personal, valores afectivos ni ganancias hipotéticas. No se pagará lucro cesante. En materia de inmuebles solo se considerará el valor panorámico o derivado de hechos históricos cuando ese valor tenga relación directa con el tipo de explotación a que los mismos estén sometidos.-

**Artículo 7.-** No se indemnizarán las mejoras realizadas en el bien con posterioridad al acto que lo declaró afectado a expropiación, a menos que fueren mejoras necesarias. No serán válidos respecto del expropiante los actos celebrados por el propietario que impliquen la constitución de un derecho sobre el bien y que sean posteriores a la ley que lo haya declarado afectado a expropiación.-

**Artículo 8.-** El valor de los bienes que debe estimarse por el que hubieran tenido si no se hubiera declarado la utilidad pública de los mismos o si la obra no hubiera sido ejecutada.-

**Artículo 9.-** El expropiante podrá adquirir un bien declarado de utilidad pública, directamente del propietario o titular de derechos dentro del valor máximo que, en concepto de indemnización total estimen las oficinas técnicas competentes. Si se tratara de inmuebles, la indemnización convenida no excederá del importe de la valuación a los efectos de la contribución territorial, acrecida en un 30%. Cuando el impuesto inmobiliario no incluyera las mejoras, éstas se pagarán por separado estimándolas en la forma indicada en la primera parte de este artículo.

**Artículo 10.-** No se efectuaran compras directas de inmuebles sino en base a títulos perfectos y previa verificación de la vigencia y de las condiciones del dominio, para la cual se requerirá informe del Registro de la Propiedad.

## CAPITULO III PROCEDIMIENTOS

**Artículo 11.-** No habiendo avenimiento, la diferencia será decidida por el Juez del lugar del bien, conforme al procedimiento que estatuyen los artículos siguientes.

**Artículo 12.-** El expropiante consignará ante el juez el importe de la indemnización ofrecida, conforme al Art. 9°, y obtendrá la posesión inmediata del bien expropiado. La litis se anotará en el Registro de la Propiedad o en el que correspondiere según la naturaleza del bien si este fuera mueble. Desde la anotación, el bien quedará indisponible.

**Artículo 13.-** En el mismo auto en que mandare dar la posesión del bien, el juez ordenará que se notifique la consignación al propietario o titular de derechos. Si se ignorase su identidad o domicilio practicará la notificación por edictos que se publicarán en el Boletín Oficial de la provincia por una vez y en un diario del asiento del Juzgado por cinco días.

**Artículo 14.-** En el término de quince días perentorios, el expropiado deberá comparecer a juicio manifestando en forma inequívoca si acepta o rechaza el monto de la indemnización y en su caso, que monto solicita y nombre y domicilio del representante ante el Tribunal de Tasaciones.

**Artículo 15.-** Vencido el término o aceptada la indemnización antes del vencimiento el juez declarará transferida la propiedad, sirviendo el auto y sus antecedentes de suficiente título traslativo que deberá inscribirse en el

SISTEMA ARGENTINO
DE INFORMACIÓN JURÍDICA

Registro de la Propiedad o el que correspondiera según la naturaleza del bien.

**Artículo 16.-** Nombrado el representante o vencido el término, el juez elevará el expediente al Tribunal de Tasaciones, el que notificará al representante del expropiado en el domicilio denunciado de la entrada del expediente. Si dicho representante no concurriere a tomar intervención en el término de diez días, el Tribunal de Tasaciones se pronunciará sin su concurso.

**Artículo 17.-** Vuelto el expediente con dictamen del Tribunal de Tasaciones, el juez señalará audiencia para escuchar en juicio verbal, las objeciones al mismo y alegaciones de las partes.

**Artículo 18.-** Cuando el bien no fuere inmueble, en lugar de lo establecido por los arts. 15 y 17, se procederá en la forma siguiente: en el auto en que se declare transferida la propiedad el juez señalará una audiencia y designará un perito único. En dicha audiencia oirá la opinión del perito y las alegaciones de las partes sobre el monto de la indemnización.

**Artículo 19.-** Después de las audiencias de los arts. 17 y 18, no se admitirá más debate y el juicio entrará al despacho debiendo dictarse sentencia en el término de treinta días.

**Artículo 20.-** Las partes tendrán derechos a los recursos que permitan las leyes procesales de la provincia. Todo incidente será resuelto sumariamente en forma verbal y actuada.

**Artículo 21.-** Ninguna acción de terceros podrá impedir la expropiación ni sus efectos. Los derechos del reclamante se consideraran transferidos del bien, al importe de la indemnización, quedando aquel libre de todo gravamen.

**Artículo 22.-** En cualquier estado del juicio el expropiado podrá solicitar la entrega de la suma consignada, sin que ello importe aceptar el monto de la indemnización.

**Artículo 23.-** Las costas del juicio serán a cargo del expropiante cuando la indemnización exceda la ofrecida, más la mitad de la diferencia con la suma reclamada; se satisfarán en el orden causado, cuando exceda de esa cantidad o aún excediéndola el demandante no hubiera contestado la demanda o no hubiera expresado la suma pretendida; y serán a cargo del expropiado cuando la indemnización se fije en igual suma que la ofrecida.

## CAPITULO IV TRIBUNAL DE TASACIONES

**Artículo 24.-** El Tribunal de Tasaciones estará constituido de la siguiente manera: 1 - El representante del Banco de la Provincia; 2 - El Director de Estudios y Proyectos, dependiente de la Subsecretaria de Obras y Servicios Públicas; 3 - El Asesor de Gobierno; 4 - El Director de Rentas; 5 - El representante del expropiado.

**Artículo 25.-** Para fijar el monto de la indemnización, el Tribunal de Tasaciones tomará en cuenta los siguientes elementos de juicio, sin excluir otros coadyuvantes: 1) Precio que se abonó en la última transferencia de dominio. 2) Valuación asignada para el pago de impuestos. 3) Valores de fincas linderas y precios abonados por ellas en los últimos tres años. 4) Valor registrado en los bancos. 5) Valor de su productividad.

SISTEMA ARGENTINO
DE INFORMACIÓN JURÍDICA

## CAPITULO V DE LA EXPROPIACIÓN INVERSA

**Artículo 26.-** El propietario de un inmueble puede promover juicio de expropiación en los siguientes casos: 1 - Cuando calificada la utilidad pública del bien o comprendida este dentro de una declaración genérica de utilidad pública, el sujeto expropiante haya tomado posesión de el sin intervención judicial o sin consentimiento expreso del propietario, 2 - Cuando la posesión haya sido tomada con consentimiento del propietario y el juicio de expropiación no se hubiese promovido en el plazo fijado de común acuerdo, o dentro de los seis meses siguientes a la toma de posesión, a falta de plazo convenido, 3 - Si se tratase de la expropiación parcial de algún inmueble y la parte que quedase sin expropiar fuera inadecuado para uso o explotación nacional, el expropiado podrá exigir la expropiación de la totalidad del inmueble. En los terrenos urbanos se considerarán sobrantes inadecuados los que, por causa de la expropiación, quedaran con dimensiones o superficies inferiores a lo autorizado por las ordenanzas respectivas.

**Artículo 27.-** El actor deberá acreditar, u ofrecerá hacerla, que inició reclamación administrativa previa, para ser indemnizado, sin éxito. Se considerará que ha reclamado sin éxito, cuando transcurriesen más de noventa días de formulado el reclamo sin que sobre el mismo haya recaído resolución.

**Artículo 28.-** Si la demandada se opusiera a la expropiación, el juez resolverá previamente ese artículo. La sentencia será apelable en relación dentro del quinto día.

**Artículo 29.-** Si la demandada no se opusiere a la expropiación, o resuelto en su contra el artículo sobre oposición, se seguirán los procedimientos establecidos para el juicio de expropiación directa.

## CAPITULO VI ACCIÓN DE RETROCESIÓN

**Artículo 30.-** El propietario expropiado y sus sucesores a título universal, pueden, previa la interpelación judicial a que se refiere el artículo siguiente, retrotraer el bien en los casos siguientes: 1) Cuando el expropiante de al bien un destino distinto al establecido para efectuar la expropiación; salvo que el cambio de destino sea dispuesto por Ley. 2) Cuando después de dos años de perfeccionada la expropiación o vencido el plazo que fije la ley especial para la realización de la obra, no se hubiere dado al bien el destino que motivó aquella.

**Artículo 31.-** La interpelación judicial previa, se hará bajo apercibimiento de promover la acción de retroceción si dentro del plazo de un año, a contar desde la notificación, no se diere al bien el destino previsto.

**Artículo 32.-** La acción de retroceción solo podrá intentarse dentro de los cinco años desde la toma de posesión por el expropiante.

**Artículo 33.-** Para retrotraer el bien, el expropiado deberá devolver, sin intereses, la suma recibida, menos el importe correspondiente a las mejoras utilizables introducidas por el expropiante. La devolución de la suma recibida debe efectuarse dentro de los tres meses de reconocido el derecho de retrocesión; caducando definitivamente ese derecho si venciera el plazo sin cumplirse la obligación.

**Artículo 34.-** La retroceción será sustanciada por el procedimiento de las excepciones dilatorias.

**Artículo 35.-** La demanda deberá deducirse ante el mismo juez que intervino en el juicio de expropiación y si éste no hubiere existido por haberse llegado a acuerdo en el procedimiento extrajudicial, ante el juez de la

SISTEMA ARGENTINO
DE INFORMACIÓN JURÍDICA

jurisdicción correspondiente.

## CAPITULO VII DISPOSICIONES COMPLEMENTARIAS Y TRANSITORIAS

**Artículo 36.-** Otorgada la posesión judicial de un bien expropiado, quedaran resueltos los arrendamientos, acordándose a los locatarios u ocupantes un plazo de treinta días para el desalojo. Dicho plazo podrá ser prorrogado por el expropiante. La acción emergente de cualquier perjuicio irrogado a terceros por contratos de locación u otros celebrados con el expropiado, se ventilará en juicio separado por la vía que corresponda.

**Artículo 37.-** Se reputará abandonada la expropiación - salvo disposiciones expresas de ley especial - si el sujeto expropiante no promueve el juicio dentro de los dos años de sancionada la ley que la autorice, cuando se trata de llevarla a cabo sobre bienes individualmente determinados; de cinco años cuando se trate de bienes comprendidos dentro de una zona determinada; y de diez años cuando se trata de bienes comprendidos en una enumeración genérica. La norma de este artículo no regirá para los casos en que las municipalidades estén autorizadas a expropiar porciones de inmuebles, por rectificaciones o ensanches, en virtud de las ordenanzas respectivas.

**Artículo 38.-** Todo aquel que por cualquier titulo resistiere de hecho los estudios u operaciones técnicas dispuestos en virtud de la presente ley, incurrirá en multa de cien a cien mil pesos moneda nacional, que será aplicada por el juez previa información sumarísima del hecho. La multa se ejecutará por vía de apremio. Si el hecho fuera cometido por personal dependiente de otra en relación laboral, el juez podrá aplicar la multa al principal.

**Artículo 39.-** El Poder Ejecutivo reglamentará la organización del Tribunal de Tasaciones y sus normas de funcionamiento.

**Artículo 40.-** Comuníquese al Poder Ejecutivo, dése a publicidad y archívese.

**Firmantes**

JUAN HIRAM CROWE - ALBERTO JUAN BARK

**Expropriation Regime**

LAW N. 21
RIO GALLEGOS, September 10, 1958
Undated,
In force, of general scope
SAIJ ID: LPZ0000021

**ISSUE**

Administrative law, civil law, declaration of public utility, transfer of ownership, registration of real estate property, registration

The Legislative Branch of the Province of Santa Cruz Sanctions with the Force of: LAW

**CHAPTER I QUALIFICATIONS, EXPROPIATING SUBJECT, OBJECT OF EXPROPIATION**

**Article 1.-** The expropriation of all property, not being property of the Nation, and being within the provincial limits, is appropriate or necessary for reasons of public utility. The concept of public utility includes all cases in which the satisfaction of a requirement determined by social improvement is pursued.-

**Article 2.-** The declaration of public utility will be made by Law and with reference to specific assets. When it is sanctioned in a generic manner, the Executive Branch will individualize the assets required for the purposes of the Law with reference to descriptive plans, technical reports or other elements sufficient for their determination. In the case of Art. 73 of the Provincial Constitution, the individualization of the assets will be the responsibility of the Agrarian Council.-

**Article 3.-** The expropriation will be carried out by the province or the Municipalities but the rights and obligations of the expropriating subject may not be replaced by concessionaires of public works or services.-

**Article 4.-** Expropriation may have as its object all assets regardless of their legal nature, whether or not they are in commerce, whether they are things or not, whether they belong to the municipal or private domain, even when they are affected by a public service or are only concerned of the subsoil regardless of the surface property, and whether they are necessary or whether their occupation is convenient for its purpose.

**Article 5.-** The expropriation can be ordered and carried out on an asset adjacent or not to a public work, linked or not to it, in order to carry out the plans provided for in the law that ordered the expropriation.-

**CHAPTER II INDEMNIFICATION AND DIRECT PURCHASE**

**Article 6.-** Compensation will only include the objective value of the property and damages that are a direct or immediate consequence of the expropriation. Personal circumstances, emotional values or hypothetical earnings will not be taken into account. No lost profits will be paid. In matters of real estate, only the panoramic value or value derived from historical facts will be considered when that value is directly related to the type of exploitation to which they are subjected.-

**Article 7.-** Improvements made to the property after the act that declared it subject to expropriation will not be compensated, unless they are necessary improvements. The acts carried out by the owner that imply the constitution of a right over the property and that are subsequent to the law that declared it subject to expropriation will not be valid with respect to the expropriator.

**Article 8.-** The value of the assets that must be estimated by what they would have had if their public utility had not been declared or if the work had not been executed.-

**Article 9.-** The expropriator may acquire an asset declared of public utility, directly from the owner or rights holder within the maximum value that, as total compensation, is estimated by the competent technical offices. If it concerns real estate, the agreed compensation will not exceed the amount of the valuation for the purposes of land tax, increased by 30%. When the real estate tax does not include the improvements, these will be paid separately, estimating them in the manner indicated in the first part of this article.

**Article 10.-** Direct purchases of real estate will not be made except on the basis of perfect titles and prior verification of the validity and conditions of the domain, for which a report from the Property Registry will be required.

## CHAPTER III PROCEDURES

**Article 11.-** If there is no agreement, the difference will be decided by the Judge of the place of the property, in accordance with the procedure established in the following articles.

**Article 12.-** The expropriator will record before the judge the amount of the compensation offered, in accordance with Art. 9, and will obtain immediate possession of the expropriated property. The litigation will be recorded in the Property Registry or in the corresponding one according to the nature of the property if it is movable. From the annotation, the asset will be unavailable.

**Article 13.-** In the same order in which possession of the property is ordered, the judge will order that the owner or rights holder be notified of the consignment. If your identity or address is unknown, notification will be carried out through edicts that will be published in the Official Gazette of the province for one time and in a newspaper of the Court seat for five days.

**Article 14.-** Within a peremptory period of fifteen days, the expropriated person must appear in court, stating unequivocally whether he accepts or rejects the amount of compensation and, if applicable, what amount he requests and the name and address of the representative before the Appraisal Court.

**Article 15.-** Once the term expires or the compensation is accepted before the expiration, the judge will declare the property transferred, with the car and its antecedents serving as sufficient transfer title that must be registered in the Property Registry or the corresponding one according to the nature of the property.

**Article 16.-** Once the representative is appointed or the term expires, the judge will submit the file to the Appraisal Court, which will notify the representative of the expropriated person at the reported address of the entry of the file. If said representative does not appear to intervene within ten days, the Appraisals Court will rule without his assistance.

**Article 17.-** Once the file has been returned with an opinion from the Appraisals Court, the judge will set a hearing to hear in a verbal trial, the objections thereto and allegations of the parties.

**Article 18.-** When the property is not real estate, instead of what is established by arts. 15 and 17, the procedure will be as follows: in the order in which the property is declared transferred, the judge will schedule a hearing and appoint a single expert. At said hearing you will hear the expert's opinion and the parties' allegations regarding the amount of compensation.

**Article 19.-** After the hearings of arts. 17 and 18, no further debate will be admitted and the trial will enter the office and a sentence must be issued within thirty days.

**Article 20.-** The parties will have rights to the resources permitted by the procedural laws of the province. All incidents will be resolved summarily verbally and in action.

**Article 21.-** No action by third parties may prevent the expropriation or its effects. The rights of the claimant will be considered transferred from the property at the amount of the compensation, leaving it free of all encumbrances.

**Article 22.-** At any stage of the trial, the expropriated person may request the delivery of the amount consigned, without this meaning accepting the amount of compensation.

**Article 23.-** The costs of the trial will be borne by the expropriator when the compensation exceeds that offered, plus half of the difference with the amount claimed; They will be satisfied in the order caused, when it exceeds that amount or even exceeding it the plaintiff has not answered the demand or has not expressed the amount sought; and will be borne by the expropriated party when the compensation is set at the same amount as that offered.

## CHAPTER IV APPRAISAL COURT

**Article 24.-** The Appraisal Court will be constituted as follows: 1 - The representative of the Bank of the Province; 2 - The Director of Studies and Projects, dependent on the Undersecretary

of Public Works and Services; 3 - The Government Advisor; 4 - The Director of Revenue; 5 - The representative of the expropriated person.

**Article 25.-** To set the amount of compensation, the Appraisal Court will take into account the following elements of judgment, without excluding other contributors: 1) Price paid in the last transfer of ownership. 2) Valuation assigned for the payment of taxes. 3) Values of neighboring properties and prices paid for them in the last three years. 4) Value registered in banks. 5) Value of your productivity.

## CHAPTER V OF REVERSE EXPROPIATION

**Article 26.-** The owner of a property may file an expropriation suit in the following cases: 1 - When the public utility of the property is qualified or included within a generic declaration of public utility, the expropriating subject has taken possession of it without intervention. judicial or without express consent of the owner, 2 - When possession has been taken with the consent of the owner and the expropriation trial has not been filed within the period established by mutual agreement, or within six months following the taking of possession, In the absence of an agreed period, 3 - If it involves the partial expropriation of some property and the part that remains unexpropriated is inadequate for national use or exploitation, the expropriated party may demand the expropriation of the entire property. In urban lands, those that, due to expropriation, remain with dimensions or surfaces smaller than what is authorized by the respective ordinances, will be considered inadequate surpluses.

**Article 27.-** The plaintiff must prove, or offer to do so, that he initiated a prior administrative claim, to be compensated, without success. It will be considered that you have made a claim without success when more than ninety days have passed since the claim was made without a resolution having been issued.

**Article 28.-** If the defendant opposes the expropriation, the judge will previously resolve that article. The sentence will be appealable within the fifth day.

**Article 29.-** If the defendant does not oppose the expropriation, or the article on opposition is ruled against, the procedures established for the direct expropriation trial will be followed.

## CHAPTER VI RETROCESSION ACTION

**Article 30.-** The expropriated owner and his successors on a universal basis, may, prior to the judicial interpellation referred to in the following article, return the property in the following cases: 1) When the expropriator gives the property a destination other than that established for carry out the expropriation; unless the change of destination is provided by Law. 2) When after two years after the expropriation has been completed or the period established by the special law for the execution of the work has expired, the property has not been given the destination that motivated it.

**Article 31.-** Prior judicial interpellation will be made under warning of promoting the retrocession action if within a period of one year, counting from the notification, the property is not given the intended destination.

**Article 32.-** The retrocession action may only be attempted within five years from the taking of possession by the expropriator.

**Article 33.-** To return the property, the expropriated party must return, without interest, the sum received, less the amount corresponding to the usable improvements introduced by the expropriator. The return of the amount received must be made within three months of recognizing the right of retrocession; This right will definitively expire if the term expires without fulfilling the obligation.

**Article 34.-** The retrocession will be substantiated by the procedure of dilatory exceptions.

**Article 35.-** The claim must be filed before the same judge who intervened in the expropriation trial and if this had not existed because an agreement had been reached in the extrajudicial procedure, before the judge of the corresponding jurisdiction.

## CHAPTER VII COMPLEMENTARY AND TRANSITIONAL PROVISIONS

**Article 36.-** Once judicial possession of an expropriated property has been granted, the leases will be resolved, granting the tenants or occupants a period of thirty days for eviction. This period may be extended by the expropriator. The action arising from any damage caused to third parties by lease contracts or others entered into with the expropriated party, will be heard in a separate trial through the appropriate means.

**Article 37.-** The expropriation will be considered abandoned - except for express provisions of special law - if the expropriating subject does not promote the trial within two years of the passing of the law that authorizes it, when it involves carrying it out on individually determined assets; five years in the case of assets included within a specific area; and ten years when it comes to goods included in a generic list. The rule of this article will not apply to cases in which municipalities are authorized to expropriate portions of real estate, for rectifications or expansions, by virtue of the respective ordinances.

**Article 38.-** Anyone who, for any reason, actually resists the studies or technical operations provided under this law, will incur a fine of one hundred to one hundred thousand pesos in national currency, which will be applied by the judge after summary information of the fact. The fine will be enforced by means of enforcement. If the act was committed by personnel dependent on another in an employment relationship, the judge may apply the fine to the principal.

**Article 39.-** The Executive Branch will regulate the organization of the Appraisal Court and its operating rules.

**Article 40.-** Communicate it to the Executive Branch, publish it and archive it.

**Signatories**
JUAN HIRAM CROWE - ALBERTO JUAN BARK

EXHIBIT 11



**PODER LEGISLATIVO**
Provincia de Tierra del Fuego, Antártida e Islas del Atlántico Sur



**LEY Nº 421**

**LEY DE EXPROPIACION.**

Sanción: 17 de Noviembre de 1998.
Promulgación: 01/12/98. D.P. Nº 2440.
Publicación: B.O.P. 09/12/98.

## TITULO I
## CALIFICACION DE UTILIDAD PUBLICA

**Artículo 1º.-** La utilidad pública que debe servir de fundamento legal a la expropiación, comprende todos los casos en que se procure la satisfacción del bien común, sea éste de naturaleza material o espiritual.

## TITULO II
## SUJETOS DE LA RELACION EXPROPIATORIA

**Artículo 2º.-** La expropiación puede ser efectuada:
a) Por el Estado Provincial: la expropiación no podrá recaer sino sobre bienes ubicados dentro de la jurisdicción provincial;
b) por los municipios: exclusivamente sobre bienes ubicados dentro de sus respectivas jurisdicciones;
c) por las entidades públicas de carácter autárquico, provinciales o municipales, en tanto estén expresamente facultadas para ello por sus respectivas leyes orgánicas o por leyes especiales; y
d) los particulares, sean personas de existencia visible o jurídica, podrán actuar como expropiantes, cuando estuvieren autorizados por la ley o por acto administrativo fundado en ley.

**Artículo 3º.-** La acción expropiatoria podrá promoverse contra cualquier clase de personas, de carácter público o privado.

**Artículo 4º.-** Las expropiaciones deberán practicarse mediante ley especial que determine explícitamente el alcance de cada caso y la calificación de utilidad pública.

## TITULO III
## OBJETO EXPROPIABLE

**Artículo 5º.-** Pueden ser objeto de expropiación todos los bienes convenientes o necesarios para la satisfacción de la utilidad pública, cualquiera sea su naturaleza jurídica, pertenezcan al dominio público o al dominio privado, sean cosas o no.

**Artículo 6º.-** La expropiación se referirá especialmente a bienes determinados. También podrá referirse genéricamente a los bienes que sean necesarios para la construcción de una obra o la ejecución de un plan o proyecto; en tal caso, la declaración de utilidad pública se hará en base a informes técnicos referidos a planos descriptivos, análisis de costos u otros elementos que fundamenten los planes y programas a concretarse mediante expropiación de los bienes que se trate, debiendo surgir la directa vinculación o conexión de los bienes a expropiar con la obra, plan o proyecto a realizar. En caso de que la declaración genérica de utilidad pública se refiriese a inmuebles, deberán determinarse, además, las




**PODER LEGISLATIVO**
**Provincia de Tierra del Fuego, Antártida e Islas del Atlántico Sur**

distintas zonas, de modo que a falta de individualización de cada propiedad queden especificadas las áreas afectadas por la expresada declaración.

**Artículo 7º.-** Es susceptible de expropiación el subsuelo, con independencia de la propiedad del suelo. Igualmente son susceptibles de expropiación los inmuebles sometidos al régimen de propiedad horizontal.

**Artículo 8º.-** La declaración de utilidad pública podrá comprender no solamente los bienes que sean necesarios para lograr tal finalidad, sino también todos aquellos cuya razonable utilización, en base a planos y proyectos específicos, convenga material o financieramente a ese efecto de modo que se justifique que las ventajas estimadas serán utilizadas concretamente en la ejecución del programa que motivó la declaración de utilidad pública.

**Artículo 9º.-** Si se tratare de la expropiación parcial de un inmueble y la parte que quedare sin expropiar fuera inadecuada para un uso o explotación racional, el expropiado podrá exigir la expropiación de la totalidad del inmueble.

En los terrenos urbanos se considerarán sobrantes inadecuados los que por causa de la expropiación quedaren con frente, fondo o superficies inferiores a lo autorizado para edificar por las ordenanzas o usos locales.

Tratándose de inmuebles rurales, en cada caso serán determinadas las superficies inadecuadas, teniendo en cuenta la explotación efectuada por el expropiado.

En el supuesto de avenimiento, las partes, de común acuerdo, determinarán la superficie inadecuada a efectos de incluirla en la transferencia de dominio; en el juicio de expropiación, dicha superficie será establecida por el Juez.

**Artículo 10.-** Cuando la expropiación de un inmueble incida sobre otros con los que constituye una unidad orgánica, el o los propietarios de estos últimos estarán habilitados para accionar por expropiación irregular si se afectare su estructura arquitectónica, su aptitud funcional o de algún modo resultare lesionado el derecho de propiedad en los términos del artículo 52, incisos b) y c).

# TITULO IV
# LA INDEMNIZACION

**Artículo 11.-** La indemnización sólo comprenderá el valor objetivo del bien y los daños que sean una consecuencia directa e inmediata de la expropiación. No se tomarán en cuenta circunstancias de carácter personal, valores afectivos, ganancias hipotéticas, ni el mayor valor que pueda conferir al bien la obra a ejecutarse. No se pagará lucro cesante. Integrará la indemnización el importe que correspondiere por los respectivos intereses.

**Artículo 12.-** No se indemnizarán las mejoras realizadas en el bien con posterioridad al acto que lo declaró afectado a expropiación, salvo las mejoras necesarias.

**Artículo 13.-** La indemnización se pagará en dinero en efectivo, salvo conformidad del expropiado para que dicho pago se efectúe en otra especie de valor.

**Artículo 14.-** Declarada la utilidad pública de un bien, el expropiante podrá adquirirlo directamente del propietario dentro de los valores máximos que estimen a ese efecto el Tribunal de Tasaciones de la



**PODER LEGISLATIVO**
Provincia de Tierra del Fuego, Antártida e Islas del Atlántico Sur



Provincia para los bienes inmuebles, o las oficinas técnicas competentes que en cada caso se designarán para los bienes que no sean inmuebles.

**Artículo 15.-** Si el titular del bien a expropiar fuere incapaz o tuviere algún impedimento para disponer de sus bienes, la autoridad judicial podrá autorizar al representante del incapaz o impedido para la transferencia directa del bien al expropiante.

**Artículo 16.-** No habiendo avenimiento respecto del valor de los bienes inmuebles, la cuestión será decidida por el Juez quien, respecto a la indemnización prevista en el artículo 11 y sin perjuicio de otros medios probatorios requerirá dictamen del Tribunal de Tasaciones de la Provincia, el que deberá pronunciarse dentro de los noventa (90) días.

**Artículo 17.-** No se considerarán válidos, respecto al expropiante, los contratos celebrados por el propietario con posterioridad a la vigencia de la Ley que declaró afectado el bien a expropiación y que impliquen la constitución de algún derecho relativo al bien.

**Artículo 18.-** No habiendo avenimiento acerca del valor de los bienes que no sean inmuebles, sin perjuicio de la intervención de las oficinas técnicas a que alude el artículo 14, deberá sustanciarse prueba pericial. Cada parte designará un perito y el Juez un tercero, a no ser que los interesados se pusieren de acuerdo en el nombramiento de uno solo.

## TITULO V
## DEL PROCEDIMIENTO JUDICIAL

**Artículo 19.-** No habiendo avenimiento, el expropiante deberá promover la acción judicial de expropiación.

**Artículo 20.-** El proceso tramitará por juicio sumario conforme lo establecido en el Libro II, Capítulo I del Código Procesal Civil, Comercial, Laboral, Rural y Minero de la Provincia de Tierra del Fuego, y no estará sujeto al fuero de atracción de los juicios universales.

El Juez deberá tener presente lo dispuesto en los artículos 16 y 18 de la presente Ley.

El cargo de las costas del juicio, así como su monto y el de los honorarios profesionales, se regirán por las normas del Código Procesal Civil, Comercial, Laboral, Rural y Minero de la Provincia de Tierra del Fuego, y por las respectivas leyes de aranceles.

Las partes podrán interponer todos los recursos admitidos por el artículo 432 del mencionado Código.

**Artículo 21.-** La sentencia fijará la indemnización teniendo en cuenta el valor del bien al tiempo de la desposesión.

Para establecer el pago de los intereses se liquidarán a la tasa activa para las operaciones de descuentos de documentos del Banco de la Provincia de Tierra del Fuego, desde el momento de la desposesión hasta el del pago sobre el total de la indemnización o sobre la diferencia, según corresponda.

Los rubros que compongan la indemnización no estarán sujetos al pago de impuesto o gravamen alguno.



**PODER LEGISLATIVO**
Provincia de Tierra del Fuego, Antártida e Islas del Atlántico Sur



**Artículo 22.-** Tratándose de inmuebles, incluso por accesión, será competente el Juez provincial del lugar donde se encuentre el bien a expropiar con jurisdicción en lo civil y comercial. Tratándose de bienes que no sean inmuebles, será competente el Juez del lugar en que se encuentre o el del domicilio del demandado, a elección del actor.

**Artículo 23.-** Si se tratare de bienes inmuebles el expropiante deberá consignar ante el Juez respectivo el importe de la valuación que al efecto hubiere practicado el Tribunal de Tasaciones de la Provincia. Efectuada dicha consignación el Juez le otorgará la posesión del bien.

**Artículo 24.-** El expropiado podrá remitir la suma depositada previa justificación de su dominio, que el bien no reconoce hipoteca u otro derecho real y que no esté embargado ni pesan sobre él restricciones a la libre disposición de sus bienes.

**Artículo 25.-** La litis se anotará en el Registro de la Propiedad Inmueble, siendo desde ese momento indisponible e inembargable el bien.

**Artículo 26.-** Si la expropiación versare sobre bienes que no sean inmuebles, el expropiante obtendrá la posesión inmediata de ellos, previa consignación judicial del valor que se determine por las oficinas técnicas mencionadas en el artículo 14.

**Artículo 27.-** Otorgada la posesión judicial del bien, quedarán resueltos los arrendamientos, acordándose a los ocupantes un plazo de treinta (30) días para su desalojo, que el expropiante podrá prorrogar cuando a su juicio existan justas razones que así lo aconsejen.

**Artículo 28.-** La acción emergente de cualquier perjuicio que se prorrogase a terceros por contratos de locación u otros que tuvieren celebrados con el propietario, se ventilará en juicio por separado.

**Artículo 29.-** Ninguna acción de terceros podrá impedir la expropiación o sus efectos. Los derechos del reclamante se considerarán transferidos de la cosa a su precio o a la indemnización, quedando aquella, libre de todo gravamen.

**Artículo 30.-** El expropiante podrá desistir de la acción promovida en tanto la expropiación no haya quedado perfeccionada. Las costas serán a su cargo.
    Se entenderá que la expropiación ha quedado perfeccionada cuando se ha operado la transferencia del dominio al expropiante mediante sentencia firme, toma de posesión y pago de la indemnización.

**Artículo 31.-** Es improcedente la caducidad de la instancia cuando en el juicio el expropiante haya tomado posesión del bien y el expropiado sólo cuestionare el monto de la indemnización.

**Artículo 32.-** La acción del expropiado, para exigir el pago de la indemnización, prescribe a los cinco (5) años, computados desde que el monto respectivo quede determinado con carácter firme y definitivo.

**Artículo 33.-** Para la transferencia del dominio de inmuebles al expropiante, no se requerirá escritura pública otorgada ante escribano, siendo suficiente al efecto la inscripción en el respectivo Registro de la Propiedad Inmueble del decreto que apruebe el avenimiento o, en su caso, de la sentencia judicial que haga lugar a la expropiación.



**PODER LEGISLATIVO**
Provincia de Tierra del Fuego, Antártida e Islas del Atlántico Sur



# TITULO VI
## PLAZO DE LA EXPROPIACION

**Artículo 34.-** Se tendrá por abandonada la expropiación -salvo disposición expresa de la ley especial- si el expropiante no promueve el juicio dentro de los dos (2) años de vigencia de la ley que lo autorice, cuando se trate de llevarla a cabo sobre bienes individualmente determinados; de cinco (5) años cuando se trate de bienes comprendidos dentro de una zona determinada; y de diez (10) años cuando se trate de bienes comprendidos en una enumeración genérica.

No regirá la disposición precedente en los casos en que las leyes orgánicas de las municipalidades autoricen a estas a expropiar la porción de los inmuebles afectados, a rectificaciones o ensanches de calles y ochavas, en virtud de las ordenanzas respectivas.

**Artículo 35.-** Las disposiciones contenidas en el primer párrafo del artículo anterior, no serán aplicables en los casos de reserva de inmuebles para obras o planes de ejecución diferida calificados por ley formal.

En tal supuesto se aplicarán las siguientes normas:
a) El expropiante, luego de declarar que se trata de una expropiación diferida, obtendrá la tasación del bien afectado con intervención del Tribunal de Tasaciones de la Provincia de Tierra del Fuego y notificará al propietario el importe resultante;
b) si el valor de la tasación fuere aceptado por el propietario, cualquiera de las partes podrá pedir su homologación judicial y una vez homologado dicho valor será considerado como firme para ambas partes, pudiendo reajustarse sólo de acuerdo con el procedimiento previsto en el inciso d) del presente artículo;
c) si el propietario no aceptare el valor de tasación ofrecido, el expropiante deberá solicitar judicialmente la fijación del valor del bien, de conformidad con las normas de los artículos 11 y 12;
d) la indemnización será reajustada en la forma prevista en el artículo 11;
e) si durante la tramitación del caso y antes de que se dicte la sentencia definitiva el expropiante necesitare disponer en forma inmediata del inmueble, regirá lo dispuesto en los artículos 23, 24 y 25; y
f) los inmuebles aceptados podrán ser transferidos libremente a terceros a condición de que el adquirente conozca la afectación y consienta el valor fijado, si este estuviere determinado. Con tal finalidad una vez firme dicho valor, será comunicado de oficio por el ente expropiante o en su caso por el juzgado interviniente al Registro de la Propiedad Inmueble. Los certificados que expidan los registros en relación con el inmueble afectado deberán hacer constar ese valor firme. En las escrituras traslativas de dominio de los inmuebles comprendidos en este artículo, los escribanos que las autoricen deberán dejar expresa constancia del conocimiento por el adquirente de la afectación, o de su consentimiento del valor firme, según corresponda.

# TITULO VII
## DE LA RETROCESION

**Artículo 36.-** Procede la acción de retrocesión cuando al bien expropiado se le diere un destino diferente al previsto en la Ley Expropiatoria, o cuando no se le diere destino alguno en un lapso de dos (2) años, computados desde que la expropiación quedó perfeccionada en la forma prevista en el artículo 30.



**PODER LEGISLATIVO**
Provincia de Tierra del Fuego, Antártida e Islas del Atlántico Sur



**Artículo 37.-** Se entenderá que no hubo cambio de destino cuando el acordado al bien mantenga conexidad, interdependencia o correlación con el específicamente previsto en la Ley.

Tampoco se considerará que medió cambio de destino si a una parte del bien expropiado se le asignare uno complementario o que tiende a integrar y facilitar el previsto por la Ley.

**Artículo 38.-** La retrocesión también procede en los supuestos en que el bien hubiere salido del patrimonio de su titular por el procedimiento de avenimiento.

**Artículo 39.-** La retrocesión no sólo podrá lograrse por acción judicial, sino también mediante avenimiento o gestión administrativa.

**Artículo 40.-** Cuando al bien no se le hubiere dado destino alguno dentro del plazo mencionado en el artículo 36, a efectos de la acción de retrocesión el expropiado deberá intimar fehacientemente al expropiante para que le asigne al bien el destino que motivó la expropiación, transcurridos seis (6) meses desde esta intimación sin que el expropiante le asignara al bien ese destino, o sin que hubiere iniciado los respectivos trabajos, los que deberá mantener conforme a los planes de obra aprobados, la acción de retrocesión quedará expedita, sin necesidad de reclamo administrativo previo.

Si al bien se le hubiere dado un destino diferente al previsto en la Ley Expropiatoria, deberá formularse el reclamo administrativo previo.

**Artículo 41.-** Si el bien expropiado hubiere cumplido la finalidad que motivó la expropiación, y por esa circunstancia quedare desvinculado de aquella finalidad, la retrocesión será improcedente.

**Artículo 42.-** Es admisible la acción de retrocesión ejercida parcialmente sobre una parte del bien expropiado.

**Artículo 43.-** Para que la retrocesión sea procedente se requiere:
a) Que la expropiación que la motive haya quedado perfeccionada en la forma prevista en el artículo 30;
b) que se dé alguno de los supuestos que prevé el artículo 36 y en su caso, cumpliese lo dispuesto en el artículo 40; y
c) que el accionante, dentro del plazo que fije la sentencia, reintegre al expropiante lo que percibió de éste en concepto de precio o de indemnización.

Si el bien hubiere disminuido el valor por actos del expropiante, esa disminución será deducida de lo que debe ser reintegrado por el accionante. Si el bien hubiere aumentado de valor por mejoras necesarias o útiles introducidas por el expropiante, el expropiado deberá reintegrar el valor de las mismas. Si el bien hubiere aumentado de valor por causas naturales, el reintegro de dicho valor no será exigido al accionante. Si el bien, por causas naturales hubiere disminuido de valor, el monto de esa disminución no será deducido del valor a reintegrar por el accionante.

**Artículo 44.-** Cuando la expropiación se hubiere llevado a cabo mediante avenimiento, la acción de retrocesión deberá promoverse ante el Juez que debería haber entendido en el caso de que hubiere existido un juicio de expropiación.

**Artículo 45.-** Si la expropiación se hubiere efectuado mediante juicio, la demanda de retrocesión debe radicarse ante el mismo juzgado que intervino en el juicio de expropiación.



**PODER LEGISLATIVO**
Provincia de Tierra del Fuego, Antártida e Islas del Atlántico Sur



**Artículo 46.-** La acción de retrocesión corresponde únicamente al propietario expropiado y a sus sucesores universales.

**Artículo 47.-** La retrocesión podrá ser demandada contra el expropiante, o contra éste y los terceros a quienes hubiera sido transferido el bien.

**Artículo 48.-** El procedimiento aplicable en el juicio de retrocesión, y la naturaleza de la litis, serán los establecidos para el juicio de expropiación.

**Artículo 49.-** Si en la sentencia se hiciere lugar a la acción, deberá establecerse la suma que debe reintegrar al accionante por retrocesión y el plazo en que ha de hacerlo; asimismo se establecerá el plazo en que el expropiante debe devolver el bien expropiado.

**Artículo 50.-** La devolución del bien expropiado deberá hacerse libre de todo ocupante, cargas, gravámenes y servidumbre que hubiere tenido lugar después de la desposesión.

**Artículo 51.-** La acción por retrocesión prescribe a los tres (3) años, computados desde que, habiendo quedado perfeccionada la expropiación en la forma prevista en el artículo 30, al bien se le dio un destino ajeno al que la determinó, o desde que no habiéndosele dado al bien destino alguno, hubieren transcurrido los plazos previstos en los artículos 36 y 40.

# TITULO VIII
# DE LA EXPROPIACION IRREGULAR

**Artículo 52.-** Procede la acción de expropiación irregular en los siguientes casos:
a) Cuando existiendo una ley que declara de utilidad pública un bien, el Estado Provincial lo toma sin haber cumplido con el pago de la respectiva indemnización;
b) cuando, con motivo de la ley de declaración de utilidad pública, de hecho una cosa mueble o inmueble resulte indisponible por evidente dificultad o impedimento para disponer de ella en condiciones normales; y
c) cuando el Estado Provincial imponga al derecho del titular de un bien o cosa una indebida restricción o limitación que importe una lesión a su derecho de propiedad.

**Artículo 53.-** No corresponde la acción de expropiación irregular cuando el Estado Provincial paraliza o no activa los procedimientos después de haber obtenido la posesión judicial del bien.

**Artículo 54.-** El que accione por expropiación irregular está exento de la reclamación administrativa.

**Artículo 55.-** En el juicio de expropiación irregular los valores indemnizables serán fijados en la misma forma prevista para el juicio de expropiación regular, contemplada en el artículo 11 y siguientes de la presente Ley.

**Artículo 56.-** Las normas del procedimiento judicial establecidas para la expropiación regular, rigen también para la expropiación irregular, en cuanto fueren aplicables.



**PODER LEGISLATIVO**
Provincia de Tierra del Fuego, Antártida e Islas del Atlántico Sur



**Artículo 57.-** La acción de expropiación irregular prescribe a los cinco (5) años computados desde la fecha en que tuvieron lugar los actos o comportamientos del Estado Provincial que tornan viable la referida acción.

## TITULO IX
## DE LA OCUPACION TEMPORANEA

**Artículo 58.-** Cuando por razones de utilidad pública fuere necesario el uso transitorio de un bien o cosa determinados, mueble o inmueble, o de una universalidad determinada de ellos, podrá recurrirse a la ocupación temporánea.

**Artículo 59.-** La ocupación temporánea anormal, puede responder a una necesidad anormal, urgente, imperiosa o súbita, o a una necesidad normal no inminente.

**Artículo 60.-** La ocupación temporánea anormal, puede ser dispuesta directamente por la autoridad administrativa, y no dará lugar a indemnización alguna, salvo la reparación de los daños o deterioros que se causaren a la cosa o el pago de daños y perjuicios debidos por el uso posterior de la cosa en menesteres ajenos a los que estrictamente determinaron su ocupación.

**Artículo 61.-** Ninguna ocupación temporánea anormal tendrá mayor duración que el lapso estrictamente necesario para satisfacer la respectiva necesidad.

**Artículo 62.-** La ocupación temporánea por razones normales, previa declaración legal de utilidad pública, podrá establecerse por avenimiento; de lo contrario deberá ser dispuesta por la autoridad judicial, a requerimiento de la Administración Pública.

**Artículo 63.-** La ocupación temporánea normal apareja indemnización, siendo aplicables en subsidio las reglas vigentes en materia de expropiación.

   La indemnización a que se refiere el presente artículo comprenderá el valor del uso y los daños y perjuicios ocasionados al bien o cosa ocupados, así como también el valor de los materiales que hubiesen debido extraerse, necesaria e indispensablemente, con motivo de la ocupación.

**Artículo 64.-** El bien ocupado no podrá tener otro destino que el que motivó su ocupación.

**Artículo 65.-** Ninguna ocupación temporánea normal puede durar más de dos (2) años; vencido este lapso, el propietario intimará fehacientemente la devolución del bien. Transcurridos treinta (30) días desde dicha intimación sin que el bien hubiere sido devuelto, el propietario podrá exigir la expropiación del mismo, promoviendo una acción de expropiación irregular.

**Artículo 66.-** El procedimiento judicial establecido para el juicio de expropiación es aplicable en lo pertinente al juicio de ocupación temporánea normal.

**Artículo 67.-** Sin conformidad del propietario, el ocupante temporáneo de un bien o cosa no puede alterar la sustancia del mismo ni extraer o separar de este elementos que lo integren, sin perjuicio del supuesto previsto en el artículo 63, última parte.



**PODER LEGISLATIVO**
Provincia de Tierra del Fuego, Antártida e Islas del Atlántico Sur



**Artículo 68.-** Si la ocupación temporánea afectare a terceros, los derechos de éstos se harán valer sobre el importe de la indemnización.

**Artículo 69.-** Las cuestiones judiciales que promoviere el propietario del bien ocupado están exentas de reclamación administrativa previa.

**Artículo 70.-** La acción del propietario del bien ocupado para requerir su devolución prescribe a los cinco (5) años computados desde que el ocupante debió devolver el bien.

## TITULO X
## TRIBUNAL DE TASACIONES DE LA PROVINCIA

**Artículo 71.-** Créase, a los efectos de la presente Ley, el Tribunal de Tasaciones de la Provincia, el que funcionará como organismo del Poder Ejecutivo Provincial, con dependencia funcional del Ministerio de Economía, Obras y Servicios Públicos, y tendrá su sede en la ciudad de Ushuaia.

**Artículo 72.-** Serán funciones del Tribunal:
a) Tasar los inmuebles sujetos a expropiación y dictaminar acerca de su valor en los casos previstos en la presente Ley;
b) tasar los inmuebles del Gobierno Provincial, de sus entidades autárquicas y descentralizadas, de las municipalidades de Ushuaia, Río Grande y de la comuna de Tólhuin; y
c) practicar las demás tasaciones que le sean requeridas por otros organismos provinciales.

**Artículo 73.-** Serán atribuciones del Tribunal en pleno:
a) Producir los dictámenes mencionados en el artículo 16 de la presente Ley ;
b) establecer normas y métodos de tasación para su uso propio; y
c) dictar el reglamento interno y normas de procedimiento.

**Artículo 74.-** Serán atribuciones de las salas:
a) Proyectar y someter los dictámenes mencionados en el inciso a) del artículo 73 dentro de los plazos que, según las modalidades de cada caso, fije el reglamento interno; y
b) practicar y producir las demás tasaciones mencionadas en el artículo 72.

**Artículo 75.-** El Tribunal estará compuesto por seis (6) miembros designados por el Poder Ejecutivo Provincial que se distribuirán en salas y actuarán en la forma que establezca la reglamentación de la presente Ley.
En los casos del artículo 16 de la presente Ley, se integrará además con dos (2) miembros accidentales, uno (1) en representación del expropiante y otro del expropiado.
Todos los miembros del Tribunal deberán ser profesionales universitarios con título habilitante para la función a cumplir.
Todos los miembros del Tribunal ejercerán sus funciones ad-honórem.

**Artículo 76.-** Tres (3) miembros del Tribunal serán designados a propuesta de los organismos públicos que establezca la reglamentación y deberán contar con acuerdo de la Legislatura Provincial.
Durarán en sus funciones mientras dure su buena conducta y serán removidos por el Poder Ejecutivo Provincial.



**PODER LEGISLATIVO**
Provincia de Tierra del Fuego, Antártida e Islas del Atlántico Sur



La falta injustificada del plazo fijado en el artículo 16 de la presente Ley, importará mal desempeño en el cargo, si se produjere reiteradamente.

**Artículo 77.-** Los restantes tres (3) miembros serán designados a propuesta de las entidades profesionales que establezca la reglamentación.

Durarán tres (3) años en sus funciones y podrán ser nuevamente designados a petición de la misma entidad que los propusiera. Conservarán sus puestos y serán removidos en la misma forma establecida en el artículo 76.

**Artículo 78.-** Los miembros se reunirán cada vez que deban dar cumplimiento a las obligaciones establecidas en la presente Ley.

**Artículo 79.-** Los miembros del Tribunal mencionado, no investirán representación ni mandato de los organismos o entidades que los hayan propuesto.

**Artículo 80.-** Alcanzarán a los miembros del Tribunal mencionado en la presente Ley, y al representante del expropiado, en su caso, las incompatibilidades establecidas en las leyes y reglamentaciones aplicables a la Administración Pública Provincial. El representante del expropiado, al aceptar el cargo, declarará bajo juramento y por escrito no hallarse comprendido en las incompatibilidades mencionadas.

**Artículo 81.-** La recusación o excusación de los miembros del Tribunal, mencionados en los artículos 76 y 77, se regirá por lo dispuesto para esta materia en el Código Procesal Civil, Comercial, Laboral, Rural y Minero de esta Provincia.

Las recusaciones o excusaciones serán resueltas dentro de los diez (10) días por el Subsecretario de Obras y Servicios Públicos de la Provincia, previo dictamen obligatorio de la Asesoría Letrada de la Provincia, siendo la decisión de aquél irrecurrible, salvo en el caso del artículo 16 de la presente Ley, en que las partes podrán recurrirla dentro del plazo de cinco (5) días ante el Juez interviniente, cuya resolución será inapelable.

**Artículo 82.-** El Tribunal elegirá un Presidente de entre los miembros designados en el artículo 76 de la presente Ley, y un Vicepresidente primero y un Vicepresidente segundo de entre los miembros mencionados en el artículo 77 de la presente. Todos ellos durarán tres (3) años en sus funciones y podrán ser reelegidos luego de transcurrido un período.

La elección se hará por simple mayoría de los miembros presentes, debiendo estar formado el quórum reglamentario.

El Presidente tendrá doble voto en caso de empate.

La constitución y elección de las autoridades de las salas se hará en la forma que disponga la reglamentación.

**Artículo 83.-** En el cumplimiento de su cometido, el Tribunal o las salas podrán requerir informes escritos a los organismos públicos provinciales, municipales y a entidades vinculadas a los problemas técnicos sometidos a su consideración, quienes estarán obligados a suministrarlos.

**Artículo 84.-** El Tribunal contará con un organismo técnico administrativo compuesto por personal que le proveerá el Poder Ejecutivo Provincial que revista en la planta permanente del mismo.



**PODER LEGISLATIVO**
Provincia de Tierra del Fuego, Antártida e Islas del Atlántico Sur



**Artículo 85.-** El Tribunal funcionará con los recursos que le asigne el Poder Ejecutivo Provincial, el que podrá establecer una escala de aranceles a tales efectos.

**Artículo 86.-** La reglamentación establecerá la forma de integrar el Tribunal o sus salas, como asimismo en casos de recusación o excusación, impedimento o ausencias temporarias, cese en sus funciones, como también en caso de silencio de los organismos o entidades que deben proponer candidatos, o del expropiante que debe designar su representante.

Establecerá además, la forma de proceder en caso de que el expropiado no designe su representante.

## TITULO XI
## DISPOSICIONES COMPLEMENTARIAS

**Artículo 87.-** Todo aquél que a título de propietario, de simple poseedor, o a mérito de cualquier otro título, resistiere de hecho la ejecución de los estudios u operaciones técnicas que en virtud de la presente Ley fueren dispuestos por el Estado Provincial, se hará pasible de una multa de PESOS MIL ($1.000) a PESOS DIEZ MIL ($10.000) al arbitrio del Juez, quien procederá a su aplicación, previo informe sumarísimo del hecho, sin perjuicio de oír al imputado y resolver como correspondiere.

La multa se exigirá por vía ejecutiva.

**Artículo 88.-** La presente Ley deberá ser reglamentada por el Poder Ejecutivo Provincial, dentro del plazo de sesenta (60) días desde su publicación en el Boletín Oficial de la Provincia.

**Artículo 89.-** Comuníquese al Poder Ejecutivo Provincial.

LEGISLATIVE Authority
Provinces of Tierra del Fuego, Antárctica and South Atlantic Islands

**LAW No 421**
**EXPROPIATION LAW.**
Sanction: November 17, 1998. Promulgation: 12/01/98. D.P. No 2440. Publication: B.O.P. 12/09/98.

**TITLE I**
**PUBLIC UTILITY RATING**
**Article 1.-** The public utility that must serve as the legal basis for expropriation, includes all cases in which the satisfaction of the common good is sought, whether of a material or spiritual nature.

**TITLE II**
**SUBJECTS OF THE EXPROPIATORY RELATIONSHIP**
**Article 2.-** Expropriation can be carried out:
a) By the Provincial State: the expropriation may not fall except on assets located within the provincial jurisdiction;
b) by the municipalities: exclusively on assets located within their respective jurisdictions;
c) by autonomous, provincial or municipal public entities, as long as they are expressly empowered to do so by their respective organic laws or by special laws; and
d) individuals, whether persons of visible or legal existence, may act as expropriators, when authorized by law or by administrative act founded on law.

**Article 3.-** The expropriation action may be brought against any class of people, public or private.

**Article 4.-** Expropriations must be carried out through a special law that explicitly determines the scope of each case and the classification of public utility.

**TITLE III**
**EXPROPRIABLE OBJECT**

**Article 5.-** All assets convenient or necessary for the satisfaction of public utility may be subject to expropriation, regardless of their legal nature, whether they belong to the public domain or the private domain, whether they are things or not.

**Article 6.-** Expropriation will refer especially to specific assets. It may also refer generically to the goods that are necessary for the construction of a work or the execution of a plan or project; In such case, the declaration of public utility will be made based on technical reports referring to descriptive plans, cost analysis or other elements that support the plans and programs to be carried out through expropriation of the assets in question, and the direct link or connection of the assets to be expropriated with the work, plan or project to be carried out. In the event that the generic declaration of public utility refers to real estate, the different areas must also be

1

determined, so that in the absence of individualization of each property, the areas affected by the stated declaration are specified.

**Article 7.-** The subsoil is susceptible to expropriation, regardless of the ownership of the land. Likewise, properties subject to the horizontal property regime are susceptible to expropriation.

**Article 8.-** The declaration of public utility may include not only the goods that are necessary to achieve said purpose, but also all those whose reasonable use, based on specific plans and projects, is materially or financially appropriate for that purpose so that they are Justify that the estimated advantages will be used specifically in the execution of the program that motivated the declaration of public utility.

**Article 9.-** If it involves the partial expropriation of a property and the part that remains unexpropriated is inadequate for rational use or exploitation, the expropriated party may demand the expropriation of the entire property.
In urban lands, inadequate surpluses will be considered those that, due to the expropriation, have a front, back or surfaces that are less than what is authorized for building by local ordinances or uses.

In the case of rural properties, in each case the inadequate surfaces will be determined, taking into account the exploitation carried out by the expropriated party.

In the event of an agreement, the parties, by common agreement, will determine the inadequate surface area for the purposes of including it in the transfer of ownership; In the expropriation trial, said surface will be established by the Judge.

**Article 10.-** When the expropriation of a property affects others with which it constitutes an organic unit, the owner or owners of the latter will be authorized to take action for irregular expropriation if its architectural structure, its functional aptitude or in any way results. The right to property has been violated under the terms of article 52, paragraphs b) and c).

**TITLE IV**
**THE COMPENSATION**

**Article 11.-** Compensation will only include the objective value of the property and damages that are a direct and immediate consequence of the expropriation. Personal circumstances, emotional values, hypothetical profits, or the greatest value that the work to be executed may confer on the property will not be taken into account.

**Article 12.-** Improvements made to the property after the act that declared it subject to expropriation will not be compensated, except for necessary improvements.

**Article 13.-** The compensation will be paid in cash, unless the expropriated party agrees that said payment be made in another type of value.

2

**Article 14.-** Once the public utility of an asset has been declared, the expropriator may acquire it directly from the owner within the maximum values estimated for that purpose by the Appraisals Court of the Province for real estate, or the competent technical offices that in each case will be designated for non-real estate.

**Article 15.-** If the owner of the property to be expropriated is incapable or has any impediment to dispose of his property, the judicial authority may authorize the representative of the incapable or disabled person to directly transfer the property to the expropriator.

**Article 16.-** If there is no agreement regarding the value of the real estate, the matter will be decided by the Judge who, with respect to the compensation provided for in article 11 and without prejudice to other means of proof, will require an opinion from the Appraisal Court of the Province, which must be pronounced within ninety (90) days.

**Article 17.-** Contracts entered into by the owner after the Law that declared the property affected by expropriation and that imply the constitution of some right relating to the property will not be considered valid with respect to the expropriator.

**Article 18.-** If there is no agreement regarding the value of non-real estate assets, without prejudice to the intervention of the technical offices referred to in article 14, expert evidence must be substantiated. Each party will appoint an expert and the Judge a third, unless the interested parties agree on the appointment of only one.

**TITLE V**
**OF THE JUDICIAL PROCEDURE**

**Article 19.-** If there is no agreement, the expropriator must promote judicial action for expropriation.

**Article 20.-** The process will be processed by summary proceeding in accordance with the provisions of Book II, Chapter I of the Civil, Commercial, Labor, Rural and Mining Procedural Code of the Province of Tierra del Fuego, and will not be subject to the jurisdiction of attraction of the universal judgments.
The Judge must keep in mind the provisions of articles 16 and 18 of this Law.
The cost of the trial, as well as its amount and professional fees, will be governed by the rules of the Civil, Commercial, Labor, Rural and Mining Procedural Code of the Province of Tierra del Fuego, and by the respective laws of duty.
The parties may file all appeals allowed by article 432 of the aforementioned Code.

**Article 21.-** The sentence will set the compensation taking into account the value of the property at the time of dispossession.

To establish the payment of interest, they will be settled at the active rate for document discount operations of the Bank of the Province of Tierra del Fuego, from the moment of dispossession until the moment of payment of the total compensation or the difference, as appropriate.
The items that make up the compensation will not be subject to the payment of any tax or lien.

**Article 22.-** In the case of real estate, even by accession, the provincial judge of the place where the property to be expropriated is located will be competent with civil and commercial jurisdiction. In the case of property that is not real estate, the Judge of the place where it is located or the domicile of the defendant will be competent, at the choice of the plaintiff.

**Article 23.-** If it involves real estate, the expropriator must record before the respective Judge the amount of the valuation carried out for this purpose by the Appraisal Court of the Province. Once said consignment has been made, the Judge will grant you possession of the property.

**Article 24.-** The expropriated person may remit the deposited sum after justifying his ownership, that the property does not recognize a mortgage or other real right and that it is not seized nor are there restrictions on the free disposal of his assets.

**Article 25.-** The litigation will be recorded in the Real Estate Registry, and from that moment on the property will be unavailable and cannot be seized.

**Article 26.-** If the expropriation concerns assets that are not real estate, the expropriator will obtain immediate possession of them, after judicial consignment of the value determined by the technical offices mentioned in article 14.

**Article 27.-** Once judicial possession of the property has been granted, the leases will be resolved, granting the occupants a period of thirty (30) days for their eviction, which the expropriator may extend when in his opinion there are just reasons that so advise.

**Article 28.-** The action arising from any damage that is extended to third parties due to lease contracts or others that they had with the owner, will be heard in a separate trial.

**Article 29.-** No action by third parties may impede the expropriation or its effects. The rights of the claimant shall be considered transferred from the thing at its price or compensation, leaving the thing free of any encumbrance.

**Article 30.-** The expropriator may withdraw from the action promoted as long as the expropriation has not been completed. The costs will be borne by him.
It will be understood that the expropriation has been perfected when the transfer of ownership to the expropriator has taken place through a final judgment, taking possession and payment of compensation.

**Article 31.-** The expiration of the instance is inadmissible when in the trial the expropriator has taken possession of the property and the expropriated party only questions the amount of compensation.

**Article 32.-** The action of the expropriated person, to demand payment of compensation, expires after five (5) years, computed from when the respective amount is determined firmly and definitively.

4

**Article 33.-** For the transfer of ownership of real estate to the expropriator, a public deed granted before a notary will not be required, and for this purpose the registration in the respective Real Estate Registry of the decree approving the agreement or, where applicable, of the judicial ruling that gives rise to the expropriation.

## TITLE VI
## PERIOD OF EXPROPIATION

**Article 34.-** The expropriation will be considered abandoned -except as expressly provided in the special law- if the expropriator does not promote the trial within two (2) years of validity of the law that authorizes it, when it comes to carrying it out. on individually determined goods; five (5) years in the case of assets included within a specific area; and ten (10) years in the case of goods included in a generic list.

The preceding provision will not govern in cases in which the organic laws of the municipalities authorize them to expropriate the portion of the affected properties, to correct or widen streets and alleys, by virtue of the respective ordinances.

**Article 35.-** The provisions contained in the first paragraph of the previous article will not be applicable in cases of reservation of real estate for works or deferred execution plans qualified by formal law.

In this case, the following rules will apply:

    a) The expropriator, after declaring that it is a deferred expropriation, will obtain the appraisal of the affected property with the intervention of the Appraisal Court of the Province of Tierra del Fuego and will notify the owner of the resulting amount;

    b) If the appraisal value is accepted by the owner, any of the parties may request its judicial approval and once approved, said value will be considered firm for both parties, and may be readjusted only in accordance with the procedure provided for in subsection d) of the present article;

    c) If the owner does not accept the appraisal value offered, the expropriator must judicially request the establishment of the value of the property, in accordance with the rules of articles 11 and 12;

    d) the compensation will be readjusted in the manner provided for in article 11;

    e) if during the processing of the case and before the final sentence is issued the expropriator needs to immediately dispose of the property, the provisions of articles 23, 24 and 25 shall apply; and

    f) the accepted properties may be freely transferred to third parties provided that the acquirer knows the impact and consents to the set value, if this is determined. For this purpose, once said value is signed, it will be communicated ex officio by the expropriating entity or, where appropriate, by the intervening court to the Real Estate Registry. The certificates issued by the records in relation to the affected property must state that firm value. In the deeds transferring ownership of the properties included in this article, the notaries who authorize them must expressly record the purchaser's knowledge of the affectation, or his consent to the firm value, as appropriate.

## TITLE VII
## OF RETROCESSION

**Article 36.-** The retrocession action is appropriate when the expropriated property is given a destination different from that provided for in the Expropriation Law, or when it is not given any destination within a period of two (2) years, computed from the date the expropriation was perfected in the manner provided for in article 30.

**Article 37.-** It will be understood that there was no change of destination when the destination assigned to the property maintains connection, interdependence or correlation with that specifically provided for in the Law.
Nor will it be considered that there has been a change of destination if a part of the expropriated property is assigned a complementary one or one that tends to integrate and facilitate that provided for by the Law.

**Article 38.-** Retrocession also applies in cases in which the asset has left the property of its owner through the settlement procedure.

**Article 39.-** Retrocession may not only be achieved by judicial action, but also by agreement or administrative management.

**Article 40.-** When the property has not been given any destination within the period mentioned in article 36, for the purposes of the retrocession action, the expropriated party must reliably notify the expropriator to assign the property the destination that motivated the expropriation. After six (6) months have elapsed since this notification without the expropriator assigning that destination to the property, or without having started the respective works, which must be maintained in accordance with the approved work plans, the retrocession action will be expedited, without the need of prior administrative claim.
If the property has been given a different destination than that provided for in the Expropriation Law, a prior administrative claim must be made.

**Article 41.-** If the expropriated property has fulfilled the purpose that motivated the expropriation, and due to that circumstance it is detached from that purpose, the retrocession will be inadmissible.

**Article 42.-** The retrocession action exercised partially on a part of the expropriated property is admissible.

**Article 43.-** For the retrocession to be appropriate, the following are required:
a) That the expropriation that motivates it has been perfected in the manner provided for in article 30;
b) that any of the assumptions provided for in article 36 occur and, if applicable, the provisions of article 40; and
c) that the plaintiff, within the period established by the sentence, reimburses the expropriator what he received from this as a price or compensation.

If the value of the property has decreased due to acts of the expropriator, this decrease will be deducted from what must be reimbursed by the plaintiff. If the property has increased in value due to necessary or useful improvements introduced by the expropriator, the expropriated party

6

must repay the value of the same. If the property has increased in value due to natural causes, the reimbursement of said value will not be required from the plaintiff. If the property, due to natural causes, has decreased in value, the amount of this decrease will not be deducted from the value to be reimbursed by the plaintiff.

**Article 44.-** When the expropriation has been carried out by agreement, the retrocession action must be brought before the Judge who should have heard in the event that there has been an expropriation trial.

**Article 45.-** If the expropriation has been carried out through a trial, the retrocession claim must be filed before the same court that intervened in the expropriation trial.

**Article 46.-** The retrocession action corresponds only to the expropriated owner and his universal successors.

**Article 47.-** The retrocession may be sued against the expropriator, or against him and the third parties to whom the property has been transferred.

**Article 48.-** The procedure applicable in the retrocession trial, and the nature of the litigation, will be those established for the expropriation trial.

**Article 49.-** If the judgment gives rise to the action, the sum that must be reimbursed to the plaintiff by retrocession and the period in which he must do so must be established; Likewise, the period in which the expropriator must return the expropriated property will be established.

**Article 50.-** The return of the expropriated property must be free of all occupants, charges, encumbrances and easements that may have taken place after the dispossession.

**Article 51.-** The action for retrocession prescribes after three (3) years, computed from the moment when, the expropriation having been perfected in the manner provided for in article 30, the property was given a destination other than that which determined it, or from that, having not given the property any destination, the deadlines provided for in articles 36 and 40 have elapsed.

## TITLE VIII
## OF IRREGULAR EXPROPIATION

**Article 52.-** The irregular expropriation action is appropriate in the following cases:
a) When there is a law that declares a good of public utility, the Provincial State takes it without have complied with the payment of the respective compensation;
b) when, due to the law of declaration of public utility, in fact a movable or
property becomes unavailable due to obvious difficulty or impediment to dispose of it in normal conditions; and
c) when the Provincial State imposes an undue restriction on the right of the owner of a property or thing, or limitation that involves an injury to his property right.

**Article 53.-** The action of irregular expropriation does not apply when the Provincial State paralyzes or does not activate the procedures after having obtained judicial possession of the property.

**Article 54.-** Anyone who acts for irregular expropriation is exempt from administrative claims.

**Article 55.-** In the irregular expropriation trial, the compensable values will be set in the same manner provided for the regular expropriation trial, contemplated in article 11 et seq. of this Law.

**Article 56.-** The rules of judicial procedure established for regular expropriation also apply to irregular expropriation, as long as they are applicable.

**Article 57.-** The action of irregular expropriation expires after five (5) years computed from the date on which the acts or behavior of the Provincial State took place that make the aforementioned action viable.

## TITLE IX
## OF TEMPORARY OCCUPATION

**Article 58.-** When for reasons of public utility the temporary use of a specific asset or thing, movable or immovable, or of a specific universality of them is necessary, temporary occupation may be resorted to.

**Article 59.-** Abnormal temporary occupation may respond to an abnormal, urgent, compelling or sudden need, or to a normal, non-imminent need.

**Article 60.-** Abnormal temporary occupation may be ordered directly by the administrative authority, and will not give rise to any compensation, except for the repair of damage or deterioration caused to the thing or the payment of damages due by the owner. subsequent use of the thing in purposes other than those that strictly determined its occupation.

**Article 61.-** No abnormal temporary occupation will last longer than the period strictly necessary to satisfy the respective need.

**Article 62.-** Temporary occupation for normal reasons, prior legal declaration of public utility, may be established by agreement; Otherwise, it must be ordered by the judicial authority, at the request of the Public Administration.

**Article 63.-** Normal temporary occupation entails compensation, with the current rules on expropriation being applicable to the subsidy.
The compensation referred to in this article will include the value of the use and damages caused to the occupied property or thing, as well as the value of the materials that had to be extracted, necessarily and indispensably, due to the occupation.

**Article 64.-** The occupied property may not have another destination than the one that motivated its occupation.

**Article 65.-** No normal temporary occupation can last more than two (2) years; Once this period has expired, the owner will reliably notify the return of the property. After thirty (30) days have elapsed since said notification without the property having been returned, the owner may demand its expropriation, promoting an irregular expropriation action.

**Article 66.-** The judicial procedure established for the expropriation trial is applicable as pertinent to the normal temporary occupation trial.

**Article 67.-** Without the consent of the owner, the temporary occupant of a property or thing cannot alter its substance or extract or separate from it the elements that make it up, without prejudice to the assumption provided for in article 63, last part.

**Article 68.-** If the temporary occupation affects third parties, their rights will be asserted over the amount of compensation.

**Article 69.-** Judicial issues raised by the owner of the occupied property are exempt from prior administrative claim.

**Article 70.-** The action of the owner of the occupied property to request its return expires after five (5) years computed from the time the occupant should have returned the property.

## TITLE X
## PROVINCIAL APPRAISAL COURT

**Article 71.-** For the purposes of this Law, the Provincial Appraisals Court is created, which will function as an agency of the Provincial Executive Branch, with functional dependence on the Ministry of Economy, Works and Public Services, and will have its headquarters in the city of Ushuaia.

**Article 72.-** The functions of the Court will be:
a) Appraise the properties subject to expropriation and rule on their value in the cases provided for in this Law;
b) appraise the properties of the Provincial Government, its autonomous and decentralized entities, the municipalities of Ushuaia, Río Grande and the commune of Tólhuin; and
c) carry out other appraisals that are required by other provincial organizations.

**Article 73.-** The powers of the full Court will be:
a) Produce the opinions mentioned in article 16 of this Law; b) establish standards and appraisal methods for their own use; and
c) dictate the internal regulations and procedural rules.

**Article 74.-** The responsibilities of the chambers will be:
a) Project and submit the opinions mentioned in section a) of article 73 within the deadlines

that, according to the modalities of each case, establish the internal regulations; and b) practice and produce the other appraisals mentioned in article 72.

**Article 75.-** The Court will be composed of six (6) members designated by the Provincial Executive Branch who will be distributed in chambers and will act in the manner established by the regulations of this Law.

In the cases of article 16 of this Law, it will also be integrated with two (2) accidental members, one (1) representing the expropriator and another of the expropriated person.

All members of the Tribunal must be university professionals with a qualification for the function to be performed.

All members of the Tribunal will exercise their functions ad-honorem.

**Article 76.-** Three (3) members of the Court will be appointed at the proposal of the public organizations established by the regulations and must have the agreement of the Provincial Legislature.

They will remain in office as long as their good conduct lasts and will be removed by the Provincial Executive Branch.

The unjustified absence of the deadline set in article 16 of this Law will result in poor performance in office, if it occurs repeatedly.

**Article 77.-** The remaining three (3) members will be appointed at the proposal of the professional entities established by the regulations.

They will serve for three (3) years and may be reappointed at the request of the same entity that proposed them. They will retain their positions and will be removed in the same manner established in article 76.

**Article 78.-** The members will meet each time they must comply with the obligations established in this Law.

**Article 79.-** The members of the aforementioned Court will not have representation or mandate from the organizations or entities that have proposed them.

**Article 80.-** The members of the Court mentioned in this Law, and the representative of the expropriated party, where applicable, will be affected by the incompatibilities established in the laws and regulations applicable to the Provincial Public Administration. The representative of the expropriated party, upon accepting the position, will declare under oath and in writing that he or she is not included in the aforementioned incompatibilities.

**Article 81.-** The challenge or excuse of the members of the Court, mentioned in articles 76 and 77, will be governed by the provisions for this matter in the Civil, Commercial, Labor, Rural and Mining Procedural Code of this Province.

The challenges or excuses will be resolved within ten (10) days by the Undersecretary of Public Works and Services of the Province, prior mandatory opinion of the Legal Counsel of the Province, the decision of which is not appealable, except in the case of the article 16 of this Law, in which the parties may appeal within a period of five (5) days before the intervening Judge, whose resolution will be unappealable.

10

**Article 82.-** The Court will elect a President from among the members designated in article 76 of this Law, and a first Vice President and a second Vice President from among the members mentioned in article 77 of this Law. All of them will remain in office for three (3) years and may be re-elected after a period has elapsed.

The election will be made by a simple majority of the members present, and the regulatory quorum must be formed.

The President will have a double vote in the event of a tie.

The constitution and election of the authorities of the rooms will be done in the manner provided by the regulations.

**Article 83.-** In the fulfillment of its mission, the Court or the chambers may require written reports from provincial and municipal public organizations and entities linked to the technical problems submitted to their consideration, who will be obliged to provide them.

**Article 84.-** The Court will have a technical-administrative body made up of personnel provided by the Provincial Executive Branch that is in charge of its permanent staff.

**Article 85.-** The Court will operate with the resources assigned to it by the Provincial Executive Branch, which may establish a scale of fees for such purposes.

**Article 86.-** The regulations will establish the way to integrate the Court or its chambers, as well as in cases of challenge or excuse, impediment or temporary absences, cessation of their functions, as well as in case of silence of the organizations or entities that must propose candidates, or the expropriator who must appoint his representative.

It will also establish the way to proceed in the event that the expropriated party does not appoint his representative.

## TITLE XI
## COMPLEMENTARY PROVISIONS

**Article 87.-** Anyone who, as owner, simple possessor, or by virtue of any other title, actually resists the execution of the studies or technical operations that by virtue of this Law were ordered by the Provincial State, will be subject to a fine of PESOS THOUSAND ($1,000) to PESOS TEN THOUSAND ($10,000) at the discretion of the Judge, who will proceed to apply it, after a summary report of the fact, without prejudice to hearing the accused and resolving as appropriate.

The fine will be demanded by executive means.

**Article 88.-** This Law must be regulated by the Provincial Executive Branch, within a period of sixty (60) days from its publication in the Official Gazette of the Province.

**Article 89.-** Contact the Provincial Executive Branch.

EXHIBIT 12

(Expte. CJS 39.628/18 – Prov. de Salta)                                1

(Tomo 239: 377/396)
_____ Salta, 26 de julio de 2021. _____
_____ Y VISTOS: Estos autos caratulados **"PROVINCIA DE SALTA VS.
PEREYRA ROZAS, CÉSAR LEÓN – RECURSO DE APELACIÓN"** (Expte. N° CJS
39.628/18), y _____
_____**CONSIDERANDO:** _____
_____ Las Dras. **Sandra Bonari, Teresa Ovejero Cornejo** y los Dres.
**Horacio José Aguilar, Marcelo R. Domínguez** y **José Gerardo Ruiz**,
dijeron: _____
_____ 1°) Que a fs. 411 el representante legal del señor Facundo
Solá Avellaneda interpone recurso de apelación contra la sentencia
de fs. 406/408 vta. que hizo lugar al recurso de reposición
deducido a fs. 392/394 por el apoderado del albacea testamentario
de la sucesión del señor César León Pereyra Rozas, y en su mérito,
lo excluyó del presente trámite expropiatorio por resultar
usufructuario y no titular de una fracción del inmueble
expropiado. _____
_____ Para así decidir la señora jueza de grado señaló, con cita
de este Tribunal, que "el trámite expropiatorio, es un
procedimiento que no reviste naturaleza contradictoria y que
concluye con el otorgamiento de la posesión del bien al
expropiante. Producido el desapoderamiento del inmueble, resta la
integración del Tribunal de Tasaciones, con citación del
expropiado, para que fije el valor de la propiedad. Sólo cuando
aquel no acepte la estimación practicada deberá acudir a la vía
judicial promoviendo la demanda de expropiación". Agregó que los
sujetos que conforman la relación expropiatoria son dos: el activo
o expropiante y, en lo que aquí interesa, el pasivo o expropiado o
sea el titular del bien que se quiere expropiar. _____
_____ Expresó que el dueño de un bien expropiado pudo haber
celebrado contratos o realizado actos de disposición que
constituyan derechos sobre aquél con anterioridad a la
expropiación, como en el caso, por lo que correspondía determinar
si el señor Solá Avellaneda se encontraba o no legitimado en el
presente trámite expropiatorio en su carácter de legatario de
usufructo vitalicio. En ese orden precisó que el art. 30 de la Ley
2614, en concordancia con el art. 28 de la Ley 21499, prescribe
que los derechos de los terceros reclamantes se consideran
transferidos de la cosa a su precio o la indemnización, quedando
aquella libre de todo gravamen. Sostuvo que el Código Civil y
Comercial de la Nación en el Libro IV, referido a los derechos
reales, luego de enunciar al usufructo como uno de ellos, estipula
en el art. 1888 que recae sobre cosa ajena; que con relación al
dueño de la cosa los derechos reales que recaen sobre cosa ajena
constituyen cargas o gravámenes reales. _____
_____ Concluyó que cuando para satisfacer la utilidad pública el
Estado procura tomar un bien afectado a un derecho de tercero, la
expropiación no solo tendrá como consecuencia transferir el
dominio al expropiante, sino también hacer cesar, en el caso, el
usufructo vitalicio a favor del señor Solá Avellaneda; y señaló
que el art. 27 de la Ley 2614 no admite la intervención de
terceros en el juicio expropiatorio sin que resulte por ello el
derecho desconocido, pudiendo en tal caso el tercero ejercer la
acción correspondiente de manera separada. _____
_____ A fs. 416/418 vta. expresa agravios el apoderado del señor
Solá Avellaneda. Manifiesta que los dos párrafos que la sentencia
dedica para fundar la decisión refieren a los arts. 27 y 28 de la

2   (Expte. CJS 39.628/18 – Prov. de Salta)

ley nacional de expropiaciones que no resulta aplicable al caso, en tanto la cuestión se encuentra regulada en la Ley provincial 2614._____

_____ En segundo lugar, sostiene que al resultar los bienes el objeto de la expropiación, por encontrarse así normado en el art. 4° de la Ley 2614, la indemnización a pagarse por tales bienes debe ser abonada al titular de los derechos reales sobre la cosa. Afirma que cuando el dominio es pleno, el titular es el propietario y no hay conflicto. En cambio -señala- cuando el dominio se encuentra desmembrado, como ocurre en el presente caso, en nuda propiedad cuyo titular es el sucesorio representado por el albacea, y en usufructo cuyo titular es el señor Solá Avellaneda, el derecho a participar en el proceso se comparte entre ambos y no existe razón alguna para permitir la intervención de uno y excluir la del otro. _____

_____ Agrega que la ley provincial de expropiación expresamente admite la participación en el proceso de otros titulares de derechos reales por cuanto el art. 16 hace referencia no solo al propietario, sino también al titular de los derechos respectivos. Solicita se revoque la sentencia apelada y se ordene mantener la participación de su mandante en el proceso, con derecho al cobro del 100 % del precio que corresponda a la fracción del inmueble sobre la que posee usufructo vitalicio. Con costas. _____

_____ A fs. 424/433 el apoderado de la Provincia de Salta contesta el traslado conferido. En primer lugar sostiene que el memorial no cumple con los requisitos formales previstos en la legislación por cuanto no indica cuál es el agravio que el fallo cuestionado ocasionaría a su derecho. Afirma que el requisito esencial de admisibilidad del recurso de apelación es que el pronunciamiento que se impugna cause al apelante un agravio o perjuicio cierto y concreto, y que ello se exprese, funde y acredite en el memorial, circunstancia que no aconteció en la presentación del recurrente. _

_____ Aduce que la pieza presentada contiene una mera discrepancia con la solución a la que arriba la jueza de grado y que incumple lo establecido en el art. 255 del C.P.C.C., por lo que debe desestimarse el recurso interpuesto. Subsidiariamente procede a refutar los agravios del recurrente y señala que resulta falso que el fallo apelado se sustente en la ley nacional de expropiaciones y antecedentes jurisprudenciales que la aplican. Afirma que ello no solo es falso, sino además inocuo, puesto que la ley provincial de expropiación es coincidente con la ley nacional. Sostiene que los sujetos del proceso expropiatorio son el expropiante y el titular del bien sujeto a expropiación, lo que excluye al usufructuario, quien no reviste el carácter de titular o propietario del bien. _____

_____ Finalmente expresa que la interpretación que el apelante efectúa del art. 16 del régimen de expropiaciones es antojadiza y errónea, por lo que solicita el rechazo del recurso. _____

_____ A fs. 434 se tiene por decaído el derecho dejado de usar para contestar el traslado por parte del albacea testamentario de la sucesión Pereyra Rozas. _____

_____ A fs. 450/455 dictamina el señor Procurador General de la Provincia, y a fs. 456 se llaman autos para resolver, providencia que se encuentra firme. _____

_____ 2°) Que en primer lugar corresponde analizar la suficiencia del memorial presentado. Al respecto, cabe recordar que la Corte Suprema de Justicia de la Nación entendió que al efectuarse la

(Expte. CJS 39.628/18 – Prov. de Salta)                                    3

consideración de la suficiencia o no de la expresión de agravios, ha de seguirse un criterio amplio en cuanto a su admisibilidad ya que es éste el que mejor armoniza con un escrupuloso respeto del derecho de defensa tutelado por la Constitución Nacional, a fin de no limitar la más amplia y completa controversia de los derechos de los litigantes, ya que un mero defecto técnico podría conducir a injustas soluciones en perjuicio de los justiciables, quienes recurren en procura de justicia, buscando ser oídos y que se les brinde la oportunidad de ejercer así su legítimo derecho de defensa en juicio (CSJN, Fallos, 306:474). _____

_____ En base a ello, el análisis de la pieza procesal agregada a fs. 416/418 vta. lleva a concluir que contiene argumentos que permiten ser tenidos como suficientes a los fines de la presente instancia revisora. _____

_____ 3°) Que la expropiación por causa de utilidad pública es un procedimiento de derecho público, por el cual el Estado, obrando unilateralmente, adquiere bienes de los particulares para el cumplimiento de un fin de utilidad pública y mediante el pago de una indemnización justa y previa (Diez, Manuel María, "Manual de Derecho Administrativo", Plus Ultra, Buenos Aires, 1980, Tomo 2, pág. 277). Por su parte Maiorano expresa que la expropiación es el "instituto jurídico en virtud del cual el Estado extingue el derecho de propiedad sobre un bien, mediando una previa indemnización, para destinar el mismo a la satisfacción del interés público" (Maiorano, Jorge Luis, "Cooperadora de Derecho y Ciencias Sociales", Bs. As., 1978, pág. 14). _____

_____ En nuestro derecho público provincial, el régimen de expropiación se encuentra regulado en la Ley 1336 y sus modificatorias, la que en su Título V contiene las normas de procedimiento aplicables al proceso en todas sus etapas. Desde el denominado "avenimiento expropiatorio" (art. 17), supuesto de cesión amistosa en la que no se verifica el planteo de pretensiones contradictorias que justifiquen un pronunciamiento judicial y donde la intervención del juzgado se agota con el otorgamiento de la posesión del bien al expropiante; la propia demanda, como pretensión contradictoria (art. 18), su período probatorio (arts. 19 y 20), los alegatos (art. 21), plazo para dictar sentencia (art. 22), trámite verbal y sumario de los incidentes (art. 31) y un régimen particular en materia de costas (art. 32). _____

_____ De acuerdo a la doctrina de esta Corte (cfr. Tomo 156:1021) el proceso de expropiación constituye un juicio de conocimiento especial, con normas específicas íntimamente vinculadas a su finalidad. Se trata, sin duda, de un instituto perteneciente al derecho público, cuestión sobre la que no existe ya discusión doctrinaria ni jurisprudencial. Su importancia, al decir de Maiorano, proviene de los intereses que se enfrentan. Mientras el expropiante necesita que el bien sea transferido del patrimonio del expropiado sin dilaciones que puedan obstaculizar la asignación al destino previsto, el propietario goza de la protección otorgada por el ordenamiento jurídico para que el desapoderamiento no se convierta en una expoliación (Maiorano, ob. cit., pág. 91). _____

_____ En la especie, nos encontramos ante un trámite expropiatorio, es decir un procedimiento que no reviste naturaleza contradictoria y que concluye con el otorgamiento de la posesión del bien al expropiante. Se trata, como se expresó, de un supuesto

4   (Expte. CJS 39.628/18 – Prov. de Salta)

de cesión amistosa donde no corresponde el dictado de una
sentencia a efectos de disponer la transferencia del bien inmueble
(resolución que tendría lugar en el caso de una expropiación
contenciosa). Es así que, producido el desapoderamiento del
inmueble, resta la integración del Tribunal de Tasaciones, con
citación del expropiado, para que fije el valor de la propiedad.
Sólo cuando aquél no acepte la estimación practicada deberá acudir
a la vía judicial promoviendo la demanda de expropiación (art. 18
de Ley 1336). En otras palabras, la intervención de la jueza "a
quo" se agota con el otorgamiento de la posesión y las actuaciones
posteriores solamente se limitan a constatar, en su caso, la
concreción del avenimiento y los pagos efectuados en concepto del
valor acordado (esta Corte, Tomo 156:1021; 170:1053; 177:945;
202:829, entre otros). _____

_____ 4°) Que la cuestión se centra en determinar si el apelante
tiene legitimación para intervenir en el proceso expropiatorio. En
tal sentido, el material de agravios por él expuesto se ciñe a
cuestionar su exclusión, pues sostiene que su condición de
usufructuario del bien expropiado lo legitima para intervenir en
el trámite y percibir el precio con sustento en lo establecido en
el art. 16 de la Ley 2614. Por su parte, la Provincia niega tal
legitimación con sustrato en el art. 30. _____

_____ 5°) Que del análisis de los antecedentes referidos, se
colige que asiste razón al recurrente. En efecto, una cosa es la
posibilidad de repeler la aniquilación del derecho real de
usufructo que provoca la expropiación, y otra cosa distinta es la
legitimación para discutir o reclamar la indemnización del
perjuicio que tal potestad ocasiona al titular del derecho. _____

_____ El citado art. 30 de la Ley 2614 consagra la inoponibilidad
de la expropiación respecto de terceros, y dispone que ningún
derecho de estos, sea sobre el bien expropiado o susceptible de
hacerse efectivo sobre el mismo, es capaz de obstaculizar la
expropiación. La solución legal claramente hace prevalecer las
necesidades colectivas que a través de este instituto se pretende
satisfacer por encima de cualquier interés individual. En tal
caso, ante la confrontación de los intereses en juego, la
normativa sacrifica los derechos individuales y estipula que los
derechos del tercero se consideran transferidos de la cosa a su
precio o a la indemnización, quedando aquella libre de todo
gravamen. _____

_____ Ahora bien, al estar referido el usufructo constituido a
favor del apelante a una fracción del inmueble a expropiar, de
mayor extensión, se justifica en este caso su participación en la
determinación del precio o indemnización a abonar y resulta
razonable su pretensión de que se discrimine en la tasación el
valor de dicha porción, por ser la única parte del inmueble
gravada con ese derecho real, ya que, sobre el resto, la sucesión
del titular registral tiene un dominio pleno. _____

_____ Por su parte, si se tiene en cuenta que la valuación
efectuada por el Tribunal de Tasaciones es única y no puede
reiterarse durante el juicio (art. 19), en esa instancia en
donde el usufructuario debe hacer valer su derecho para resguardar
su interés económico en la determinación del precio justo. _____

_____ En efecto, si la indemnización debe cubrir el valor objetivo
del respectivo bien, es decir aquel que habría tenido en una libre
contratación, no resulta razonable excluir de su determinación al
usufructuario, ni en la presente etapa, ni en la audiencia que

pudiera fijarse a los fines de la determinación del valor indemnizatorio (art. 18). _____

_____ Incluso desde la óptica del expropiante, quien debe indemnizar no solo el valor objetivo del bien, sino también los daños que sean consecuencia directa e inmediata de la expropiación, resulta útil y conveniente la intervención del usufructuario en el proceso, con la finalidad de que este pueda determinar el valor total a abonar por el bien expropiado, estimando todas las circunstancias que puedan influir en su tasación, y evitar así un lucro indebido de cualquiera de las partes. _____

_____ Finalmente, en orden a la solución que se propicia es importante destacar que el usufructuario, quien con motivo de la expropiación verá afectado su derecho, merece igual protección y tratamiento que el nudo propietario en cuanto a la porción afectada por el gravamen real, y debe, en consecuencia, tomar intervención en el procedimiento de determinación del precio. _____

_____ A mayor abundamiento, esta solución, además de ser la que mejor condice con el debido respeto a los derechos de propiedad y de defensa en juicio, se encuentra consagrada en otras legislaciones del país y del extranjero, entre las cuales cabe citar lo dispuesto en las Leyes 5708, 1477 y 7966 de las provincias de Buenos Aires, Mendoza, y San Juan respectivamente, legislaciones en las cuales se permite la intervención del tercero damnificado para la fijación del precio o indemnización. Además de ello, tal criterio fue receptado por la Corte Suprema de Justicia de la Nación (cfr. Fallos, 115:145; 183:147). _____

_____ 6°) Que en consecuencia, corresponde hacer lugar al recurso de apelación de fs. 411, y en su mérito, revocar la resolución impugnada, debiendo admitirse la intervención del apelante en la medida de su interés. Con costas por el orden causado al no advertirse temeridad (art. 15 del C.P.C.A.). _____

_____ El Dr. **Guillermo Alberto Catalano**, la Dra. **María Alejandra Gauffín**, el Dr. **Ernesto R. Samsón** y la Dra. **María Soledad Fiorillo**, dijeron: _____

_____ 1°) Que disentimos de la solución jurídica propiciada en el voto que abre el presente acuerdo por los siguientes fundamentos.

_____ 2°) Que contra el auto interlocutorio de fs. 406/408 vta. que al hacer lugar al recurso de revocatoria deducido por el albacea testamentario de la sucesión de César León Pereyra Rozas, dejó sin efecto el penúltimo apartado de la providencia de fs. 159 y excluyó del trámite expropiatorio a Facundo Solá Avellaneda, éste interpuso recurso de apelación a fs. 411. _____

_____ Para resolver como lo hizo, la señora jueza de grado inferior consideró que el "sub lite" reviste la condición de un trámite de avenimiento expropiatorio que carece de naturaleza contradictoria y que concluye con el otorgamiento de la posesión del bien al expropiante, restando -señaló- la integración del Tribunal de Tasaciones, con citación del expropiado, para fijar el valor de la propiedad. _____

_____ En tal contexto, afirmó que la relación expropiatoria se conforma exclusivamente entre el expropiante y el expropiado, como titular del bien que se pretende expropiar. Explicó que si bien este último pudo haber realizado actos de disposición, constituyendo derechos sobre la propiedad -tal como ocurrió en autos-, el señor Solá Avellaneda en su condición de legatario de usufructo vitalicio carece de legitimación para intervenir en este

6    (Expte. CJS 39.628/18 – Prov. de Salta)

avenimiento expropiatorio. En ese sentido, entendió que la
expropiación no sólo tiene como consecuencia transferir el dominio
al expropiante sino también hacer cesar el usufructo vitalicio a
favor del referido tercero.

_____ Al mismo tiempo, la magistrada citó los arts. 27 y 30 de la
Ley 2614 (Original 1336, sancionada el 18/08/1951, promulgada el
24/08/1951 y publicada en el Boletín Oficial N° 4.025, del
03/09/1951), en cuanto establecen que "La acción emergente de
cualquier perjuicio que se irrogase a tercero por contratos de
locación u otros que tuvieran celebrado con el propietario, se
ventilará por la vía ordinaria, en juicio por separado" y que
"Ninguna acción de terceros podrá impedir la expropiación ni sus
efectos. Los derechos del reclamante se considerarán transferidos
de la cosa a su precio o a la indemnización, quedando aquella
libre de todo gravamen", respectivamente. _____

_____ Finalmente, la jueza concluyó en que solo le corresponde
intervenir en autos al albacea testamentario de la sucesión,
debiendo el señor Facundo Solá Avellaneda reclamar los perjuicios
sufridos por la vía que corresponda. _____

_____ Al expresar los agravios (fs. 416/418 vta.), el recurrente
sostiene que la sentencia en cuestión exhibe una confusión
conceptual sobre la interrelación entre los diferentes derechos
reales. _____

_____ Afirma que el fallo se sustenta en los arts. 27 y 28 de la
Ley nacional, ajenos al caso, en tanto la Provincia de Salta ha
dictado su propia normativa -Ley 2614- que, en su criterio, fue
preterida por la jueza de grado inferior. _____

_____ Menciona el art. 4° de la Ley provincial, indicando que
pueden ser objeto de expropiación "todos los bienes" y que la
indemnización por el valor de esos bienes debe ser pagada al
titular de los derechos reales sobre la cosa. Dice que de acuerdo
al art. 16 de la referida regulación, el expropiante debe abonar
directamente no solo al propietario sino al "titular de los
derechos respectivos", interpretando que este último es el titular
de "los derechos reales sobre la cosa", recordando que en el
usufructo la propiedad se encuentra desmembrada, donde el albacea
testamentario representa la nuda propiedad, mientras que su
mandante es titular del usufructo, correspondiendo -dice- la
participación en el proceso expropiatorio a ambas partes. _____

_____ En definitiva, subraya que el usufructuario no es un
tercero, sino que al exteriorizar un derecho real sobre la cosa,
que "también ha sido expropiada junto con la nuda propiedad",
tiene derecho a participar en el proceso, negociar el cobro y
percibir directamente el precio correspondiente al derecho real
expropiado. _____

_____ A fs. 424/433 contesta el traslado conferido de la expresión
de agravios la Provincia de Salta y a fs. 435 el apoderado del
albacea testamentario de la sucesión Pereyra Rozas adhiere a la
posición jurídica sustentada por el Estado Provincial. _____

_____ A fs. 450/455 se pronuncia el señor Procurador General de la
Provincia por el rechazo del recurso conforme los argumentos que
allí explicita, y a fs. 456 se llaman autos para resolver,
providencia que se encuentra firme. _____

_____ 3°) Que las presentes actuaciones tienen por propósito
concretar el denominado avenimiento expropiatorio o cesión
amistosa. Al respecto, tal figura ha sido considerada un contrato
innominado de derecho administrativo, por la presencia de una

persona jurídica pública estatal, por el régimen normativo aplicable, ya que este instituto configura una de las maneras de efectivizar la expropiación, y por la finalidad que tiende a satisfacer: la utilidad pública (v. al respecto, Marienhoff, "Tratado de Derecho Administrativo", Abeledo Perrot, 1980, Tomo IV, pág. 316 y sgtes.; Spisso, Rodolfo R., "Indemnización por Daños Causados a Raíz de la Desafectación de un Bien Sujeto a Expropiación", LL, 1987-C, 290; Maiorano, Jorge Luis, "La Expropiación en la Ley 21.499", Cooperadora de Derecho y Ciencias Sociales, Buenos Aires, 1978, pág. 96, entre otros). _____

_____ A fs. 12/14 obra constancia del depósito del importe previsto por el art. 17 de la Ley de Expropiación, habiéndose dispuesto a fs. 92 su transferencia a una cuenta a la orden del Juzgado de Primera Instancia en lo Civil y Comercial de Onceava Nominación, para el Expte. N° C-60.685/00, caratulado "Pereyra Rozas, César o Pereyra Rozas, César León - Sucesorio Testamentario".

_____ En tal contexto, el aquí recurrente, en su carácter de legatario de un usufructo vitalicio respecto de una fracción referente a la matrícula catastral N° 112.171, objeto del actual trámite expropiatorio solicitó ser tenido como parte en el proceso, petición proveída por el juzgado favorablemente a fs. 159. Al respecto, resulta ilustrativo tener presente la copia certificada del testamento obrante a fs. 136/148 vta. y la sentencia de la Sala Primera de la Cámara de Apelaciones en lo Civil y Comercial copiada a fs. 149/153, que reconoció dicho legado y ordenó al juez del sucesorio la reformulación de las operaciones de partición y adjudicación conforme los derechos invocados por el señor Solá Avellaneda. _____

_____ A fs. 163 se ordenó la remisión de las actuaciones al Tribunal de Tasaciones de la Dirección General de Inmuebles a los fines de la tasación prevista en los arts. 13 y 37 de la Ley 1336 y sus modificatorias. _____

_____ Bajo esas circunstancias y de acuerdo a las consideraciones del Acta N° 502 del Tribunal de Tasaciones de la Provincia (fs. 374/376) se desprende que reunidos los integrantes de dicho órgano para tratar los dictámenes presentados por los peritos oficial y de parte, con el apoderado del expropiado y presente también el representante del legatario de usufructo vitalicio, se resuelve remitir el expediente al juzgado de origen frente a la comprobación de "intereses contrapuestos y disidencias entre el expropiado y el usufructuario, en cuanto a la procedencia de la tasación de la superficie sobre la que recae el derecho de usufructo en forma separada del resto de la propiedad", requiriendo que en sede judicial se aclare la disidencia planteada (v. último párrafo de los considerandos de dicha acta). _____

_____ 4°) Que todo lo hasta aquí referido, permite adelantar que resulta ajustada a derecho la decisión de la jueza a quo de excluir del trámite expropiatorio al legatario de usufructo vitalicio. _____

_____ En efecto, es que los inequívocos términos de la ley expropiatoria local disponen que "La acción emergente de cualquier perjuicio que se irrogase a tercero por contratos de locación u otros que tuvieran celebrado con el propietario, se ventilará por la vía ordinaria, en juicio por separado" (art. 27) y que "Ninguna acción de terceros podrá impedir la expropiación ni sus efectos. Los derechos del reclamante se considerarán transferidos de la cosa a su precio o a la indemnización, quedando aquella libre de

8   (Expte. CJS 39.628/18 – Prov. de Salta)

todo gravamen" (art. 30). _____
_____ Como lo ha reiterado la Corte Suprema de Justicia de la
Nación es regla de interpretación de las leyes la de que los
jueces deben atenerse a su texto, cuando es claro y no da lugar a
dudas, y que cuando los términos de la ley son claros no
corresponde a los jueces apartarse de sus propósitos so pretexto
de evitar las deficiencias reales o presuntas que podrían resultar
de su aplicación (Fallos, 326:1778; esta Corte, Tomo 216:471,
entre muchos otros). _____
_____ Asimismo, no debe perderse de vista que los sujetos de la
relación expropiatoria son dos; el expropiado y el expropiante, y
que la ley pretende evitar que terceros entorpezcan el
desenvolvimiento del trámite mediante presentaciones, pudiendo
reclamar la reparación de daños y perjuicios que como consecuencia
directa e inmediata les acarrea la desposesión, ventilando su
pretensión en juicio por separado (Casas, Juan Alberto; Romero
Villanueva, Horacio J., "Expropiación", Astrea, Buenos Aires,
2005, pág. 125). _____
_____ 5°) Que sentado ello, debe resaltarse que en autos no se ha
promovido el proceso expropiatorio, sino que las actuaciones
transitan -como ya se expusiera- la etapa del denominado
avenimiento expropiatorio o cesión amistosa. Precisamente, lo
obrado en sede del Tribunal de Tasaciones de la Provincia (v. fs.
374/378), como así también el Primer Testimonio de Escritura
Pública N° 219 labrada por la escribana María Elena Zenteno Goytia
(fs. 358/373) -que tuvo por finalidad registrar los debates
llevados adelante en el seno del mentado órgano administrativo con
relación al análisis de los informes periciales de las partes para
determinar el valor del bien expropiado-, dan cuenta que la
fracción de la matrícula objeto del legado de usufructo vitalicio
que invoca el señor Solá Avellaneda conforma un terreno que aún no
está catastralmente dividido, es decir, no cuenta con una
matrícula independiente del resto de la superficie expropiada,
pretendiendo su beneficiario una tasación diferenciada en relación
a la matrícula de mayor extensión. Tal cuestión fue, en
definitiva, la que desencadenó la suspensión de la actuación del
organismo técnico competente y la remisión de los obrados al
juzgado de origen, impidiendo, claramente, que se ofrezca al
titular del dominio -la sucesión Pereyra Rozas- el valor máximo
que en concepto total de indemnización estime corresponder (art.
13 de la Ley Expropiatoria provincial). _____
_____ De esa suerte, no habiéndose cerrado el procedimiento
amigable, que eventualmente evitará el juicio de expropiación, no
se advierte la razonabilidad de la pretensión esgrimida por el
legatario quien al presente no ha demostrado una legitimación
procesal propia para ser demandado originariamente en el trámite
expropiatorio al cual pretende ingresar, ya sea a título
individual o conjuntamente a la parte a cuya posición adhiere.
Esto es así, ya que la porción legada, cabe reiterar, no posee una
matrícula separada del resto de la superficie expropiada. _____
_____ Al respecto es relevante destacar que de la cláusula cuarta
del testamento ya aludido se desprende que el albacea queda
facultado a deslindar la fracción de terreno legada, no habiendo
aportado el legatario aquí recurrente constancia alguna de haber
concretado tal trámite, que constituía, manifiestamente, un
imperativo de su propio interés, luego del reconocimiento de su
derecho con arreglo a la sentencia copiada a fs. 149/153. _____

_____ Así las cosas, todo lo expuesto lleva a considerar que la pretensión del legatario de usufructo vitalicio y su consecuente reclamo patrimonial componen una cuestión que -en el caso- deberá resolverse en un ámbito procesal ajeno al inherente a la expropiación. _____

_____ Para concluir, entonces, la condición procesal actual de legatario del usufructo vitalicio en cuestión no lo habilita para intervenir en este trámite expropiatorio, sin perjuicio del derecho que le asiste en el sentido de reclamar, mediante la promoción de otro proceso, el pago de los eventuales daños y perjuicios, transfiriéndose su acción en carácter de tercero al importe del precio obtenido o a la indemnización, para el caso de fracasar el avenimiento y promoverse el proceso de expropiación. _

_____ 6°) Que por último es necesario esclarecer que lo que aquí se decide no guarda relación con el pronunciamiento de esta Corte registrado en Tomo 78:931, donde se admitió el pedido de intervención en el proceso expropiatorio del acreedor de uno de los herederos -renunciante a la sucesión- del titular del inmueble objeto de esa expropiación, por cuanto se trató de un supuesto previsto expresamente por el art. 3351 del Código Velezano, que autoriza al acreedor del renunciante para ejercer los derechos sucesorios de aquél hasta la concurrencia de lo que les es debido, mientras dure el estado de comunidad hereditaria. _____

_____ Por lo demás, si bien la Corte Suprema de Justicia de la Nación ha admitido la intervención de terceros en el juicio de expropiación al solo efecto de fijar el daño ocasionado por ésta, con miras al resarcimiento de los perjuicios que dichos terceros pudieran sufrir (cfr., Fallos, 115:145; 245:73; in re "Salvia, S.A. c. Gobierno Nacional", LL, 1979-C, 444), en el caso carece de objeto proveer a dicha actuación por cuanto tal participación no puede ser independiente o separada, como tampoco retrotraer el estado del procedimiento (CSJN, Fallos, 211:1013). Sobre este punto, las piezas procesales antes mencionadas acreditan que la posición invocada por el legatario frente al Tribunal de Tasaciones trasunta la defensa de un interés propio y contrapuesto no solo a la postura exteriorizada por ese órgano sino también en relación al representante del albacea testamentario. De tal forma, resulta improcedente aceptar la actuación procesal del recurrente en la medida en que su interés luce incompatible con la posición de la expropiada en autos, traspasando su eventual condición procesal de tercero adherente simple (cfr. Palacio, "Derecho Procesal Civil", Abeledo Perrot, 1977, Tomo VI, pág. 339), debiendo como ya se expusiera, promover acción por separado. _____

_____ 7°) Que por lo expuesto corresponde rechazar el recurso de apelación de fs. 411 y, en su mérito, confirmar la sentencia de fs. 406/408 vta. Con costas por el orden causado (art. 15, C.P.C.A.) _____

_____ Por lo que resulta de la votación que antecede, _____
_____ **LA CORTE DE JUSTICIA,** _____
_____ **RESUELVE:** _____

_____ I. **HACER LUGAR** al recurso de apelación de fs. 411, en los términos expuestos en el considerando 6° del voto mayoritario. Costas por el orden causado. _____

_____ II. MANDAR que se registre y notifique. _____

(Fdo.: Dra. Sandra Bonari, Dr. Guillermo Alberto Catalano - Presidente-, Dras. María Alejandra Gauffin, Teresa Ovejero

10  (Expte. CJS 39.628/18 – Prov. de Salta)

Cornejo, Dres. Ernesto R. Samsón, Horacio José Aguilar -Juezas y
Jueces de Corte-, Dra. María Soledad Fiorillo, Dres. José Gerardo
Ruíz y Marcelo Ramón Domínguez -Jueza y Jueces de Cámara llamados
a integrar-. Ante mí: Dra. María Jimena Loutayf -Secretaria de
Corte de Actuación-).

(CJS 39.628/18 – Province of Salta)


(Volume 239: 377/396)

_____ Salta, July 26, 2021. _____

_____ AND IN VIEW OF: These proceedings entitled "**PROVINCIA DE SALTA VS. PEREYRA ROZAS, CÉSAR LEÓN - APPEAL**" (No. CJS 39.628/18), and
_____

_____**Considering**: _____

_____ Drs. **Sandra Bonari, Teresa Ovejero Cornejo** and Drs. **Horacio José Aguilar, Marcelo R. Domínguez** and **José Gerardo Ruiz**, said:
_____

_____ 1st) That on page 411 the legal representative of Mr. Facundo Solá Avellaneda filed an appeal against the sentence of pages 406/408, which upheld the motion for reconsideration filed on pages 392/394 by the legal representative of Mr. Facundo Solá Avellaneda. 392/394 by the attorney of the executor of the estate of Mr. César León Pereyra Rozas, and in its merit, excluded him from the present expropriation proceeding for being the usufructuary and not the owner of a fraction of the expropriated property.

_____

_____ In her decision, the lower court judge stated, citing this Court, that "the expropriation proceeding is a non-adversarial procedure that concludes with the granting of possession of the property to the expropriating party. Once the property has been dispossessed, the Appraisal Court, summoned by the expropriated party, must be convened to determine the value of the property. Only when the expropriated party does not accept the appraised value will he have to resort to the courts to file a claim for expropriation". He added that there are two subjects that make up the expropriation relationship: the active or expropriating party and, in what is of interest here, the passive or expropriated party, i.e. the owner of the property to be expropriated. _____

_____ He stated that the owner of an expropriated property may have entered into contracts or performed acts of disposition that constitute rights over such property prior to the expropriation, as in this case, so it was necessary to determine whether or not Mr. Solá Avellaneda had standing in the present expropriation proceeding in his capacity as legatee of a life usufruct. In that order, he stated that article 30 of Law 2614, in accordance with article 28 of Law 21499, stipulates that the rights of the third-party claimants are considered transferred from the thing to its price or compensation, being the thing free of all encumbrances. It held that the Civil and Commercial Code of the Nation in Book IV, referred to real rights, after mentioning usufruct as one of them, stipulates in art. 1888 that it is over another's thing; that in relation to the owner of the thing, the

(CJS 39.628/18 – Province of Salta)

real rights over another's thing constitute real charges or
encumbrances. _____

_____ He concluded that when, in order to satisfy the public utility,
the State seeks to take a property affected by a third party's right,
the expropriation will not only result in the transfer of the domain
to the expropriator, but also in the termination, in this case, of the
usufruct for life in favor of Mr. Solá Avellaneda; and pointed out
that Section 27 of Law 2614 does not admit the intervention of third
parties in the expropriation proceeding without the right being
unknown, and that in such case the third party may exercise the
corresponding action separately. _____

_____ On pages 416/418, the attorney of Mr. Solá Avellaneda expresses
his grievances. He states that the two paragraphs that the judgment
refers to in support of the decision refer to sections 27 and 28 of
the national expropriation law, which is not applicable to the case,
since the matter is regulated by Provincial Law
2614._____.

_____ Secondly, it argues that since the property is the object of the
expropriation, as it is so regulated in Section 4 of Law 2614, the
compensation to be paid for such property must be paid to the holder
of the real rights over the property. He states that when the domain
is full, the holder is the owner and there is no conflict. On the
other hand -he points out- when the domain is dismembered, as in the
present case, in bare ownership whose holder is the estate represented
by the executor, and in usufruct whose holder is Mr. Solá Avellaneda,
the right to participate in the process is shared between both and
there is no reason to allow the intervention of one and exclude the
other. _____

_____ He adds that the provincial expropriation law expressly admits
the participation in the process of other holders of real rights,
since Article 16 refers not only to the owner, but also to the holder
of the respective rights. The appellant requests that the appealed
judgment be revoked and that the participation of its principal in the
process be maintained, with the right to collect 100% of the price
corresponding to the fraction of the property over which it has a life
usufruct. With costs. _____

_____ On pages 424/433, the attorney of the Province of Salta answers
the transfer. In the first place, he argues that the brief does not
comply with the formal requirements provided by law since it does not
indicate what is the damage that the challenged ruling would cause to
his rights. It affirms that the essential requirement for the
admissibility of the appeal is that the ruling being challenged causes
the appellant a certain and concrete injury or damage, and that this
is expressed, founded and accredited in the brief, a circumstance that
did not occur in the appellant's presentation. _

(CJS 39.628/18 – Province of Salta)


_____ The appellant argues that the brief filed contains a mere
discrepancy with the solution reached by the judge and that it does
not comply with the provisions of article 255 of the CPCCC, for which
reason the appeal should be dismissed. In the alternative, he proceeds
to refute the appellant's grievances and points out that it is false
that the appealed decision is based on the national expropriation law
and the jurisprudential precedents that apply it. He states that this
is not only false, but also innocuous, since the provincial
expropriation law coincides with the national law. He argues that the
subjects of the expropriation process are the expropriator and the
owner of the property subject to expropriation, which excludes the
usufructuary, who is not the owner of the property.
_____

_____ Finally, it states that the appellant's interpretation of
Article 16 of the expropriation regime is capricious and erroneous,
and therefore requests the rejection of the appeal. _____

_____ At page 434, the right of the executor of the Pereyra Rozas
estate to answer the transfer of the executor's estate was deemed to
have lapsed. _____

_____ At folios 450/455 the Attorney General of the Province renders
an opinion, and at folios 456 the case is called for resolution, and
the decision is final.


2nd) First of all, it is necessary to analyze the sufficiency of the
brief filed. In this regard, it should be recalled that the Supreme
Court of Justice of the Nation understood that when considering the
sufficiency or not of the expression of grievances, a broad criterion
must be followed as to its admissibility, since this is the one that
best harmonizes with a scrupulous respect for the right of defense
protected by the National Constitution, in order not to limit the
broadest and most complete controversy of the rights of the litigants,
since a mere technical defect could lead to unjust solutions to the
detriment of the litigants, who seek justice, seeking to be heard and
to be given the opportunity to exercise their legitimate right of
defense in trial (CSJN, Fallos, 306: 474). _____

_____ Based on this, the analysis of the procedural document attached
to folios 416/418 leads to the conclusion that it contains arguments
that can be considered as sufficient for the purposes of the present
review instance. _____

_____ 3rd) That expropriation for reasons of public utility is a
public law procedure by which the State, acting unilaterally, acquires
property from private parties for the fulfillment of a public utility
purpose and through the payment of a fair and prior compensation
(Diez, Manuel María, "Manual of Administrative Law, ["*Manual de*

(CJS 39.628/18 – Province of Salta)

_Derecho Administrativo_"], Plus Ultra, Buenos Aires, 1980, Volume 2,
page 277). Maiorano states that expropriation is the "legal institute
by virtue of which the State extinguishes the right of ownership over
an asset, with prior compensation, in order to allocate it to the
satisfaction of the public interest" (Maiorano, Jorge Luis,
"Cooperator of Law and Social Sciences,"["_Cooperadora de Derecho y
Ciencias Sociales_"], Buenos Aires, 1978, page 14).
_____ In our provincial public law, the
expropriation regime is regulated by Law 1336 and its amendments,
which in its Title V contains the procedural rules applicable to the
process in all its stages. From the so-called "expropriation
agreement" (art. 17), a case of amicable assignment in which no
contradictory claims justifying a judicial pronouncement are raised
and where the intervention of the court is exhausted with the granting
of possession of the property to the expropriator; the claim itself,
as a contradictory claim (art. 18), the evidentiary period (arts. 19
and 20), the pleadings (art. 21), the time limit for issuing the
sentence (art. 22), the verbal and summary procedure of the incidents
(art. 31) and a particular regime regarding costs (art.
32)._____

_____ According to the doctrine of this Court (cf. Volume 156:1021),
the expropriation proceeding constitutes a trial of special knowledge,
with specific rules closely linked to its purpose. It is undoubtedly
an institute belonging to public law, a matter on which there is no
longer any doctrinal or jurisprudential discussion. Its importance,
according to Maiorano, derives from the conflicting interests. While
the expropriator needs the asset to be transferred from the patrimony
of the expropriated party without delays that could hinder the
assignment to the intended use, the owner enjoys the protection
granted by the legal system so that the dispossession does not become
a spoliation (Maiorano, op. cit., p. 91)._____

_____ In this case, we are dealing with an expropriation procedure,
i.e. a procedure that is not of an adversarial nature and that
concludes with the granting of possession of the property to the
expropriating party. It is, as stated above, a case of amicable
assignment where it is not necessary to issue a judgment for the
purpose of ordering the transfer of the real estate (which would take
place in the case of a contentious expropriation). Thus, once the
property has been dispossessed, the Appraisal Court, with the summons
of the expropriated party, must be convened to determine the value of
the property. Only when the expropriated party does not accept the
appraised value will he have to resort to the courts to file a claim
for expropriation (article 18 of Law 1336). In other words, the
intervention of the judge "a quo" is exhausted with the granting of
possession and the subsequent actions are only limited to verify, if
applicable, the conclusion of the agreement and the payments made for

(CJS 39.628/18 – Province of Salta)

the agreed value (this Court, Volumes 156:1021; 170:1053; 177:945; 202:829, among others). _____

_____ 4th) That the issue focuses on determining whether the appellant has standing to intervene in the expropriation proceeding. In this sense, the material of the appellant's claims is limited to questioning his exclusion, since he argues that his condition of usufructuary of the expropriated property entitles him to intervene in the process and to receive the price based on the provisions of Section 16 of Law 2614. On the other hand, the Province denies such legitimacy based on Art. 30. _____

_____ 5th) That from the analysis of the referred antecedents, it is clear that the appellant is right. Indeed, one thing is the possibility of repelling the annihilation of the real right of usufruct caused by the expropriation, and another thing is the legal standing to discuss or claim compensation for the damage caused by such power to the holder of the right. _____

_____ The aforementioned article 30 of Law 2614 establishes the unenforceability of the expropriation with respect to third parties, and provides that no right of such third parties, whether over the expropriated property or capable of being enforceable thereon, is capable of hindering the expropriation. The legal solution clearly makes the collective needs to be satisfied through this institute prevail over any individual interest. In such a case, in view of the confrontation of the interests at stake, the law sacrifices individual rights and stipulates that the rights of the third party are considered transferred from the thing to its price or to the compensation, leaving it free of any encumbrance. _____

_____ However, since the usufruct constituted in favor of the appellant refers to a larger portion of the property to be expropriated, his participation in the determination of the price or compensation to be paid is justified in this case, and his claim for the value of such portion to be discriminated in the appraisal is reasonable, since it is the only part of the property encumbered with such real right, since the succession of the registered owner has full dominion over the rest of the property. _____

_____ On the other hand, if it is taken into account that the valuation made by the Appraisal Court is unique and cannot be repeated during the trial (art. 19), it is in that instance where the usufructuary must assert his right to protect his economic interest in the determination of the fair price. _____

_____ Indeed, if the compensation must cover the objective value of the respective asset, i.e. that which it would have had in a free contracting, it is not reasonable to exclude the usufructuary from its

(CJS 39.628/18 – Province of Salta)

determination, neither at the present stage, nor at the hearing that may be set for the purpose of determining the compensation value (art. 18). _____

_____ Even from the point of view of the expropriator, who must compensate not only the objective value of the property, but also the damages that are a direct and immediate consequence of the expropriation, it is useful and convenient the intervention of the usufructuary in the process, so that he can determine the total value to be paid for the expropriated property, estimating all the circumstances that may influence its appraisal, and thus avoid an undue profit of any of the parties.
_____

_____ Finally, with regard to the solution proposed, it is important to point out that the usufructuary, whose rights will be affected by the expropriation, deserves the same protection and treatment as the bare owner with regard to the portion affected by the real lien, and must, consequently, take part in the procedure for determining the price. ____

_____ Furthermore, this solution, in addition to being the one that is most consistent with the due respect for the rights of property and defense in court, is also established in other legislations in Argentina and abroad, among which it is worth mentioning the provisions of Laws 5708, 1477 and 7966 of the provinces of Buenos Aires, Mendoza and San Juan respectively, legislations in which the intervention of the third party injured party is allowed for the determination of the price or compensation. In addition, such criterion was accepted by the Supreme Court of Justice of the Nation (see Judgments 115:145; 183:147). _____

_____ 6th) Consequently, the appeal filed on page 411 should be upheld and, in its merit, the challenged resolution should be revoked, and the appellant's intervention should be admitted to the extent of his interest. With costs in the order in which they were incurred since no recklessness was found (section 15 of the C.P.C.C.A.).
_____

Dr. **Guillermo Alberto Catalano**, Dr. **María Alejandra Gauffin**, Dr. **Ernesto R. Samsón** and Dr. **María Soledad Fiorillo**, said:
_____

_____ 1st) That we dissent from the legal solution proposed in the vote that opens this resolution for the following reasons.

_____ 2nd) That Facundo Solá Avellaneda filed an appeal at page 411 against the interlocutory order of pages 406/408, which, by granting the appeal for revocation filed by the executor of the estate of César León Pereyra Rozas, annulled the penultimate paragraph of the order of

(CJS 39.628/18 – Province of Salta)

page 159 and excluded Facundo Solá Avellaneda from the expropriation proceeding. _____

_____ In order to rule as she did, the lower judge considered that the "sub lite" is an expropriation settlement proceeding that lacks contradictory nature and that concludes with the granting of possession of the property to the expropriating party, remaining -she pointed out- the integration of the Appraisal Court, with summons of the expropriated party, in order to fix the value of the property.
_____

_____ In such context, he stated that the expropriation relationship is formed exclusively between the expropriator and the expropriated party, as owner of the property to be expropriated. He explained that although the latter could have carried out acts of disposition, constituting rights over the property -as occurred in this case-, Mr. Solá Avellaneda, in his capacity as legatee of usufruct for life, lacks standing to intervene in this expropriation agreement. In this sense, he understood that the expropriation not only has the consequence of transferring the domain to the expropriator but also to terminate the life usufruct in favor of the third party.
_____ At the same time, the judge cited sections 27 and 30 of Law 2614 (Original 1336, enacted on 08/18/1951, promulgated on 08/24/1951 and published in the Official Gazette No. 4. 025, dated 03/09/1951), insofar as they establish that "The action arising from any damage caused to third parties by lease agreements or other agreements entered into with the owner shall be heard through ordinary channels, in a separate lawsuit" and that "No action by third parties may prevent the expropriation or its effects. The rights of the claimant shall be deemed transferred from the thing to its price or to the compensation, and the latter shall be free of all encumbrances", respectively. _____

_____ Finally, the judge concluded that only the executor of the estate should intervene in the proceedings, and that Mr. Facundo Solá Avellaneda should claim for the damages suffered by the appropriate means. _____

_____ In expressing his grievances (fs. 416/418), the appellant argues that the judgment in question shows a conceptual confusion on the interrelation between the different rights in rem.
_____

_____ He states that the judgment is based on sections 27 and 28 of the National Law, which are not relevant to the case, since the Province of Salta has issued its own regulation -Law 2614- which, in his opinion, was disregarded by the lower judge.
_____

(CJS 39.628/18 – Province of Salta)

_____ Mentions Section 4 of the provincial law, indicating that "all property" may be subject to expropriation and that the compensation for the value of such property must be paid to the holder of the real rights over the property. He says that according to article 16 of the referred regulation, the expropriator must pay directly not only to the owner but also to the "holder of the respective rights", interpreting that the latter is the holder of "the real rights over the thing", recalling that in the usufruct the property is dismembered, where the testamentary executor represents the bare property, while his principal is the holder of the usufruct, corresponding -he says- the participation in the expropriation process to both parties. _____

_____ In short, he emphasizes that the usufructuary is not a third party, but by externalizing a real right over the thing, which "has also been expropriated together with the bare ownership", he has the right to participate in the process, negotiate the collection and directly receive the price corresponding to the expropriated real right. _____

_____ 3rd) That the purpose of the present proceedings is to materialize the so-called expropriation agreement or amicable assignment. In this regard, such figure has been considered an unnamed contract of administrative law, due to the presence of a state public legal entity, due to the applicable regulatory regime, since this institute is one of the ways to make expropriation effective, and due to the purpose it tends to satisfy: public utility (see in this regard, Marienhoff, "Administrative Law Treatise", ["*Tratado de Derecho Administrativo*"], Abeledo Perrot, 1980, Volume IV, pp. 316 et seq.; Spisso, Rodolfo R., "Compensation for Damage Caused by the Disposal of an Asset Subject to Expropriation", ["*Indemnización por Daños Causados a Raíz de la Desafectación de un Bien Sujeto a Expropiación*"], LL, 1987-C, 290; Maiorano, Jorge Luis, "Expropriation in Law 21,499" ["*La Expropiación en la Ley 21.499*"], "Cooperator of Law and Social Sciences,"["*Cooperadora de Derecho y Ciencias Sociales*"], Buenos Aires, 1978, page 96, among others). _____

_____ At folios 12/14 there is evidence of the deposit of the amount provided for by Section 17 of the Expropriation Law, having been ordered at folios 92 to be transferred to an account to the order of the Civil and Commercial Court of First Instance of Eleventh Nomination, for Case No. C-60.685/00, entitled "Pereyra Rozas, César o Pereyra Rozas, César León - Testamentary Succession".

_____ In this context, the appellant, in his capacity as legatee of a usufruct for life with respect to a fraction referring to cadastral registration number 112,171, subject of the current expropriation proceeding, requested to be included as a party in the proceeding, a request that was favorably granted by the court on page 159. In this

(CJS 39.628/18 – Province of Salta)

respect, it is illustrative to bear in mind the certified copy of the
will at fs. 136/148 and the judgment of the First Chamber of the Civil
and Commercial Court of Appeals copied at fs. 149/153, which
recognized such legacy and ordered the probate judge to reformulate
the partition and adjudication operations in accordance with the
rights invoked by Mr. Solá Avellaneda. _____

_____ At page 163, it was ordered the referral of the proceedings to
the Appraisal Court of the General Directorate of Real Estate for the
purposes of the appraisal provided for in sections 13 and 37 of Law
1336, as amended. _____

_____ Under these circumstances and according to the considerations of
Record No. 502 of the Appraisal Court of the Province (folios.
374/376) it can be seen that when the members of said body met to
discuss the reports presented by the official and party appraisers,
with the attorney of the expropriated party and the representative of
the legatee of life usufruct also present, it was resolved to forward
the file to the Court of Appraisals of the Province of Buenos Aires,
it was resolved to refer the file to the court of origin in view of
the finding of "conflicting interests and disagreements between the
expropriated and the usufructuary, as to the appropriateness of the
appraisal of the area on which the right of usufruct is based
separately from the rest of the property", requiring that the
disagreement be clarified in court (v. last paragraph of the recitals
in the preamble of the decision). last paragraph of the recitals of
said minutes). _____

_____ 4th) That all the above mentioned, allows us to advance that the
decision of the judge a quo to exclude from the expropriation process
the legatee of usufruct for life is in accordance with the law.
_____

Indeed, the unequivocal terms of the local expropriation law provide
that "The action arising from any damage caused to third parties by
lease agreements or other agreements entered into with the owner shall
be heard through ordinary channels, in a separate lawsuit" (article
27) and that "No action by third parties may prevent the expropriation
or its effects. The rights of the claimant shall be deemed transferred
from the thing to its price or to the compensation, the latter being
free of all encumbrances" (article 30).
_____

_____ As it has been reiterated by the Supreme Court of Justice of the
Nation, it is a rule of interpretation of laws that judges must abide
by its text, when it is clear and leaves no room for doubt, and that
when the terms of the law are clear it does not correspond to the
judges to deviate from its purposes under the pretext of avoiding the
real or presumed deficiencies that could result from its application

(CJS 39.628/18 – Province of Salta)

(Judgments, 326:1778; this Court, Vol. 216:471, among many others).
_____

_____ Likewise, it should not be overlooked that there are two parties
to the expropriation relationship; the expropriated and the
expropriating party, and that the law intends to prevent third parties
from hindering the development of the process by means of filings,
being able to claim the compensation of damages and losses that as a
direct and immediate consequence of the dispossession, by filing a
separate lawsuit (Casas, Juan Alberto; Romero Villanueva, Horacio J.,
"Expropriation," ["*Expropiación*"], Astrea, Buenos Aires, 2005, p.
125). _____

_____ 5th) That this being said, it must be emphasized that the
expropriation proceeding has not been filed in this case, but rather
the proceedings are in the stage of the so-called expropriation
settlement or friendly assignment. Precisely, the proceedings before
the Appraisal Court of the Province (see fs. 374/378), as well as the
First Testimony of Public Deed No. 219 drawn up by notary public María
Elena Zenteno Goytia (fs. 358/373) -which was signed by the notary
public María Elena Zenteno Goytia (fs. 358/373). 358/373) -whose
purpose was to record the debates carried out within the
aforementioned administrative body in relation to the analysis of the
expert reports of the parties to determine the value of the
expropriated property-, The expert's report, which was intended to
record the debates carried out within the administrative body in
relation to the analysis of the expert reports of the parties to
determine the value of the expropriated property, shows that the
fraction of the registration number of the bequest of life usufruct
invoked by Mr. Solá Avellaneda is a piece of land that is not yet
divided, that is, it does not have a separate registration number from
the rest of the expropriated area, and its beneficiary is seeking a
different valuation in relation to the registration number of the
larger area. This issue was, in short, the one that triggered the
suspension of the action of the competent technical body and the
referral of the proceedings to the court of origin, clearly preventing
the owner of the property -the Pereyra Rozas estate- from being
offered the maximum value that, in total compensation, he may deem
appropriate (article 13 of the provincial Expropriation Law).
_____

_____ Therefore, since the amicable proceeding, which will eventually
avoid the expropriation trial, has not been closed, the reasonableness
of the claim filed by the legatee, who at present has not demonstrated
his own procedural standing to be sued originally in the expropriation
proceeding to which he intends to join, either individually or jointly
with the party to whose position he adheres, is not evident. This is
so, since the bequeathed portion, it should be reiterated, does not

(CJS 39.628/18 – Province of Salta)

have a separate registration from the rest of the expropriated area. _____

_____ In this respect, it is relevant to point out that clause four of the aforementioned will states that the executor is authorized to delimit the fraction of land bequeathed, and the appellant has not provided any evidence of having carried out such procedure, which was clearly an imperative of his own interest, after the recognition of his right in accordance with the judgment copied on pages 149/153. _____ _____ Thus, all the foregoing leads to consider that the claim of the legatee for life usufruct and its consequent patrimonial claim make up an issue that -in this case- must be resolved in a procedural sphere outside the one inherent to the expropriation. _____

_____ To conclude, then, the current procedural condition of the legatee of the usufruct for life in question does not entitle him to intervene in this expropriation proceeding, without prejudice to his right to claim, through the promotion of another proceeding, the payment of eventual damages, transferring his action as a third party to the amount of the price obtained or the compensation, in the event of failure of the settlement and the promotion of the expropriation proceeding. _

_____ 6th) Finally, it is necessary to clarify that what is being decided here is not related to the pronouncement of this Court recorded in Volume 78:931, where the request for intervention in the expropriation process of the creditor of one of the heirs -who renounced to the succession- of the owner of the property subject to such expropriation was admitted, since it was a case expressly provided for by art. 3351 of the Velez Code, which authorizes the creditor of the renouncing party to exercise the succession rights of the former until the concurrence of what is due to them, as long as the state of community of heirs lasts. _____

_____ Moreover, although the Supreme Court of Justice of the Nation has admitted the intervention of third parties in the expropriation proceeding for the sole purpose of establishing the damage caused by the expropriation, with a view to compensating the damages that such third parties may suffer (cfr, Judgments, 115:145; 245:73; in re "Salvia, S.A. c. Gobierno Nacional", LL, 1979-C, 444), in this case there is no purpose in providing for such action, since such participation cannot be independent or separate, nor can it reverse the state of the proceeding (CSJN, Judgments, 211:1013). On this point, the aforementioned procedural documents show that the position invoked by the legatee before the Appraisal Court implies the defense of an interest of his own and opposed not only to the position expressed by that body but also in relation to the representative of the executor of the estate. Therefore, it is inappropriate to accept

(CJS 39.628/18 – Province of Salta)

the procedural action of the appellant to the extent that his interest is incompatible with the position of the expropriated party in the proceedings, going beyond his possible procedural condition of simple third party adherent (cfr. Palacio, "Civil Procedural Law", ["*Derecho Procesal Civil*"], Abeledo Perrot, 1977, Volume VI, page 339), and, as already stated, he must file a separate action.
_____

_____ 7th) In view of the foregoing, the appeal filed on page 411 should be rejected and, in its merit, the judgment of pages 406/408, with costs in the order caused (article 15, C.P.C.C.A.)
_____

_____ As a result of the foregoing vote, _____

_____THE COURT OF JUSTICE, _____

_____RESOLVES: _____

_____ I. TO SUSTAIN the appeal of fs. 411, in the terms set forth in the 6th recital of the majority vote. Costs in the order caused.
_____

_____ II. ORDER to be recorded and notified. _____

(Esq.: Dr. Sandra Bonari, Dr. Guillermo Alberto Catalano -President-, Dr. María Alejandra Gauffin, Dr. Teresa Ovejero, Dr. María Alejandra Gauffin, Teresa Ovejero and Dr. Guillermo Alberto Catalano -President-. Cornejo, Dr. Ernesto R. Samsón, Horacio José Aguilar -Judges and Judges of the Court-, Dr. María Soledad Fiorillo, Dr. José Gerardo Ruíz and Marcelo Ramón Domínguez -Judge and Judges of the Chamber called to integrate-. Before me: Dr. María Jimena Loutayf -Secretary of the Acting Court-).

EXHIBIT 13

Documento

---

**Voces:** ADQUISICION DEL DOMINIO ~ CONSTITUCION NACIONAL ~ DERECHO DE PROPIEDAD ~ DERECHOS CONSTITUCIONALES ~ ESTADO NACIONAL ~ EXPROPIACION ~ EXPROPIACION INVERSA ~ INDEMNIZACION ~ INTERES PUBLICO ~ INTERPRETACION ~ POSESION ~ PRESCRIPCION ~ PRESCRIPCION ADQUISITIVA ~ PRESCRIPCION DECENAL ~ PRESCRIPCION LIBERATORIA ~ PRINCIPIOS CONSTITUCIONALES ~ UTILIDAD PUBLICA

**Tribunal:** Suprema Corte de Justicia de la Provincia de Mendoza, sala I(SCMendoza)(SalaI)
**Fecha:** 26/09/1995
**Partes:** Tohmé, Elías c. Dirección Provincial de Vialidad.
**Publicado en:** LA LEY1996-D, 280 - DJ1996-1, 1307
**Cita:** TR LALEY AR/JUR/2026/1995

**Sumarios:**
1 . - El Estado no puede asumir el carácter de poseedor con aptitud para usucapir mientras no cumpla con la exigencia constitucional del resarcimiento al interesado, pues la afectación legislativa por causa de utilidad pública implica un claro reconocimiento de la propiedad del particular, aun en casos en que la posesión haya sido otorgada por vía judicial y hasta tanto no se haya transferido el bien expropiante.
2 . - La adquisición del dominio sobre el bien expropiado por el Estado está subordinada al pago de la indemnización previa determinada en la sentencia definitiva del juicio expropiatorio. Sólo a partir de ese momento puede empezar a correr el plazo de prescripción.
3 . - El Estado no puede hacer valer los efectos de la prescripción liberatoria si el crédito por resarcimiento derivado de la expropiación no ha sido fijado por sentencia o acuerdo de partes, momento a partir del cual cabe computar el plazo de prescripción decenal establecido en el art. 4023 del Cód. Civil, dado que recién entonces existe un crédito a favor del expropiado.
4 . - Debe revocarse la sentencia que computó el plazo de prescripción del art. 4023 del Cód. Civil desde la toma de posesión del bien expropiado sin haberse pagado la indemnización, pues consagra de tal modo una expropiación sin indemnización previa, en contradicción con los principios del art. 17 de la Constitución Nacional, criterio este sustentable tanto para los supuestos de prescripción adquisitiva como liberatoria.
5 . - Mientras la indemnización expropiatoria no se ha fijado, el curso de la prescripción no comienza a corrrer en la expropiación inversa o irregular (Del voto de la doctora Kemelmajer de Carlucci).
6 . - Como la relación expropiatoria se constituye con la declaración de utilidad pública y se extingue con el pago de la indemnización que se fije por acuerdo de partes o sentencia definitiva, quedando, por tanto, sometida íntegramente al derecho público mientras no se extinga aquélla, el Estado no puede adquirir el dominio del bien o cosas afectadas a expropiación por las vías normadas en el Cód. Civil. De ahí que la invocación de la prescripción adquisitiva sea inoficiosa mientras subsista la mencionada relación iuspublicística (Del Voto de la doctora Kemelmajer de Carlucci).
7 . - Dada la naturaleza de derecho público de la expropiación en la interpretación de los derechos y obligaciones que emergen de esa relación debe darse prevalencia a los principios constitucionales, en especial los comprendidos en el art. 17 de la Constitución Nacional, reservándose la normativa civil común en forma subsidiaria y siempre que no colisione con las garantías que los primeros consagran.

**Texto Completo:**
Mendoza, setiembre 26 de 1995.

1ª ¿Es procedente el recurso de casación interpuesto? 2ª En su caso ¿qué solución corresponde? 3ª Costas.

1ª cuestión. -- El doctor Romano dijo:

I. Se interpone recurso extraordinario de casación en contra de la resolución dictada por la Excma. Cámara Primera de Apelaciones en lo Civil de la Primera Circunscripción Judicial y que corre a fs. 175/178 de los autos N° 121.101, caratulados: "Tohmé, Elías c. Dirección Provincial de Vialidad por Expr. Inversa", alegando que dicha resolución ha interpretado erróneamente las normas legales atinentes al caso, encuadrando el supuesto en el

---

inc. 2° del art. 159 del Cód. Procesal.

Concretando sus agravios, sostiene el recurrente que la queja persigue la casación del decisorio, en cuanto se interpreta erróneamente los arts. 17 de la Constitución Nacional, 16 de la Constitución Provincial, arts. 3962, 4015, 4023 del Cód. Civil determinando que se convalide un fallo adverso a sus reclamos.

Conforme a los antecedentes de la causa, el actor en la causa principal, promovió en aquélla, demanda por expropiación inversa, invocando la afectación de terrenos de propiedad por ley de utilidad pública 3017, la ocupación efectiva del bien y la omisión de pago por parte de la autoridad administrativa. Adujo que en la instancia previa ante la administración, no obstante admitirse inicialmente el reclamo, fue posteriormente negado, alegando la prescripción de la acción.

Al contestar la demanda de tal forma promovida, la Dirección Provincial de Vialidad, en su carácter de entidad demandada, opuso la defensa de prescripción de la acción, fundada en el transcurso del plazo de diez años para el ejercicio de la acción personal, a contar desde la desposesión, hasta la interposición de la demanda judicial.

En ambas sentencias anteriores, se hizo lugar a la defensa aludida compartiendo el criterio de la excepcionante. La sentencia definitiva se funda en que en la expropiación irregular, el derecho del expropiado solamente consiste en el pago de la indemnización constituyendo un derecho de naturaleza personal sujeto a la prescripción decenal; que la prescripción fue oportunamente deducida, teniendo en cuenta que los dictámenes en sede administrativa, constituyen una labor de colaboración técnica y jurídica, no vinculante, por lo cual, el dictamen favorable a la iniciación de la instancia administrativa, no impidió la posterior objeción respecto de la prescripción de la acción y la resolución pertinente en aquella sede.

Se alza el recurrente en esta sede contra este pronunciamiento, fundando la queja casatoria en tres aspectos a saber:

a) no corresponde la aplicación al caso, del art. 4023 del Cód. Civil, de prescripción liberatoria decenal, por cuanto el Estado ha afectado un inmueble a fin de utilidad publica, sin observar el recaudo constitucional de la previa indemnización. Que si la indemnización previa no está fijada por acuerdo de partes, ni por pronunciamiento judicial, no puede existir una deuda exigible susceptible de prescribir.

b) Que la oportunidad para oponer la prescripción, debió serlo, necesariamente, ante la apertura del reclamo administrativo, por lo que el planteo posterior es extemporáneo.

c) Que el reconocimiento de la obligación por parte del ente expropiante en sede administrativa, ha provocado la interrupción de la prescripción corrida, siendo indiferente que el plazo pertinente ya se hubiera cumplido.

La parte demandada como el Fiscal de Estado, se pronuncian por el rechazo del recurso interpuesto.

II. Análisis de los agravios

En orden a la importancia de los agravios propuestos a decisión de la sala, se impone el tratamiento en primer lugar del referido a la posibilidad de aplicación al caso, del término de prescripción prevista en el art. 4023 del Cód. Civil, aun cuando con ello se altere el seguido por el recurrente.

La materia reviste importancia no sólo por las consecuencias derivadas de pretender la expropiación por el Estado de un inmueble de particulares, en forma irregular y sin pago de una justa indemnización, sino también por encontrarse comprometida en el tema, expresas normas constitucionales y comunes (art. 17, Constitución Nacional; 16, Constitución Provincial; 2511, Cód. Civil).

En efecto, dada la naturaleza de derecho público del instituto de la expropiación, en la interpretación de los derechos y obligaciones que emergen de esa relación, entiendo que debe darse siempre prevalencia a los principios constitucionales, en especial los comprendidos por el art. 17 de la Constitución Nacional, reservándose la normativa civil común, en forma subsidiaria y siempre que estas últimas no colisionen con las garantías que las primeras consagran.

La conclusión precedente, adquiere particular trascendencia en nuestro caso, en que la ley provincial 1447/75,

si bien en su capítulo I del Título IV, regla el supuesto de la expropiación inversa, no prevé término alguno de prescripción de esta acción, a diferencia de la ley nacional 21.499 que la regula en su art. 56.

La resolución recurrida, enrolándose en la posición doctrinaria que califica a la acción por expropiación irregular por su finalidad meramente indemnizatoria, como acción personal (entre otros Marienhoff Miguel S. y Villegas Basavilbaso Benjamín, con cita de sus obras), se respeta aun cuando no se comparta, entiende operada en el caso la prescripción por aplicación de lo dispuesto por el art. 4023 del Cód. Civil, computando el plazo allí previsto, desde el día de la ocupación del inmueble por parte del Estado.

Tengo para mí que, si bien la única y exclusiva finalidad de esta acción de expropiación irregular ejercida por el titular del dominio, cuando ha existido afectación de utilidad pública (cuando no la hay, no habrá por qué diferenciar al Estado de cualquier particular en las acciones protectoras de la posesión y del dominio) es obtener la justa indemnización, como lo entiende la citada doctrina, no es menos cierto que al Estado, en tal supuesto, no le es dado asumir o reconocerle el carácter de poseedor con aptitud para usucapir, mientras no cumpla con la exigencia constitucional del resarcimiento a disposición del interesado. Es que el expropiante, cuando ha existido afectación legislativa por causa de utilidad pública, implica un claro reconocimiento de la propiedad del particular, aun en casos en que la posesión haya sido otorgada por vía judicial, y hasta tanto no se haya transferido el bien al expropiador. Emerge como elemento esencial, la justa indemnización como componente de la garantía constitucional.

De igual modo, el Estado no puede hacer valer los efectos de la prescripción liberatoria, tal lo admitido en la resolución criticada, si el crédito por resarcimiento no ha sido fijado, resultando ello de una sentencia o acuerdo de partes. Recién entonces cabe considerar la existencia de un crédito en favor del expropiado, como derecho personal exigible; y es, recién desde entonces, que cabe computar el plazo de prescripción decenal establecido por el art. 4023 del Cód. Civil.

Este y no otro, es el criterio sustentado por nuestra Corte Suprema de Justicia, al declarar la inconstitucionalidad del art. 56 de la ley 21.499, por mayoría en la causa "Aranda Camacho, Carlos c. Dirección Nacional de Vialidad s/expropiación irregular" en fecha 7 de abril de 1992 y por remisión a una causa anterior (Bianchi c. Dirección Provincial de Vialidad de Córdoba, 12/12/85) sentara que "la adquisición del dominio sobre el bien expropiado por el Estado, se halla subordinada al pago de la indemnización previa determinada en la sentencia definitiva del juicio expropiatorio y que sólo a partir de ese momento puede comenzar a correr el término de prescripción".

Entre los precedentes citados en el fallo, se menciona el recaído en la causa "Acevedo de Cámpora c. Dirección Nacional de Vialidad" en fecha 5 de diciembre de 1973, con distinta composición a la actual y que, con referencia concreta de la prescripción liberatoria, por entonces sostuvo "que siendo la indemnización condicionante del desapropio (art. 17, Constitución Nacional), representa la contrapartida del derecho real a adquirir por el Estado, dentro de una misma relación jurídica, y por ende no puede ser calificado como un derecho personal prescriptible a los diez años" (consid. 10); y que "aquel derecho al cobro del valor del objeto expropiado ha de calificarse como crédito ilíquido del expropiado que, a falta de acuerdo, sólo puede ser determinado por sentencia judicial ...que es inexigible, por tanto hasta que su valor no sea concretado en una suma de dinero líquida. Esta inexigibilidad hace que, entre tanto, aquel derecho no pueda extinguirse por prescripción decenal, desde que ésta sólo principia en el momento en que el crédito ilíquido se torna cantidad cierta" (consid. 11) (Fallos: 287:387).

Estos fallos en donde se sienta un criterio contrario a la prescriptibilidad de la acción de expropiación inversa, en tanto jurisprudencia concreta, obran como definitorios en el ocurrente, imponiendo su acatamiento, por priorizar el concepto de seguridad jurídica. Al respecto ha dicho esta sala en anteriores pronunciamientos que "si bien las sentencias de la Corte Nacional no son obligatorias para los tribunales inferiores fuera de las causas en que se dicten, la autoridad de tales pronunciamientos, unida a razones de economía procesal, impone acatarlos, evitándose con ello el dispendio que implica la reiteración insustancial de las mismas cuestiones (L.S., 191-237; 191-245; 202-275; 205-367, entre otros).

Como conclusión, entonces, el recurso interpuesto en esta instancia, resulta procedente, debiendo revocarse la sentencia que computó el plazo de prescripción del art. 4023 como de la acción expropiatoria inversa, desde la toma de posesión del bien, sin haberse pagado la indemnización, consagrando de tal modo una expropiación sin indemnización previa, en contradicción con los principios del art. 17 de la Constitución Nacional (conf. Fallos CS: 291:507 --La Ley, 1975-C, 303--), criterio éste sustentable tanto para los supuestos de prescripción adquisitiva como liberatoria, como ha sido materia de la defensa opuesta por la demandada. Así voto por esta primera cuestión.

La doctora Kemelmajer de Carlucci, en voto ampliatorio, dijo:

Aunque adhiero a la solución propuesta por mi distinguido colega de sala doctor Romano, la importancia de la cuestión planteada, el apartamiento de las enseñanzas de conspicua doctrina administrativa argentina, la seriedad de los planteos de los profesionales de ambas partes y los medulosos fallos de las instancias inferiores, me obligan a expresar mi opinión personal a través de este voto ampliatorio.

I. Secuencia temporal.

Considero indispensable sintetizar la secuencia temporal en la que se desarrolló la relación de derecho público que unió a las partes, para ello, pondré en orden algunas fechas que pueden tener incidencia en la cuestión a resolver.

1. 4/8/1964: sanción de la ley 3017 que declara de utilidad pública la construcción del aeroparque ciudad de Mendoza y dispone la afectación de los terrenos necesarios, a fijarse por acto posterior.

2. 19/10/1964: fecha de iniciación de los trabajos (fs. 6, expte. administrativo 1245).

3. 30/12/1965: res. 2520 de la Dirección Provincial de Vialidad que declara la utilidad pública a los efectos de su expropiación los terrenos necesarios para la construcción de los accesos al aeroparque de la ciudad de Mendoza (fs. 12 expte. N° 288 D/1986). Por el art. 2° se autoriza al Departamento Técnico y Asesoría Letrada para que en cada caso proceda a iniciar los trámites de expropiación pertinentes.

4. 6/2/1986: presentación de Elías Tohmé mediante apoderado a la Dirección de Vialidad Provincial iniciando procedimiento administrativo de expropiación indirecta y solicitando el pago de la indemnización expropiatoria (fs. 1/3, expte. N° 288 D/1986).

Sin embargo, a fs. 19 del mencionado expediente está agregado un escrito con sello de recepción de Mesa de Entradas del 10/10/1985, por la que el actor se presenta mediante otro apoderado, reconoce que las obras están concluidas y solicita se le pague la indemnización correspondiente.

5. 6/2/1986: dictamen del Jefe del Departamento Catastro Vial que dice: "El requerimiento expropiatorio de fs. 1 es procedente, por lo que se ha formado la presente pieza administrativa con el objeto de obtener la transferencia de la fracción que fuera afectada a la construcción..." (fs. 11 expte. N° 288 D/1986).

6. 31/3/1986: remisión del expediente a la Comisión Valuadora General de la Provincia para que practique la estimación del valor del inmueble (fs. 42 expte. N° 288 D/1986).

7. 3/10/1986: el Departamento de Conservación informa que no se tiene constancia de la fecha de la desposesión.

8. 10/10/1986: informe del asesor letrado que dice: "Si no tenemos constancia de la fecha de la desposesión, se deberá informar por lo menos la fecha de la ejecución de la obra, a cuya fecha indudablemente se produjo de hecho la desposesión. Dado que la fecha de declaración de utilidad pública data de más de 20 años, solicito que una vez que se informe lo indicado en el párrafo precedente, vuelva a esta Asesoría a fin de verificar si no ha prescripto el derecho indemnizatorio reclamado por el solicitante a fs. 1" (fs. 58, expte. N° 288 D/1986).

De allí en más comienza la legítima persecución de la Asesoría Letrada de la Dirección Provincial de Vialidad, por todas las secciones posibles, sobre datos más o menos precisos sobre el momento de la desposesión o de la ejecución de la obra.

Documento

9. 22/4/1965: informe del Departamento de Conservación que especifica que el camino de acceso quedó abierto el 15/7/1966.

10. 31/3/1987: res. 313 de la Dirección Provincial de Vialidad que rechaza la petición de fs. 1 y 19 por haber transcurrido con exceso los diez años en que prescriben los derechos indemnizatorios de los propietarios.

11. 21/4/1987: iniciación de los autos N° 121.101 Tohmé Elías c. Dirección Provincial de Vialidad p/Expropiación inversa.

II. Posición de la expropiante.

La Dirección Provincial de Vialidad ha sostenido desde las instancias inferiores que la acción para reclamar el pago de la indemnización está prescripta porque:

1. La acción intentada es una acción personal; por tanto, prescribe a los 10 años.

2. El plazo comienza a correr desde la desposesión operada el 19/10/1964.

3. Desde la desposesión han transcurrido 20 años; la Dirección Provincial de Vialidad tiene la posesión pública y pacífica del inmueble, por lo que también ha operado la prescripción extintiva.

III. Posición de la actora

La actora ha sostenido que la acción no está prescripta porque:

1. La prescripción debió ser opuesta en la primera oportunidad (art. 3962). El expediente administrativo era un trámite necesario y, en la primera presentación, el 6/2/1986, la Dirección Provincial de Vialidad reconoció que el derecho era procedente.

2. Constitucionalmente, corresponde que la indemnización sea previa. Por eso, el plazo de prescripción no puede comenzar a correr si no hay suma liquidada, convenida o fijada por sentencia.

3. La presunta prescripción adquisitiva estaría interrumpida por el reconocimiento de la demandada, que el 30/12/1965, con fecha de salida el 11/1/1986, dicta la resolución 2520 por la cual autoriza al departamento técnico para que en cada caso y cuando las necesidades así lo exijan proceda a iniciar los trámites de expropiación respectiva. El pedido administrativo de indemnización se efectúa el 28/11/1985, o sea, cuando aún no habían transcurrido los 20 años.

IV. Los argumentos del juez de primera instancia

1. La doctrina y jurisprudencia que coinciden en hacer correr el plazo de diez años a partir de la determinación judicial o convencional de la indemnización expropiatoria sólo rige en la expropiación directa, pero no en los supuestos de expropiación inversa, en que tal juicio no existe. La aplicación de la solución a la expropiación inversa vulnera los principios básicos de la prescripción, fundada en la seguridad jurídica y en la consolidación definitiva de los derechos.

2. En el caso, no existió juicio de expropiación, por lo que es correcta la tesis de Villegas Basavilbaso que hace correr el plazo decenal desde la desposesión.

3. En el caso, la petición administrativa se realizó vencidos con exceso el plazo de diez años contados desde la desposesión.

4. Aunque la res. 2520 del 30/12/1975 fuese interruptiva, el plazo de diez años estaba prescripto al momento de efectuarse la reclamación administrativa (existe un error de máquina, la resolución es de 1965).

5. El hecho de que la administración le hubiese dado trámite a ese expediente no ha implicado la caducidad del derecho a oponer la prescripción, toda vez que la procedencia o no del reclamo dependía de los datos que se pudiesen obtener.

6. El señor Tohmé no agotó las vías administrativas, no obstante lo cual la demandada, en beneficio del actor, ha permitido que la cuestión se planteara jurisdiccionalmente y es aquí, en la primera oportunidad, en que se

opone la excepción de prescripción reiterando la posición asumida al dictar el acto administrativo.

7. La prescripción adquisitiva es también procedente pues desde la toma de posesión (19/10/1964) hasta la fecha de interposición del reclamo administrativo (29/11/1985) también habían transcurrido los 20 años. La res. 2520 no es interruptiva del curso de la prescripción pues no reconoce derechos particulares o específicos del actor.

V. Los argumentos de la Cámara de Apelaciones

En los límites de la queja, la Cámara de Apelaciones coincidió con el juez de primera instancia y expresamente argumentó que:

1. La acción para reclamar el pago de la indemnización es de naturaleza personal, desde que el desposeído no puede intentar la acción reivindicatoria.

2. La excepción de prescripción fue oportunamente introducida al contestar la demanda en sede jurisdiccional.

VI. Mi punto de partida

1. Coincido con mi distinguido colega de sala que la interpretación debe comenzar por la Constitución Nacional y que la expropiación es una figura regida, fundamentalmente, por el derecho público.

2. Adhiero también al principio que, como regla, no cabe apartarse de la jurisprudencia reiterada y constante de la Corte Nacional, sobre todo si en el tema a decidir está implicada la interpretación de la Constitución Nacional.

VII. La naturaleza real o personal de la acción para reclamar el pago de la indemnización

Una vieja jurisprudencia y doctrina sostuvo que cuando el Estado ocupa un inmueble al que ha declarado de utilidad pública sin haber pagado previamente la indemnización, la indemnización sustituye al derecho de reivindicación; consecuentemente, la acción no se extingue por la prescripción liberatoria; el Estado sólo puede invocar la usucapión si se han cumplido sus requisitos (ésta era, en definitiva, la posición de Legon, Fernando, "Tratado integral de la expropiación pública", Buenos Aires, V. Abeledo, 1934, p. 181 y sigtes.; Ver fallos de la Cám. Civ. de Apelaciones de la Capital publicados en JA, 61-469; JA, 1966-V-518).

Sin embargo, como lo han señalado los jueces de grado, la doctrina nacional más prestigiosa entiende que la acción para reclamar el pago de la indemnización es de naturaleza personal. El administrado, cuando media declaración de utilidad pública, no tiene acciones para exigir la restitución del inmueble ocupado, sino exclusivamente el pago de una suma de dinero, típica obligación que se canaliza en juicio a través de acciones de naturaleza personal.

La jurisprudencia de la Corte Nacional, que luego comentaré, no se opone a este principio básico; sin embargo, extrae consecuencias diferentes a las de los autores que sostienen esta idea liminar.

VIII. El régimen legal aplicable a esa relación personal

1. Ese importante y prestigioso sector de la doctrina nacional razona del siguiente modo: Dado que las acciones personales son prescriptibles, si el derecho público no prevé un plazo especial de prescripción, debe acudirse al Derecho civil para encontrarlo. La idea se funda en la necesidad de interpretar los textos de modo integral, pues el ordenamiento jurídico es un sistema, más allá de las especificidades que puedan caracterizar los dos grandes campos. No se trata, entonces, de la aplicación supletoria, sino de la aplicación integradora.

Esta situación se daba en el orden nacional antes de la sanción de la ley 21.499, por lo que, a falta de otro plazo, se sostuvo que la acción para reclamar el pago de la indemnización prescribe en el decenal del art. 4023 del Cód. Civil, computado desde que tuvieron lugar los actos que hicieron viable la acción de expropiación irregular (en el caso, la ocupación y realización de la obra pública). Defienden esta posición grandes maestros del Derecho administrativo (ver Marienhoff, Miguel, "Tratado de Derecho Administrativo", 4ª ed., Buenos Aires, Abeledo Perrot, t. IV, N° 1422; Diez, Manuel M., "Derecho Administrativo", Buenos Aires, Ed. Omeba, 1969, t. IV, p. 316; Villegas Basavilbaso, "Derecho Administrativo", Buenos Aires, Ed. Tea, 1956, t. VI, N° 908, p. 478). Algunos autores parecen adherir a esta posición, aunque aclarando expresamente que si hay convenio o sentencia

el plazo se computa a partir de esa fecha, solución que nadie niega (compulsar Luchetti, Oscar F., "Prescripción de la acción de expropiación inversa o irregular en la ley provincial 5708", Revista Jurídica del Colegio de Abogados del Departamento Judicial de Mercedes, 1986, N° 2, p. 55).

No puedo dejar de señalar, en apoyo de esta solución, que el auxilio del derecho privado en materia de prescripción ha sido acepado en importantes ámbitos del derecho público; por ej., para resolver cuándo prescriben las acciones para reclamar al Estado los daños y perjuicios causados por su actividad lícita; no obstante la opinión generalizada de que esta acción está fundada en la Constitución Nacional y en los principios del Estado de Derecho, se ha resuelto que la prescripción se rige por el art. 4037 del Cód. Civil (ver plenario de la Cámara Nacional Civil, 3/3/1988 "in re": "Ricci c. Municipalidad de la Capital", JA, 1988-II-347; LA LEY, 1988-B, 363; DJ, 1988-I-90 o ED, 127-441).

El art. 56 de la ley 21.499 siguió el criterio de la prescriptibilidad y fijó el plazo de cinco años computados desde que tuvieron lugar los actos o comportamiento del Estado que tornan viable la referida acción. En general, la doctrina interpretativa de la norma aceptó implícitamente, su constitucionalidad (ver, a vía de ej., Marienhoff, Miguel, "Tratado de Derecho Administrativo", 4ª ed., Buenos Aires, Abeledo Perrot, t. IV, N° 1422; Maiorano, Jorge Luis, "La expropiación en la ley 21.499", Buenos Aires, Ed. Cooperadora de Derecho y Ciencias Sociales, 1978, N° 143, pág. 181; Roca, Ival, "Expropiaciones, ocupaciones y retrocesiones", Buenos Aires, Ed. Plus Ultra, 1980, p. 84; Uslenghi, Alejandro "La expropiación irregular en la ley 21.499", Revista Argentina de Derecho Administrativo, N° 15/16, p. 77/78; Borda, Guillermo, "Tratado de Derecho Civil, Derechos Reales", 3ª ed., Buenos Aires, Abeledo Perrot, 1984, t. I, N° 467-II; el notable civilista argentino señala que la ley señala que el punto de partida de la prescripción no es la ley que declara de utilidad pública el bien sino el acto del Estado que importó un cercenamiento directo y específico del derecho de propiedad). Igual camino siguieron algunas leyes provinciales (por ej., art. 36, ley 6394 de Córdoba, aplicado por la Justicia de esa Provincia con apoyo de un sector de la doctrina; ver, por ej., fallo de la C4ª CC, 12/8/1987, Straford S.A. c. Municipalidad de Córdoba, LLC, 1987-773, con nota de Zarazaga, Luis, "Acción de expropiación irregular: su prescripción e interpretación". En el caso, el día inicial se fijó en el momento que la municipalidad denegó la línea de edificación).

La tesis de la prescriptibilidad de la acción ha sido receptada por la Corte de Casación italiana, aunque para un supuesto no idéntico, cual es el de la ocupación y realización de una obra pública, en un terreno privado, sin declaración previa de la utilidad pública (ver Pfiffner, Alessandra, "L'occupazione appropriativa, il termine di prescrizione dell'azione risarcitoria e il problema della tutela del proprietario, Responsabilita civile e previdenza", 1993 N° 3/4, p. 524; Amenta, Giafranco, "L'individuazione del diritto dell'espropriato ed il suo termine prescrizionale", "La nuova giurisprudenza civile comentata", Padova, Cedam. 1991, p. 291, parte prima).

2. Otros juristas, en cambio, entienden que la expropiación es un instituto de derecho público que admite acudir al derecho privado sólo en casos extremadamente excepcionales, siempre y cuando sus principios no ataquen lo medular de la garantía prevista en el art. 17. Esa compatibilidad no opera con el régimen de prescripción, por lo que el art. 4023 no es aplicable (Fiorini, Bartolomé, "La expropiación es un instituto de derecho público constitucional", JA, 21-1974-380).

Esta posición se funda en que:

a) La expropiación proviene de la Constitución, consecuentemente, debe sustentarse en normas de derecho público.

b) El dueño del bien expropiado no es un acreedor común; el monto que debe percibir lo impone la Constitución y su crédito, para ser cobrado, deberá responder al régimen especial inherente al instituto expropiatorio.

c) La relación jurídica que se crea al promoverse la expropiación es de derecho público y no puede ser sustituida o compensada por las que provienen del derecho privado; el derecho privado tampoco puede regir el crédito proveniente de la expropiación.

3. La posición intermedia distingue según la cuestión se plantee antes o después de la sentencia o el convenio que establece el monto indemnizatorio. Antes de ese momento, el Derecho Público, vigente en su plenitud, impide

Documento

la invocación de la prescripción; después de la determinación del monto, la acción prescribe en el plazo fijado por el art. 4023 del Cód. Civil.

Esta solución es, en definitiva, la de la jurisprudencia de la Corte Nacional a la que hace mención el voto del preopinante.

El 5/12/1973, "in re": "Acevedo de Cámpora c. Dirección Nacional de Vialidad", el tribunal dijo (con la firma de M. Becaitz, A. Díaz Bialet, M. Aráuz Castez, E. Corvalán Nanclares y H. Masnatta) que: "Hasta la fijación definitiva del resarcimiento, el derecho real de dominio se convierte, por subrogación real, en el derecho al cobro de un crédito representativo del valor del bien que se desapropia, ya que no le es dable al expropiado, luego de la declaración legal de utilidad pública, pretender la reivindicación del bien afectado al interés social"; "el derecho al cobro del valor del objeto expropiado ha de calificarse como crédito ilíquido del expropiado que, a falta de acuerdo, sólo puede ser determinado por sentencia judicial. Es inexigible, por tanto, hasta que el valor no sea concretado en una suma de dinero líquida. Esta inexigibilidad hace que, entre tanto, aquél derecho no pueda extinguirse por prescripción decenal, desde que ésta sólo principia en el momento en que el crédito líquido se torna cantidad cierta"; "determinada la deuda nace el derecho personal exigible y es desde la fecha de la sentencia que comienza a correr el plazo de la prescripción decenal: "sine actio nulla prescriptio est" (Fallos: 287:387; JA, 21-1974-375, con nota decididamente aprobatoria de Fiorini, Bartolomé, "La expropiación es un instituto de derecho público constitucional", LA LEY, 156-289, con nota de Canasi, Juan, "La prescripción liberatoria opuesta por el expropiante durante el juicio expropiatorio. Su improcedencia"; el autor concluye aceptando el temperamento del fallo bajo comentario. En el caso, el juicio por expropiación "directa" o "regular", iniciado por el Estado había concluido por perención de instancia; la excepción de prescripción fue planteada luego por el Estado en el juicio de expropiación inversa interpuesto por el administrado. La tesis de que los plazos de la acción personal sólo comienzan a correr desde la fijación por convención o sentencia había sido sostenida desde antiguo por la Corte, quien no obstante, aceptaba para estos supuestos la prescripción adquisitiva; ver, en tal sentido, sentencia del 6/5/1940 "in re": "Lastra de Elía c. Provincia de Santa Fe", LA LEY, 18-700; la solución había sido la de algunos tribunales inferiores; compulsar, CCivil 2ª de la Capital, 28/8/1939, LA LEY, 15-925, que siguieron aplicándola; ver CCivil 2ª Capital, 24/7/1944, Bocazzi A. c. Municipalidad de la Capital, LA LEY, 35-743).

El criterio de que el plazo de la prescripción extintiva sólo comienza a correr a partir de la determinación de la indemnización (por sentencia o convención) fue reiterado en ulteriores pronunciamientos; así por ej.:

-- El 15/6/1982 "in re": "Recabarren de Pérez Caillet c.Gobierno de la Provincia de San Juan", en el cual se declaró inconstitucional la norma local que hace correr el plazo de la prescripción decenal desde el momento de la toma de posesión por parte del expropiante sin consentimiento del propietario (Fallos: 304:852 y ED, 101-347, con nota aprobatoria, sin título, de Bidart Campos --La Ley, 1983-B, 531; 1983-A, 134--).

-- El 12/12/1985, "in re": "Recurso de hecho en J. Bianchi c. Dirección Provincial de Vialidad", declarando la inconstitucionalidad del art. 36 de la ley 6394 de la provincia de Córdoba;

-- Más recientemente, el 7/4/1992, "in re": "Aranda Camacho c. Dirección Nacional de Vialidad" tachando del mismo modo el art. 56 de la ley 21.499, con la disidencia del doctor Rodolfo Barra (los dos últimos se transcriben en el trabajo de Docobo, Jorge J., "Un nuevo enfoque sobre el plazo de prescripción en la expropiación irregular", Revista de Derecho Administrativo, año 4, N° 9/10, 1992, p. 123).

Esta jurisprudencia cuenta con el apoyo de un sector de la doctrina (compulsar, Ghersi, Carlos A., "La prescriptibilidad de la acción por el cobro de la indemnización o precio en materia expropiatoria en el ámbito de la provincia de Buenos Aires", JA, 1984-III-824; del mismo autor, "La expropiación inversa: la prescriptibilidad de la acción por el cobro de indemnización", JA, 1985-III-825; de acuerdo con la posición, en lo sustancial, aclarando que antes de la fijación del precio, la acción es imprescriptible, Vénica, Oscar H., "¿Prescribe la acción de expropiación inversa o irregular?", JA, 1986-III-833; del mismo autor, "Expropiación irregular. Prescripción de la indemnización fijada y no de la pretensión para que sea determinada", LLC, 1988-287; ambos trabajos están transcriptos en la obra Derecho Concursal y Procesal, Córdoba, Ed. Lerner, 1994, ps. 88 y 168. La jurisprudencia es citada, sin críticas, por otros autores que, consecuentemente, parecen adherir a ella; ver, en tal sentido Villegas,

A. W., "Régimen jurídico de la expropiación", Buenos Aires, Depalma, 1973, N° 368/371).

IX. El momento inicial del curso de la prescripción extintiva.

Como he explicitado, la Corte Federal ha adherido, aunque con algunas vacilaciones, al tercer criterio. Consecuentemente, afirma que mientras la indemnización expropiatoria no se ha fijado, el curso de la prescripción no comienza a correr en la expropiación inversa o irregular.

1. Críticas a esta posición

No puedo ocultar mis reservas respecto a esta solución, por las siguientes razones:

a) La liquidez no es un requisito de la exigibilidad del crédito. Si el monto no está determinado, en el peor de los casos para el acreedor, hay una acción para su determinación y esa acción, por ser personal, es prescriptible (ver LS, 220-277 para los honorarios no regulados). En suma, hay dos acciones: una para pedir la expropiación inversa, que comienza a computarse desde el hecho que la motivó; otra para reclamar el precio ya fijado, que prescribe a los diez años.

b) La indeterminación del crédito puede llevar a la imprescriptibilidad de la acción, pues, mientras él no se fije, el curso de la prescripción no habrá corrido, aunque hayan pasado razonables pautas temporales, en detrimento de la seguridad jurídica, fundamento último de la prescripción extintiva.

Consecuentemente con esta idea se ha dicho: "La condición que la Corte ha introducido desde Acevedo de Cámpora aparece como de imposible cumplimiento y supone la virtual declaración de imprescriptibilidad" (Docobo, Jorge J., "Un nuevo enfoque sobre el plazo de prescripción en la expropiación irregular", Revista de Derecho Administrativo, año 4, N° 9/10, 1992, p. 128).

2. La obligatoriedad de la jurisprudencia de la Corte Nacional

No obstante la crítica, es la solución que la Corte Nacional viene sosteniendo hace más de veinte años, y que ha ratificado en 1992. Consecuentemente, como lo he sostenido en otros pronunciamientos, seguir su criterio hace a la buena administración de Justicia y a la rápida solución de los conflictos, principio liminar en estos tiempos de gran descreimiento público en el sistema judicial.

La sentencia recurrida se aparta de estos lineamientos y por eso, la queja es procedente.

X. La prescripción adquisitiva

1. La demandada ha opuesto desde el comienzo la prescripción adquisitiva.

2. He adelantado algunos conceptos en torno a la disputa doctrinal y jurisprudencial sobre si el Estado puede invocar o no la usucapión de un inmueble cuando previamente lo ha declarado de utilidad pública y sujeto a expropiación.

3. La cuestión ha sido objeto de un amplio debate jurisprudencial al que puso fin, para algunos tribunales capitalinos, el plenario de la Cámara Nacional Contencioso Administrativo del 18/3/1980 "in re": "Grun, Elías c. Gobierno nacional" --La Ley, 1980-B, 170-- que declara: "Cuando se trata de usucapir por parte del Estado un inmueble expropiado, el plazo para prescribir debe computarse, como principio, a partir del momento en que queda integrado el precio expropiatorio, con la salvedad que si el abandono del propósito tenido en vista en la respectiva ley se produce con posterioridad, el plazo deberá calcularse sólo a partir de este último" (ED, 91-207) (aclaro que aunque la convocatoria a plenario parece amplísima, fue motivada por decisiones contradictorias dictadas en juicios de retrocesión, lo cual supone un juicio de expropiación concluido. La mayoría de los votos argumentan sobre ese supuesto).

En esa decisión se escucharon autorizadas voces; para algunos, el plazo debe comenzar a computarse desde la interversión del título, o sea, desde que se abandona el propósito perseguido por la expropiación y se cambia la causa y la naturaleza de la posesión; esta posición se funda en un argumento lógico; para que se pueda usucapir, la posesión tiene que ser ininterrumpida, lo cual significa que, por su parte, el dueño tiene posibilidad de interrumpirla; la declaración de utilidad pública implica que el propietario se encuentre legalmente imposibilitado

de interrumpir la posesión del expropiador por lo que, para que sea factible, debe existir interversión del título (voto del doctor Muzio).

Pero más allá de estas variantes, interesa aclarar que la mayoría de la Cámara Federal rechazó el criterio según el cual el plazo de la prescripción adquisitiva comienza a computarse a partir de la desposesión u ocupación se trate de un inmueble expropiado, en vías de expropiación o al margen de toda expropiación (voto en minoría del doctor Vocos Conesa) y muchos de sus integrantes sostuvieron que la figura de la usucapión era, en realidad inaplicable (este último fue el criterio sostenido por Soler Miralles como integrante de la CFed. Mendoza, el 14/5/1975 "in re": "Chávez Benigno c. Gobierno nacional", LA LEY, 1975-C, 313).

4. La jurisprudencia de la Corte Nacional es contraria a las pretensiones de la recurrida.

Analizaré, en primer lugar, algunos casos que resuelven situaciones que guardan alguna similitud, aunque no son idénticas.

a) El 6/10/1972, el alto Tribunal, integrado por los distinguidos juristas Roberto Chute, Marco A. Risolía, Luis Cabral y Margarita Argúas, sostuvo que "si bien no es dudoso que el Estado puede adquirir un inmueble por prescripción ante lo dispuesto en los arts. 3951 y 4015, no es admisible ante la naturaleza del instituto de derecho público que gobierna la expropiación, que pendiente una demanda de expropiación no desistida se transforme la acción para obtener un pronunciamiento que declare que se adquirió el inmueble materia del juicio por usucapión". El fundamento último de la decisión radica en que "si se invocó una causa de utilidad pública para afectar el inmueble al trazado de la ruta, aquella declaración representa desde el punto de vista de los particulares una garantía constitucional establecida en resguardo de la propiedad privada" (Dirección Nacional de Vialidad c. Valle de Damonte, M. suc. LA LEY, 150-155).

b) Para la retrocesión se lee en el voto del doctor Guastavino que "la posesión provisoria que obtuvo el Estado en el juicio de expropiación respectivo carece de idoneidad para usucapir, desde que ella no importó desconocer la propiedad del bien en cabeza del expropiado, de modo que no se satisfacen los requisitos que exige el art. 2351 del Cód. Civil para la existencia de una posesión válida a los efectos del art. 4015". A igual resultado llegan los demás integrantes del tribunal al afirmar que "La calidad de poseedor por parte del Estado expropiador se halla subordinada al previo pago de la indemnización fijada por la sentencia, puesto que con anterioridad a ese hecho tal carácter sólo cabría reconocerlo en cabeza del propietario, acreedor del resarcimiento respectivo, circunstancia que lo inhabilita para adquirir el inmueble por prescripción" (CS, 18/6/1981, Madariaga y otras c. Gobierno nacional, LA LEY, 1981-D, 147). Es el mismo criterio de la Cámara Federal de Paraná, con voto del profesor de Derechos Reales, doctor Musto dijo que "mientras el juicio de expropiación no se termine y se integre la indemnización, el expropiador que ocupa la cosa no lo hace a título de dueño sino por imperio de normas legales tendientes a asegurar los fines del Estado y a efectos de que éstos no se vean enervados o demorados por dicho trámite. Es una posesión provisoria, acordada por los jueces o adquirida con la conformidad del propietario, pero no puede ser considerada como la posesión civil definida por el art. 2351 del Cód. Civil y única hábil para usucapir" (7/12/1978, Garaycochea, Miguel c. Gobierno nacional, LA LEY, 1979-C, 438, con nota aprobatoria de Canasi, José, "La prescripción adquisitiva en la retrocesión expropiatoria") y de la Cámara Federal de Tucumán que exigía, para la procedencia de la prescripción adquisitiva, que el Estado hubiese intervertido su título (5/8/1976, Musto c. Dirección de Fabricaciones Militares, LA LEY, 1977-B, 227) (Una crítica seria a la posición que niega carácter de verdadero poseedor al Estado fue formulada en el voto minoritario de Vocos Conesa en el plenario ya citado, ED, 91-215 --La Ley, 1980-B, 170--).

c) Más concretamente, para la expropiación inversa, la Corte Federal ha dicho que "constituyéndose la relación expropiatoria con la declaración de utilidad pública y extinguiéndose con el pago de la indemnización que se fija por acuerdo de partes o sentencia definitiva y quedando, por tanto, sometida íntegramente al derecho público mientras no se extinga aquélla, el Estado no podrá adquirir el dominio del bien o cosas afectados a expropiación por las vías normadas en el Código Civil. De ahí que la invocación de la prescripción adquisitiva es inoficiosa mientras subsista la mentada relación iuspublicística expropiante" (CS, 5/12/1973, Acevedo de Cámpora c. Dirección Nacional de Vialidad, JA, 21-1974-379 y LA LEY, 156-289).

Documento

5. En el sublite, el acogimiento de la prescripción adquisitiva tendría un problema adicional: como lo viene sosteniendo el expropiado desde la instancia administrativa previa, la demandada, después de la ocupación, el 30/12/1965 mediante res. 2520 de la Dirección Provincial de Vialidad declaró de utilidad pública a los efectos de su expropiación los terrenos necesarios para la construcción de los accesos al aeroparque de la ciudad de Mendoza (fs. 12 expte. N° 288, D/1986). Ese acto, de acuerdo a los criterios jurisprudenciales reseñados, importa un reconocimiento expreso de que su posesión no era a título de dueño.

El actor se presentó a la autoridad administrativa el 10/10/1985, o sea antes de los veinte años computados a partir de ese acto administrativo y, como se ha visto, la ocupación fue anterior a esa declaración por lo que no se encuentra determinado en qué momento cesó el reconocimiento de que su posesión no era con ánimo de dueño y su relación posesoria comenzó a servir a los efectos de la prescripción adquisitiva.

XI. La cuestión axiológica

A fs. 34 vta., la recurrida afirma que la excepción de prescripción deducida responde a principios éticos, desde que el Estado nunca ha cobrado a la actora su crédito por contribución de mejoras. El argumento es inédito, no sujeto a conocimiento del juez de primera instancia, por lo que su tratamiento en esta instancia deviene absolutamente improcedente (LA, 81-459; LA, 85-90).

XII. Conclusiones

De todo lo expuesto deduzco que las sentencias de grado no se adecuan a la jurisprudencia de la Corte Nacional reseñada, por lo que debe estimarse que contienen un error en la interpretación del derecho vigente, y consecuentemente, corresponde acoger favorablemente el recurso de casación deducido.

Sobre la misma cuestión, el doctor Moyano adhiere por sus fundamentos a los votos que anteceden.

2ª cuestión. -- El doctor Romano dijo:

Teniendo en cuenta el resultado al que se arriba en el tratamiento de la cuestión anterior corresponde hacer lugar al recurso de Casación interpuesto y revocar en todas sus partes la sentencia dictada a fs. 175/178 de los autos N° 121.101, "Tohmé, Elías c. Dirección Provincial de Vialidad p. exprop inv.". Consecuentemente, debe admitirse el recurso de apelación de fs. 153/157, desestimándose la excepción de prescripción opuesta por la demandada a fs. 33. En tales condiciones, resulta procedente la petición del recurrente debiendo remitirse la causa a su origen para que se dicte pronunciamiento sobre el fondo de la cuestión debatida en autos. Así voto.

Sobre la misma cuestión, los doctores Kemelmajer de Carlucci y Moyano adhieren al voto que antecede.

3ª cuestión. -- El doctor Romano dijo:

Atento el resultado al que se arriba en el tratamiento de las cuestiones anteriores, corresponde imponer las costas a la parte recurrida que resulta vencida (art. 36-I, Cód. Procesal). Así voto.

Sobre la misma cuestión, los doctores Kemelmajer de Carlucci y Moyano, adhieren al voto que antecede.

Por el mérito que resulta del acuerdo precedente, la sala primera de la Excma. Suprema Corte de Justicia, fallando en definitiva, resuelve: I. Hacer lugar al recurso de casación deducido a fs. 10/14 de autos, revocando en todas sus partes la sentencia dictada a fs. 175/178 de los autos N° 121.101, caratulados: "Tohmé, Elías c. Dirección Provincial de Vialidad p/exprop. inv.". En consecuencia, se rechaza la excepción de prescripción opuesta a fs. 33 de la causa principal, debiendo remitirse la misma a su origen a los efectos de que el juez de la causa se pronuncie sobre la cuestión de fondo objeto del proceso. II. Imponer las costas a la parte recurrida vencida. III. Diferir la regulación de honorarios para su oportunidad. IV. Líbrese cheque a la orden del recurrente por la suma de $ 18, con imputación a las boletas de depósito obrantes a fs. 2 y 3. -- Fernando Romano. -- Aída Kemelmajer de Carlucci. -- Carlos E. Moyano.

Document

---

**Voices:** ACQUISITION OF OWNERSHIP ~ NATIONAL CONSTITUTION ~ PROPERTY RIGHTS ~ CONSTITUTIONAL RIGHTS ~ NATIONAL STATE ~ EXPROPRIATION ~ REVERSE EXPROPRIATION ~ COMPENSATION ~ PUBLIC INTEREST ~ INTERPRETATION ~ POSSESSION ~ STATUTE OF LIMITATIONS ~ ACQUISITIVE PRESCRIPTION ~ TEN-YEAR STATUTE OF LIMITATIONS ~ LIBERATORY PRESCRIPTION ~ CONSTITUTIONAL PRINCIPLES ~ PUBLIC UTILITY

**Court:** Supreme Court of Justice of the Province of Mendoza, courtroom I(SCMendoza)(SalaI)
**Date:** 09/26/1995
**Parties:** Tohmé, Elías v. Dirección Provincial de Vialidad.
**Published in:** LA LEY1996-D, 280 - DJ1996-1, 1307
**Citation:** TR LALEY AR/JUR/2026/1995

**Summaries:**

1 . - The State cannot assume the character of possessor with the capacity to encumber as long as it does not comply with the constitutional requirement of compensation to the interested party, since the legislative affectation due to public utility implies a clear recognition of the property of the individual, even in cases in which the possession has been granted by judicial means and until the expropriating property has been transferred.

2 . - The acquisition of ownership of the property expropriated by the State is subject to the payment of the prior compensation determined in the final judgment of the expropriation proceeding. Only from that moment can the statute of limitations start to run.

3 . - The State cannot enforce the effects of the statute of limitations if the claim for compensation derived from the expropriation has not been fixed by judgment or agreement of the parties, from which time the ten-year statute of limitations established in Article 4023 of the Civil Code is to be computed, since only then does a claim in favor of the expropriated party exist.

4 . - The judgment that computed the statute of limitations of Article 4023 of the Civil Code from the time of taking possession of the expropriated property without having paid the compensation must be revoked, since it establishes in this way an expropriation without prior compensation, in contradiction with the principles of Article 17 of the National Constitution, a criterion that is sustainable both for cases of acquisitive and liberatory statute of limitations.

5 . - As long as the expropriation compensation has not been fixed, the statute of limitations does not start to run in the reverse or irregular expropriation (From the vote of Dr. Kemelmajer de Carlucci).

6 . - Since the expropriation relationship is constituted with the declaration of public utility and is extinguished with the payment of the compensation fixed by agreement of the parties or final judgment, remaining, therefore, fully subject to public law as long as the former is not extinguished, the State cannot acquire the ownership of the property or things affected by expropriation by the means provided for in the Civil Code. Hence, the invocation of the acquisitive prescription is ineffective as long as the aforementioned public law relation subsists (From the vote of Dr. Kemelmajer de Carlucci).

7 . - Given the public law nature of the expropriation, in the interpretation of the rights and obligations arising from this relationship, the constitutional principles must prevail, especially those included in Article 17 of the National Constitution, reserving the common civil law in a subsidiary manner and provided that the latter does not contradict the guarantees established in the former.

**Full Text:**

Mendoza, September 26, 1995.

1ª Is the appeal in cassation admissible? 2ª If so, what is the appropriate remedy? 3ª Costs. 1st question. --

Dr. Romano said:

I. An extraordinary appeal in cassation is filed against the decision issued by the First Civil Court of Appeals of the First Judicial District, which is filed at folios 175/178 of Case No. 121.101, entitled: "Tohmé, Elías v. Dirección Provincial de Vialidad por Expr. Inversa", alleging that said decision has erroneously interpreted the

legal norms relevant to the case, framing the case in 159(2) of the Procedural Code.

The appellant argues that the complaint seeks the cassation of the decision, inasmuch as it erroneously interprets articles 17 of the National Constitution, 16 of the Provincial Constitution, articles 3962, 4015, 4023 of the Civil Code, thus validating a judgment adverse to his claims.

According to the background of the case, the plaintiff in the main case filed a claim for inverse expropriation in the main case, invoking the appropriation of land owned by public utility law 3017, the effective occupation of the property and the omission of payment by the administrative authority. He argued that in the previous instance before the administration, although the claim was initially admitted, it was subsequently denied, alleging the statute of limitations of the action.

When answering the lawsuit, the Dirección Provincial de Vialidad, as defendant, raised the defense of prescription of the action, based on the lapse of ten years for the exercise of the personal action, counting from the dispossession until the filing of the lawsuit.

In both previous rulings, the aforementioned defense was upheld, sharing the criterion of the plaintiff. The final judgment is based on the fact that in the irregular expropriation, the right of the expropriated party only consists of the payment of the compensation, constituting a right of a personal nature subject to the ten-year statute of limitations; that the statute of limitations was timely filed, taking into account that the rulings in administrative proceedings constitute a technical and legal collaboration work, not binding, therefore, the favorable ruling for the initiation of the administrative proceeding did not prevent the subsequent objection regarding the statute of limitations of the action and the relevant resolution in that proceeding.

The appellant raises an appeal against this ruling, basing his cassation complaint on three aspects, namely:

a) it does not correspond the application to the case of article 4023 of the Civil Code, of the ten-year statute of limitations, since the State has affected a property for public utility purposes, without observing the constitutional requirement of prior indemnification. That if the prior indemnification is not fixed by agreement of the parties, nor by judicial pronouncement, there cannot be an enforceable debt susceptible to prescription.

b) That the opportunity to oppose the statute of limitations should have been, necessarily, before the opening of the administrative claim, so that the subsequent claim is untimely.

c) That the recognition of the obligation by the expropriating entity in administrative proceedings has caused the interruption of the running of the statute of limitations, being indifferent that the relevant term had already been fulfilled.

The defendant and the State Prosecutor, like the State Prosecutor, are in favor of the rejection of the appeal filed.

II. Analysis of grievances

In order to consider the importance of the grievances proposed for decision by the court, it is necessary to deal first with the one referred to the possibility of applying the statute of limitations provided in section 4023 of the Civil Code to the case, even if this alters the one followed by the appellant.

The matter is important not only because of the consequences derived from the expropriation by the State of private property, in an irregular manner and without payment of fair compensation, but also because express constitutional and common rules are involved in the matter (art. 17, National Constitution; 16, Provincial Constitution; 2511, Civil Code).

Indeed, given the public law nature of the institute of expropriation, in the interpretation of the rights and obligations arising from that relationship, I understand that constitutional principles must always prevail, especially those included in Article 17 of the National Constitution, reserving the common civil law, in a subsidiary manner and provided that the latter do not collide with the guarantees that the former enshrine.

The foregoing conclusion is particularly relevant in our case, where provincial law 1447/75,although Chapter I of Title IV governs the case of inverse expropriation, it does not provide for any statute of limitations for this action, unlike National Law 21,499, which regulates it in its Article 56.

The appealed decision, following the doctrinal position that classifies the action for irregular expropriation as a personal action due to its merely compensatory purpose (among others Marienhoff Miguel S. and Villegas Basavilbaso Benjamín, citing their works), which is respected even if it is not shared, considers that the statute of limitations has run in the case by application of the provisions of section 4023 of the Civil Code, computing the term provided therein, from the date of the occupation of the property by the State.

I believe that, although the sole and exclusive purpose of this irregular expropriation action exercised by the owner of the domain, when there has been a public utility affectation (when there is none, there will be no reason to differentiate the State from any private individual in the protective actions of possession and domain) is to obtain fair compensation, as the aforementioned doctrine understands it, it is no less true that the State, in such case, is not given the right to assume or recognize the character of possessor with the capacity to encumber, as long as it does not comply with the constitutional requirement of compensation at the disposal of the interested party. The fact is that the expropriating party, when there has been a legislative affectation due to public utility, implies a clear recognition of the property of the private party, even in cases in which the possession has been granted by judicial means, and until the property has been transferred to the expropriator. Fair compensation emerges as an essential element as a component of the constitutional guarantee.

Likewise, the State cannot assert the effects of the statute of limitations, as admitted in the decision under review, if the claim for compensation has not been fixed, as a result of a judgment or agreement of the parties. It is only then that the existence of a credit in favor of the expropriated party can be considered as an enforceable personal right; and it is only then that the ten-year statute of limitations established by section 4023 of the Civil Code can be computed.

This, and no other, is the criterion upheld by our Supreme Court of Justice, when declaring the unconstitutionality of section 56 of Law 21.499, by majority in the case "Aranda Camacho, Carlos v. Dirección Nacional de Vialidad s/expropiación irregular" on April 7, 1992 and by reference to a previous case (Bianchi v. Dirección Provincial de Vialidad de Córdoba, 12/12/85). Dirección Provincial de Vialidad de Córdoba, 12/12/85) ruled that "the acquisition of ownership of the property expropriated by the State is subordinated to the payment of the prior compensation determined in the final judgment of the expropriation trial and that only from that moment can the statute of limitations start to run".

Among the precedents cited in the decision, mention is made of the case "Acevedo de Cámpora v. Dirección Nacional de Vialidad" dated December 5, 1973, with a different composition from the current one and which, with specific reference to the statute of limitations, at that time held "that being the compensation a condition for the expropriation (art. 17, National Constitution), it represents the counterpart of the real right to be acquired by the State, within the same legal relationship, and therefore it cannot be qualified as a personal right that can be prescribed after ten years" (considering 10). 17, National Constitution), it represents the counterpart of the real right to be acquired by the State, within the same legal relationship, and therefore it cannot be qualified as a personal right that is subject to a ten-year statute of limitations" (considering 10); and that "that right to collect the value of the expropriated object must be qualified as an illiquid credit of the expropriated party which, in the absence of agreement, can only be determined by judicial sentence ...which is unenforceable, therefore, until its value is not materialized in a liquid sum of money. This unenforceability means that, in the meantime, that right cannot be extinguished by a ten-year statute of limitations, since the latter only begins at the moment when the illiquid claim becomes a certain amount" (Whereas 11) (Judgments: 287:387).

These rulings, which establish a criterion contrary to the statute of limitations of the inverse expropriation action, as specific jurisprudence, act as defining in the case, imposing their compliance, by prioritizing the concept of legal certainty. In this regard, this court has stated in previous decisions that "although the rulings of the National Court are not binding for the lower courts outside the cases in which they are issued, the authority of such rulings, together with reasons of procedural economy, impose compliance with them, thus avoiding the waste that implies the insubstantial reiteration of the same issues (L.S., 191-237; 191-245; 202-275; 205-367, among others).

In conclusion, then, the appeal filed in this instance is admissible, and the judgment that computed the statute of limitations of section 4023 as of the inverse expropriation action, as from the taking of possession of the property, without having paid the compensation, thus establishing an expropriation without prior compensation, in contradiction with the principles of art. 17 of the National Constitution (conf. Judgments CS: 291:507 --La Ley, 1975-C, 303--), this criterion being sustainable both for the cases of acquisitive and liberatory prescription, as has been the subject of the defense raised by the defendant. Thus, I vote for the first issue.

Dr. Kemelmajer de Carlucci, in an amplifying vote, said:

Although I adhere to the solution proposed by my distinguished colleague Dr. Romano, the importance of the issue raised, the deviation from the teachings of conspicuous Argentine administrative doctrine, the seriousness of the arguments of the professionals on both sides and the thoughtful rulings of the lower courts, compel me to express my personal opinion through this additional vote.

I. Time sequence.

I consider it essential to summarize the temporal sequence in which the public law relationship between the parties developed, and for this purpose, I will put in order some dates that may have an impact on the issue to be resolved.

1. 4/8/1964: enactment of Law 3017 which declares the construction of the Mendoza City Airport to be of public utility and provides for the allocation of the necessary land, to be determined by a subsequent act.

2. 19/10/1964: date of initiation of the works (fs. 6, administrative file 1245).

3. 1965/12/30: Resolution 2520 of the Dirección Provincial de Vialidad declaring the public utility for the purpose of expropriation of the land necessary for the construction of the accesses to the Mendoza City Airport (page 12 file No. 288 D/1986). Section 2 authorizes the Technical Department and Legal Counsel to initiate the respective expropriation procedures in each case.

4. 6/2/1986: presentation of Elías Tohmé by proxy to the Dirección de Vialidad Provincial initiating the administrative procedure of indirect expropriation and requesting the payment of the expropriation indemnity (fs. 1/3, file No. 288 D/1986).

However, on page 19 of the aforementioned file there is a document with a receipt stamp of 10/10/1985, in which the plaintiff appears through another attorney-in-fact, acknowledges that the works have been completed and requests the payment of the corresponding indemnity.

5. 6/2/1986: opinion of the Head of the Road Cadastre Department stating: "The expropriation request on page 1 is admissible, therefore this administrative document has been prepared with the purpose of obtaining the transfer of the fraction that was affected to the construction..." (page 11 file No. 288 D/1986).

6. 3/31/1986: referral of the file to the General Appraisal Commission of the Province to estimate the value of the property (fs. 42 file No. 288 D/1986).

7. 3/10/1986: the Conservation Department reports that there is no record of the date of dispossession.

8. 10/10/1986: report of the legal counsel stating: "If we do not have proof of the date of the dispossession, at least the date of the execution of the work should be reported, at which date the dispossession undoubtedly took place. Given that the date of the declaration of public utility dates back more than 20 years, I request that once the information indicated in the preceding paragraph is provided, it be returned to this Counsel's Office in order to verify whether the right to compensation claimed by the petitioner on page 1 is not time-barred" (page 58, file No. 288 D/1986).

From then on, the legitimate persecution of the Legal Counsel of the Provincial Roads Authority began, through all possible sections, on more or less precise data on the time of the dispossession or the execution of the work.

9. 22/4/1965: report from the Conservation Department specifying that the access road was opened on 15/7/1966.

10. 31/3/1987: res. 313 of the Dirección Provincial de Vialidad that rejects the petition of fs. 1 and 19 because the ten years in which the indemnification rights of the owners prescribe have elapsed with excess.

11. 4/21/1987: Initiation of Case No. 121.101 Tohmé Elías v. Dirección Provincial de Vialidad p/Expropiación inversa.

II. Position of the expropriating company.

The Dirección Provincial de Vialidad has argued from the lower courts that the action to claim the payment of compensation is barred by the statute of limitations because:

1. The action attempted is a personal action; therefore, the statute of limitations expires after 10 years.

2. The term begins to run from the dispossession operated on 19/10/1964.

3. Twenty years have elapsed since the dispossession; the Dirección Provincial de Vialidad has public and peaceful possession of the property, so the extinctive prescription has also operated.

III. Position of the plaintiff

The plaintiff has argued that the action is not time-barred because:

1. The statute of limitations should have been opposed at the first opportunity (art. 3962). The administrative file was a necessary step and, in the first presentation, on 6/2/1986, the Provincial Directorate of Roads acknowledged that the claim was admissible.

2. Constitutionally, compensation must be paid in advance. Therefore, the statute of limitations cannot begin to run if there is no amount settled, agreed or fixed by judgment.

3. The presumed acquisition prescription would be interrupted by the acknowledgement of the Respondent, which on 12/30/1965, with a departure date of 1/11/1986, issued Resolution 2520 authorizing the technical department to proceed, in each case and when necessary, to initiate the respective expropriation proceedings. The administrative request for compensation was made on 11/28/1985, that is, when the 20 years had not yet elapsed.

IV. The arguments of the trial judge

1. The doctrine and jurisprudence that coincide in making the ten-year term run as from the judicial or conventional determination of the expropriation compensation only applies to direct expropriation, but not in cases of inverse expropriation, in which such judgment does not exist. The application of the solution to inverse expropriation violates the basic principles of the statute of limitations, based on legal certainty and the definitive consolidation of rights.

2. In this case, there was no expropriation lawsuit, so Villegas Basavilbaso's thesis is correct, which makes the ten-year term run from the time of dispossession.

3. In this case, the administrative petition was filed after the expiration of the ten-year term counted from the dispossession.

4. Even if resolution 2520 of 12/30/1975 was interruptive, the ten-year period was statute-barred at the time of the administrative claim (there is a typing error, the resolution is from 1965).

5. The fact that the administration had processed this file did not imply the expiration of the right to oppose the statute of limitations, since the validity or not of the claim depended on the data that could be obtained.

6. Mr. Tohmé did not exhaust administrative remedies, but the Respondent, for the benefit of the plaintiff, has allowed the matter to be brought before the courts, and it is here, at the first opportunity, that the exception of statute of limitations is opposed, reiterating the position it took when issuing the administrative act.

7. Acquisitive prescription is also appropriate since the 20 years had also elapsed from the date of taking

possession (19/10/1964) to the date of filing the administrative claim (29/11/1985). Resolution 2520 does not interrupt the course of the statute of limitations since it does not recognize particular or specific rights of the plaintiff.

V. The arguments of the Court of Appeals

In the limits of the complaint, the Court of Appeals agreed with the first instance judge and expressly argued that:

1. The action to claim the payment of the indemnity is of a personal nature, since the dispossessed person cannot bring a claim for the payment of the indemnity.

2. The statute of limitations exception was timely introduced when answering the lawsuit in court.

VI. My starting point

1. I agree with my distinguished colleague that the interpretation must begin with the National Constitution and that expropriation is a matter governed, fundamentally, by public law.

2. I also adhere to the principle that, as a rule, it is not possible to deviate from the reiterated and constant jurisprudence of the National Court, especially if the issue to be decided involves the interpretation of the National Constitution.

VII. The real or personal nature of the action to claim payment of the indemnity

An old jurisprudence and doctrine held that when the State occupies a property which it has declared of public utility without having previously paid the compensation, the compensation substitutes the right of vindication; consequently, the action is not extinguished by the liberatory prescription; the State can only invoke the possession if its requirements have been fulfilled (this was, in short, the position of Legon, Fernando, "Tratado integral de la expropiación pública", Buenos Aires, V. Abeledo, 1934, p. 181 et seq. Abeledo, 1934, p. 181 et seq.; see decisions of the Civil Court of Appeals of the Capital published in JA, 61-469; JA, 1966-V-518).

However, as the judges have pointed out, the most prestigious national doctrine understands that the action to claim the payment of compensation is of a personal nature. When there is a declaration of public utility, the person administered does not have actions to demand the restitution of the occupied property, but exclusively the payment of a sum of money, which is a typical obligation that is channeled in court through actions of a personal nature.

The jurisprudence of the National Court, which I will comment on later, does not oppose this basic principle; however, it draws different consequences from those of the authors who hold this liminal idea.

VIII. The legal regime applicable to this personal relationship

1. This important and prestigious sector of the national doctrine reasons as follows: Since personal actions are subject to statute of limitations, if public law does not provide for a special statute of limitations, one must turn to civil law to find it. The idea is based on the need to interpret the texts in an integral manner, since the legal system is a system, beyond the specificities that may characterize the two major fields. It is not a question, then, of supplementary application, but of integrative application.

This situation existed at the national level prior to the enactment of Law 21,499, and therefore, in the absence of any other term, it was held that the action to claim the payment of compensation is barred by the ten-year statute of limitations of Section 4023 of the Civil Code, computed from the time the acts that made the irregular expropriation action viable took place (in this case, the occupation and execution of the public works). This position is defended by great masters of administrative law (see Marienhoff, Miguel, "Tratado de Derecho Administrativo", 4th ed., Buenos Aires, Abeledo Perrot, t. IV, No. 1422; Diez, Manuel M., "Derecho Administrativo", Buenos Aires, Ed. Omeba, 1969, t. IV, p. 316; Villegas Basavilbaso, "Derecho Administrativo", Buenos Aires, Ed. Tea, 1956, t. VI, No. 908, p. 478). Some authors seem to adhere to this position, although expressly clarifying that if there is a covenant or sentence the term is computed as from that date, a solution that no one denies (see Luchetti, Oscar F., "Prescripción de la acción de expropiación inversa o irregular en la ley provincial 5708", Revista Jurídica del Colegio de Abogados del Departamento Judicial de Mercedes, 1986, No.

2, p. 55).

I cannot fail to point out, in support of this solution, that the aid of private law in matters of statute of limitations has been accepted in important areas of public law; e.g., to resolve when actions to claim from the State for damages caused by its lawful activity are time-barred, for example, to determine when the statute of limitations expires for actions to claim damages caused by the State for damages caused by its lawful activity; notwithstanding the general opinion that this action is based on the National Constitution and the principles of the Rule of Law, it has been decided that the statute of limitations is governed by art. 4037 of the Civil Code (see Plenary of the National Civil Chamber, 3/3/1988 "in re": "Ricci v. Municipality of the Capital", JA, 1988-II-347; LA LEY, 1988-B, 363; DJ, 1988-I-90 or ED, 127-441).

Section 56 of Law 21,499 followed the statute of limitations criterion and established a term of five years computed from the date on which the acts or conduct of the State that make the referred action viable took place. In general, the doctrine interpreting the rule implicitly accepted its constitutionality (see, for example, Marienhoff, Miguel, "Tratado de Derecho Administrativo", 4th ed, Buenos Aires, Abeledo Perrot, t. IV, No. 1422; Maiorano, Jorge Luis, "La expropiación en la ley 21.499", Buenos Aires, Ed. Cooperadora de Derecho y Ciencias Sociales, 1978, No. 143, p. 181; Roca, Ival, "Expropiaciones, ocupaciones y retrocesiones", Buenos Aires, Ed. Plus Ultra, 1980, p. 84; Uslenghi, Alejandro "La expropiación irregular en la ley 21.499", Revista Argentina de Derecho Administrativo, N° 15/16, p. 77/78; Borda, Guillermo, "Tratado de Derecho Civil, Derechos Reales", 3rd ed, Buenos Aires, Abeledo Perrot, 1984, t. I, No. 467-II; the notable Argentine civil lawyer points out that the law states that the starting point of the statute of limitations is not the law that declares the property to be of public utility but the act of the State that imported a direct and specific curtailment of the right of ownership). The same path was followed by some provincial laws (e.g., section 36, Law 6394 of Córdoba, applied by the courts of that province with the support of a sector of the doctrine; see, for example, decision of the 4th CC, 12/8/1987, Straford S.A. v. Municipality of Córdoba, LLC, 1987-773, with note by Zarazaga, Luis, "Action of irregular expropriation: its prescription and interpretation". In the case, the initial day was fixed at the moment the municipality denied the building line).

The thesis of the prescriptibility of the action has been accepted by the Italian Court of Cassation, although for a non-identical case, which is that of the occupation and execution of a public work on private land without prior declaration of public utility (see Pfiffner, Alessandra, "L'occupazione appropriativa, il termine di prescrizione dell'azione risarcitoria e il problema della tutela del proprietario, Responsabilita civile e previdenza", 1993 N° 3/4, p. 524; Amenta, Giafranco, "L'individuazione del diritto dell'espropriato ed il suo termine prescrizionale", "La nuova giurisprudenza civile comentata", Padova, Cedam. 1991, p. 291, first part).

2. Other jurists, on the other hand, understand that expropriation is an institute of public law that admits recourse to private law only in extremely exceptional cases, as long as its principles do not attack the core of the guarantee provided for in section 17. This compatibility does not operate with the statute of limitations, and therefore section 4023 is not applicable (Fiorini, Bartolomé, "La expropiación es un instituto de derecho público constitucional", JA, 21-1974-380).

This position is based on the fact that:

a) Expropriation derives from the Constitution, consequently, it must be based on public law rules.

b) The owner of the expropriated property is not a common creditor; the amount to be received is imposed by the Constitution and his claim, in order to be collected, must respond to the special regime inherent to the expropriation institute.

c) The legal relationship created by the expropriation is of public law and cannot be substituted or compensated by those arising from private law; nor can private law govern the claim arising from the expropriation.

3. The intermediate position distinguishes according to whether the issue arises before or after the judgment or the agreement establishing the amount of compensation. Prior to that time, the Public Law, in full force and effect, prevents the invocation of the statute of limitations; after the determination of the amount, the

action is time-barred within the term established by art. 4023 of the Civil Code.

This solution is, in short, that of the jurisprudence of the National Court referred to in the preopinant's vote.

On 5/12/1973, "in re": "Acevedo de Cámpora v. Dirección Nacional de Vialidad", the court said (signed by M. Becaitz, A. Díaz Bialet, M. Aráuz Castez, E. Corvalán Nanclares and H. Masnatta) that: "Until the final determination of the compensation, the real right of ownership becomes, by real subrogation, the right to collect a credit representative of the value of the property that is expropriated, since it is not possible for the expropriated party, after the legal declaration of public utility, to claim the property affected to the social interest"; "the right to collect the value of the expropriated object must be qualified as an illiquid credit of the expropriated party which, in the absence of agreement, can only be determined by court judgment. It is therefore unenforceable until the value is determined in a liquid sum of money. This unenforceability means that, in the meantime, that right cannot be extinguished by ten-year prescription, since this only begins at the moment in which the liquid credit becomes a certain amount"; "once the debt is determined, the personal right becomes enforceable, and it is from the date of the judgment that the ten-year prescription period begins to run: "sine actio nulla prescriptio est" (Judgments: 287:387; JA, 21-1974-375, with a decidedly approving note by Fiorini, Bartolomé, "La expropiación es un instituto de derecho público constitucional", LA LEY, 156-289, with a note by Canasi, Juan, "La prescripción liberatoria opuesta por el expropiante durante el juicio expropiatorio. Su improcedencia"; the author concludes by accepting the ruling under commentary. In this case, the "direct" or "regular" expropriation lawsuit initiated by the State had been terminated due to the discontinuance of the proceedings; the statute of limitations exception was later raised by the State in the reverse expropriation lawsuit filed by the defendant. The thesis that the terms of the personal action only begin to run from the date of the fixation by agreement or judgment had been held by the Court for a long time, who nevertheless accepted for these cases the acquisitive prescription; see, in this sense, judgment of 6/5/1940 "in re": "Lastra de Elía vs. Province of Santa Fe", LA LEY, 18-700; the solution had been that of some lower courts; compel, CCivil 2ª de la Capital, 28/8/1939, LA LEY, 15-925, which continued to apply it; see CCivil 2ª Capital, 24/7/1944, Bocazzi A. v. Municipality of the Capital, LA LEY, 35-743).

The criterion that the extinctive prescription period only begins to run as from the determination of the indemnity (by judgment or agreement) was reiterated in subsequent pronouncements; for example:

-- On June 15, 1982 "in re": "Recabarren de Pérez Caillet v. Government of the Province of San Juan", in which it was declared unconstitutional the local rule that makes the ten-year statute of limitations run from the moment of the taking of possession by the expropriator without the consent of the owner (Judgments: 304:852 and ED, 101-347, with an approving note, without title, by Bidart Campos --La Ley, 1983-B, 531; 1983-A, 134- -).

-- On 12/12/1985, "in re": "Recurso de hecho en J. Bianchi c. Dirección Provincial de Vialidad", declaring the unconstitutionality of section 36 of law 6394 of the province of Córdoba;

-- More recently, on 7/4/1992, "in re": "Aranda Camacho c. Dirección Nacional de Vialidad" striking down in the same way Art. 56 of Law 21.499, with the dissent of Dr. Rodolfo Barra (the last two are transcribed in the work of Docobo, Jorge J., "Un nuevo enfoque sobre el plazo de prescripción en la expropiación irregular", Revista de Derecho Administrativo, year 4, No. 9/10, 1992, p. 123).

This jurisprudence is supported by a sector of the doctrine (see Ghersi, Carlos A., "La prescriptibilidad de la acción por el cobro de la cobro de la indemnización o precio en materia expropiatoria en el ámbito de la provincia de Buenos Aires", JA, 1984-III-824; by the same author, "La expropiación inversa: la prescriptibilidad de la acción por el cobro de indemnización", JA, 1985-III-825; in agreement with the position, in substance, clarifying that before the fixing of the price, the action is imprescriptible, Vénica, Oscar H., "Does the reverse or irregular expropriation action prescribe?", JA, 1986-III-833; by the same author, "Expropiación irregular. Prescripción de la indemnización fijada y no de la pretensión para que sea determinada", LLC, 1988-287; both works are transcribed in the work Derecho Concursal y Procesal, Córdoba, Ed. Lerner, 1994, pp. 88 and 168. The jurisprudence is cited, without criticism, by other authors who, consequently, seem to adhere to it; see, in this sense Villegas,

A. W., "Régimen jurídico de la expropiación", Buenos Aires, Depalma, 1973, No. 368/371).

IX. The initial moment of the course of the extinctive prescription.

As I have explained, the Federal Court has adhered, albeit with some hesitation, to the third criterion. Consequently, it affirms that as long as the expropriation compensation has not been fixed, the statute of limitations does not start to run in a reverse or irregular expropriation.

1. Criticism of this position

I cannot hide my reservations about this solution, for the following reasons:

a) Liquidity is not a requirement for the enforceability of the claim. If the amount is not determined, in the worst case for the creditor, there is an action for its determination and that action, being personal, is prescriptible (see LS, 220-277 for unregulated fees). In short, there are two actions: one to request the inverse expropriation, which starts to be computed from the fact that motivated it; another to claim the price already fixed, which prescribes after ten years.

b) The indetermination of the credit may lead to the imprescriptibility of the action, since, as long as it is not fixed, the course of the statute of limitations will not have run, even if reasonable time guidelines have passed, to the detriment of legal certainty, the ultimate basis of the extinctive statute of limitations.

Consequently with this idea it has been said: "The condition that the Court has introduced since Acevedo de Cámpora appears as of impossible compliance and implies the virtual declaration of imprescriptibility" (Docobo, Jorge J., "Un nuevo enfoque sobre el plazo de prescripción en la expropiación irregular", Revista de Derecho Administrativo, year 4, No. 9/10, 1992, p. 128).

2. The binding nature of the National Court's jurisprudence

Notwithstanding the criticism, this is the solution that the National Court has been upholding for more than twenty years, and which it ratified in 1992. Consequently, as I have stated in other pronouncements, following its criterion contributes to the good administration of Justice and to the quick solution of conflicts, a fundamental principle in these times of great public disbelief in the judicial system.

The appealed judgment deviates from these guidelines and, therefore, the complaint is admissible.

X. Acquisitive prescription

1. The defendant has opposed from the beginning the acquisitive prescription.

2. I have advanced some concepts regarding the doctrinal and jurisprudential dispute as to whether or not the State may invoke the usucaption of a property when it has previously declared it to be of public utility and subject to expropriation.

3. The issue has been the subject of an extensive jurisprudential debate which ended, for some capital courts, with the plenary of the National Contentious Administrative Chamber of March 18, 1980 "in re": "Grun, Elías c. Gobierno nacional" --La Ley, 1980-B, 170-- which states: "When it is a question of usucaption by the State of an expropriated property, the term to prescribe must be computed, as a principle, from the moment in which the expropriation price is integrated, with the proviso that if the abandonment of the purpose had in view in the respective law occurs later, (ED, 91-207) (I clarify that although the call for a plenary session seems to be very broad, it was motivated by contradictory decisions in retrocession trials, which implies a concluded expropriation trial. The majority of the votes argue on that assumption).

Authoritative voices were heard in that decision; for some, the term should begin to be computed from the interversion of the title, that is, from the time the purpose pursued by the expropriation is abandoned and the cause and nature of possession is changed; this position is based on a logical argument; in order to be usucapted, possession must be uninterrupted, which means that, for its part, the owner has the possibility of interrupting it; the declaration of public utility implies that the owner is legally prevented from to interrupt the expropriator's possession; therefore, in order to be feasible, there must be an interversion of the title (vote of Dr. Muzio).

But beyond these variants, it is interesting to clarify that the majority of the Federal Chamber rejected the criterion according to which the term of the acquisitive prescription begins to be computed as from the dispossession or occupation, whether the property is expropriated, in the process of expropriation or outside any expropriation (minority vote of Dr. Vocos Conesa) and many of its members held that the possession was, in fact, inapplicable (the latter was the criterion held by Soler Miralles as a member of the CFed. Mendoza, on 14/5/1975 "in re": "Chávez Benigno c. Gobierno nacional", LA LEY, 1975-C, 313).

4. The jurisprudence of the National Court is contrary to the appellee's claims.

I will first analyze some cases that resolve situations that have some similarities, although they are not identical.

a) On 6/10/1972, the High Court, composed of the distinguished jurists Roberto Chute, Marco A. Risolía, Luis Cabral and Margarita Argúas, held that "although it is not doubtful that the State may acquire a property by prescription in view of the provisions of arts. 3951 and 4015, it is not admissible, given the nature of the public law institute that governs expropriation, that pending a claim for expropriation that has not been withdrawn, the action be transformed to obtain a pronouncement declaring that the property subject of the suit was acquired by usucaption". The ultimate basis of the decision lies in the fact that "if a cause of public utility was invoked to affect the property to the route of the road, such declaration represents, from the point of view of the private parties, a constitutional guarantee established to protect private property" (Dirección Nacional de Vialidad v. Valle de Damonte, M. suc. LA LEY, 150-155).

b) For the retrocession, Dr. Guastavino's vote states that "the provisional possession obtained by the State in the respective expropriation trial lacks suitability for usucaption, since it did not entail disregarding the ownership of the property by the expropriated party, so that the requirements of section 2351 of the Civil Code for the existence of a valid possession for the purposes of section 4015 are not met". The same result was reached by the other members of the court when they stated that "The status of possessor on the part of the expropriating State is subordinated to the prior payment of the compensation fixed by the judgment, since prior to that fact such status could only be recognized in the head of the owner, creditor of the respective compensation, a circumstance which disqualifies him from acquiring the property by prescription" (CS, 18/6/1981, Madariaga et al. v. National Government, LA LEY, 1981-D, 147). It is the same criterion of the Federal Court of Paraná, with the vote of the Professor of Real Rights, Dr. Musto, who said that "while the expropriation trial is not completed and the compensation is paid, the expropriator who occupies the property does not do so as owner but by virtue of legal rules aimed at ensuring the purposes of the State and so that these are not enervated or delayed by such proceeding. It is a provisional possession, granted by the judges or acquired with the consent of the owner, but it cannot be considered as the civil possession defined by section 2351 of the Civil Code and the only one suitable for usucaption" (7/12/1978, Garaycochea, Miguel c. Gobierno nacional, LA LEY, 1979-C, 438, with an approving note by Canasi, José, "La prescripción adquisitiva en la retrocesión expropiatoria") and of the Federal Chamber of Tucumán which required, for the proceeding of the acquisitive prescription, that the State had interverted its title (5/8/1976, Musto v. Dirección de Fabricaciones Militaras, "La prescripción adquisitiva en la retrocesión expropiatoria"). Dirección de Fabricaciones Militares, LA LEY, 1977-B, 227) (A serious criticism of the position that denies the character of true possessor to the State was formulated in the minority vote of Vocos Conesa in the aforementioned plenary, ED, 91-215 --La Ley, 1980-B, 170--).

c) More specifically, in the case of inverse expropriation, the Federal Court has said that "the expropriation relationship is constituted with the declaration of public utility and is extinguished with the payment of the compensation fixed by agreement of the parties or final judgment and, therefore, remains fully subject to public law until such time as it is extinguished, the State may not acquire the ownership of the property or things affected by expropriation by the means provided for in the Civil Code. Hence, the invocation of the acquisitive prescription is ineffective as long as the mentioned expropriating public law relation subsists" (CS, 5/12/1973, Acevedo de Cámpora v. Dirección Nacional de Vialidad, JA, 21-1974-379 and LA LEY, 156-289).

Document

5. In the case at hand, the acceptance of the acquisition prescription would have an additional problem: as the expropriated party has been arguing since the previous administrative instance, the defendant, after the occupation, on December 30, 1965 by means of resolution 2520 of the Provincial Directorate of Roads declared the land necessary for the construction of the accesses to the airport of the city of Mendoza of public utility for the purposes of its expropriation (fs. 12 file No. 288, D/1986). This act, according to the jurisprudential criteria described above, implies an express acknowledgment that its possession was not by right of ownership.

The plaintiff presented himself to the administrative authority on 10/10/1985, that is, before the twenty years computed from that administrative act and, as we have seen, the occupation was prior to that declaration, so it is not determined at what moment the recognition that his possession was not with the intention of owner ceased and his possessory relationship began to serve the effects of the acquisitive prescription.

XI. The axiological question

On pages 34 et seq., the respondent claims that the statute of limitations defense responds to ethical principles, since the State has never collected from the plaintiff its credit for the contribution for improvements. The argument is unpublished, not subject to the knowledge of the judge of first instance, so that its treatment in this instance becomes absolutely inappropriate (LA, 81-459; LA, 85-90).

XII. Conclusions

From the foregoing, I conclude that the rulings of the lower court do not comply with the jurisprudence of the National Court described above, and therefore, it must be considered that they contain an error in the interpretation of the law in force, and consequently, the cassation appeal filed must be favorably accepted.

On the same issue, Dr. Moyano agrees with the preceding votes.

2nd question. -- Dr. Romano said:

In view of the result reached in the treatment of the previous issue, the appeal filed should be upheld and the judgment rendered on pages 175/178 of Case No. 121.101, "Tohmé, Elías v. Dirección Provincial de Vialidad p. exprop inv." should be revoked in all its parts. Consequently, the appeal filed on pages 153/157 must be admitted, and the exception of prescription filed by the defendant on page 33 must be dismissed. In such conditions, the appellant's petition is admissible and the case must be remanded to its origin for a ruling on the merits of the matter debated in these proceedings. Thus I vote.

On the same issue, Dr. Kemelmajer de Carlucci and Dr. Moyano concurred with the above vote.

3rd question. -- Dr. Romano said:

In view of the result reached in the treatment of the foregoing issues, it is appropriate to impose the costs on the losing party (article 36-I, Procedural Code). Thus I vote.

On the same issue, Dr. Kemelmajer de Carlucci and Dr. Moyano concurred with the above vote.

In view of the merits resulting from the preceding resolution, the First Chamber of the Supreme Court of Justice, ruling definitively, resolves: I. To uphold the cassation appeal filed on pages 10/14 of the file, revoking in all its parts the sentence issued on pages 175/178 of file No. 121,101, entitled: "Tohmé, Elías v. Dirección Provincial de Vialidad p/exprop. inv. Consequently, the exception of statute of limitations filed on page 33 of the main case is rejected, and the same must be referred back to its origin so that the judge of the case may rule on the merits of the case. II. To impose the costs on the losing party. III. To defer the regulation of fees for the appropriate time. IV. Issue a check to the order of the appellant for the amount of $ 18, charged to the deposit slips shown on pages 2 and 3. -- Fernando Romano. -- Aída Kemelmajer de Carlucci. -- Carlos E. Moyano.