**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

Docket Number(s): 23-7370(L), 23-7463 (XAP), 23-7614 (XAP)　　　Caption [use short title]

Motion for: stay pending appeal and administrative stay.

Petersen Energia Invorsora S.A.U. et al. v. Argentine Republic et al.

Set forth below precise, complete statement of relief sought:

Appellant respectfully requests this Court to stay further post-judgment discovery

pending appeal of the final judgment in this action (No. 23-7370(L)).  At a minimum,

the Court should stay further proceedings relating to the Personal Device Order

pending appeal of that order (No. 25-2362). If the Court does not grant a stay

by April 7, 2026, it should enter an administrative stay.

MOVING PARTY: Argentine Republic　　　OPPOSING PARTY: Petersen Energia Inversora S.A.U. et al.

☐ Plaintiff　☑ Defendant

☑ Appellant/Petitioner　☐ Appellee/Respondent

MOVING ATTORNEY: Robert J. Giuffra, Jr.　　　OPPOSING ATTORNEY: Paul D. Clement

[name of attorney, with firm, address, phone number and e-mail]

Sullivan & Cromwell LLP

125 Broad Street, New York, NY 10004

(212) 558-4000 / giuffrar@sullcrom.com

Clement & Murphy, PLLC

706 Duke Street, Alexandria, VA 22314

(202) 742-8900 / paul.clement@clementmurphy.com

Court- Judge/ Agency appealed from: Southern District of New York (Preska, J.)

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes　☐ No (explain):

Opposing counsel's position on motion:
☐ Unopposed　☑ Opposed　☐ Don't Know

Does opposing counsel intend to file a response:
☑ Yes　☐ No　☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below? ☑ Yes ☐ No
Has this relief been previously sought in this court? ☐ Yes ☑ No

Requested return date and explanation of emergency: April 7, 2026

The Republic respectfully requests a decision on this stay motion by April 7, 2026, which is the latest possible date that the Republic would reasonably need to begin preparing senior government officials to testify at the district court's April 21-23 hearing.

Is the oral argument on motion requested? ☑ Yes ☐ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set? ☑ Yes ☐ No  If yes, enter date: October 29, 2025

Signature of Moving Attorney:

/s/ Robert J. Giuffra, Jr.　Date: 03/06/2026　Service: ☑ Electronic ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

# 23-7370(L)

## 23-7463(XAP), 23-7614(XAP)

# In the United States Court of Appeals for the Second Circuit

PETERSEN ENERGIA INVERSORA, S.A.U. and PETERSEN ENERGIA
S.A.U.,

*Plaintiffs-Appellees-Cross-Appellants*,

v.

ARGENTINE REPUBLIC,

*Defendant-Appellant-Cross-Appellee*,

YPF S.A.,

*Defendant-Conditional Cross-Appellant*.

On Appeal from the United States District Court
for the Southern District of New York
(No. 1:15-cv-02739) (Hon. Loretta A. Preska)

## EMERGENCY MOTION FOR STAY OF DISCOVERY PENDING APPEAL AND ADMINISTRATIVE STAY

Amanda F. Davidoff
Thomas C. White
Morgan L. Ratner
SULLIVAN & CROMWELL LLP
1700 New York Avenue NW
Washington, DC 20006
(202) 956-7500
davidoffa@sullcrom.com

Robert J. Giuffra, Jr.
Sergio J. Galvis
Adam R. Brebner
Pedro José Izquierdo
Arturo Carlos Schultz
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000
giuffrar@sullcrom.com

*Attorneys for the Argentine Republic*

# TABLE OF CONTENTS

*Page*

INTRODUCTION......................................................................................................1

BACKGROUND ......................................................................................................5

ARGUMENT ........................................................................................................12

I.      **THIS COURT SHOULD STAY FURTHER POST-JUDGMENT DISCOVERY PROCEEDINGS PENDING RESOLUTION OF THE REPUBLIC'S MERITS APPEAL**....................................................13

      A.     The Republic Is Likely to Prevail on the Merits ................................13

      B.     The Republic Will Be Irreparably Injured Absent a Stay ..................15

      C.     Plaintiffs Would Suffer No Harm from a Stay .................................18

      D.     The Public Interest Weighs Heavily in Favor of a Stay.....................19

II.     **AT A MINIMUM, THIS COURT SHOULD STAY THE PERSONAL DEVICE ORDER AND RELATED SANCTIONS PROCEEDINGS** ..........................................................................................21

CONCLUSION......................................................................................................23

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Bolivarian Republic of Venezuela* v. *Helmerich &*
    *Payne Int'l Drilling Co.*,
    581 U.S. 170 (2017)........................................................................20

*De Letelier* v. *Republic of Chile*,
    748 F.2d 790 (2d Cir. 1984) .................................................21

*EM Ltd.* v. *BCRA*,
    800 F.3d 78 (2d Cir. 2015) ................................... 8, 11, 17

*EM Ltd.* v. *Republic of Argentina*,
    473 F.3d 463 (2d Cir. 2007) ............................................... 19

*Funnekotter* v. *Republic of Zimbabwe*,
    2011 WL 5517860 (S.D.N.Y. Nov. 10, 2011)....................21

*Gabay* v. *Roadway Movers*,
    2023 WL 3569351 (S.D.N.Y. May 19, 2023) ....................21

*Hercaire Int'l, Inc.* v. *Argentina*,
    821 F.2d 559 (11th Cir. 1987) .............................................8

*Inst. of Cetacean Rsch.* v. *Sea Shepherd Conservation Soc.*,
    725 F.3d 940 (9th Cir. 2013) ...............................................19

*In re Johns-Manville Corp.*,
    27 F.3d 48 (2d Cir. 1994) ...................................................19

*Lederman* v. *N.Y.C. Dep't of Parks & Rec.*,
    731 F.3d 199 (2d Cir. 2013) ..............................................16

*McCulloch* v. *Sociedad Nacional de Marineros de Honduras*,
    372 U.S. 10 (1963)...............................................................20

*Mohammed* v. *Reno*,
    309 F.3d 95 (2d Cir. 2002) ................................................13

ii

*Morgan Guar. Tr. Co. of N.Y.* v. *Republic of Palau*,
702 F. Supp. 60 (S.D.N.Y. 1988) ....................................................16

*Nken* v. *Holder*,
556 U.S. 418 (2009).............................................................. 3, 13

*NML Cap.* v. *Republic of Argentina*,
892 F. Supp. 2d 530 (S.D.N.Y. 2012) ....................................8

*NML Cap.* v. *Republic of Argentina*,
2015 WL 7731779 (N.D. Cal. Dec. 1, 2015).........................8

*In re Papandreou*,
139 F.3d 247 (D.C. Cir. 1998)........................................15, 16

*Persinger* v. *Islamic Republic of Iran*,
729 F.2d 835 (D.C. Cir. 1984)................................................20

*SEC* v. *Citigroup Glob. Mkts*,
673 F.3d 158 (2d Cir. 2012) ...................................................18

*Seijas* v. *Republic of Argentina*,
502 Fed. Appx. 19 (2d Cir. 2012)............................................8

*Seijas* v. *Republic of Argentina*,
2009 WL 10700009 (S.D.N.Y. Aug. 19, 2009)......................8

*Verlinden B.V.* v. *Cent. Bank of Nigeria*,
461 U.S. 480 (1983)................................................................19

**Statutes and Rules**

28 U.S.C. § 1610 ...........................................................................14

28 U.S.C. § 1611 ....................................................................11, 17

Fed. R. Civ. P. 26 .......................................................................9, 22

Fed. R. Civ. P. 30 ......................................................................7, 11

Fed. R. Civ. P. 34 .......................................................................9, 22

## INTRODUCTION

More than four months ago, this Court held oral argument on the underlying $16.1 (now more than $18) billion judgment against the Argentine Republic. Since then, while awaiting this Court's merits decision, plaintiffs have turned enforcement-related discovery into a circus. As the U.S. Government made clear in a statement of interest filed with the district court last week, plaintiffs' discovery demands "do not comport with the principles of comity and reciprocity" and risk "potential adverse consequences for our foreign relations." Dkt. 900 at 19-20.[1] Plaintiffs' intrusive and improper discovery in derogation of the "grace and comity" owed to a foreign sovereign and important U.S. ally has to stop. *Id.* at 6, 8. This Court should stay further post-judgment discovery and related proceedings pending its merits decision.

For more than two years, the Republic has tried in good faith to avoid requesting a stay of discovery—all while vigorously contesting the unprecedented underlying judgment. It has made extraordinary efforts to comply with plaintiffs' broad enforcement-discovery requests. To date, the Republic has produced over 115,000 pages of responsive material. That process has involved searches through virtually every Ministry of the Argentine government, including numerous Secretariats and departments, with thousands of hours spent by the Republic's

---

[1] Unless specified, all docket citations are to the *Petersen* district court docket.

internal and outside counsel (and counting).  Plaintiffs have also aimed subpoenas at well over 100 third parties.

But plaintiffs are still not satisfied.  As Burford Capital, their litigation funder, has publicly explained, plaintiffs are not "really" interested in "pick[ing] up" executable assets.  Dkt. 764-1 at 7.  Instead, "[t]he goal of [plaintiffs'] enforcement campaign[]" is to throw "sand in the gears" of Argentina's critical efforts to "rejoin the capital markets [and] global economy," including by "sweep[ing] in third parties."  *Id.*

As Burford intended, this case has reached a breaking point.  Last July, the district court ordered the Republic to turn over messages from the personal phones of cabinet-level Ministers and other high-ranking officials.  It did so on the theory that five separate government instrumentalities may be alter egos of the Republic—even though courts (including this one) have repeatedly rejected such claims for each entity, and even though none of them has executable assets.  Many high-ranking officials agreed to turn over personal communications, and plaintiffs now have their chats and emails.  But because a handful of current officials refused, within their rights under Argentine law, plaintiffs now demand that the district court (i) order the Republic to "terminate" them; (ii) compel them to testify at an evidentiary hearing next month in New York; (iii) preclude the Republic from disputing the alleged alter-ego status of four of the instrumentalities; (iv) enter adverse inferences regarding the

2

alleged alter-ego relationship between the instrumentalities and the Republic; and (v) order the Republic to pay million-dollar-a-day contempt sanctions. To make matters worse, the district court recently expanded its April "evidentiary hearing" to cover the Republic's knowledge of the location of the gold reserves of Argentina's central bank, even though those reserves are categorically immune from execution and the Republic has provided testimony under oath that it does not possess that information. Plaintiffs are also pursuing discovery-on-discovery and numerous additional peripheral matters to create a pretext for further sanctions proceedings.

After exhausting all other options, the Republic now seeks a stay of post-judgment discovery pending resolution of the merits appeal. Each of the four factors from *Nken* v. *Holder*, 556 U.S. 418 (2009), strongly supports a stay.

*First*, the Republic is likely to succeed on the merits of its appeal. As the Republic has explained to this Court, the district court made multiple errors of Argentine public and private law in making up a remedy that no Argentine court would recognize. It did so even though this case should have been dismissed on *forum non conveniens* or international-comity grounds at the outset.

*Second*, if plaintiffs' extreme discovery demands continue unstayed, the Republic will suffer irreparable harm. On the one hand, it faces the prospect of violating its own laws and immense distraction from its own governance if it complies with plaintiffs' demands. On the other hand, it faces contempt and

unprecedented sanctions if it does not. As the U.S. Government has observed, that Hobson's choice ignores the "concerns of comity and reciprocity" that U.S. courts should consider "when dealing with a foreign sovereign." Dkt. 900 at 4. Further, plaintiffs now seek to disrupt the operations of Argentina's central bank and other entities critical to Argentina's recovering economy—including its main airline, its largest commercial bank, and its most important energy company.

*Third*, plaintiffs and their litigation funder will suffer no harm in waiting for this Court's upcoming merits decision. Plaintiffs have already received massive volumes of discovery from the Republic and third parties. Their recent requests are both the most intrusive and the least relevant, with no reasonable prospect of leading to executable assets.

*Fourth*, the public interest strongly favors a stay. Harassment masquerading as post-judgment discovery is an affront to the Republic's sovereignty. As the U.S. Government advised the district court, this "burdensome and intrusive discovery— coupled with requests that a court demand a foreign sovereign fire its own high-level government officials for failure to comply, on pain of sanctions—could lead to reciprocal adverse treatment of the United States and its officials in foreign courts." Dkt. 900 at 7. Interests of judicial economy also support a stay, which would prevent the further multiplication of proceedings in this Court. There are already two sets of

pending appeals of the district court's post-judgment orders, all of which could be rendered moot by this Court's forthcoming decision on the merits.

At a minimum, this Court should stay further proceedings relating to the Personal Device Order, including plaintiffs' sanctions motion and the upcoming evidentiary hearing, pending the Republic's appeal of that order.[2] This request independently satisfies the *Nken* factors.

The Republic respectfully requests a decision on this stay motion by April 7—the latest possible date that the Republic would reasonably need to begin preparing senior government officials to testify at the district court's April 21-23 hearing. If the Court cannot resolve this motion by April 7, the Republic respectfully requests that the Court enter an administrative stay pending resolution of this motion.

## BACKGROUND

1. This appeal arises out of a record-setting $16.1 billion (with post-judgment interest, over $18 billion) judgment against the Republic. Plaintiffs' unprecedented breach-of-contract claims, brought wholly under Argentine law, relate to the 2012 intervention in Argentina's largest energy company, YPF Sociedad Anónima (YPF), and subsequent 2014 expropriation of a 51% stake in YPF. The

---

[2] The Republic is simultaneously filing this motion in the merits appeals, Nos. 23-7370(L), 23-7376(L), and the Personal Device Order appeals, Nos. 25-2362, 25-2363.

district court granted summary judgment to plaintiffs without holding oral argument and issued a $16.1 billion judgment after a short damages trial.

In October 2023, the Republic appealed. It demonstrated that the district court should have dismissed the case—which was based entirely on Argentine law and on events that took place in Argentina—under the doctrines of *forum non conveniens* or international comity, arguments supported by several sovereign amici. The Republic also showed how the district court repeatedly misconstrued Argentine public law by overriding Argentina's comprehensive public-law system for third-party claims arising from an expropriation, and Argentine private law by, among other things, recognizing the first-ever breach-of-contract action for damages based on a violation of Argentine corporate bylaws. Numerous Argentine amici, including former Supreme Court Justices, a former Treasury Attorney General of Argentina, a major bar association, distinguished law professors, and others, supported the Republic's appeal, explaining that the district court's cursory analysis ignored core rules of the Argentine civil legal system. This Court held oral argument on October 29, 2025.

Also in October 2023, the Republic moved in the district court for a stay of execution pending appeal without a bond. Dkts. 503, 513. The district court imposed onerous conditions to pledge assets worth several billions: (i) 51% of the Republic's equity stake in YPF and (ii) future receivables related to a dam. Dkt. 527

at 3, 8-9.  Because the Republic could not comply with these conditions under its own law, *see* Dkt. 531, it instead tried to comply with what it assumed would be standard post-judgment discovery.

2.    Regrettably, post-judgment discovery has been anything but standard. Over the last two years, plaintiffs served a total of 142 document requests and 31 subpoena questions.  *See* Dkt. 867 ¶ 16.  The Republic has produced over 115,000 pages of documents.  *Id.*  The Republic's productions include extensive information about its assets both within and outside Argentina, including its worldwide financial accounts, real property, moveable assets, YPF shares, commercial transactions, debts, final judgments, and arbitral awards.  *Id.* ¶¶ 6-15.  The Republic also produced information regarding diplomatic, consular, and military property, two years of interbank (SWIFT) messages, financial agreements with Chinese entities, concession contracts, and more.  *Id.*

Now that the Republic has produced massive discovery relevant to the identification of potentially executable assets, plaintiffs keep pressing for increasingly more burdensome and irrelevant discovery.  Plaintiffs have launched, and the district court has allowed, a campaign of discovery-on-discovery, repeatedly demanding live testimony detailing the Republic's discovery efforts.  Seven senior Republic officials have sat for Rule 30(b)(6) depositions on various topics, including Argentina's "commercial transactions," its "financial agreements" with Chinese

7

entities, and its payments to foreign "law firm[s] or consulting firm[s]." Dkt. 887 ¶¶ 27-28. In total, the Republic has provided approximately 37 hours of post-judgment testimony from these busy officials. *Id.* ¶ 28.

Plaintiffs have also harassed third parties, serving 168 subpoenas on 144 different third parties to date. *See id.* ¶ 29 (giving figures as of February 19, 2026, which have since increased). These subpoenas have burdened over 50 financial institutions, as well as dozens of companies with which Argentina or its instrumentalities may do business, including pharmaceutical companies, aviation-training suppliers, public-relations firms, and an academic publisher. *See id.* Appx. A.

3.     As part of their campaign, plaintiffs have demanded irrelevant "alter-ego" discovery concerning sovereign instrumentalities that numerous federal courts (including this Court) have held are *not* the Republic's alter egos. Dkt. 867-2 at 42.[3]

The district court nevertheless blessed plaintiffs' harassment campaign, ordering discovery as to Argentina's central bank, Banco Central de la República Argentina (BCRA); Aerolíneas Argentinas S.A. (Aerolíneas); Banco de la Nación

---

[3]   *See EM Ltd.* v. *BCRA*, 800 F.3d 78, 94-95 (2d Cir. 2015) (BCRA); *Seijas* v. *Republic of Argentina*, 2009 WL 10700009, at *2 (S.D.N.Y. Aug. 19, 2009) (Aerolíneas); *Hercaire Int'l, Inc.* v. *Argentina*, 821 F.2d 559, 565 (11th Cir. 1987) (same); *Seijas* v. *Republic of Argentina*, 502 Fed. Appx. 19, 22 (2d Cir. 2012) (BNA); *NML Cap.* v. *Republic of Argentina*, 892 F. Supp. 2d 530, 533-534 (S.D.N.Y. 2012) (ENARSA); *NML Cap.* v. *Republic of Argentina*, 2015 WL 7731779, at *4 (N.D. Cal. Dec. 1, 2015) (YPF).

Argentina (BNA); Energía Argentina Sociedad Anónima (ENARSA); and YPF. Dkt. 592 at 39:20-25; Dkt. 772 at 63:17-66:19. The Republic responded by producing organizational charts, board minutes, and information concerning the entities' officers, directors, and executive committees, as well as official government emails and other communications. Dkt. 887 ¶¶ 4-5.

4. Plaintiffs did not stop there. They next demanded communications from the personal devices and accounts of 36 current and former high-ranking Argentine government officials, including cabinet-level ministers. In August 2025, the district court ordered the Republic to produce this extraordinary discovery. Dkt. 772 at 53:16-23; Dkt. 785 (the "Personal Device Order"). The Republic appealed that order, which fails the basic requirements for discovery under Federal Rules of Civil Procedure 26 and 34: the material is not in the Republic's control, is not relevant, and is not proportional. This Court has scheduled oral argument for April 16, 2026.

Meanwhile, the Republic has diligently tried to comply with the Personal Device Order to the best of its ability under Argentine law. It requested consent from the current and former officials and produced more than 800 pages of responsive materials and 86 voice notes from the many officials who agreed to cooperate. Dkt. 887 ¶ 5; *see* Dkt. 888 ¶¶ 7-29. Certain government officials refused to consent (as Argentine law allows), including current cabinet officials and former

officials with no connection to the current administration. As to those officials, the Republic is out of moves; it cannot forcibly access their personal accounts or seize their personal devices.

On January 15, 2026, plaintiffs moved for sanctions and contempt, claiming that the Republic violated the Personal Device Order by failing to produce non-consenting officials' communications. Plaintiffs contend that the Republic should be sanctioned because President Milei did not threaten high-ranking current officials with "discipline up to and including termination." Dkt. 853 at 22. Plaintiffs have also pressed for (1) an order precluding the Republic from disputing that four of the instrumentalities are alter egos, (2) adverse inferences regarding the alleged alter-ego relationship between these entities and the Republic, (3) a finding of contempt, (4) a $1-million-per-day fine, and (5) attorney's fees. *See id.* at 17-18. At plaintiffs' instigation, the district court set an evidentiary hearing for April 21-23, 2026, Dkt. 884, at which plaintiffs demand live testimony from cabinet members and other government officials. Dkt. 853 at 34-35.

On February 26, 2026, the U.S. Government filed a Statement of Interest in support of the Republic, explaining that sanctions are inappropriate because the underlying discovery requests were both improper under the Federal Rules of Civil Procedure and "inconsistent with considerations of comity and reciprocity." Dkt. 900 at 2, 4-8.

10

5.     Plaintiffs have also demanded extensive discovery regarding the location and movement of gold reserves held by Argentina's central bank, BCRA, even though this Court has held that BCRA "is legally separate and distinct from [the Republic]." *EM Ltd.*, 800 F.3d at 90-91.  Plus, as a foreign central bank, BCRA's assets are categorically immune from execution under the FSIA.  28 U.S.C. § 1611(b)(1).  As the Republic has explained, BCRA manages its gold reserves confidentially, plaintiffs' requests are improper, and the information sought is unavailable to the Republic's Executive Branch.  Dkt. 861 at 1-2; *see* Dkt. 867 ¶¶ 30-41.

The district court nevertheless ordered the Republic to (1) search for documents concerning the location and movements of gold reserves, and (2) produce a Rule 30(b)(6) witness to testify on that issue.  Dkt. 703; Dkt. 831 at 40:8-42:9; Dkt. 838 at 27:25, 30:15-17.  After the witness confirmed that the Republic does not know the location of BCRA's gold reserves, the court ordered the Republic to provide an "affidavit by a person with knowledge" on that question.  Dkt. 875 at 36:3-10.  The Republic submitted a declaration from the Legal and Administrative Secretary of its Ministry of Economy, who reiterated that the Republic has no "information regarding the countries in which the BCRA holds its gold reserves," beyond what has been publicly reported and produced by third parties.  Dkt. 872-1 ¶ 4.  The Republic also provided a communication from BCRA that it would not and

11

could not "disclose [its gold reserves] information publicly or to the Republic." *Id.* ¶ 7. On February 18, 2026, at plaintiffs' request, the district court expanded the April evidentiary hearing to "address the Argentine government's claimed lack of information as to the location of its gold reserves." Dkt. 884 at 3.

6.      On January 28, 2026, in a pre-motion letter, the Republic requested that the district court stay further post-judgment discovery and sanctions proceedings pending this Court's decision on the merits appeal, or, in the alternative, stay proceedings relating to the Personal Device Order pending the Republic's appeal of that order. Dkt. 865. On February 19, 2026, without ordering briefing, the district court denied the Republic's motion. Dkt. 890.

## ARGUMENT

At this point, there are multiple pending appeals and others brewing. The path out is straightforward:  this Court should stay further post-judgment discovery, including discovery-related sanctions proceedings, pending the Republic's *sub judice* merits appeal. At a minimum, this Court should stay proceedings relating to the Personal Device Order, including plaintiffs' sanctions motion and the upcoming evidentiary hearing, pending the Republic's appeal of that order.

## I. THIS COURT SHOULD STAY FURTHER POST-JUDGMENT DISCOVERY PROCEEDINGS PENDING RESOLUTION OF THE REPUBLIC'S MERITS APPEAL.

A stay turns on four factors: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434. The "first two factors . . . are the most critical." *Id.* at 434. All favor the Republic.

### A. The Republic Is Likely to Prevail on the Merits.

As explained in its briefing and argument on the fully submitted appeal, the Republic "has made a strong showing that [it] is likely to succeed on the merits." *Nken*, 556 U.S. at 434; *see Mohammed* v. *Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (movant must demonstrate a "substantial possibility" of success).

This Court is familiar with the Republic's grounds for reversal. The district court should have dismissed this case at the outset under the doctrine of *forum non conveniens* or principles of international comity. No. 23-7370, Dkt. 228 at 29-42. That error was compounded by the court's summary-judgment decision, which repeatedly made up Argentine law, including by (i) recognizing the first-ever breach-of-contract action for damages based on corporate bylaws, *id.* at 42-49; (ii) disregarding the terms of YPF's bylaws' exclusive penalty provision, *id.*

13

at 49-53; and (iii) overriding Argentina's comprehensive system for third-party claims arising from an expropriation, *id.* at 61-71, even though claims by similarly situated YPF minority shareholders were resolved through that system, *id.* at 15-17.

In denying a stay of discovery, the district court brushed away the Republic's merits showing as "only conclusory assertions." Dkt. 890 at 4. But the Republic's position on the merits was thoroughly explained in over 570 pages of briefing in this Court; the Republic could not add much under the district court's 1,050-word limit on pre-motion letters.

The district court also criticized the Republic for supposedly seeking "reconsideration" of its November 21, 2023 order denying a stay of execution. *Id.* at 3. But this is a request for different relief (a stay of further discovery) under vastly different circumstances (after all conceivably relevant discovery has been exhausted and the merits appeal is submitted). Plaintiffs have received all discovery needed to identify the Republic's possibly executable assets—and have brought enforcement proceedings around the world.[4] The Republic's request for a brief stay of discovery proceedings at this stage demands separate consideration.

---

[4] Because the Republic has not waived immunity, the *only* potentially applicable immunity exception under the FSIA would be for "property [in the United States] used for the commercial activity upon which the claims is based." 28 U.S.C. § 1610(a)(2).

### B.    The Republic Will Be Irreparably Injured Absent a Stay.

Without a stay, the Republic will be seriously and irreparably injured. Plaintiffs' recent discovery demands, blessed by the district court, have been openly directed at impeding an important U.S. ally's efforts to rebuild its economy. Dkt. 764-1 at 7.  In addition, the Republic is now imminently facing several harms that cannot be undone, including (1) entry of extreme and improper sanctions for "failing" to produce communications on the personal devices and accounts of high-ranking officials; (2) an evidentiary hearing in New York at which plaintiffs plan to further harass senior Argentine officials; and (3) an inquisition into categorically immune gold reserves held by Argentina's central bank.

1.    The Republic has done everything within its power to comply with the Personal Device Order.  But despite its good-faith efforts, the Republic now faces the prospect of disproportionate and extreme sanctions:  a contempt finding, a $1-million-per-day fine, a preclusion order, and adverse inferences.   Dkt. 853 at 17-33.  These potential sanctions risk irreversible harm, including significant damage to Argentina's sovereign dignity. *See In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998) ("A contempt order offends diplomatic niceties even if it is ultimately set aside on appeal.").

Sanctions or contempt would also cause irreparable harm to the Republic's international standing.  The Republic relies on foreign investment and lending from

multilateral institutions like the IMF. The stigma associated with sanctions or contempt could negatively impact those critical relationships. Sanctions would also signal elevated legal risk to banks or other financial institutions, leading to increased borrowing costs and even more limited access to capital markets. These harms cannot be undone through a later appeal. *See Morgan Guar. Tr. Co. of N.Y.* v. *Republic of Palau*, 702 F. Supp. 60, 66 (S.D.N.Y. 1988) (granting stay of execution and "deferr[ing]" remedies "to accommodate the needs of an emerging nation").

2. The Republic now faces a three-day evidentiary hearing scheduled for April 21-23 in which plaintiffs demand "live testimony from each of the [Personal Device] Custodians and any other relevant witnesses." Dkt. 853 at 34. As the D.C. Circuit has recognized in rejecting depositions of high-ranking foreign officials, "[p]rinciples of comity dictate that we accord the same respect to foreign officials as we do to our own." *In re Papandreou*, 139 F.3d at 254. Because plaintiffs have not shown "exceptional circumstances"—"for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means"—there is no basis to force any official to come to New York to testify. *Lederman* v. *N.Y.C. Dep't of Parks & Rec.*, 731 F.3d 199, 203 (2d Cir. 2013). This pointless distraction of key government officials from their domestic duties would further injure the Republic.

3.     The district court has expanded the scope of the hearing to include the location of BCRA's gold reserves, even though BCRA is not a party and its reserves are absolutely immune from execution.  28 U.S.C. § 1611(b)(1); *see EM Ltd.*, 800 F.3d at 89-96.  The Republic faces all of the same harms it is already facing in connection with the Personal Device Order:  compelled testimony from senior government officials and *another* threatened sanctions motion.  These onerous proceedings are purportedly to discover information that the Republic already explained—twice, under oath—it *does not have*, about assets that are immune from execution.  And they would further harm the Republic by sowing (baseless) uncertainty about whether BCRA's gold reserves may be at risk in an enforcement action.

4.     Plaintiffs' and the district court's contrary arguments are wrong.

*First*, in opposing a stay, plaintiffs said that the Republic cannot claim irreparable harm because it "declined to comply with the conditions the [district court] imposed" for a stay of enforcement two years ago.  Dkt. 874 at 1.  But to stay enforcement, the district court required the Republic to pledge assets worth several billions: (i) 51% of its equity stake in YPF, and (ii) future receivables related to a dam.  Dkt. 527 at 8-9.  As the Republic advised the district court at that time, it could not comply with these conditions without violating Argentine laws barring (i) any transfer or pledge of the Republic's YPF shares absent approval of the Argentine

Congress, and (ii) the expenditure of public funds to satisfy a non-final judgment. Dkt. 531 at 1-2; *see* Dkt. 514 at 4-5. The Republic's inability to accede to unlawful conditions two years ago has nothing to do with whether it is injured today.

*Second*, the district court concluded that the Republic's purported "delay" in moving for a stay "severely undermine[d]" its arguments of irreparable harm. Dkt. 890 at 4. No good deed goes unpunished. The Republic's active participation in two years of post-judgment discovery *favors* staying a proceeding that has now gone off the rails. Courts should encourage, not penalize, such good-faith efforts.

### C. Plaintiffs Would Suffer No Harm from a Stay.

After more than two years of massive discovery, Plaintiffs would suffer "no appreciable harm" from a stay, which "does nothing more than maintain the status quo." *SEC* v. *Citigroup Glob. Mkts.*, 673 F.3d 158, 168 (2d Cir. 2012). Given the extensive discovery here and the significant public information about the Republic's assets (which the Republic has made great efforts to help plaintiffs navigate), any remaining discovery is of extremely limited relevance at best.

Plaintiffs have openly touted that the "goal" of their "enforcement campaign[]" is not "trying to pick up an asset here and an asset there." Dkt. 764-1 at 7. Having made that telling admission, plaintiffs cannot claim any legally cognizable harm from a stay, especially in light of this Court's guidance that

discovery of foreign states "should be ordered circumspectly." *EM Ltd.* v. *Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007).

Plaintiffs will no doubt complain about delay, but delay alone is not enough to defeat this much-needed stay. *See In re Johns-Manville Corp.*, 27 F.3d 48, 49 (2d Cir. 1994) (affirming stay even though trust beneficiaries would "experience delays in receiving payments"). And the delay here is virtually costless to plaintiffs: the underlying judgment is accruing post-judgment interest, and plaintiffs are not operating entities. In any event, plaintiffs should not have to wait long, as the merits appeal was argued more than four months ago.

### D.    The Public Interest Weighs Heavily in Favor of a Stay.

Finally, the public interest clearly supports a stay. The Supreme Court and several courts of appeals have emphasized the public interest in "maintaining harmonious international relations" among nations. *Inst. of Cetacean Rsch.* v. *Sea Shepherd Conservation Soc.*, 725 F.3d 940, 946 (9th Cir. 2013); *see Verlinden B.V.* v. *Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983) ("Actions against foreign sovereigns in our courts raise sensitive issues concerning the foreign relations of the United States[.]"). As the U.S. Government just explained to the district court, "the significant comity, reciprocity, and foreign-relations concerns raised by burdensome discovery as to a foreign sovereign . . . are relevant to the factors a court must weigh when considering a motion for stay pending appeal, including 'where the public

interest lies.'" Dkt. 900 at 11 n.7 (quoting *Nken*, 556 U.S. at 434). That is because U.S. foreign-relations interests may be harmed by "perceived affronts to foreign states over discovery issues," a risk that is "accentuated in a case involving an important ally of the United States in the strategically critical Western Hemisphere." *Id.* at 8.

The district court's orders could encourage reciprocal mistreatment of the United States in other countries' courts. After all, "some foreign states base their sovereign immunity decisions on reciprocity." *Persinger* v. *Islamic Republic of Iran*, 729 F.2d 835, 841 (D.C. Cir. 1984). The Supreme Court has thus repeatedly admonished courts to avoid "invit[ing] retaliatory action from other nations," *McCulloch* v. *Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 21 (1963), because the United States' "grant of immunity to foreign sovereigns dovetails with [its] own interest in receiving similar treatment," *Bolivarian Republic of Venezuela* v. *Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 183 (2017). Indeed, the U.S. Government has warned that the "burdensome and intrusive discovery" in this case "could lead to reciprocal adverse treatment of the United States and its officials in foreign courts." Dkt. 900 at 7.

Plaintiffs' recent discovery demands also harm numerous non-party entities. Plaintiffs urge the district court to draw adverse inferences regarding the alleged alter-ego relationship between certain non-parties and the Republic, so that plaintiffs

can try to attach their assets without even allowing those non-parties the opportunity to be heard. That is wrong. Courts do not permit a defendant's alleged "sanctionable behavior" to "be used as the basis for findings of fact against a third party." *Funnekotter* v. *Republic of Zimbabwe*, 2011 WL 5517860, at *3 (S.D.N.Y. Nov. 10, 2011); *see De Letelier* v. *Republic of Chile*, 748 F.2d 790, 795 n.2 (2d Cir. 1984) ("[O]ne party to litigation will not be subjected to those sanctions because of the failure of another to comply with discovery.").

A stay also serves the interests of judicial efficiency—for the courts, parties, and non-parties. This Court's forthcoming decision on the merits may moot the parties' discovery and sanctions disputes, including next month's evidentiary hearing, as well as related appeals. "[C]onsiderations of judicial economy counsel against investing court resources in proceedings that may prove to be unnecessary." *Gabay* v. *Roadway Movers*, 2023 WL 3569351, at *3 (S.D.N.Y. May 19, 2023).

## II. AT A MINIMUM, THIS COURT SHOULD STAY THE PERSONAL DEVICE ORDER AND RELATED SANCTIONS PROCEEDINGS.

If the Court does not stay all discovery, it should at least stay further proceedings relating to the Personal Device Order, including plaintiffs' sanctions motion and the upcoming evidentiary hearing, pending the Republic's appeal of that order. Each of the *Nken* factors supports that stay, too.

*First*, the Republic is likely to succeed on its appeal. As explained in the Republic's briefs, the Personal Device Order mandates extraordinary discovery

beyond the bounds of Rules 26 and 34.  Under Argentine law, the Republic has no legal right or practical ability to access officials' personal devices without their consent, and therefore does not have "control" over such devices under Rule 34.  *See* No. 25-2362, Dkt. 52 at 26-38.  And the discovery never should have been permitted in the first place because it is neither relevant nor proportional.  *Id.* at 38-45; Dkt. 900 at 5-6.

*Second*, as described above, *see supra* pp. 15-16, the Republic faces irreparable injury absent a stay of the Personal Device Order.  Plaintiffs are seeking sanctions because the Republic cannot produce communications that are not within its possession, custody, or control.  Plaintiffs have never even offered a theory for how the Republic could coerce former officials.  And their sole theory with respect to current officials is that the Republic *should get President Milei to threaten their termination*, up to and including his cabinet members.  Moreover, without a stay, senior government officials handling serious domestic issues may be ordered to testify in a U.S. court about their decisions whether, when, and why to assert their rights under Argentine law over their personal phones.

*Third*, the potential harm to plaintiffs is minimal or nonexistent.  The Republic has produced the communications of 14 consenting officials.  And there is no real prospect that—contrary to every shred of evidence thus far, and every judicial decision on the topic—the non-consenting officials' personal phones will somehow

22

establish the targeted Argentine instrumentalities as "alter egos" of the Republic, much less disclose executable assets. Moreover, briefing was expedited at the Republic's request, *see* No. 25-2362, Dkts. 25, 34, and oral argument is scheduled for next month.

*Fourth*, the public interest clearly favors a stay before plaintiffs try to have a U.S. court force a valuable American ally to fire high-level government officials on pain of contempt. Holding a three-day evidentiary hearing on sanctions less than a week after this Court hears oral argument on the underlying order makes no sense for anyone involved.

## CONCLUSION

The Court should stay further post-judgment discovery pending appeal of the final judgment in this action. At a minimum, it should stay further proceedings relating to the Personal Device Order pending appeal of that order. If the Court cannot resolve this motion by April 7, it should enter an administrative stay.

Respectfully submitted,

*/s/ Robert J. Giuffra, Jr.*

Robert J. Giuffra, Jr.
Sergio J. Galvis
Adam R. Brebner
Pedro José Izquierdo
Arturo Carlos Schultz
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000
giuffrar@sullcrom.com

Amanda F. Davidoff
Thomas C. White
Morgan L. Ratner
SULLIVAN & CROMWELL LLP
1700 New York Avenue NW
Washington, DC 20006-5215
(202) 956-7500

*Attorneys for the Argentine Republic*

March 6, 2026

## CERTIFICATE OF COMPLIANCE

This motion complies with Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,197 words.

This motion also complies with the requirements of Federal Rule of Appellate Procedure 27(d) and 32(a) because it was prepared in 14-point font using a proportionally spaced typeface.

*/s/ Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.

March 6, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2026, I filed the foregoing motion with the Clerk of Court for the U.S. Court of Appeals for the Second Circuit through the appellate CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.

March 6, 2026