# 23-7370(L)

## 23-7463(XAP), 23-7614(XAP)

### UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

_____

PETERSEN ENERGIA INVERSORA, S.A.U., PETERSEN ENERGIA S.A.U.,

*Plaintiffs-Appellees-Cross Appellants*,

v.

ARGENTINE REPUBLIC,

*Defendant-Appellant-Cross Appellee*,

YPF S.A.,

*Defendant-Conditional Cross Appellant*.

_____

On Appeal from the United States District Court for the
Southern District of New York, No. 15-cv-2739

_____

### OPPOSITION TO MOTION FOR STAY OF DISCOVERY
_____

MARK C. HANSEN
DEREK T. HO
ANDREW E. GOLDSMITH
KELLOGG, HANSEN, TODD,
FIGEL, & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, DC 20036

PAUL D. CLEMENT
C. HARKER RHODES IV
NICHOLAS A. AQUART
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Plaintiffs-Appellees-Cross-Appellants*
*(Additional Counsel Listed on Inside Cover)*

March 16, 2026

SETH L. LEVINE
ALISON M. BONELLI
LEVINE LEE LLP
400 Madison Avenue, 8th Floor
New York, NY 10017

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Plaintiffs-Appellees state the following:

Plaintiffs-Appellees Petersen Energía Inversora, S.A.U. and Petersen Energía, S.A.U. are nongovernmental corporate entities. Petersen Energía Inversora, S.A.U. is a Spanish corporation wholly owned by Petersen Energía Inversora Holdings, S.A.U., a Spanish corporation that in turn is wholly owned by Petersen Energía Inversora, S.A., a privately held Argentine corporation. Petersen Energía, S.A.U. is a Spanish corporation wholly owned by Petersen Inversiones Spain, S.A.U., a Spanish corporation that in turn is wholly owned by Petersen Energía Inversora, S.A., a privately held Argentine corporation. No public corporation owns 10% or more of the stock of either Petersen Energía Inversora, S.A.U. or Petersen Energía, S.A.U.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES.......................................................................... iii

INTRODUCTION ..................................................................................... 1

BACKGROUND ....................................................................................... 4

ARGUMENT .......................................................................................... 13

I. The District Court Properly Denied Argentina's Stay Motion As A Thinly Disguised Motion For Reconsideration. ............................................ 13

II. Argentina Comes Nowhere Near Justifying Its Last-Ditch Effort to Stay Post-Judgment Discovery. ................................................................ 15

    A. Argentina Is Not Likely to Prevail on Appeal..................................... 15

    B. Argentina Has Not Shown Irreparable Harm...................................... 17

    C. Plaintiffs Face Serious Harm From Any Stay. .................................... 18

    D. The Public Interest Weighs Heavily Against a Stay............................. 19

III. Argentina Likewise Comes Nowhere Near Justifying Its Alternative Request To Stay The Off-Channel Order And Related Proceedings............ 22

CONCLUSION ....................................................................................... 25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Argentina v. NML Cap., Ltd.,*
573 U.S. 134 (2014)..................................................................................20

*Coinbase v. Bielski,*
599 U.S. 736 (2023)..................................................................................17

*EM Ltd. v. Argentina,*
865 F.Supp.2d 415 (S.D.N.Y. 2012) ........................................................6

*Exxon Mobil Corp. v. Healey,*
28 F.4th 383 (2d Cir. 2022).......................................................................8

*Nken v. Holder,*
556 U.S. 418 (2009)................................................................... 15, 19, 23

*Petersen Energía Inversora S.A.U. v. Argentine Republic,*
895 F.3d 194 (2d Cir. 2018)................................................... 4, 5, 16, 20

*Richmark Corp. v. Timber Falling Consultants,*
959 F.2d 1468 (9th Cir. 1992)..................................................................19

**Other Authorities**

Bench Ruling, *NML Cap., Ltd. v. Argentina,*
No. 08-cv-6978 (S.D.N.Y. Aug. 28, 2015), Dkt.819 ...............................6

Brief for Appellee,
*Petersen Energía Inversora, S.A.U. v. Argentine Republic,*
No. 25-2362 (2d Cir. Dec. 22, 2025), Dkt.70 .........................................23

Brief for the United States,
*Argentine Republic v. Petersen Energía Inversora, S.A.U.,*
No. 18-581 (U.S. May 21, 2019) .............................................................21

Exhibit C, *NML Cap., Ltd. v. Argentina,*
No. 08-cv-6978 (S.D.N.Y. June 17, 2015), Dkt. 794-1 ...........................6

Order, *Aurelius Cap. Partners LP v. Argentina,*
No. 07-cv-11327 (S.D.N.Y. May 29, 2009), Dkt.211................................6

iii

## INTRODUCTION

Argentina's unprecedented motion to belatedly stay post-judgment discovery years after declining to seek a stay pending appeal is the latest and most egregious example of its protracted efforts to avoid the consequences of its own choices. Indeed, while Argentina's history of sanctionable bad faith and recalcitrance in the U.S. courts spans decades, this latest episode takes the cake. Having spent years resisting post-judgment discovery—conduct the district court has described as "gamesmanship intended to delay collection"—Argentina now stands on the brink of an evidentiary hearing to determine whether it has willfully defied the court's discovery orders. To prevent the district court from even considering that issue and potentially holding it accountable for its (mis)conduct, Argentina asks this Court to halt post-judgment proceedings altogether. No precedent supports such a stay, and granting one would interrupt the district court's careful case management and prevent it from completing necessary factfinding regarding Argentina's noncompliance.

Argentina chose to raise capital in New York from U.S. investors with clear promises of a compensated exit should Argentina return to its Peronist ways. Over a decade ago, Argentina breached those promises by deeming compliance a bear trap suitable only for fools, choosing to litigate because complying with its obligations would cost billions. Notwithstanding its litigation gambits, Argentina knows full

well that if it had offered investors recourse only in the Argentine courts, or only some unspecified non-formulaic relief, its IPO would have never succeeded. All of its litigation positions are simply an effort to delay the day of reckoning.

In September 2023, after years of hard-fought litigation, including an unsuccessful effort to assert sovereign immunity in this Court, the district court held Argentina liable for its breach and entered final judgment. Recognizing that Argentina would seek appellate review, and respectful of its sovereignty, the district court offered Argentina a stay if it would expedite its appeal and post minimal security to protect Plaintiffs' interests. Argentina refused, and declined to ask this Court for a stay pending appeal, leaving the judgment enforceable and making post-judgment discovery inevitable.

The last two-and-a-half years have made clear beyond cavil that Argentina made the calculated decision to forgo a stay because it had no intention of satisfying the unstayed judgment or complying with post-judgment discovery. Instead, Argentina has engaged in massive resistance, extending the briefing before this Court, stonewalling Plaintiffs at every turn, and failing to comply with basic post-judgment discovery obligations, even after the district court's repeated intervention. That campaign of obstruction and delay has finally caught up with Argentina. After years of carefully managing post-judgment discovery and addressing Argentina's throughline of defiance, the district court set an evidentiary hearing for April 21-23

to determine whether Argentina has willfully disobeyed the court's orders, and if so, whether sanctions are appropriate. That hearing will give Argentina an opportunity to present any evidence it has of compliance and good faith—the kind of complete evidentiary hearing that no appellate court could replicate, especially on truncated briefing over a stay application. And in keeping with its measured approach, the district court clarified that if it finds that Argentina's conduct warrants sanctions, it will entertain a motion to stay those sanctions so Argentina can seek review here.

Rather than account for its (mis)conduct at that evidentiary hearing, Argentina now asks this Court to stay all post-judgment discovery proceedings (including the upcoming evidentiary hearing) pending Argentina's appeal from the underlying judgment. The district court correctly rejected that extraordinary request, recognizing Argentina's motion as a transparent attempt to revisit the stay Argentina declined years ago and to avoid the consequences of its decision not to seek a stay from this Court. The court likewise recognized that applying the traditional stay factors to Argentina's extraordinary request was not a close call.

The district court got it exactly right and Argentina does not come close to showing any abuse of discretion. No litigant has the option of declining to seek a stay, refusing to satisfy an unstayed judgment or comply with post-judgment discovery orders, and then seeking a stay years later when the consequences of its tactical non-compliance come home to roost. Argentina imagines there is an

exception for foreign sovereigns, but it lost its FSIA appeal years ago.  Its ongoing efforts to pretend that it is immune from its legal obligations and can defy the district court's discovery orders (all while enjoying a post-judgment interest rate far lower than it could obtain on foreign capital markets) should not be tolerated, let alone rewarded with an extraordinary stay.

## BACKGROUND

1. This case arises from Argentina's clear breach of its contractual obligations over a decade ago.  In the 1990s, Argentina sought to privatize its state-owned energy company YPF and came to New York to raise much needed capital.  To assure U.S. investors that it would not renationalize YPF without affording them a compensated exit, Argentina amended YPF's Bylaws to make extraordinary and extraordinarily clear promises—obligating Argentina to make a tender offer at an investor-protecting price set by a predetermined formula in the event of a renationalization. Investors relied on those promises, and YPF raised billions, including $1.1 billion from NYSE-listed shares.  *Petersen Energía Inversora S.A.U. v. Argentine Republic*, 895 F.3d 194, 199-200 (2d Cir. 2018).  Unfortunately, in 2012, Argentina returned to its old ways and seized control of a majority of YPF's shares without honoring the Bylaws' tender-offer requirement, declaring that it would not be so "stupid" as to "comply[]"—which would cost billions.  *Id.* at 202.

4

Plaintiffs sued Argentina for that flagrant breach. The district court rejected Argentina's claim of sovereign immunity, this Court affirmed, *id.* at 205-09, and the Supreme Court denied certiorari, 588 U.S. 906 (2019). The district court granted summary judgment against Argentina on liability. D.Ct.Dkt.437.[1] After a bench trial on damages, the court entered judgment in September 2023, awarding Plaintiffs $16.1 billion. D.Ct.Dkt.498 at 3-4.

2. The district court granted a stay of that judgment pending appeal on two conditions: that Argentina "seek expedited review of its appeal," and provide "minimal security" by pledging its YPF shares and certain receivables. D.Ct.Dkt.527 at 10. Rather than comply, Argentina asked for a month to "evaluate" those conditions. D.Ct.Dkt.528 at 1. The district court granted that request. D.Ct.Dkt.529. After taking full advantage of that extension, Argentina chose not to comply with either condition. Nor did Argentina seek a stay pending appeal from this Court. Accordingly, enforcement began "solely because of the Republic." D.Ct.Dkt.753 at 2.

Argentina nonetheless refused to pay, and obstructed all efforts to collect, "leverag[ing] motion practice and the transition of administrations to dodge its obligations on the final judgment." D.Ct.Dkt.890 ("Stay.Op.") at 2. Unfortunately,

---

[1] "D.Ct.Dkt." refers to the *Petersen* district court docket.

that bad-faith misconduct is nothing new for Argentina. For decades courts within this Circuit have documented Argentina's "continued intransigence in failing to honor its lawful judgment debts," and its willful defiance of post-judgment discovery orders that have often resulted in sanctions and contempt. *See, e.g.*, *EM Ltd. v. Argentina*, 865 F.Supp.2d 415, 417 (S.D.N.Y. 2012); D.Ct.Dkt.853 at 4-5 (citing Order, *Aurelius Cap. Partners LP v. Argentina*, No. 07-cv-11327 (S.D.N.Y.), Dkt.211; Bench Ruling, *NML Cap., Ltd. v. Argentina*, No. 08-cv-6978 (S.D.N.Y.), Dkt.819 at 39:18-25). Despite its continued request for "grace and comity" in case after case (Ex.C, *NML*, Dkt. 794-1 at 151-52), Argentina has refused to treat comity as a two-way street and has steadfastly defied the U.S. courts.

3. Plaintiffs served their first post-judgment discovery requests in October 2023, seeking to identify assets that may be subject to execution. Since then, the district court has repeatedly observed Argentina's "strategy of procedural delay and obfuscation," where it has repeatedly "mouth[ed] an intent to cooperate but refus[ed] to do so." D.Ct.Dkt.533 at 2-5; *see* D.Ct.Dkt.843 at 13 ("the tactics employed by [Argentina]" are "mere gamesmanship intended to delay collection"); D.Ct.Dkt.772 at 51 (condemning Argentina's "delay tactics").

For over a year after Plaintiffs first served post-judgment discovery, Argentina refused to even attempt to satisfy most of Plaintiffs' discovery requests, asserting (on its own say-so) that those requests "could not possibly lead to executable assets."

6

D.Ct.Dkt.572 at 3. After the district court overruled that unsupported objection, D.Ct.Dkt.703 at 2-3, Argentina still refused to conduct searches for months, forcing Plaintiffs to file a motion to compel, D.Ct.Dkt.736. The court then again overruled Argentina's objection. D.Ct.Dkt.758 at 7, 11, 14. Argentina continues to defy that ruling, reasserting the same executability objection to try to prevent Plaintiffs from even identifying relevant assets.

Argentina also initially refused to conduct searches concerning its assets in Argentina. After months of requests and conferences, Argentina eventually agreed to conduct those searches. The result of its purported three-month effort across 114 ministries, however, was the production of only about *15 files* relating to Argentine assets. D.Ct.Dkt.842 at 6. Argentina also professed to lack information regarding where its own central bank holds Argentine gold reserves, while simultaneously resisting discovery into their location, and creating a discovery dispute requiring no fewer than eighteen letters from the parties. D.Ct.Dkt.858; D.Ct.Dkt.872-1 at ¶4; D.Ct.Dkt.880; D.Ct.Dkt.884.

When Plaintiffs sought to test Argentina's limited productions by seeking the names of individuals with relevant knowledge, Argentina again stonewalled. D.Ct.Dkt.736 at 1-2. And when the court eventually ordered Argentina to produce witnesses for depositions regarding Argentina's discovery efforts, those witnesses were unprepared to answer basic questions about Argentina's document searches,

7

including how the searches were conducted and why particular repositories were searched. D.Ct.Dkt.864 at 1-2; D.Ct.Dkt.874 at 2.

In total, after more than two years of post-judgment discovery requests from Plaintiffs (and patient and evenhanded oversight by the district court), Argentina has produced only about 13,500 documents, totaling roughly 115,000 pages—a shockingly miniscule production, given the stakes. *See* D.Ct.Dkt.874 at 3-4; *cf., e.g.*, *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 391 (2d Cir. 2022) (three years of discovery produced "millions of pages of documents"). To date, discovery also remains incomplete and Argentina continues to make belated productions, including email communications and privatization-related documents, among others. *Id.* at 3.

4. Part of that incomplete discovery relates to Plaintiffs' requests for information regarding certain state-owned entities, such as YPF and Banco Central de la República Argentina ("BCRA"), that Plaintiffs have reason to believe are alter egos of Argentina and so whose assets may be subject to execution. Because prior discovery showed that Argentine officials routinely conduct official business through off-channel communications (i.e., non-official platforms such as WhatsApp and Gmail), D.Ct.Dkt.641 at 1-3, Plaintiffs sought Argentine officials' off-channel communications relating to those state-owned entities. D.Ct.Dkt.540-1 at 3. Argentina refused to produce those communications, asserting without support that those communications were not used for official business, were not within

8

Argentina's control, and could not be produced without violating Argentine law. D.Ct.Dkt.641 at 6; D.Ct.Dkt.658 at 4-7; D.Ct.Dkt.677 at 1-4.

Plaintiffs thereafter submitted extensive evidence in support of their discovery requests, including evidence showing that Argentine public officials routinely use off-channel communications to conduct official business, and expert evidence that those communications are public information within Argentina's control and that accessing them would not violate Argentine law. D.Ct.Dkt.672 ¶¶3-40; D.Ct.Dkt.772 at 53; D.Ct.Dkt.763-1 to -3. Plaintiffs' submission included numerous public reports that Argentine officials, including President Javier Milei, Chief of Staff Nicolas Posse, and Minister of Economy Luis Caputo regularly communicate about official business through off-channel communications, including WhatsApp. D.Ct.Dkt.763 at 30-32; D.Ct.Dkt.763-1 to -3. Argentina still refused to produce any such communications, or even respond to Plaintiffs' inquiries as to whether the relevant communications were being preserved. D.Ct.Dkt.763 at 30, 36-37.

Eventually, the district court ordered Argentina to produce the requested off-channel communications. D.Ct.Dkt.772 at 52-53. The court explained that in light of "the small size of the productions of official communications so far," and the ample "evidence that [Argentine] officials use off-channel communications, like WhatsApp, for official communications," it "seems obvious that these officials are conducting official business," *id.* at 53, even "major government business,"

9

D.Ct.Dkt.758 at 36, "on their personal accounts," D.Ct.Dkt.772 at 53.  The district court reviewed in detail Plaintiffs' preliminary showings and granted discovery only where Plaintiffs showed it was likely that the official's off-channel communications would include relevant information and that there was reason to believe the state-owned enterprise was a potential alter ego.  *Id.* at 55-66.

Argentina moved for reconsideration, which Plaintiffs opposed by submitting additional evidence of senior Argentine officials' use of off-channel communications for official business—including a news interview in which President Javier Milei, Minister of Economy Luis Caputo, and BCRA Governor Santiago Bausili described communicating through a private chat group, and indicated that Minister of Economy Luis Caputo was BCRA Governor Santiago Bausili's boss ("jefe"). D.Ct.Dkt.774; D.Ct.Dkt.775-1.  D.Ct.Dkt.672; D.Ct.Dkt.670 at 5.  The district court denied Argentina's motion for reconsideration.  D.Ct.Dkt.785.

6.  Rather than comply with the district court's off-channel order, Argentina claimed it needed additional time to conduct a "detailed analysis" of Argentine law. D.Ct.Dkt.789 at 4.  The district court granted the request.  D.Ct.Dkt.823 at 14.  One week later, Argentina asserted that it could not even request the communications from its own officials because doing so would be "coerci[ve]" under Argentine law. D.Ct.Dkt.808-1 at 1-2.

10

A month later—after yet another conference with the district court where Argentina recycled previously-rejected arguments—Argentina abandoned its dubious position, declaring that on further reflection it *could* ask its public officials to turn over off-channel communications regarding official government business. D.Ct.Dkt.828 at 1. On the district court's orders, Argentina began rolling productions of off-channel communications. D.Ct.Dkt.842 at 1-2. Even those documents confirm what Argentina has refused to admit for years and can no longer plausibly deny: senior officials routinely conduct government business through off-channel platforms, and those communications are highly relevant. D.Ct.Dkt.853 at 15-16; D.Ct.Dkt.842-1; D.Ct.Dkt.863-1; D.Ct.Dkt.905-1. The productions include, for example, WhatsApp messages between BCRA Governor Bausili and Argentina's Treasury Secretary discussing payments ordered by Minister Caputo; messages between the president of a state-owned entity and Argentina's Energy Secretariat regarding project funding; and messages between the CEO of another state-owned entity and the Treasury Secretary requesting funds from the Ministry of Economy. D.Ct.Dkt.863 at 1-2.

Still, Argentina has refused to produce off-channel communications for at least 12 officials, including officials like Minister Caputo who are most likely to possess the most relevant off-channel communications. *Id.* at 15-16 & n.5; D.Ct.Dkt.904 at 1 n.2. Argentina now claims that it lacks access to those

communications—an outlandish claim that would mean Argentina lacks the ability to review its own officials' government-related conduct.

7. Plaintiffs moved for sanctions and a contempt finding against Argentina for its willful refusal to comply with the district court's off-channel order. D.Ct.Dkt.853. The district court concluded that further factual development was needed, and set an evidentiary hearing to begin on April 21. D.Ct.Dkt.884. In a transparent attempt to evade that definitive factfinding, Argentina filed a pre-motion letter making the extraordinary request that the district court stay all post-judgment discovery pending Argentina's appeal from the district court's underlying judgment, or in the alternative stay the off-channel order and related proceedings (including the evidentiary hearing). D.Ct.Dkt.865.

The district court denied Argentina's motion. As the court explained, Argentina's request was simply "a renewed attempt to obtain the unbounded stay [of the judgment] that the Court previously rejected," and Argentina did not (and could not) justify reconsideration. Stay.Op.3. Regardless, Argentina's "eleventh-hour request … does not come close to satisfying the factors necessary to warrant an equitable stay." *Id.* at 4. Argentina offered "only conclusory assertions" regarding its likelihood of appellate success, and failed to demonstrate any likelihood of irreparable harm. *Id.* Granting Argentina "a last-minute stay would [also] materially prejudice Plaintiffs, who have been diligently seeking to collect on an unstayed

$16.1 billion judgment for over two years," and who "have spent weeks preparing for the evidentiary hearing that questions about [Argentina's] noncompliance have necessitated." *Id.* at 4-5. Finally, "[t]he public interest is furthered by enforcement of judgments and compliance with discovery orders," and a stay would perversely reward Argentina for "years of noncompliance" and encourage future litigants "to follow [Argentina's] path." *Id.* at 5-6.

For the same reasons, the court denied Argentina's alternative request to stay the off-channel order and related proceedings. *Id.* at 6. But the court made clear that if it does order sanctions or contempt after the upcoming evidentiary hearing, it will entertain a motion to "delay enforcement … until [Argentina] has a chance to seek a stay" of that order. *Id.* "At this point, however, any such contempt order is hypothetical, and a global stay of post-judgment discovery proceedings would be premature." *Id.*

## ARGUMENT

### I. The District Court Properly Denied Argentina's Stay Motion As A Thinly Disguised Motion For Reconsideration.

Argentina's motion "is, at bottom, a renewed attempt to obtain the unbonded stay" that the district court denied two years ago and that Argentina never even requested from this Court. Stay.Op.3. After the district court entered judgment, Argentina "had the opportunity to secure a stay" pending appeal by satisfying the simple and straightforward conditions the court set, *id.*—namely, by expediting its

13

appeal and posting "minimal security," D.Ct.Dkt.527 at 10. But Argentina refused those conditions, and made no attempt to seek a stay pending appeal from this Court. Argentina cannot now—after two years of stonewalling Plaintiffs' post-judgment discovery requests, and just weeks before a scheduled hearing to establish a definitive factual record of its willful defiance of the district court's orders— suddenly "repackage its unbonded stay request as a new stay directed at post-judgment discovery" and evade the consequences of its tactical choices. Stay.Op.3. Neither Argentina nor the United States cites any authority granting a comparable stay request. That alone is sufficient reason to deny Argentina's motion.

None of Argentina's cursory responses is persuasive. Argentina claims that it "could not comply" with the district court's stay conditions, Mot.7, but the district court rejected that unfounded assertion, D.Ct.Dkt.533 at 3-5, and Argentina never asked this Court for a stay on any conditions. Alternatively, Argentina claims that its stay motion requests "different relief" under "different circumstances." Mot.14. But as the district court understood given its intimate familiarity with the proceedings, Argentina's current request for a "global post-judgment discovery stay" is indistinguishable from its prior request for an unsecured stay. Stay.Op.3. Argentina's assertions that "all conceivably relevant discovery has been exhausted" and Plaintiffs "have received all discovery needed," Mot.14, are unsubstantiated and wrong. On the contrary, as the district court observed, the post-judgment discovery

14

"remains materially incomplete," even "in categories [Argentina] has agreed to produce." Stay.Op.5. Argentina cannot now be relieved from the consequences of its litigation choices and permitted to continue concealing relevant evidence.

## II. Argentina Comes Nowhere Near Justifying Its Last-Ditch Effort to Stay Post-Judgment Discovery.

Even apart from its failure to justify reconsideration, Argentina "does not come close to satisfying the factors necessary to warrant an equitable stay." Stay.Op.4.

### A. Argentina Is Not Likely to Prevail on Appeal.

Argentina has not remotely made a "strong showing that [it] is likely to succeed on the merits" on appeal. *Nken v. Holder*, 556 U.S. 418, 434 (2009). As the district court explained in its comprehensive decisions below, and Plaintiffs have explained in their appellate briefs, Argentina's efforts to escape its promises to investors and the judgment holding it to account are meritless.

Argentina's lead appellate argument faces a daunting standard of review and is bereft of authority granting relief in comparable circumstances. The district court made no error—and certainly no abuse of discretion—in refusing to dismiss this case on forum non conveniens or international comity grounds, especially when Argentina identifies no substantial prejudice. Dkt.226 ("Pltfs.Br.") at 32-45. Indeed, the best authority Argentina could muster for granting a forum non conveniens dismissal in a comparable posture was a single out-of-circuit precedent from 38

15

years ago. Dkt.228 at 36. The district court likewise did not err, much less "repeatedly ma[k]e up Argentine law," Mot.13, by holding Argentina liable for its deliberate and flagrant breach of its contractual obligations. Pltfs.Br.45-66; D.Ct.Dkt.437 at 37. District courts have ample competence to apply foreign law, which is routine and which was aided here by numerous experts—including Argentina's own, who was subject to cross-examination and conceded that a breach of corporate bylaws can give rise to a breach-of-contract claim under Argentine law. Late-breaking (and un-cross-examined) appellate arguments and amicus briefs are no match for that kind of adversarial testing.

Argentina is wrong to assert that Plaintiffs' only recourse is to file a claim in Argentina where Plaintiffs might (or might not) be entitled to a small portion of third-party compensation (in now-devalued pesos) based on Argentina's "comprehensive system" governing "expropriation." Mot.14. If Argentina had told U.S. investors that was their only recourse, Argentina's tender-offer obligations would have been an abject failure. In reality, as this Court has recognized, "Argentina's breach … was a commercial act, not a sovereign one." *Petersen*, 895 F.3d at 207. Not surprisingly, investors' remedies lie in Argentina's Civil Code, not its public law.

In short, as this Court recognized years ago, Argentina promised investors "a compensated exit" in the event of renationalization. *Id.* at 200. There is no denying

16

that Argentina breached that clear promise, and no material likelihood of Argentina's success on appeal.

### B. Argentina Has Not Shown Irreparable Harm.

Argentina asserts that it will suffer irreparable harm from the possibility that it may face sanctions or contempt for willfully disobeying the district court's discovery orders. Mot.15-16. But Argentina cannot "point to the consequences of its own noncompliance as a basis for irreparable harm." Stay.Op.4. Moreover, Argentina provides no evidentiary support whatsoever for its exaggerated claims that sanctions or contempt would "cause irreparable harm to [its] international standing," especially when the district court has signaled a willingness to consider a stay of any sanctions. *Contra* Mot.15-16.

Argentina's claim that it faces irreparable harm from participating in the upcoming evidentiary hearing fares even worse. Mot.16. In general, courts "do not consider litigation-related burdens … to constitute irreparable harm" for purposes of the stay analysis. *Coinbase v. Bielski*, 599 U.S. 736, 746 (2023). And here the hearing will simply provide a forum to determine the relevant facts, including the unanswered questions surrounding "the location of BCRA's gold reserves," Mot.17, which will facilitate this Court's review of any sanctions entered. The suggestion that such factfinding will inflict "irreparable harm" is close to an admission that Argentina has willfully violated the court's orders. There is certainly no reason to

17

doubt the district court's impartiality and competence to make the relevant factual determinations. To the extent a careful accounting of the facts will cast Argentina in a negative light, that is Argentina's fault, not any species of irreparable harm that the law recognizes.

### C. Plaintiffs Face Serious Harm From Any Stay.

Argentina is equally wrong to claim that Plaintiffs "would suffer no appreciable harm" from a stay. *Contra* Mot.18. Instead, any stay would reward Argentina's ongoing defiance of the district court's orders and, as the district court recognized, "materially prejudice Plaintiffs, who have been diligently seeking to collect on an unstayed $16.1 billion judgment for over two years." Stay.Op.4-5.

Argentina's assertions that Plaintiffs will suffer no injury because "all conceivably relevant discovery has been exhausted" and Plaintiffs "have received all discovery needed," Mot.14, 18, are unsupported and incorrect. Indeed, the district court, which has spent more than two years supervising post-judgment discovery, found that Argentina's production "remains materially incomplete." Stay.Op.5. The record plainly confirms that finding, along with the need to continue (not stay) ongoing third-party discovery, which remains a critical means for Plaintiffs to identify relevant assets. *See supra* pp.7-11.

Argentina contends that Plaintiffs have no intention of trying to collect on the judgment, and instead are only trying to harass Argentina. *See* Mot.18-19. But the

quotation that Argentina cites proves only that Plaintiffs' goal is to bring this case "to a commercial resolution." D.Ct.Dkt.764-1 at 7. To the extent Plaintiffs' collection efforts are "sand in the gears" of Argentina's efforts to "rejoin the capital markets and global economy," Mot.2, Argentina has only itself to blame for its refusal to satisfy the judgment, or even to commit to do so if and when the judgment is affirmed.

### D. The Public Interest Weighs Heavily Against a Stay.

"[T]he public interest is furthered by enforcement of judgments and compliance with discovery orders." Stay.Op.5. Granting Argentina's last-minute stay request, by contrast, "would reward years of noncompliance and incentivize future litigants to follow [Argentina's] path." *Id.* The "strong interest" in ensuring the prompt enforcement of judgments therefore weighs heavily against a stay here. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1478 (9th Cir. 1992); *Nken*, 556 U.S. at 427 (same).

Both Argentina and the government claim that the public interest favors granting its last-minute stay request in light of "the public interest in maintaining harmonious international relations among nations." Mot.19; Dkt.276 ("U.S.Br.") at 15. But the district court fully considered those "comity concerns," and correctly concluded that they do not outweigh the public interest in execution of a valid and unstayed judgment. Stay.Op.5. Indeed, Congress itself set that balance in the FSIA,

19

which makes clear that "once a foreign sovereign is properly within [the court's] jurisdiction"—as this Court has already held Argentina is here—it "is subject to post-judgment discovery that may lead to executable assets just as any other defendant would be." *Id.*; *Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 145 (2014); *Petersen*, 895 F.3d at 205-09. Moreover, as the district court also emphasized, "comity is a two-way street." Stay.Op.5. Argentina cannot plausibly "demand[] that this Court extend comity [while] it simultaneously refuses to make any effort to honor the [district court's] unstayed judgment." Stay.Op.5-6; *contra* U.S.Br.10-11.

All that makes the government's further suggestion that "courts should take comity and reciprocity concerns into account when considering the public interest factor" puzzling at best. U.S.Br.10. The district court did exactly that, and the government points to no legal error in that exercise of discretion by the court that is most familiar with the proceedings and the equities. As for the government's (and Argentina's) suggestion that holding Argentina accountable would create the possibility that the tables could be turned and similar obligations could be imposed on the United States by foreign courts, U.S.Br.12-13, the short answer is that the United States does not go on foreign markets seeking to privatize state-owned enterprises or raise capital with extraordinary promises. The government does not suggest otherwise. The longer answer is that the FSIA already accounts for any legitimate sovereign interests Argentina possesses, and this Court rejected

20

Argentina's claims to sovereign immunity years ago. The government told the Supreme Court that this Court correctly rejected Argentina's claim to sovereign immunity in this case, and it does not backtrack. Instead, the government describes generic concerns regarding problems of broad and immaterial foreign-asset discovery untethered to the specifics of this case. U.S.Br.14. With all due respect, the government got it right the first time: This case "is unlikely to" interfere with U.S. foreign relations because it is a "plainly … commercial" dispute that "does not become any less commercial merely because the … violator is … a foreign state." U.S.Br.11-13, *Argentine Republic v. Petersen Energía Inversora, S.A.U.*, No. 18-581 (U.S. May 21, 2019). Moreover, "the United States has a countervailing interest in ensuring that foreign states that enter U.S. markets as commercial actors do not enjoy immunity from lawsuits regarding violations of their commercial obligations." *Id.* at 18.

Argentina, for its part, argues that denying a stay could "harm numerous non-party entities" because Plaintiffs are seeking "adverse inferences regarding the alleged alter-ego relationship" between Argentina and its state-owned entities. Mot.20. But Plaintiffs are neither seeking to sanction the state-owned entities directly nor attempting to conclusively establish their status as alter egos at this juncture. In any event, those inferences would be weighed against other record

21

evidence and subject to potential objections and defenses below in further proceedings. D.Ct.Dkt.904 at 12-14.

Finally, Argentina claims that its last-minute stay would serve "the interests of judicial efficiency." Mot.21. That is rich coming from a party that chose not to comply with the minimal conditions that the district court set for a stay two years ago, that chose not to seek a stay from this Court at the time, and that since then has consistently pursued a "strategy of procedural delay and obfuscation" by "mouthing an intent to cooperate but refusing to do so" throughout the post-judgment proceedings. D.Ct.Dkt.533 at 5. In reality, judicial efficiency weighs strongly against a stay, given that "both parties have spent weeks preparing for the evidentiary hearing" that the district court is scheduled to hold in just over a month and given that Argentina's discovery production "remains materially incomplete." Stay.Op.5. Halting the district court's ongoing supervision of discovery midstream and preventing it from completing the factfinding it has determined is necessary is plainly not the efficient course. Argentina's stay motion should be denied.

III. **Argentina Likewise Comes Nowhere Near Justifying Its Alternative Request To Stay The Off-Channel Order And Related Proceedings.**

Argentina's cursory alternative request to stay the off-channel order and related proceedings—including the upcoming evidentiary hearing—likewise fails to satisfy any of the *Nken* factors.

*First*, Argentina again comes nowhere near making a "strong showing" that its appeal from the off-channel order is likely to succeed. *Nken*, 556 U.S. at 434. That interlocutory discovery order is not immediately appealable. Brief for Appellee, *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 25-2362 (2d Cir. Dec. 22, 2025), Dkt.70 at 25-33. And even if it were, Argentina's challenges to that order are meritless. The district court plainly did not abuse its discretion in determining that Argentina has control over its government officials' off-channel communications relating to official business, *id.* at 34-44, and that the requested discovery is both relevant and proportional to Plaintiffs' efforts to execute on their unstayed (and unsatisfied) $16.1 billion judgment, *id.* at 44-54. Of course, to the extent Argentina disagrees, Mot.22, its remedy is to submit evidence to that effect at the upcoming evidentiary hearing.

*Second*, Argentina's ability to make its case at the scheduled evidentiary hearing also forecloses its claim to suffer irreparable harm absent a stay. Argentina does not face any irreparable harm from simply participating in a hearing to conduct the necessary factfinding to determine whether it willfully disobeyed the district court's orders. *See supra* pp.17-18. And any sanctions would simply reflect Argentina's noncompliance with the district court's order, not irreparable harm. *See* Stay.Op.4.

23

*Third*, the harm to Plaintiffs from a stay would be real and substantial. Argentina's production to date "remains materially incomplete," and Argentina continues to withhold off-channel communications from the very officials who are most likely to have relevant information. Stay.Op.5; *supra* pp.8-11. Granting Argentina's belated stay request would also waste significant resources, as Plaintiffs "have spent weeks preparing for the evidentiary hearing that questions about [Argentina's] noncompliance have necessitated." *Id.*

*Fourth*, for all the reasons already explained, the public interest cuts sharply against a stay. *See supra* pp.19-22. In light of Argentina's ongoing refusal to pay the valid and unstayed judgment against it, or even to commit to pay that judgment if and when it is affirmed on appeal, its appeal to international comity falls flat. Stay.Op.5-6. The public interest weighs in favor of enforcing valid judgments, not encouraging defendants to ignore them.

## CONCLUSION

This Court should deny Argentina's motion.

Respectfully submitted,

s/Paul D. Clement

MARK C. HANSEN
DEREK T. HO
ANDREW E. GOLDSMITH
KELLOGG, HANSEN, TODD,
FIGEL, & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, DC 20036

SETH L. LEVINE
ALISON M. BONELLI
LEVINE LEE LLP
400 Madison Avenue, 8th Floor
New York, NY 10017

PAUL D. CLEMENT
C. HARKER RHODES IV
NICHOLAS A. AQUART
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Plaintiffs-Appellees-Cross Appellants*

March 16, 2026

**CERTIFICATE OF COMPLIANCE**

I hereby certify that:

1. This response complies with Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,200 words, excluding the parts of the response exempted by Federal Rule of Appellate Procedure 32(f), as determined by the word counting feature of Microsoft Word 2016.

2. This response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

March 16, 2026

s/Paul D. Clement
Paul D. Clement

## CERTIFICATE OF SERVICE

I hereby certify that, on March 16, 2026, an electronic copy of the foregoing brief was filed with the Clerk of Court using the ACMS system and thereby served upon all counsel appearing in this case.

<u>s/Paul D. Clement</u>
Paul D. Clement