# 23-7370(L)

## 23-7463(XAP), 23-7614(XAP)

# United States Court of Appeals for the Second Circuit

_____

PETERSEN ENERGIA INVERSORA, S.A.U., PETERSEN ENERGIA S.A.U.,
PLAINTIFFS-APPELLEES-CROSS APPELLANTS,

*v.*

ARGENTINE REPUBLIC,
DEFENDANT-APPELLANT-CROSS APPELLEE,
YPF S.A.,
DEFENDANT-CONDITIONAL CROSS APPELLANT.

On Appeal from the United States District Court for the
Southern District of New York, No. 15-cv-2739
_____

**BRIEF OF THE HEARTLAND INSTITUTE AS *AMICUS CURIAE*
SUPPORTING PETITION FOR REHEARING EN BANC**
_____

Jeffrey M. Harris (*renewal pending*)
Cameron T. Norris
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Ste. 700
Arlington, VA 22201
(703) 243-9423

*Counsel for Amicus Curiae The Heartland Institute*

## CORPORATE DISCLOSURE STATEMENT

The Heartland Institute is a nonprofit organization under the laws of the state of Illinois. It has no parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

# TABLE OF CONTENTS

**Page**

Corporate Disclosure Statement ............................................................................................i

Table of Authorities ...........................................................................................................iii

Interest of *Amicus Curiae* ...................................................................................................1

Introduction .......................................................................................................................2

Argument............................................................................................................................3

    I.    The Panel Decision Impedes Free Markets And The Security of Investments In Foreign Companies Listed In The United States..............3

        A.    The Foreign Sovereign Immunity Act Protects American Investors Who Deal With Foreign Sovereigns.................................3

        B.    The Panel Decision Undermines The FSIA's Protections. .............6

Conclusion.........................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682 (1976) ....................... 4, 5, 10

*Bank of the U.S. v. Planters' Bank of Ga.*, 22 U.S. 904 (1824) ................................................ 4

*Iragorri v. United Techs. Corp.*, 274 F.3d 65 (2d Cir. 2001) .................................................. 7

*Jam v. Int'l Finance Corp.*, 586 U.S. 199 (2019) ..................................................................... 3

*Petersen Energia Inversora S.A.U. v. Argentine Republic*, 2020 WL 3034824 (S.D.N.Y. June 5, 2020) ................................................................................................................................ 7

*Petersen Energia Inversora S.A.U. v. Argentine Republic*, 895 F.3d 194 (2d Cir. 2018) ...... 6, 9

*Petersen Energia Inversora, S.A.U. v. Argentine Republic*, 2016 WL 4735367 (S.D.N.Y. Sept. 9, 2016) ................................................................................................................................ 7

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) ............................................. 3, 5

*The Schooner Exchange v. McFaddon*, 11 U.S. 116 (1812) ................................................... 4

STATUTES

28 U.S.C. §1602 ....................................................................................................................... 3

28 U.S.C. §1605. ..................................................................................................................... 6

OTHER AUTHORITIES

Joseph F. Morrissey, *Simplifying the Foreign Sovereign Immunities Act: If a Sovereign Acts like a Private Party, Treat It like One*, 5 Chi. J. Int'l L. 675 (2005) ........................................ 5

Maryam Jamshidi, *The Political Economy of Foreign Sovereign Immunity*, 73 Hastings L.J. 585 (2022) ........................................................................................................... 4, 5, 6, 9, 10

William P. Holm, *Foreign Sovereign Immunity: Restrictive Immunity Up Against Constitutional Due Process (Notes)*, 1 N.Y.J. Int'l & Compar. L. 145 (1980) ........................................... 4

## INTEREST OF *AMICUS CURIAE* [1]

The Heartland Institute is a national nonprofit research and education organization based in Schaumberg, Illinois. Its mission since its founding in 1984 is to discover, develop, and promote free-market solutions to social and economic problems. This includes challenging government actions that disrupt the free market and that impose unnecessary costs and risks on investors and consumers.

This appeal presents a clear example of an unjustifiable capture of American capital by a foreign power that disrupts the free market and flouts the sovereign immunity laws of the United States. The panel's decision allows a foreign corporation that held itself out as a safe investment to United States citizens to break those promises without any meaningful remedy. The panel blessed that outcome despite the fact that it contradicted this Court's prior holding that Argentina was not immune from suit for its commercial dealings seeking capital on the New York Stock Exchange. The Heartland Institute urges that en banc review is warranted to protect free markets and United States investors from this unjustified expansion of immunity for foreign sovereigns raising capital in United States markets.

---

[1] No party's counsel authored this brief in whole or in part. No party or its counsel contributed financial support intended to fund the preparation or submission of this brief. No individual or organization other than The Heartland Institute and its counsel contributed financial support intended to fund the preparation or submission of this brief.

## INTRODUCTION

This case warrants en banc review because it is of vital importance for the free market and legal protections within the federal court system for United States investors who invest in foreign countries. The panel's merits analysis unjustifiably reverses the district court's careful consideration of the foreign law issue and undercuts important protections contained in the Foreign Sovereign Immunity Act (FSIA) and this Court's *forum non conveniens* precedent, which is especially protective of plaintiffs who have chosen to sue in their home districts. En banc review is necessary to prevent this merits analysis from engulfing the separate immunity and *forum non conveniens* standards.

Contrary to the panel's assertion that "this is not a run-of-the-mill civil contract dispute between two private parties," Op.38, Congress passed the FSIA to ensure that foreign powers that engaged in commercial activity would have to play on a level playing field within United States courts. The Act codifies a restrictive theory of foreign sovereign immunity longstanding in American law that treats foreign powers as private parties without immunity when they engage in commercial activity within the United States. And a prior decision by this Court in this case held that Argentina's activities here fell squarely within the FSIA's commercial activity exception to sovereign immunity.

But when the panel reached the merits of this dispute, it allowed the country to skirt this Court's holding on immunity by reading Argentinian law to provide the country with immunity from any liability sounding in contract. It reached this holding despite the district court's opposite holding after hearing extensive expert testimony concerning

2

this topic. And the majority's suggestion that Plaintiffs should have brought this action in Argentina runs contrary to the district court's repeated denials of Argentina's motions to dismiss on *forum non conveniens* grounds and this Court's strong protections for plaintiffs who are at home in their chosen jurisdiction from that type of dismissal. This case cries out for this Court's en banc review.

## ARGUMENT

### I. The Panel Decision Impedes Free Markets And The Security of Investments In Foreign Companies Listed In The United States.

This case merits the full Court's review because the panel's decision on the merits creates significant tensions with its own prior and contemporaneous holdings on the sovereign immunity and *forum non conveniens* issues. These contradictions allow bad-faith actors to make an end-run around provisions of federal law designed to hold foreign states to their commercial commitments. The panel decision thus smuggles additional sovereign immunity considerations into its merits analysis in a way that harms free markets and threatens the security of United States investors in foreign companies.

### A. The Foreign Sovereign Immunity Act Protects American Investors Who Deal With Foreign Sovereigns.

The panel's decision attacks the very underpinnings of the Foreign Sovereign Immunities Act. Congress passed the FSIA in 1976 to "codif[y] the restrictive theory of foreign sovereign immunity." *Jam v. Int'l Finance Corp.*, 586 U.S. 199, 204 (2019); *accord Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992); *accord* 28 U.S.C. §1602. The restrictive theory aimed to solve a specific and long-standing problem: foreign

3

sovereigns' increased participation in "the international commercial market" and the corresponding risk of "potential injury to private businessmen and ultimately to international trade itself from a system in which some of the participants in the international market"—*i.e.*, sovereign entities claiming absolute immunity—"are not subject to the rule of law." *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 703 (1976).[2]

The restrictive theory is grounded in free market principles and has a long history in American law. Maryam Jamshidi, *The Political Economy of Foreign Sovereign Immunity*, 73 Hastings L.J. 585, 596-600, 618-21 (2022). Indeed, Chief Justice Marshall articulated the need for something like a commercial-activity exception to absolute sovereign immunity in 1824:

> "It is, we think, a sound principle, that when a government becomes a partner in any trading company, it divests itself, so far as concerns the transaction of that company, of its sovereign character, and takes that of a private citizen. Instead of communicating to the company its privileges and its prerogatives it descends to a level with those with whom it associates itself, and takes the character which belongs to its associates, and to the business which is to be transacted."

*Bank of the United States v. Planters' Bank of Georgia*, 22 U.S. 904, 907 (1824).[3]

---

[2] William P. Holm, *Foreign Sovereign Immunity: Restrictive Immunity Up Against Constitutional Due Process (Notes)*, 1 N.Y.J. Int'l & Compar. L. 145, 148 (1980) (the restrictive theory was a "response to the . . . increasing involvement of national governments in commercial enterprises" that "resulted in an increase in occasions upon which private citizens require access to courts in order to resolve disputes involving their contracts with foreign states").

[3] These ideas also feature in the Supreme Court's 1812 decision in *The Schooner Exchange*, also written by Chief Justice Marshall. *The Schooner Exchange v. McFaddon*, 11 U.S. 116, 144 (1812).

Increased foreign investment through the 1970's made "essential 'a practice which will enable persons doing business with [foreign sovereigns] to have their rights determined in the courts.'" *Alfred Dunhill*, 425 U.S. at 702. And by the time Congress passed the Act, it was "beyond cavil that part of the foreign relations law recognized by the United States is that the commercial obligations of a foreign government may be adjudicated in those courts otherwise having jurisdiction to enter such judgments." *Id.* at 705.

Congress thus adopted the FSIA against this backdrop of increased foreign involvement in trade and the need for codification to ensure market stability and predictability. *See* Jamshidi, *supra*, at 618 ("concerns with trade and commerce—particularly with the continuing rise of state trading companies and desire to facilitate and protect trade with those entities"—were at the "heart" of the Act); *id.* ("the main focus of and impetus for the bill was the commercial activity exception"); Joseph F. Morrissey, *Simplifying the Foreign Sovereign Immunities Act: If a Sovereign Acts like a Private Party, Treat It like One*, 5 Chi. J. Int'l L. 675, 675 (2005) ("The FSIA was designed to codify when sovereign immunity is *not* appliable"). In sum, the Act provided the clear framework the free market demanded. *See* Jamshidi, *supra*, at 618-21; *Republic of Argentina*, 504 U.S. at 614.

But the panel's decision undermines a core purpose of the FSIA—to ensure that "the commercial obligations of a foreign government may be adjudicated in those courts otherwise having jurisdiction to enter such judgments." *Alfred Dunhill*, 425 U.S. at 705; Jamshidi, *supra*, at 618. Though denying Defendants sovereign immunity based

on the Act's commercial-activity exception in *Petersen II*,[4] the Court now effectively grants Defendants back-door sovereign immunity by denying investors any meaningful remedy for a foreign sovereign's breach of its clear commercial obligations.

### B. The Panel Decision Undermines The FSIA's Protections.

Over the course of this ten-year litigation, both this Court and the district court have consistently rejected Argentina's argument that American courts lack jurisdiction under the FSIA. In 2018, this Court held that Argentina was not immune from the jurisdiction of United States courts because it fell within a FSIA provision reaching the "commercial activity of the foreign state" that "causes a direct effect in the United States." 28 U.S.C. §1605(a)(2). There, in another opinion authored by Judge Chin, this Court held that even though "Argentina's obligation to conduct a tender offer in this case was triggered by its sovereign act of expropriation," the bylaw's tender "obligation and Argentina's subsequent repudiation of it were indisputably commercial in nature in that they are 'the *type* of actions by which a private party engages in trade and traffic or commerce.'" *Petersen II*, 895 F.3d at 207. Accordingly, this Court held that "Argentina's breach of those obligations was a commercial act, not a sovereign one." *Id.*

This Court and the district court also rejected Argentina's invitations for the federal courts to decline jurisdiction on *forum non conveniens* grounds. The district court denied Argentina's first motion on these grounds in 2016, holding that it had failed to

---

[4] *Petersen Energia Inversora S.A.U. v. Argentine Republic*, 895 F.3d 194 (2d Cir. 2018).

demonstrate that plaintiffs could bring this action in Argentina given that the country had threatened and even filed criminal complaints against plaintiffs' counsel and other principals on plaintiffs' side of the case. *Petersen Energia Inversora, S.A.U. v. Argentine Republic*, 2016 WL 4735367, at \*11-12 (S.D.N.Y. Sept. 9, 2016). The district court likewise denied Argentina's renewed motion to dismiss on *forum non conveniens* grounds in 2020, concluding that the case for dismissal was even weaker in light of the addition of a New York-based plaintiff to whom Argentina sold YPF stock on the New York Stock Exchange. *Petersen Energia Inversora S.A.U. v. Argentine Republic*, 2020 WL 3034824, at \*6-7 (S.D.N.Y. June 5, 2020).

In reaching this holding, the district court applied the test laid out in this Court's en banc decision in *Iragorri v. United Technologies Corporation*, which is deferential to the choices of plaintiffs to sue in their home districts. 274 F.3d 65, 71-72 (2d Cir. 2001) ("[T]he greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*."). On appeal, the panel decision here emphasized the "'broad discretion of the district court'" to decide *forum non conveniens* motions in declining to reverse on these grounds. Op.26-27.

The panel decision's holding on the merits simply cannot be reconciled with these prior holdings on the sovereign immunity and *forum non conveniens* issues. *See* Pet.14-16. The panel majority concluded that Argentina's General Expropriation Law

7

"explicitly forecloses actions 'by third parties [that] impede the expropriation or its effects' while the expropriator and property owner determine the amount of compensation owed to the owner." Op.46-47. The panel accordingly held that Argentina's expropriation law quashed any contractual claim that Plaintiffs might have because Plaintiffs' claims "likely 'impede the expropriation or its effects,' and are thus barred under the text and purpose of the [expropriation law]." Op.50.

This conclusion squarely conflicted with the district court's holding on the same question, which concluded after extensive expert testimony on Argentinian law that "Argentina's General Expropriation Law does not bar plaintiffs' claims." Dis.3. The panel majority did not meaningfully explain why it reached a conclusion that was diametrically opposed to the district court's or explain where it thought the district court went wrong. The only explanation it offered for its reversal on this point was to note that the panel majority could "'find and apply foreign law' in the first instance" and that it did so "on substantially the same factual record as was before the district court." Op.51 n.14. As the dissent rightly emphasizes, this holding flouts the rule that "'determinations of another sovereign's law frequently call for fact-like procedures that a district court is better situated to implement'" as questions of foreign law are "'notoriously difficult.'" Dis.4, 1.

In addition to overturning the district court's careful consideration of this "fact-like" question of foreign law, the panel's holding also impermissibly injects an immunity question into the merits analysis. This holding, too, cannot be reconciled with prior

8

holdings in the case. *See* Pet.16. After this Court determined that "Argentina's breach of [the tender] obligations was a commercial act, not a sovereign one," *Petersen II*, 895 F.3d at 207, the panel decision concluded that Argentinian law allowed the country to avoid commercial liability altogether. And after declining to disturb the district court's *forum non conveniens* holdings that the presence of a New York plaintiff "increased the deference warranted to Plaintiffs' choice of forum," and that "the public interests 'weigh[ed] heavily in favor of litigation in New York,'" Op.26, the panel posited that "[p]erhaps Plaintiffs could have sought compensation by bringing a claim against the Republic under the [appropriation law's] procedures," Op.49. The result of the panel's holding on the merits is to undercut its prior holdings on the immunity and *forum non conveniens* issues.

\* \* \*

The panel's message to international markets is clear: investors will be left without recourse on a foreign investment so long as a sovereign can muster a *post hoc* rationalization for its unambiguous breach of its contractual obligations that is grounded in a sufficiently sovereign function. The panel opinion has thus created a gaping counter-exception that undermines the very purpose of the FSIA. *See* Jamshidi, *supra*, at 590 ("the commercial activity exception is at the center of the FSIA's immunity regime by design"). Indeed, the panel's admonition that Plaintiffs should have "protections in Argentine court," Op.51, subverts the very principles of the restrictive theory enshrined

9

in the Act—that those who choose to do business in the United States ought to be subject to the jurisdiction of, and liability in, its courts. *Alfred Dunhill*, 425 U.S. at 705.

Because the panel majority opinion frustrates the sanctity of contract in the context of international finance, the full Court should correct course to restore stability and predictability to "one of the most consequential legal regimes for foreign sovereign immunity worldwide." Jamshidi, *supra*, at 587. Properly construed, the Act does not allow Defendants to reap the benefit of exposure to and investment from international markets but refuse to uphold their end of the bargain. This type of gamesmanship erodes the stability the Act was meant to create in international trade and will doubtless chill international investment. *See* Pet.3.

## CONCLUSION

For these reasons, the Court should grant rehearing en banc.

Respectfully submitted,

*/s/ Cameron T. Norris*
Jeffrey M. Harris (*renewal pending*)
Cameron T. Norris
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Ste. 700
Arlington, VA 22201
(703) 243-9423
jeff@consovoymccarthy.com
cam@consovoymccarthy.com

*Counsel for Amicus Curia The Heartland Institute*

May 15, 2026

10

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 29(b)(4) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 2,510 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Garamond font.

Dated:  May 15, 2026

*/s/ Cameron T. Norris*
Cameron T. Norris

**CERTIFICATE OF SERVICE**

I certify that on this day the foregoing Brief was served electronically on all parties via CM/ECF.

Dated:  May 15, 2026

*/s/ Cameron T. Norris*
Cameron T. Norris